# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**     **2. PLEASE TYPE OR PRINT**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption:

In re Bystolic Antitrust Litigation

(CVS Pharmacy, Inc. et al. v. AbbVie Inc. et al.) | District Court or Agency:<br><br>**USDC, SDNY** | Judge:<br><br>Hon. Lewis J. Liman |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br>2/21/2023 | District Court Docket No.:<br>20-cv-5735 (LJL);<br>20-cv-10087 (LJL) |
| | Date the Notice of Appeal was Filed:<br>3/20/2023 | Is this a Cross Appeal?<br><br>☐ Yes     ☑ No |

| **Attorney(s) for Appellant(s):**<br><br>☑ Plaintiff<br><br>☐ Defendant | Counsel's Name:<br>Barry L. Refsin | Address:<br>Hangley Aronchick Segal<br>Pudlin & Schiller<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103 | Telephone No.:<br>215-568-6200 | Fax No.:<br>215-568-0300 | E-mail:<br>blr@hangley.com |
|---|---|---|---|---|---|
| | Additional counsel are listed in the attached Exhibit 1. | | | | |

| **Attorney(s) for Appellee(s):**<br><br>☐ Plaintiff<br><br>☐ Defendant | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| | Counsel for appellees are listed in the attached Exhibit 2. | | | | |

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>218 | Number of Exhibits Appended to Transcript:<br><br>None | Has this matter been before this Circuit previously? ☐ Yes  ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

***ADDENDUM "A"*:  COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B"*:  COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A:  JURISDICTION

| 1. _Federal Jurisdiction_ | 2. _Appellate Jurisdiction_ |
|---|---|
| ☐ U.S. a party     ☐ Diversity<br><br>☑ Federal question     ☐ Other (specify):<br>(U.S. not a party)         _____ | ☑ Final Decision     ☐ Order Certified by District Judge (i.e.,<br>                                            Fed . R. Civ. P. 54(b))<br><br>☐ Interlocutory Decision<br>    Appealable As of Right     ☐ Other (specify): _____ |

### IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.

## PART B: DISTRICT COURT DISPOSITION (Check as many as apply)

**1. Stage of Proceedings**

- ☑ Pre-trial
- ☐ During trial
- ☐ After trial

**2. Type of Judgment/Order Appealed**

- ☐ Default judgment
- ☐ Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- ☑ Dismissal/FRCP 12(b)(6) failure to state a claim
- ☐ Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- ☐ Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- ☐ Dismissal/other jurisdiction
- ☐ Dismissal/merit
- ☐ Judgment / Decision of the Court
- ☐ Summary judgment
- ☐ Declaratory judgment
- ☐ Jury verdict
- ☐ Judgment NOV
- ☐ Directed verdict
- ☐ Other (specify):

**3. Relief**

- ☑ Damages:
  - ☐ Sought: $ _____
  - ☐ Granted: $ _____
  - ☐ Denied: $ _____
- ☐ Injunctions:
  - ☐ Preliminary
  - ☐ Permanent
  - ☐ Denied

## PART C: NATURE OF SUIT (Check as many as apply)

**1. Federal Statutes**

- ☑ Antitrust
- ☐ Bankruptcy
- ☐ Banks/Banking
- ☐ Civil Rights
- ☐ Commerce
- ☐ Energy
- ☐ Commodities
- ☐ Other (specify): _____
- ☐ Communications
- ☐ Consumer Protection
- ☐ Copyright ☐ Patent
- ☐ Trademark
- ☐ Election
- ☐ Soc. Security
- ☐ Environmental
- ☐ Freedom of Information Act
- ☐ Immigration
- ☐ Labor
- ☐ OSHA
- ☐ Securities
- ☐ Tax

**2. Torts**

- ☐ Admiralty/ Maritime
- ☐ Assault / Defamation
- ☐ FELA
- ☐ Products Liability
- ☐ Other (Specify):

**3. Contracts**

- ☐ Admiralty/ Maritime
- ☐ Arbitration
- ☐ Commercial
- ☐ Employment
- ☐ Insurance
- ☐ Negotiable Instruments
- ☐ Other Specify

**4. Prisoner Petitions**

- ☐ Civil Rights
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Parole
- ☐ Vacate Sentence
- ☐ Other

**5. Other**

- ☐ Hague Int'l Child Custody Conv.
- ☐ Forfeiture/Penalty
- ☐ Real Property
- ☐ Treaty (specify): _____
- ☐ Other (specify): _____

**6. General**

- ☐ Arbitration
- ☐ Attorney Disqualification
- ☐ Class Action
- ☐ Counsel Fees
- ☐ Shareholder Derivative
- ☐ Transfer

**7. Will appeal raise constitutional issue(s)?**

- ☐ Yes ☑ No

Will appeal raise a matter of first impression?

- ☐ Yes ☑ No

---

1. Is any matter relative to this appeal still pending below? ☐ Yes, specify: _____ ☑ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A) Arises from substantially the same case or controversy as this appeal? ☑ Yes ☐ No

   (B) Involves an issue that is substantially similar or related to an issue in this appeal? ☑ Yes ☐ No

If yes, state whether ☐ "A," or ☐ "B," or ☑ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: In re Bystolic Antitrust Litig. | Docket No. 23-418; 23-420; 23-423 | Citation: | Court or Agency: Second Circuit |
|---|---|---|---|

Name of Appellant: Walgreen Co. et al. (No. 23-418); J.M. Smith Corporation et al. (Direct Purchaser Class Plaintiffs) (No. 23-423); Mayor and City Council of Baltimore et al. (End Payor Class Plaintiffs) (No. 23-420)

| Date: 3/31/2023 | Signature of Counsel of Record: /s/ Barry L. Refsin |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

**<u>EXHIBIT 1</u> – ADDITIONAL COUNSEL FOR PLAINTIFF-APPELLANTS CVS PHARMACY, INC., RITE AID CORPORATION; AND RITE AID HDQTRS. CORP.**

| ATTORNEY NAME | MAILING ADDRESS | PHONE AND EMAIL |
|---|---|---|
| | | |
| Eric L. Bloom | HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER<br>2805 Old Post Road, Suite 100<br>Harrisburg, PA 17110 | (717) 364-1030<br>ebloom@hangley.com |
| Alexander J. Egerváry | HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103 | (212) 568-6200<br>aegervary@hangley.com |

## EXHIBIT 2 – COUNSEL FOR DEFENDANT-APPELLEES

| ATTORNEY NAME | MAILING ADDRESS | PHONE AND EMAIL |
|---|---|---|
| Peter J. Carney<br>Eric Grannon<br>Adam Acosta<br>Celia McLaughlin<br>Holly Letourneau<br>Kelly Newman[1] | WHITE & CASE LLP<br>701 Thirteenth Street, NW<br>Washington, DC 20005-38007 | (202)-626-3600<br>pcarney@whitecase.com<br>egrannon@whitecase.com<br>adam.acosta@whitecase.com<br>cmclaughlin@whitecase.com<br>hletourneau@whitecase.com<br>kelly.newman@whitecase.com |
| Christopher T. Holding[2] | GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210 | (617)-570-1753<br>cholding@goodwinlaw.com |
| Devora W. Allon<br>Jay P. Lefkowitz[3] | KIRKLAND & ELLIS LLP<br>601 Lexington Avenue New York, NY 10022 | (212)-446-5697<br>devora.allon@kirkland.com<br>lefkowitz@kirkland.com |
| Ahmed M.T. Riaz[4] | ARENT FOX SCHIFF LLP<br>1185 Avenue of the Americas Suite 3000<br>New York, NY 10036 | (212)-753-5000<br>Ahmed.riaz@afslaw.com |
| Suzanne L. Wahl[4] | ARENT FOX SCHIFF LLP<br>350 S. Main St., Suite 210<br>Ann Arbor, MI 48104 | (734)-222-1500<br>Suzanne.wahl@afslaw.com |

[1] Represents Defendants AbbVie, Inc.; Allergan, Inc.; Allergan Sales, LLC; Allergan USA, Inc.; Forest Laboratories, Inc.; Forest Laboratories Holdings, Ltd.; Forest Laboratories, LLC; Forest Laboratories Ireland, LTD.; and Watson Pharmaceuticals Inc. (later known as Actavis, Inc.).
[2] Represents Defendants Watson Pharma, Inc. (n/k/a Actavis Pharma, Inc.); Watson Laboratories, Inc. (NV); Watson Laboratories, Inc. (DE) (n/k/a Actavis Laboratories UT, Inc.); Watson Laboratories, Inc. (NY) (later known as Actavis Laboratories NY, Inc.); Watson Laboratories, Inc. (CT); Teva Pharmaceuticals Industries Ltd.; and Teva Pharmaceutucials USA, Inc.
[3] Represents Defendant Torrent Pharma, Inc.
[4] Represents Defendants Indchemie Health Specialties Private Ltd.; Alkem Laboratories Ltd.; and Ascend Laboratories LLC.

| | | |
|---|---|---|
| Teresa T. Bonder[5] | ALSTON & BIRD, LLP<br>560 Mission Street, Ste. 2100<br>San Francisco, CA 94105 | (415)-243-1000<br>teresa.bonder@alston.com |
| Matthew D. Kent<br>Andrew Hatchett[5] | ALSTON & BIRD, LLP<br>1201 W. Peachtree Street<br>Atlanta, GA 30309 | (404)-881-7000<br>matthew.kent@alston.com<br>andrew.hatchett@alston.com |
| Natalie Christine Clayton[5] | ALSTON & BIRD, LLP<br>90 Park Avenue<br>New York, NY 10016 | (212)-210-9573<br>natalie.clayton@alston.com |
| Jonathan Janow[6] | BUCHANAN INGERSOLL<br>& ROONEY PC<br>1700 K Street, N.W., Suite 300<br>Washington, DC 20006-3807 | (202) 452-6057<br>jonathan.janow@bipc.com |
| Abigail F. Coster[6] | BUCHANAN INGERSOLL<br>& ROONEY PC<br>640 5th Avenue, 9th Floor<br>New York, NY 10019-6102 | (212) 440-4419<br>abigail.coster@bipc.com |
| Eileen M . Cole<br>John "Jay" Jurata, Jr. James<br>Tierney (pro hac vice)[7] | ORRICK, HERRINGTON<br>& SUTCLIFFE LLP<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, DC 20005-1706 | (202) 339 8400<br>eileen.cole@orrick.com<br>jjurata@orrick.com<br>jtierney@orrick.com |
| Tobias Snyder<br>Marc Lewis<br>Newton Oldfather[8] | LEWIS & LLEWELLYN<br>LLP<br>601 Montgomery Street,<br>Suite 2000 San Francisco,<br>CA 94111 | (415) 800-0590<br>tsnyder@lewisllewellyn.com<br>mlewis@lewisllewellyn.com<br>noldfather@lewisllewellyn.com |

---

[5] Represents Defendants Glenmark Generics, Inc., USA (n/k/a Glenmark Pharmaceuticals Inc.); Glenmark Generics Ltd.; and Glenmark Pharmaceuticals Ltd.
[6] Represents Defendants Hetero Labs Ltd.; Hetero Drugs Ltd.; and Hetero USA Inc.
[7] Represents Defendant ANI Pharmaceuticals, Inc.
[8] Represents Defendants Amerigen Pharmaceuticals Ltd. and Amerigen Pharmaceuticals Inc.

# ADDENDUM A

**1. Nature of the Action**

In this case, Plaintiffs allege that Defendant Forest, the manufacturer of the brand-name prescription drug Bystolic (nebivolol hydrochloride) paid the other Defendants, the first six generic manufacturers seeking to launch generic Bystolic, to induce them to delay the launch of generic Bystolic in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Such payments by brand pharmaceutical manufacturers to generic manufacturers to settle Hatch-Waxman patent litigation filed by the brand are commonly referred to as reverse payments. The Supreme Court established the legal framework for analyzing reverse payments under the antitrust laws in *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013). As the assignees of direct purchasers of brand and generic Bystolic, Plaintiffs seek to recover overcharges on purchases of brand and generic Bystolic caused by the delay of generic entry resulting from Forest's series of reverse payments.

**2. Result Below**

On January 24, 2022, the District Court issued an Opinion and Order granting Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' second amended complaint without prejudice and with leave to amend. The opinion asserted that Plaintiffs had not sufficiently alleged the elements of a reverse payment claim established by *Actavis*. Following Plaintiffs' amendment of their complaint, on February 21, 2023, the District Court granted Defendants' renewed motion to dismiss, again concluding that Plaintiffs had failed to adequately plead a reverse payment claim pursuant to *Actavis*. The Opinion and Order dismissing Plaintiffs' third amended complaint was with prejudice.

On March 20, 2023, Plaintiffs timely filed a Notice of Appeal.

## <u>ADDENDUM A (continued)</u>

**3.** <u>**Notice of Appeal and Lower Court Docket Sheet**</u>

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE BYSTOLIC ANTITRUST LITIGATION** | **Lead Case No. 1:20-cv-05735 (LJL)** |
| **This Document Relates To:** *CVS & Rite Aid* **(No. 1:20-cv-10087-LJL)** | |

## <u>NOTICE OF APPEAL</u>

Please take notice that Plaintiffs CVS Pharmacy, Inc., Rite Aid Corporation, and Rite Aid Hdqtrs. Corp. appeal to the United States Court of Appeals for the Second Circuit from the Opinion and Order filed in this case on February 21, 2023 dismissing Plaintiffs' Complaint with prejudice (Main Docket Nos. 438 and 439) and all orders subsumed therein.

Dated: March 20, 2023

Respectfully submitted,

*s/ Barry L. Refsin*
Barry L. Refsin
Alexander J. Egerváry
HANGLEY ARONCHICK SEGAL
  PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
brefsin@hangley.com
aegervary@hangley.com

Eric L. Bloom
HANGLEY ARONCHICK SEGAL
  PUDLIN & SCHILLER
2805 Old Post Road, Suite 100
Harrisburg, PA 17110
(717) 364-1030
ebloom@hangley.com

*Attorneys for Plaintiffs CVS Pharmacy, Inc.,*
*Rite Aid Corporation, and Rite Aid Hdqtrs.*
*Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I, Barry L. Refsin, certify that this 20th day of March, 2023, the foregoing Notice of Appeal was filed on the Court's CM/ECF System where it is available for viewing and downloading.

*s/ Barry L. Refsin*
Barry L. Refsin

APPEAL,ECF,LEAD,RELATED

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:20-cv-05735-LJL

In re Bystolic Antitrust Litigation                     Date Filed: 07/23/2020
Assigned to: Judge Lewis J. Liman                        Jury Demand: Plaintiff
Related Cases:  1:20-cv-05538-LJL                         Nature of Suit: 410 Anti-Trust
                1:20-cv-07110-LJL                         Jurisdiction: Federal Question
                1:20-cv-08754-LJL
                1:20-cv-09793-LJL
                1:20-cv-10087-LJL
Cause: 15:1 Antitrust Litigation (Monopolizing Trade)

**Debtor**

**Watson Laboratories, Inc. (DE)**          represented by   **Christopher T. Holding**
                                                             Goodwin Procter, LLP (Boston)
                                                             100 Northern Avenue
                                                             Boston, MA 02210
                                                             (617)-570-1000
                                                             Fax: (617)-523-1231
                                                             Email: cholding@goodwinlaw.com
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **John Mark Gidley**
                                                             White & Case LLP (DC)
                                                             701 Thirteenth Street, Nw
                                                             Washington, DC 20005
                                                             (202) 626-3609
                                                             Fax: (202) 639-9355
                                                             Email: mgidley@whitecase.com

**Plaintiff**

**J M Smith Corporation**                   represented by   **Dan Litvin**
*on behalf of itself and all others similarly              Garwin Gerstein & Fisher, L.L.P.
situated*                                                    1501 Broadway Suite 1416
*doing business as*                                          New York, NY 10036
Smith Drug Company                                           (212)-398-0055
                                                             Fax: 212 7646620
                                                             Email: dlitvin@garwingerstein.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Amanda Leah Hass**
                                                             Odom & Des Roches, LLC
                                                             Louisiana

650 Poydras St
Suite 2020
New Orleans
New Orleans, LA 70130
504-522-0077
Email: ahass@odrlaw.com
*ATTORNEY TO BE NOTICED*

**Andrew Kelly**
Odom & Des Roches, LLC
650 Poydras Street
Suite 2020
New Orleans, LA 70130
504-522-0077
Fax: 504-522-0078
Email: akelly@odrlaw.com
*ATTORNEY TO BE NOTICED*

**Bradley J. Demuth**
Nussbaum Law Group, P.C.
1211 Avenue of the Americas
New York, NY 10036
917-438-9102
Email: bdemuth@faruqilaw.com
*ATTORNEY TO BE NOTICED*

**Caitlin G. Coslett**
Berger & Montague PC (PA)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215)-875-3057
Fax: (215)-875-4620
Email: ccoslett@bm.net
*ATTORNEY TO BE NOTICED*

**Chris Letter**
Odom & Des Roches, LLC
650 Poydras Street
Suite 2020
New Orleans, LA 70130
504-522-0077
Fax: 504-522-0078
Email: cletter@odrlaw.com
*ATTORNEY TO BE NOTICED*

**Christopher Stow-Serge**
Odom & Des Roches, LLC
650 Poydras Street
Suite 2020
New Orleans, LA 70130
504-522-0077
Fax: 504-522-0078
Email: cstow@odrlaw.com
*ATTORNEY TO BE NOTICED*

**Dan Chiorean**
Odom & Des Roches, LLC
650 Poydras Street
Suite 2020
New Orleans, LA 70130
504-522-0077
Email: dchiorean@odrlaw.com
*ATTORNEY TO BE NOTICED*

**David Francis Sorensen**
Berger Montague PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
215-875-3000
Fax: 215-875-4604
Email: dsorensen@bm.net
*ATTORNEY TO BE NOTICED*

**Deborah A. Elman**
Garwin Gerstein & Fisher LLP
Garwin Gerstein & Fisher LLP
88 Pine Street, 10th Floor
New York, NY 10005
212-398-0055
Fax: 212-764-6620
Email: delman@garwingerstein.com
*ATTORNEY TO BE NOTICED*

**Erin R Leger**
Smith Segura Raphael & Leger, LLP
221 Ansley Blvd
Alexandria, LA 71303
318-445-4480
Email: eleger@ssrllp.com
*ATTORNEY TO BE NOTICED*

**Joseph Thomas Lukens**
Faruqi & Faruqi, LLP
1617 JFK Blvd., Ste. 1550
Philadelphia, PA 19103
(215)-277-5770
Fax: (215)-277-5771
Email: jlukens@faruqilaw.com
*ATTORNEY TO BE NOTICED*

**Joseph Opper**
Garwin Gerstein & Fisher LLP
Wall Street Plaza
88 Pine Street
Ste 10th Floor
New York, NY 10005
212-398-0055
Fax: 212-764-6620

Email: jopper@garwingerstein.com
*ATTORNEY TO BE NOTICED*

**Kimberly Marion Hennings**
Garwin Gerstein & Fisher LLP
88 Pine St
Ste 10th Floor
New York, NY 10005
212-398-0055
Fax: 212-764-6620
Email: khennings@garwingerstein.com
*ATTORNEY TO BE NOTICED*

**Kristyn Fields**
Faruqi & Faruqi, LLP (NYC)
685 Third Avenue, 26th Floor
New York, NY 10017
(212)-983-9330
Email: kfields@faruqilaw.com
*ATTORNEY TO BE NOTICED*

**Nicholas Urban**
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215)-875-5701
Fax: (215)-875-4604
Email: nurban@bm.net
*TERMINATED: 12/13/2021*
*ATTORNEY TO BE NOTICED*

**Peter Russell Kohn**
Faruqi & Faruqi, LLP
1617 JFK Blvd., Ste. 1550
Philadelphia, PA 19103
(215)-277-5770
Fax: (215)-277-5771
Email: pkohn@faruqilaw.com
*ATTORNEY TO BE NOTICED*

**Russell A. Chorush**
Heim Payne & Chorush, LLP
1111 Bagby Street, Suite 2100
Houston, TX 77002
(713)-221-2000
Email: rchorush@hpcllp.com
*ATTORNEY TO BE NOTICED*

**Stuart Edward Des Roches**
Odom & Des Roches, LLP
650 Poydras St.,Suite 2020
New Orleans, LA 70130
(504)-522-0077
Fax: (504)-522-0078

Email: stuart@odrlaw.com
*ATTORNEY TO BE NOTICED*

**Susan C. Segura**
Smith Segura Raphael & Leger, LLP
P.O. Box 12008
Alexandria, LA 71315
318-445-4480
Email: ssegura@ssrllp.com
*ATTORNEY TO BE NOTICED*

**Bruce E. Gerstein**
Garwin Gerstein & Fisher, L.L.P.
1501 Broadway Suite 1416
New York, NY 10036
(212)-398-0055
Fax: (212)-764-6620
Email: bgerstein@garwingerstein.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**KPH Healthcare Services, Inc.**
*individually and on behalf of all others*
*similarly situated also known as Kinney*
*Drugs, Inc*

represented by

**Dianne M. Nast**
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
Fax: (215) 923-9302
Email: dnast@nastlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kimberly Marion Hennings**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael L Roberts**
Roberts Law Firm
20 Rahling Circle
Little Rock, AR 72223
(501)-821-5575
Fax: (501)-821-4474
Email: aprilburton@robertslawfirm.us
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie Smith**
Roberts Law Firm, P.A.
20 Rahling Circle
Little Rock, AR 72223
501-821-5575
Fax: 501-821-4474
Email: stephaniesmith@robertslawfirm.us

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dan Litvin**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Mayor and City Council of Baltimore**          represented by **Archana Tamoshunas**
Taus, Cebulash & Landau, LLP
123 William Street
Suite 1900a
New York, NY 10038
646-873-7651
Email: atamoshunas@tcllaw.com
*ATTORNEY TO BE NOTICED*

**Donna M. Evans**
Cohen Milstein Sellers & Toll PLLC
88 Pine Street
14th Floor
New York, NY 10005
(212)-838-7797
Email: devans@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Jessica B. Weiner**
Cohen Milstein Sellers & Toll
1100 New York Ave., Nw, Ste. 500
Washington, DC 20005
202-408-4600
Fax: 202-408-4699
Email: jweiner@cohenmilstein.com
*TERMINATED: 02/24/2022*
*ATTORNEY TO BE NOTICED*

**Robert Abraham Braun**
Cohen Milstein Sellers & Toll, PLLC
Suite 500
1100 New York Ave., NW
Suite 500
Washington, DC 20005
202-408-3697
Email: rbraun@cohenmilstein.com
*ATTORNEY TO BE NOTICED*

**Sharon Kunjumon Robertson**
Cohen Milstein Sellers & Toll PLLC
88 Pine Street
14th Floor
New York, NY 10005
(212) 838-7797 x758-3042
Fax: (212) 838-7745
Email: srobertson@cohenmilstein.com

*ATTORNEY TO BE NOTICED*

**Robin Ann Van Der Meulen**
DiCello Levitt LLC
485 Lexington Avenue
Tenth Floor
New York, NY 10017
646-933-1000
Fax: 646-494-9648
Email: rvandermeulen@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**UFCW Local 1500 Welfare Fund**     represented by **Gregory Scott Asciolla**
DiCello Levitt LLC
485 Lexington Avenue
Tenth Floor
New York, NY 10017
646-933-1000
Fax: 646-494-9648
Email: gasciolla@dicellolevitt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robin Ann Van Der Meulen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Joseph Perez**
DiCello Levitt LLC
485 Lexington Avenue
Tenth Floor
New York, NY 10017
646-933-1000
Fax: 646-494-9648
Email: mperez@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

**Veronica Bosco**
DiCello Levitt LLC
485 Lexington Avenue
Tenth Floor
New York, NY 10017
646-933-1000
Fax: 646-494-9648
Email: vbosco@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

**Sharon Kunjumon Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Teamsters Western Region & Local 177 Health Care Plan**

represented by **Robin Ann Van Der Meulen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Kunjumon Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund**

represented by **Robin Ann Van Der Meulen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Kunjumon Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Law Enforcement Health Benefits, Inc.**

represented by **Robin Ann Van Der Meulen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Kunjumon Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Teamsters Local No. 1150 Prescription Drug Benefit Plan**

represented by **Robin Ann Van Der Meulen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Kunjumon Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund**

represented by **Brian D Brooks**
Glancy Prongay & Murray LLP
230 Park Avenue, Suite 358
New York, NY 10169
212-682-5340
Fax: 212-884-0988
Email: bbrooks@glancylaw.com
*ATTORNEY TO BE NOTICED*

**Robin Ann Van Der Meulen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Kunjumon Robertson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALBERTSONS COMPANIES, INC.**　　　　represented by **Scott Eliot Perwin**
Kenny Nachwalter, P.A
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-1000
Fax: (305)-372-1861
Email: sperwin@kennynachwalter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**H-E-B L.P.**　　　　represented by **Scott Eliot Perwin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**The Kroger Co.**　　　　represented by **Scott Eliot Perwin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Walgreen Co.**　　　　represented by **Scott Eliot Perwin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CVS Pharmacy, Inc.**　　　　represented by **Alexander John Egervary**
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, PA 19103
(212)-568-6200
Fax: (212)-568-0300
Email: aegervary@hangley.com
*ATTORNEY TO BE NOTICED*

**Barry L. Refsin**
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square
Ste 27th Floor
Philadelphia, PA 19103
215-568-6200
Email: brefsin@hangley.com
*ATTORNEY TO BE NOTICED*

**Caitlin McHugh**
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square
Ste 27th Floor

Philadelphia, PA 19103
215-496-7051
Email: cmchugh@hangley.com
*ATTORNEY TO BE NOTICED*

**Chelsea Nichols**
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square
Ste 27th Floor
Philadelphia, PA 19103
215-496-7047
Email: cnichols@hangley.com
*ATTORNEY TO BE NOTICED*

**Eric L Bloom**
Hangley Aronchick Segal Pudlin & Schiller
2805 Old Post Road
Suite 100
Harrisburg, PA 17110
717-364-1030
Email: ebloom@hangley.com
*ATTORNEY TO BE NOTICED*

**Monica L Kiley**
Hangley Aronchick Segal Pudlin & Schiller
2805 Old Post Road
Suite 100
Harrisburg, PA 17110
717-364-1007
Email: mkiley@hangley.com
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

| | | |
|---|---|---|
| **Rite Aid Corporation** | represented by | **Alexander John Egervary**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Barry L. Refsin**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Caitlin McHugh**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Chelsea Nichols**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Eric L Bloom**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Monica L Kiley** |

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rite Aid Hdqtrs. Corp.,**   represented by   **Alexander John Egervary**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Barry L. Refsin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Caitlin McHugh**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Chelsea Nichols**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric L Bloom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Monica L Kiley**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Forest Laboratories Inc.**   represented by   **Eric Grannon**
White & Case LLP
Washington Office
701 13th Street, NW
Washington, DC 20005
202-626-3600
Email: egrannon@whitecase.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
Allen & Overy LLP
1101 New York Avenue, NW
Washington, DC 20005
202-683-3847
Email: noah.brumfield@allenovery.com
*TERMINATED: 01/12/2022*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
White & Case LLP
701 Thirteenth Street, NW
Washington DC, DC 20005-3807
212-819-7907
Email: pcarney@whitecase.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
White & Case
701 Thirteenth Street, NW
Washington, DC 20005
202-626-3667
Email: adam.acosta@whitecase.com
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
White & Case LLP
701 13th Street, NW
Washington, DC 20005
202-637-6167
Email: cmclaughlin@whitecase.com
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
White & Case LLP
75 State Street
Boston, MA 02109
617-979-9329
Email: kelly.newman@whitecase.com
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
White & Case
701 Thirteenth Street, NW
Washington, DC 20005
202-729-2424
Email: hletourneau@whitecase.com
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Forest Laboratories Ireland, LTD**

represented by **John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Peter J. Carney
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Forest Laboratories Holdings Ltd.**          represented by **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Forest Laboratories, LLC**          represented by **John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Allergan Sales LLC**                represented by    **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

Allergan, Inc.                                    represented by **John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

Allergan USA, Inc.                            represented by **John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

Abbvie, Inc.                                       represented by **John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Watson Pharma, Inc.**                          represented by  **Christopher T. Holding**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Donald Carroll**
Goodwin Procter, LLP (Boston)
100 Northern Avenue
Boston, MA 02210
(617)-570-1753
Fax: (617)-523-1231
Email: rcarroll@goodwinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah K. Frederick**
Goodwin Procter, LLP (Boston)
100 Northern Avenue
Boston, MA 02210
(617)-570-1845
Fax: (617)-523-1231
Email: sfrederick@goodwinlaw.com
*TERMINATED: 09/14/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian Timothy Burgess**
Goodwin Procter LLP
1900 N St NW
Washington, DC 20036
202-346-4000
Email: BBurgess@goodwinlaw.com
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

<u>**Defendant**</u>

**Watson Laboratories, Inc. (NY)**              represented by  **Robert Donald Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Timothy Burgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

<u>**Defendant**</u>

**Watson Laboratories, Inc. (CT)**  represented by  **Christopher T. Holding**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Donald Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah K. Frederick**
(See above for address)
*TERMINATED: 09/14/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian Timothy Burgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**Watson Pharmaceuticals Inc.**  represented by  **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Donald Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Actavis, Inc.**                     represented by   **John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Donald Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Teva Pharmaceutical Industries Ltd.**    represented by   **Christopher T. Holding**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Donald Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah K. Frederick**
(See above for address)
*TERMINATED: 09/14/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian Timothy Burgess**

(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**Teva Pharmaceuticals USA, Inc.**                represented by **Christopher T. Holding**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Donald Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah K. Frederick**
(See above for address)
*TERMINATED: 09/14/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian Timothy Burgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**Torrent Pharmaceuticals Ltd.**                represented by **Devora Whitman Allon**
Kirkland & Ellis LLP (NYC)
601 Lexington Avenue
New York, NY 10022
(212)-446-5967
Fax: (212)-446-6460
Email: devora.allon@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jay Philip Lefkowitz**
Kirkland & Ellis LLP (NYC)
601 Lexington Avenue
New York, NY 10022
(212)-446-4970
Fax: (212)-446-4900
Email: lefkowitz@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gilad Bendheim**

Kirkland & Ellis LLP (NYC)
601 Lexington Avenue
New York, NY 10022
212-446-4800
Email: gilad.bendheim@kirkland.com
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**Torrent Pharma Inc.**                          represented by   **Devora Whitman Allon**
                                                                   (See above for address)
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Gilad Bendheim**
                                                                   (See above for address)
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **Jay Philip Lefkowitz**
                                                                   (See above for address)
                                                                   *LEAD ATTORNEY*
                                                                   *ATTORNEY TO BE NOTICED*

                                                                   **John Mark Gidley**
                                                                   (See above for address)

**Defendant**

**Amerigen Pharmaceuticals Ltd.**               represented by   **John Mark Gidley**
                                                                   (See above for address)

                                                                   **Tobias George Snyder**
                                                                   Lewis & Llewellyn LLP
                                                                   601 Montgomery Street
                                                                   Suite 2000
                                                                   San Francisco, CA 94111
                                                                   707-479-3354
                                                                   Fax: 415-390-2127
                                                                   Email: tsnyder@lewisllewellyn.com
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Amerigen Pharmaceuticals Inc.**               represented by   **John Mark Gidley**
                                                                   (See above for address)

                                                                   **Tobias George Snyder**
                                                                   (See above for address)
                                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Glenmark Generics Inc., USA**  represented by **David Andrew Hatchett**
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309
404-881-7000
Email: andrew.hatchett@alston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew David Kent**
Alston & Bird
1201 W. Peachtree Street
Atlanta, GA 30309
404-881-7948
Email: matthew.kent@alston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie Christine Clayton**
Alston & Bird, LLP (NYC)
90 Park Avenue
New York, NY 10016
(212)-210-9573
Fax: (212)-922-3845
Email: natalie.clayton@alston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Teresa T. Bonder**
Alston & Bird LLP
560 Mission Street
Suite 2100
San Francisco, CA 94105
415-243-1010
Email: teresa.bonder@alston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**Glenmark Generics Ltd.**  represented by **David Andrew Hatchett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew David Kent**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie Christine Clayton**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Teresa T. Bonder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

Glenmark Pharmaceuticals S.A.          represented by **Teresa T. Bonder**
(See above for address)
*LEAD ATTORNEY*

**John Mark Gidley**
(See above for address)

**Defendant**

Hetero Labs Ltd          represented by **Jonathan Daniel Janow**
Buchanan Ingersoll & Rooney PC
1700 K Street N.W., Suite 300
Washington, DC 20006-3807
202-452-6057
Fax: 202-452-7989
Email: jonathan.janow@bipc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abigail Flynn Coster**
Grant & Eisenhofer P.A.
485 Lexington Ave.
Ste 29th Floor
New York, NY 10017
646-722-8506
Email: acoster@gelaw.com
*ATTORNEY TO BE NOTICED*

**Janet Beth Linn**
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
212-216-8000
Fax: 212-216-8001
Email: jlinn@tarterkrinsky.com
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Richard Carl Schoenstein**
Tarter Krinsky & Drogin LLP
1350 Broadway

New York, NY 10018
212-216-8000
Fax: 212-216-8001
Email: rschoenstein@tarterkrinsky.com
*ATTORNEY TO BE NOTICED*

**Travis Roher**
45 Bluebird Dr.
Roslyn Heights
New York, NY 11577
516-287-5311
Email: travisroher@gmail.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hetero Drugs LTD.**                represented by **Jonathan Daniel Janow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abigail Flynn Coster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Janet Beth Linn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Richard Carl Schoenstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Travis Roher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hetero USA Inc.**                represented by **Jonathan Daniel Janow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abigail Flynn Coster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Janet Beth Linn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**

(See above for address)

**Richard Carl Schoenstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Travis Roher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Indchemie Health Specialties Private Ltd.**  represented by  **Ahmed M.T. Riaz**
ArentFox Schiff
1185 6th Ave.
Ste 3000
New York, NY 10036
212-753-5000
Fax: 212-753-5044
Email: ahmed.riaz@afs.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Suzanne L. Wahl**
ArentFox Schiff LLP
350 S. Main Street
Suite 210
Ann Arbor, MI 48104
734-222-1517
Fax: 734-222-1501
Email: Suzanne.Wahl@afslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**Alkem Laboratories Ltd.**  represented by  **Ahmed M.T. Riaz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Suzanne L. Wahl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**Ascend Laboratories, LLC**  represented by  **Ahmed M.T. Riaz**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Suzanne L. Wahl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

<u>**Defendant**</u>

**AbbVie Inc.**                    represented by **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Allergan, Inc.**                    represented by **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Allergan Sales, LLC**            represented by   **John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Allergan USA, Inc.**            represented by   **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Forest Laboratories, Inc.**                represented by **Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Forest Laboratories Holdings, Ltd.**       represented by **John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Forest Laboratories Ireland, Ltd.**                    represented by   **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Carney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M Acosta**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Kelly Newman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Holly Letourneau**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Forest Laboratories, LLC**                    represented by   **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah Brumfield**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Glenmark Generics Inc.**

**Defendant**

**Watson Laboratories, Inc. (NV)**      represented by   **Christopher T. Holding**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Donald Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah K. Frederick**
(See above for address)
*TERMINATED: 09/14/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian Timothy Burgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**Watson Laboratories, Inc. (DE)**      represented by   **Robert Donald Carroll**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah K. Frederick**
(See above for address)
*TERMINATED: 09/14/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian Timothy Burgess**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**Defendant**

**ANI Pharmaceuticals, Inc.**      represented by   **Elyse D. Echtman**
Steptoe & Johnson LLP
1114 Ave of the Americas
New York, NY 10036
212-378-7551
Email: eechtman@Steptoe.com

*TERMINATED: 02/10/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allen Robert Davis**
Orrick, Herrington & Sutcliffe, LLP
1152 15th St NW
Washington, DC 20005
202-339-8612
Email: allen.davis@orrick.com
*ATTORNEY TO BE NOTICED*

**Eileen Marie Cole**
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington DC, DC 20005
202-339-8460
Fax: 202-339-5800
Email: eileen.cole@orrick.com
*ATTORNEY TO BE NOTICED*

**James Tierney**
Orrick, Herrington & Sutcliffe LLP
1152 15th Street NW
Washington, DC 20005
202-339-8400
Email: jtierney@orrick.com
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)

**John A. Jurata**
Dechert LLP
1900 K. Street, N.W.
Washington, DC 20006
202-261-3440
Email: jay.jurata@dechert.com
*TERMINATED: 03/10/2023*
*ATTORNEY TO BE NOTICED*

**Defendant**

Actavis Inc.

represented by **Eric Grannon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Celia Anne McLaughlin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Mark Gidley**
(See above for address)
*ATTORNEY TO BE NOTICED*

Noah Brumfield
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Glenmark Pharmaceuticals Ltd.**          represented by **Teresa T. Bonder**
(See above for address)
*LEAD ATTORNEY*

**John Mark Gidley**
(See above for address)

**Amicus**

**New Civil Liberties Alliance**          represented by **Margaret A Little**
New Civil Liberties Alliance
1225 19th St. NW
Suite 450
Washington, DC 20036
202-869-5210
Fax: 202-869-5238
Email: peggy.little@ncla.legal
*ATTORNEY TO BE NOTICED*

**Amicus**

**International Center for Law &**          represented by **Margaret A Little**
**Economics**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/23/2020 | 1 | COMPLAINT against Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC. (Filing Fee $ 400.00, Receipt Number ANYSDC-20819408)Document filed by J M Smith Corporation..(Gerstein, Bruce) (Entered: 07/23/2020) |
| 07/23/2020 | 2 | CIVIL COVER SHEET filed..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | 3 | STATEMENT OF RELATEDNESS re: that this action be filed as related to 1:20-cv-05538. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | 4 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | 5 | NOTICE OF APPEARANCE by Dan Litvin on behalf of J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to AbbVie,Inc., re: 1 Complaint,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to Allergan USA, Inc, re: 1 Complaint,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | 8 | REQUEST FOR ISSUANCE OF SUMMONS as to Allergan, Inc., re: 1 Complaint,. |

| | | Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
|---|---|---|
| 07/23/2020 | [9](#) | REQUEST FOR ISSUANCE OF SUMMONS as to Forest Laboratories Holdings, Ltd, re: [1](#) Complaint,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | [10](#) | REQUEST FOR ISSUANCE OF SUMMONS as to Forest Laboratories Ireland, Ltd., re: [1](#) Complaint,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | [11](#) | REQUEST FOR ISSUANCE OF SUMMONS as to Forest Laboratories, Inc.,, re: [1](#) Complaint,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/23/2020 | [12](#) | **FILING ERROR - SUMMONS REQUEST As To AND PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to Allergan Sales, Inc., re: [1](#) Complaint,. Document filed by J M Smith Corporation..(Litvin, Dan) Modified on 7/24/2020 (jgo). (Entered: 07/23/2020) |
| 07/23/2020 | [13](#) | REQUEST FOR ISSUANCE OF SUMMONS as to Forest Laboratories, LLC, re: [1](#) Complaint,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/23/2020) |
| 07/24/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Bruce E. Gerstein. The party information for the following party/parties has been modified: J M Smith Corporation. The information for the party/parties has been modified for the following reason/reasons: party text was omitted;. (jgo)** (Entered: 07/24/2020) |
| 07/24/2020 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Unassigned. .(jgo) (Entered: 07/24/2020) |
| 07/24/2020 | | Case Designated ECF. (jgo) (Entered: 07/24/2020) |
| 07/24/2020 | | CASE REFERRED TO Judge Lewis J. Liman as possibly related to 20-cv-5538. (jgo) (Entered: 07/24/2020) |
| 07/24/2020 | [14](#) | ELECTRONIC SUMMONS ISSUED as to Abbvie, Inc...(jgo) (Entered: 07/24/2020) |
| 07/24/2020 | [15](#) | ELECTRONIC SUMMONS ISSUED as to Allergan USA, Inc...(jgo) (Entered: 07/24/2020) |
| 07/24/2020 | [16](#) | ELECTRONIC SUMMONS ISSUED as to Allergan, Inc...(jgo) (Entered: 07/24/2020) |
| 07/24/2020 | [17](#) | ELECTRONIC SUMMONS ISSUED as to Forest Laboratories Holdings Ltd...(jgo) (Entered: 07/24/2020) |
| 07/24/2020 | [18](#) | ELECTRONIC SUMMONS ISSUED as to Forest Laboratories Inc...(jgo) (Entered: 07/24/2020) |
| 07/24/2020 | [19](#) | ELECTRONIC SUMMONS ISSUED as to Forest Laboratories Ireland, LTD..(jgo) (Entered: 07/24/2020) |
| 07/24/2020 | [20](#) | ELECTRONIC SUMMONS ISSUED as to Forest Laboratories, LLC..(jgo) (Entered: 07/24/2020) |
| 07/24/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Bruce E. Gerstein to RE-FILE Document No. [12](#) Request for Issuance of Summons,. The filing is deficient for the following reason(s): party name on the 'as to' docket entry text and the PDF 'To' section does not exactly match as it appears on the pleading caption;. Re-file the** |

| | | |
|---|---|---|
| | | **document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (jgo)** (Entered: 07/24/2020) |
| 07/24/2020 | 21 | REQUEST FOR ISSUANCE OF SUMMONS as to Allergan Sales, LLC, re: 1 Complaint,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/24/2020) |
| 07/24/2020 | | CASE ACCEPTED AS RELATED. Create association to 1:20-cv-05538-LJL. Notice of Assignment to follow. (wb) (Entered: 07/24/2020) |
| 07/24/2020 | | NOTICE OF CASE REASSIGNMENT to Judge Lewis J. Liman. Judge Unassigned is no longer assigned to the case..(wb) (Entered: 07/24/2020) |
| 07/24/2020 | | Magistrate Judge Gabriel W. Gorenstein is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (wb) (Entered: 07/24/2020) |
| 07/27/2020 | 22 | ELECTRONIC SUMMONS ISSUED as to Allergan Sales LLC..(dnh) (Entered: 07/27/2020) |
| 07/29/2020 | 23 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Forest Laboratories, LLC served on 7/28/2020, answer due 8/18/2020. Service was accepted by Robin Hutt-Banks, Agent. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/29/2020) |
| 07/29/2020 | 24 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Forest Laboratories Inc. served on 7/28/2020, answer due 8/18/2020. Service was accepted by Corporation Service Company Dropbox ("CSC") per CSC's COVID-19 Protocol. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/29/2020) |
| 07/29/2020 | 25 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Allergan USA, Inc. served on 7/28/2020, answer due 8/18/2020. Service was accepted by Julio Quinones, Security/Authorized Agent. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/29/2020) |
| 07/29/2020 | 26 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Allergan Sales LLC served on 7/28/2020, answer due 8/18/2020. Service was accepted by Julio Quinones, Security/Authorized Agent. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/29/2020) |
| 07/29/2020 | 27 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Allergan, Inc. served on 7/28/2020, answer due 8/18/2020. Service was accepted by Robin Hutt-Banks, Agent. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/29/2020) |
| 07/29/2020 | 28 | AFFIDAVIT OF SERVICE of Summons and Complaint,. Abbvie, Inc. served on 7/28/2020, answer due 8/18/2020. Service was accepted by Phyllis Mascio. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 07/29/2020) |
| 07/29/2020 | 29 | MOTION for Peter Kohn to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-20909100. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Peter Kohn in Support of Plaintiff's Motion for Mr. Kohn's Admission Pro Hac Vice, # 2 Certificate of Good Standing from the Supreme Court of Pennsylvania, # 3 Text of Proposed Order).(Kohn, Peter) (Entered: 07/29/2020) |
| 07/29/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 29 MOTION for Peter Kohn to Appear Pro Hac Vice . Filing fee $ 200.00, receipt** |

| | | |
|---|---|---|
| | | number ANYSDC-20909100. **Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 07/29/2020) |
| 07/29/2020 | [30](#) | MOTION for Joseph T. Lukens to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-20909478. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # [1](#) Declaration of Joseph T. Lukens in Support of Plaintiff's Motion for Mr. Lukens' Admission Pro Hac Vice, # [2](#) Certificate of Good Standing from the Supreme Court of Pennsylvania, # [3](#) Text of Proposed Order).(Lukens, Joseph) (Entered: 07/29/2020) |
| 07/29/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. [30](#) MOTION for Joseph T. Lukens to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-20909478. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 07/29/2020) |
| 08/05/2020 | [31](#) | CLERK CERTIFICATE OF MAILING of one copy of the the Summons (ECF No. 19); Complaint (ECF No. 1); Civil Cover Sheet (ECF No. 2); and Related Case Statement (ECF No. 3), mailed to Forest Laboratories Ireland, Ltd Clonshaugh Industrial Estate Dublin 17 Ireland on 8/4/2020 by Federal Express tracking # 7711 4143 8926, to the individual of the foreign state. (smc) (Entered: 08/05/2020) |
| 08/05/2020 | [32](#) | CLERK CERTIFICATE OF MAILING of one copy of the Summons (ECF No. 19); Complaint (ECF No. 1); Civil Cover Sheet (ECF No. 2); and Related Case Statement (ECF No. 3) mailed to Forest Laboratories Holdings, Ltd 18 Parliament Street Hamilton HM-11 Bermuda on 8/4/2020 by Federal Express tracking # 7711 4140 2590, to the individual of the foreign state, pursuant to the provisions of FRCP 4(f)2(c)(ii). (smc) (Entered: 08/05/2020) |
| 08/12/2020 | [33](#) | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Andrew Kelly to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21122016. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # [1](#) Affidavit of Andrew Kelly, # [2](#) Text of Proposed Order Order for Admission).(Kelly, Andrew) Modified on 8/12/2020 (vba). (Entered: 08/12/2020) |
| 08/12/2020 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. [33](#) MOTION for Andrew Kelly to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21122016. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from SUPREME COURT OF LOUISIANA; AFFIDAVIT NOT NOTARIZED;. Re-file the motion as a Corrected Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (vba)** (Entered: 08/12/2020) |
| 08/12/2020 | [34](#) | **FILING ERRROR - DEFICIENT DOCKET ENTRY -** MOTION for Christopher Stow-Serge to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21122489. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # [1](#) Affidavit of Christopher Stow-Serge, # [2](#) Order for Admission).(Stow-Serge, Christopher) Modified on 8/12/2020 (vba). (Entered: 08/12/2020) |
| 08/12/2020 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. [34](#) MOTION for Christopher Stow-Serge to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21122489.** |

| | | **Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from SUPREME COURT OF LOUISIANA; AFFIDAVIT NOT NOTARIZED;. Re-file the motion as a Corrected Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (vba)** (Entered: 08/12/2020) |
|---|---|---|
| 08/12/2020 | [35](#) | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for Chris Letter to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21123498. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # [1](#) Affidavit of Chris Letter, # [2](#) Text of Proposed Order Order for Admission).(Letter, Chris) Modified on 8/12/2020 (vba). (Entered: 08/12/2020) |
| 08/12/2020 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. [35](#) MOTION for Chris Letter to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21123498. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from SUPREME COURT OF LOUISIANA; AFFIDAVIT NOT NOTARIZED;. Re-file the motion as a Corrected Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (vba)** (Entered: 08/12/2020) |
| 08/12/2020 | [36](#) | NOTICE OF APPEARANCE by John Mark Gidley on behalf of Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC..(Gidley, John) (Entered: 08/12/2020) |
| 08/12/2020 | [37](#) | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent AbbVie Inc. for Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC. Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC..(Gidley, John) (Entered: 08/12/2020) |
| 08/12/2020 | [38](#) | LETTER MOTION for Extension of Time *to File Responsive Pleadings* addressed to Judge Lewis J. Liman from J. Mark Gidley dated August 12, 2020. Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC..(Gidley, John) (Entered: 08/12/2020) |
| 08/17/2020 | [39](#) | ORDER: IT IS HEREBY ORDERED that any party objecting to consolidation shall file a letter on ECF, not to exceed two pages, by August 24, 2020. IT IS FURTHER ORDERED that counsel for all parties appear for an Initial Pretrial Conference by TELEPHONE on September 16, 2020, at 11:00 a.m. Parties are directed to dial into the Court's teleconference number at 888-251-2909, Access Code 2123101, and follow the necessary prompts. Initial Conference set for 9/16/2020 at 11:00 AM before Judge Lewis J. Liman. (Signed by Judge Lewis J. Liman on 8/17/2020) (va) (Entered: 08/17/2020) |
| 08/20/2020 | [40](#) | LETTER addressed to Judge Lewis J. Liman from J. Mark Gidley dated August 20, 2020 re: Confirmation that all Defendants intend to file a timely motion to dismiss in response to the complaint. Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest |

| | | |
|---|---|---|
| | | Laboratories Ireland, LTD, Forest Laboratories, LLC..(Gidley, John) (Entered: 08/20/2020) |
| 08/24/2020 | 41 | LETTER addressed to Judge Lewis J. Liman from Bruce E. Gerstein dated August 24, 2020 re: Objection to Consolidation of Direct Purchaser Cases with End Payor Cases. Document filed by J M Smith Corporation..(Gerstein, Bruce) (Entered: 08/24/2020) |
| 09/01/2020 | 42 | MOTION for Peter J. Carney to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21435540. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC. (Attachments: # 1 Affidavit, # 2 DC - Certificate of Good Standing, # 3 VA - Certificate of Good Standing, # 4 Text of Proposed Order).(Carney, Peter) (Entered: 09/01/2020) |
| 09/02/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 42 MOTION for Peter J. Carney to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21435540. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 09/02/2020) |
| 09/02/2020 | 43 | LETTER addressed to Judge Lewis J. Liman from Bruce E. Gerstein dated September 2, 2020 re: Complaint Against Generic Manufacturers. Document filed by J M Smith Corporation. (Attachments: # 1 Exhibit Exhibit A - Complaint).(Gerstein, Bruce) (Entered: 09/02/2020) |
| 09/04/2020 | 44 | ORDER: The Court is in receipt of motions by certain plaintiffs in these related actions informing the Court that those plaintiffs intend to seek the appointment of Interim Lead or Co-Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3) and The Manual for Complex Litigation (Fourth Edition) ("Manual") § 10.22. The Court agrees that it is more sensible to delay preparation of a case management plan and the Initial Pretrial Conference until after a decision on a motion to appoint lead counsel. Accordingly, the Initial Pretrial Conference currently scheduled for September 16, 2020 is ADJOURNED pending further order of the Court, and the parties are relieved, temporarily, of the obligation to prepare a proposed case management plan and scheduling order. IT IS FURTHER ORDERED that the End-Payor Plaintiffs shall submit leadership applications by September 9, 2020. Each applicant shall submit a single-spaced letter, not exceeding five pages, with no more than one attachment consisting of a firm or individual applicant resume. No opposition or reply to any application is permitted without permission of the Court. An initial pretrial conference will be scheduled upon a decision on the leadership applications. SO ORDERED. (Signed by Judge Lewis J. Liman on 9/4/2020) (va) (Entered: 09/04/2020) |
| 09/09/2020 | 45 | LETTER addressed to Judge Lewis J. Liman from Bruce E. Gerstein dated September 9, 2020 re: Application for co-lead counsel in the direct purchaser actions. Document filed by J M Smith Corporation. (Attachments: # 1 Exhibit A - Text of Proposed Order, # 2 Exhibit B - Firm Resumes, # 3 Exhibit C - Transcript - In re Loestrin 24 Fe).(Gerstein, Bruce) (Entered: 09/09/2020) |
| 09/14/2020 | 46 | NOTICE OF APPEARANCE by Joseph Opper on behalf of J M Smith Corporation.. (Opper, Joseph) (Entered: 09/14/2020) |
| 09/21/2020 | 47 | MOTION for David F. Sorensen to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21756267. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of David F. Sorensen in Support of Plaintiff's Motion for Mr. Sorensen's |

| | | |
|---|---|---|
| | | Admission Pro Hac Vice, # 2 Certificate of Good Standing from the Supreme Court of Pennsylvania, # 3 Text of Proposed Order).(Sorensen, David) (Entered: 09/21/2020) |
| 09/21/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 47 MOTION for David F. Sorensen to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-21756267. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 09/21/2020) |
| 09/29/2020 | 48 | MOTION for Caitlin G. Coslett to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number BNYSDC-21898089. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Caitlin G. Coslett in Support of Plaintiff's Motion for Ms. Coslett's Admission Pro Hac Vice, # 2 Certificate of Good Standing from the Supreme Court of Pennsylvania, # 3 Certificate of Good Standing from the Supreme Court of New Jersey, # 4 Text of Proposed Order).(Coslett, Caitlin) (Entered: 09/29/2020) |
| 09/29/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 48 MOTION for Caitlin G. Coslett to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number BNYSDC-21898089. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 09/29/2020) |
| 10/12/2020 | 49 | LETTER addressed to Judge Lewis J. Liman from Dan Litvin dated October 12, 2020 re: Corrected [Proposed] Order Appointing Interim Lead Counsel and an Executive Committee. Document filed by J M Smith Corporation. (Attachments: # 1 Text of Proposed Order Exhibit A - CORRECTED [PROPOSED] ORDER APPOINTING INTERIM LEAD COUNSEL AND AN EXECUTIVE COMMITTEE).(Litvin, Dan) (Entered: 10/12/2020) |
| 10/13/2020 | 50 | OPINION & ORDER re: (35 in 1:20-cv-05826-LJL) LETTER MOTION for Extension of Time to File *Case Management Plan and Scheduling Order and Request for Guidance re: End-Payor Plaintiffs' Leadership Applications* addressed to Judge Lewis J. Liman from Sharon Robertson dated September 3, 2 filed by Mayor and City Council of Baltimore. For the foregoing reasons, it is hereby: ORDERED that the motion to appoint Sharon K. Robertson of Cohen Milstein and Robin van der Muelen of Labaton Sucharow as Interim Co-Lead Counsel for the putative class is GRANTED. Cohen Milstein and Labaton Sucharow will be responsible for the overall conduct of the litigation on behalf of the putative class of End-Payor Plaintiffs, including providing supervision of all class Plaintiffs' counsel in this litigation. As Interim Co-Lead Class Counsel, Cohen Milstein and Labaton Sucharow have the authority to: (As further set forth herein this Order.) It is further ORDERED that the motions by other counsel for appointment as interim class counsel for the putative End-Payor class are DENIED. It is further ORDERED that the motion to appoint interim class counsel for the putative Direct Purchaser class is DENIED. It is further ORDERED that Interim Co-Lead Class Counsel may not delegate responsibility or assign legal work to other law firms without the prior approval of the Court. No firm to which to which Interim Co-Lead Counsel delegates responsibility, when delegating with the approval of the Court, may further sub-delegate the work without the prior approval of interim co-lead counsel and the Court. It is further ORDERED that an Initial Pretrial Conference will be held on October 26, 2020 at 10:00 a.m. by TELEPHONE CONFERENCE. At that date and time, the parties are directed to dial the Court's conference line at 888-251-2909 (access code: 2123101). It is further ORDERED that, by October 22, 2020 at 5:00 p.m., interim class counsel for the End-Payor Actions and Defendants thereto, and counsel for the named plaintiff in the Direct Purchaser Actions and Defendants thereto, shall jointly file a single Case Management Plan and Scheduling Order which shall be filed in each of the Direct Purchaser Actions |

| | | |
|---|---|---|
| | | and in the consolidated End-Payor Action, No. 20-cv-5538, and shaLL include the following: (1) a uniform and identical date by which will be filed any amended complaint in the Direct Purchaser Actions and the consolidated amended complaint in the End-Payor Actions; (2) a uniform and identical date by which responsive papers will be due in both the Direct Purchaser and End-Payor Actions; (3) a uniform and identical briefing schedule for any motions to dismiss filed in either the Direct Purchaser or End-Payor Actions; (4) a uniform and identical schedule for discovery and post-discovery conferences and motions that will govern the Direct Purchaser and End-Payor Actions. All deadlines for filing responsive papers are adjourned pending further order of the Court. It is further ORDERED that by October 22, 2020 at 5:00 p.m., counsel in the Direct Purchaser Actions shall file a letter with the Court stating whether the two Direct Purchaser Actions should be consolidated. It is further ORDERED that the End-Payor Actions be consolidated; the Clerk of Court is respectfully directed to consolidate the following cases under No. 20-cv-5538: No. 20-cv-7580; No. 20-cv-7352; No. 20-cv-5837; No. 20-cv-5813; No. 20-cv-7492; No. 20-cv-5826; No. 20-cv-7309; No. 20-cv-5901; No. 20-cv-6769; No. 20-cv-7177; No. 20-cv-6647; No. 20-cv-7296; No. 20-cv-7304. SO ORDERED. (Signed by Judge Lewis J. Liman on 10/13/2020) (va) (Entered: 10/13/2020) |
| 10/13/2020 | | Set/Reset Hearings: Initial Conference set for 10/26/2020 at 10:00 AM before Judge Lewis J. Liman. (va) (Entered: 10/13/2020) |
| 10/19/2020 | 51 | MOTION for Andrew W. Kelly to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Andrew Kelly, # 2 Exhibit Certificate of Good Standing for Andrew Kelly, # 3 Text of Proposed Order).(Kelly, Andrew) (Entered: 10/19/2020) |
| 10/19/2020 | 52 | MOTION for Christopher T. Stow-Serge to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Christopher Stow-Serge, # 2 Exhibit Certificate of Good Standing for Christopher Stow-Serge, # 3 Text of Proposed Order). (Stow-Serge, Christopher) (Entered: 10/19/2020) |
| 10/19/2020 | 53 | MOTION for Chris Letter to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Chris Letter, # 2 Exhibit Certificate of Good Standing for Chris Letter, # 3 Text of Proposed Order).(Letter, Chris) (Entered: 10/19/2020) |
| 10/19/2020 | 54 | MOTION for Stuart E. Des Roches to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22205440. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Stuart E. Des Roches, # 2 Exhibit Certificate of Good Standing for Stuart E. Des Roches, # 3 Text of Proposed Order).(Des Roches, Stuart) (Entered: 10/19/2020) |
| 10/19/2020 | 55 | MOTION for Dan Chiorean to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22205524. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Dan Chiorean, # 2 Exhibit Certificate of Good Standing for Dan Chiorean, # 3 Text of Proposed Order).(Chiorean, Dan) (Entered: 10/19/2020) |
| 10/20/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 53 MOTION for Chris Letter to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff., 51 MOTION for Andrew W. Kelly to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff., 54 MOTION for Stuart E. Des Roches to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22205440. Motion and supporting papers to** |

| | | |
|---|---|---|
| | | be reviewed by Clerk's Office staff., **52** MOTION for Christopher T. Stow-Serge to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff., **55** MOTION for Dan Chiorean to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22205524. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu) (Entered: 10/20/2020) |
| 10/20/2020 | 56 | MOTION for Amanda Hass to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Amanda Hass, # 2 Exhibit Certificate of Good Standing for Amanda Hass, # 3 Text of Proposed Order).(Hass, Amanda) Modified on 10/20/2020 (vba). Modified on 11/6/2020 (wb). (Entered: 10/20/2020) |
| 10/21/2020 | 57 | MOTION for Russell A. Chorush to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22244549. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration of Russell A. Chorush, # 2 Certificate of Good Standing, # 3 Text of Proposed Order).(Chorush, Russell) (Entered: 10/21/2020) |
| 10/21/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 57 MOTION for Russell A. Chorush to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22244549. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (vba)** (Entered: 10/21/2020) |
| 10/21/2020 | 58 | LETTER addressed to Judge Lewis J. Liman from Bruce E. Gerstein dated October 21, 2020 re: Consolidation. Document filed by J M Smith Corporation..(Gerstein, Bruce) (Entered: 10/21/2020) |
| 10/22/2020 | | Pro Hac Vice Fee Payment: for 56 MOTION for Amanda Hass to Appear Pro Hac Vice . **Motion and supporting papers to be reviewed by Clerk's Office staff.**. Filing fee $ 200.00, receipt number ANYSDC-22266152..(Hass, Amanda) (Entered: 10/22/2020) |
| 10/22/2020 | 59 | PROPOSED CASE MANAGEMENT PLAN. Document filed by J M Smith Corporation..(Gerstein, Bruce) (Entered: 10/22/2020) |
| 10/22/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. (56 in 1:20-cv-05735-LJL) MOTION for Amanda Hass to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. Payment was submitted on 10/22/2020. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL(ad)** (Entered: 12/09/2020) |
| 10/25/2020 | 60 | ORDER granting 29 Motion for Peter Kohn to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 61 | ORDER granting 30 Motion for Joseph T. Lukens to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 62 | ORDER granting 42 Motion for Peter J. Carney to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 63 | ORDER granting 47 Motion for David F. Sorensen to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 64 | ORDER granting 48 Motion for Caitlin G. Coslett to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |

| 10/25/2020 | 65 | ORDER granting 52 Motion for Christopher T. Stow-Serge to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
|---|---|---|
| 10/25/2020 | 66 | ORDER granting 51 Motion for Andrew W. Kelly to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 67 | ORDER granting 53 Motion for Chris Letter to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 68 | ORDER granting 54 Motion for Stuart E. Des Roches to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 69 | ORDER granting 55 Motion for Dan Chiorean to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 70 | ORDER granting 57 Motion for Russell A. Chorush to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 10/25/2020) |
| 10/25/2020 | 71 | NOTICE OF APPEARANCE by Kimberly Marion Hennings on behalf of J M Smith Corporation..(Hennings, Kimberly) (Entered: 10/25/2020) |
| 10/26/2020 | 72 | MOTION for Erin R. Leger to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22314842. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration, # 2 Text of Proposed Order).(Leger, Erin) (Entered: 10/26/2020) |
| 10/26/2020 | 73 | MOTION for Susan C. Segura to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number BNYSDC-22315158. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Declaration, # 2 Text of Proposed Order).(Segura, Susan) (Entered: 10/26/2020) |
| 10/26/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 72 MOTION for Erin R. Leger to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22314842. Motion and supporting papers to be reviewed by Clerk's Office staff., 73 MOTION for Susan C. Segura to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number BNYSDC-22315158. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 10/26/2020) |
| 10/28/2020 | 74 | MOTION for Noah A. Brumfield to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22355724. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC. (Attachments: # 1 Affidavit In Support of Motion for Admission of Noah Brumfield, # 2 Exhibit A - Certificates of Good Standing, # 3 Text of Proposed Order).(Brumfield, Noah) (Entered: 10/28/2020) |
| 10/28/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 74 MOTION for Noah A. Brumfield to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22355724. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 10/28/2020) |
| 10/30/2020 | 75 | PROPOSED CASE MANAGEMENT PLAN. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 10/30/2020) |
| 10/30/2020 | 76 | SUPPLEMENTAL MOTION to Appoint Counsel . Document filed by J M Smith Corporation. (Attachments: # 1 Text of Proposed Order).(Gerstein, Bruce) (Entered: |

| | | |
|---|---|---|
| | | 10/30/2020) |
| 10/30/2020 | 77 | MEMORANDUM OF LAW in Support re: 76 SUPPLEMENTAL MOTION to Appoint Counsel . . Document filed by J M Smith Corporation..(Gerstein, Bruce) (Entered: 10/30/2020) |
| 10/30/2020 | 78 | DECLARATION of Bruce E. Gerstein in Support re: 76 SUPPLEMENTAL MOTION to Appoint Counsel .. Document filed by J M Smith Corporation. (Attachments: # 1 Exhibit - Brand Complaint Comparison, # 2 Exhibit - Generic Complaint Comparison, # 3 Exhibit - Seroquel Complaint Comparison).(Gerstein, Bruce) (Entered: 10/30/2020) |
| 10/30/2020 | 79 | MOTION to Change Venue / *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a)*. Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC..(Gidley, John) (Entered: 10/30/2020) |
| 10/30/2020 | 80 | MEMORANDUM OF LAW in Support re: 79 MOTION to Change Venue / *Defendants' Notice of Motion to Transfer Venue to the District of New Jersey Pursuant to 28 U.S.C.§ 1404(a)*. . Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC..(Gidley, John) (Entered: 10/30/2020) |
| 10/30/2020 | 81 | DECLARATION of Peter J. Carney in Support re: 79 MOTION to Change Venue / *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a)*.. Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7). (Gidley, John) (Entered: 10/30/2020) |
| 11/04/2020 | 82 | JOINT CASE MANAGEMENT PLAN AND SCHEDULING ORDER NO. 1: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). Defendants shall file their motions to transfer by Friday, October 30, 2020. Plaintiffs shall file any opposition(s) to Defendants' motion(s) to transfer no later than Friday, November 24, 2020. Defendants shall file any reply in support of their motion to transfer no later than Monday, December 11, 2020. Oral argument, if any, on the motion to transfer shall be on a date set by the Court. J M Smith Drug Company shall file a Response to KPH's Motion regarding appointment of interim lead counsel for the proposed Direct Purchaser Class by October 30, 2020. Direct Purchaser Plaintiffs and End-Payor Plaintiffs shall file their respective Consolidated Class Action Complaints 21 days following the appointment of interim lead counsel for the direct purchaser class. Plaintiffs may amend their respective Consolidated Class Action Complaints no later than 35 days following the filing of Defendants' motion to dismiss, pursuant to the Court's Individual Practice 3.B. Defendants shall move in response to the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint and the End-Payor Plaintiffs' Consolidated Class Action Complaint no later than 65 days following the filing of Plaintiffs' Consolidated Class Action Complaints. Defendants' Answers shall be due in accordance with Fed. R. Civ. P. 12(a)(4) (A). Direct Purchaser Plaintiffs and End-Payor Plaintiffs shall file their opposition(s) no later than 35 days after Defendants file any motion(s) in response to the Direct Purchaser Plaintiffs' Consolidated Complaint and the End-Payor Plaintiffs' Consolidated Complaint. Defendants shall file their replies in support of their motion(s), if any, no later than 28 days after Plaintiffs file any opposition(s). The parties shall file a proposed Protective Order, or proposed competing Protective Orders if the parties do not reach an agreement, |

| | | |
|---|---|---|
| | | no later than December 15, 2020. The files of the coordinated actions shall be maintained in one file under Case No. 1:20-cv-05735-LJL with the following caption: In re Bystolic Antitrust Litigation. When a filing is intended to apply to all actions, the words "All Actions" should appear immediately after the words "This Document Relates To:" in the caption set out above. When a filing is intended to apply only to one, or to some, but not all, of such actions, the party filing the document should indicate the action(s) to which the document is intended to apply. The parties may indicate, for example, "All Direct Purchaser Actions" or "All End-Payor Actions." Following the Court's ruling on any motions to dismiss, the parties agree to meet and confer on deadlines for the remainder of discovery and post-discovery proceedings, including fact and expert discovery, class certification and summary judgment motions and to submit agreed upon or competing scheduling proposals to the Court within 14 days of any ruling on the motions to dismiss and further set forth in this Order. (Motions due by 10/30/2020. Responses due by 11/24/2020 Replies due by 12/11/2020.) (Signed by Judge Lewis J. Liman on 11/4/2020) (rro) (Entered: 11/04/2020) |
| 11/05/2020 | 83 | ORDER The Court will hold a hearing on the pending motions to appoint interim class counsel in the Direct Purchaser Actions by TELEPHONE CONFERENCE tomorrow, November 6, 2020 at 4:30 p.m. An order with further details is forthcoming shortly. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (wt) (Entered: 11/05/2020) |
| 11/05/2020 | 84 | ORDER: The Court will hold a hearing on the pending applications to appoint interim lead counsel in the Direct Purchaser Actions at 4:30 p.m. on Friday, November 6, 2020 by TELEPHONE CONFERENCE. At that date and time the parties are directed to dial the Court's teleconference line at 888-251-2909 (access code: 2123101). At the conference, the parties should be prepared to address: (As further set forth herein.)( Telephone Conference set for 11/6/2020 at 04:30 PM before Judge Lewis J. Liman.) (Signed by Judge Lewis J. Liman on 11/5/2020) (va) (Entered: 11/05/2020) |
| 11/06/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 56 MOTION for Amanda Hass to Appear Pro Hac Vice . Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 11/06/2020) |
| 11/06/2020 | 85 | NOTICE OF APPEARANCE by Kristyn Fields on behalf of J M Smith Corporation.. (Fields, Kristyn) (Entered: 11/06/2020) |
| 11/06/2020 | | Minute Entry for proceedings held before Judge Lewis J. Liman: Telephone Conference held on 11/6/2020. Counsel present by telephone for Plaintiffs. Counsel present by telephone for Defendants. Court reporter present by telephone. The Court held a hearing and heard from various counsel on the pending applications to appoint interim lead counsel in the Direct Purchaser Actions. Motions taken under advisement, decision reserved by the Court. Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL(mf) (Entered: 11/17/2020) |
| 11/12/2020 | 86 | ORDER granting in part and denying in part (76) Motion to Appoint Counsel in case 1:20-cv-05735-LJL; granting in part and denying in part (15) Motion to Appoint Counsel in case 1:20-cv-08754-LJL; denying (6) Motion to Appoint Counsel ; granting in part and denying in part (17) Motion to Appoint Counsel in case 1:20-cv-08756-LJL. As an initial matter, all parties agree that the Direct Purchaser Actions should be consolidated with one another. The Clerk of Court is respectfully directed to consolidate the above captioned cases under No. 20-cv-5735. As set forth in the operative case management plan, at No. 20-cv-5735, Dkt. No. 82, the Direct Purchaser Actions will be coordinated with the End Payor Actions. The Court hereby GRANTS the application, at No. 20-cv-5735, Dkt. No. 45, to appoint Bruce E. Gerstein and his firm, Garwin Gerstein & Fisher LLP ("Garwin"), |

| | | |
|---|---|---|
| | | and David F. Sorensen and his firm, Berger Montague PC (Berger), as interim co-lead class counsel for the putative direct purchaser class pursuant to Fed. R. Civ. P. 23(g)(3). Garwin and Bergers request to appoint an executive committee is DENIED. The application to appoint Dianne M. Nast ("Nast") and Michael L. Roberts ("Roberts") as interim lead class counsel is DENIED. The request to appoint an executive committee is denied as further set forth in this Order. (Signed by Judge Lewis J. Liman on 11/12/20) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (yv) (Entered: 11/13/2020) |
| 11/13/2020 | 87 | MOTION for Jessica Weiner to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22573874. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Mayor and City Council of Baltimore. (Attachments: # 1 Declaration of Jessica Weiner in Support of Plaintiff's Motion for Jessica Weiner's Admission Pro Hac Vice, # 2 Exhibit Certificates of Good Standing, # 3 Text of Proposed Order).(Weiner, Jessica) (Entered: 11/13/2020) |
| 11/13/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 87 MOTION for Jessica Weiner to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22573874. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 11/13/2020) |
| 11/16/2020 | 88 | MOTION for Donna M. Evans to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22604711. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Mayor and City Council of Baltimore. (Attachments: # 1 Declaration of Donna M. Evans in Support of Plaintiff's Motion for Donna M. Evans' Admission Pro Hac Vice, # 2 Certificate of Good Standing, # 3 Text of Proposed Order).(Evans, Donna) (Entered: 11/16/2020) |
| 11/16/2020 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 88 MOTION for Donna M. Evans to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-22604711. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 11/16/2020) |
| 11/16/2020 | 89 | TRANSCRIPT of Proceedings re: CONFERENCE held on 11/6/2020 before Judge Lewis J. Liman. Court Reporter/Transcriber: Vincent Bologna, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/7/2020. Redacted Transcript Deadline set for 12/17/2020. Release of Transcript Restriction set for 2/16/2021.Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(McGuirk, Kelly) (Entered: 11/16/2020) |
| 11/16/2020 | 90 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 11/6/2020 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL. (McGuirk, Kelly) (Entered: 11/16/2020) |
| 11/23/2020 | 91 | NOTICE OF APPEARANCE by Sharon Kunjumon Robertson on behalf of Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 11/23/2020) |

| 11/23/2020 | 92 | NOTICE OF APPEARANCE by Robert Abraham Braun on behalf of Mayor and City Council of Baltimore..(Braun, Robert) (Entered: 11/23/2020) |
|---|---|---|
| 11/23/2020 | 93 | NOTICE OF APPEARANCE by Robin Ann Van Der Meulen on behalf of UFCW Local 1500 Welfare Fund..(Van Der Meulen, Robin) (Entered: 11/23/2020) |
| 11/23/2020 | 94 | NOTICE OF APPEARANCE by Gregory Scott Asciolla on behalf of UFCW Local 1500 Welfare Fund..(Asciolla, Gregory) (Entered: 11/23/2020) |
| 11/23/2020 | 95 | NOTICE OF APPEARANCE by Veronica Bosco on behalf of UFCW Local 1500 Welfare Fund..(Bosco, Veronica) (Entered: 11/23/2020) |
| 11/23/2020 | 96 | NOTICE OF APPEARANCE by Matthew Joseph Perez on behalf of UFCW Local 1500 Welfare Fund..(Perez, Matthew) (Entered: 11/23/2020) |
| 11/24/2020 | 97 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Kimberly M. Hennings dated 11/24/2020. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc., Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund..(Hennings, Kimberly) (Entered: 11/24/2020) |
| 11/24/2020 | 98 | ***EX-PARTE***JOINT MEMORANDUM OF LAW in Opposition re: 79 MOTION to Change Venue / *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a)*. . Document filed by J M Smith Corporation, KPH Healthcare Services, Inc., Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund. Motion or Order to File Under Seal: 97 .(Hennings, Kimberly) (Entered: 11/24/2020) |
| 11/24/2020 | 99 | ***EX-PARTE***DECLARATION of Kimberly M. Hennings in Opposition re: 79 MOTION to Change Venue / *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a)*.. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc., Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P)Motion or Order to File Under Seal: 97 .(Hennings, Kimberly) (Entered: 11/24/2020) |
| 11/24/2020 | 100 | DECLARATION of Kimberly M. Hennings in Opposition re: 79 MOTION to Change Venue / *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a)*.. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc., Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund. (Attachments: # 1 Exhibit Q, # 2 Exhibit R).(Hennings, Kimberly) (Entered: 11/24/2020) |
| 11/30/2020 | 101 | ORDER denying without prejudice 97 Letter Motion to Seal. ORDERED that this motion is DENIED WITHOUT PREJUDICE. The documents that the plaintiffs have moved to seal were filed ex-parte. See Dkt. Nos. 98 and 99. Pursuant to Rule 2(G) of the Court's Individual Practices and paragraph 13 of the operative case management plan, at Dkt. No. 24, a motion to seal must be accompanied by contemporaneous filing of the documents that are the subject of the motion, and such documents must be filed under seal, not ex-parte. Plaintiffs are directed to re-file the documents at Dkt. Nos. 98 and 99 under seal, along with a renewed motion to seal. The Court will then follow the procedure prescribed in paragraph 13 of the case management plan at Dkt. No. 24. SO ORDERED. (Signed by Judge Lewis J. Liman on 11/30/2020) (jca) (Entered: 11/30/2020) |
| 11/30/2020 | 102 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Kimberly M. Hennings dated 11/30/2020. Document filed by J M Smith Corporation, KPH Healthcare |

| | | |
|---|---|---|
| | | Services, Inc., Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund.. (Hennings, Kimberly) (Entered: 11/30/2020) |
| 11/30/2020 | 103 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 79 MOTION to Change Venue *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a).*. Document filed by J M Smith Corporation, Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund, KPH Healthcare Services, Inc., AbbVie Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. Motion or Order to File Under Seal: 102 .(Hennings, Kimberly) (Entered: 11/30/2020) |
| 11/30/2020 | 104 | ***SELECTED PARTIES***DECLARATION of Kimberly M. Hennings in Opposition re: 79 MOTION to Change Venue *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a)..*. Document filed by J M Smith Corporation, Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund, KPH Healthcare Services, Inc., AbbVie Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R)Motion or Order to File Under Seal: 102 .(Hennings, Kimberly) (Entered: 11/30/2020) |
| 12/01/2020 | 105 | NOTICE OF APPEARANCE by Archana Tamoshunas on behalf of Mayor and City Council of Baltimore..(Tamoshunas, Archana) (Entered: 12/01/2020) |
| 12/02/2020 | 106 | LETTER MOTION to Seal *[Public Version]* addressed to Judge Lewis J. Liman from Peter J. Carney dated December 2, 2020. Document filed by AbbVie Inc., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit K, # 11 Exhibit L, # 12 Exhibit M, # 13 Exhibit N, # 14 Exhibit O, # 15 Exhibit P).(Carney, Peter) (Entered: 12/02/2020) |

| Date | No. | Description |
|---|---|---|
| 12/02/2020 | 107 | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Peter J. Carney dated December 2, 2020 re: Pursuant to Paragraph 13 of the Joint Case Management Plan and Scheduling Order No. 1 (CMO), ECF No. 82 , and this Court's Individual Practices in Civil Cases Sections 1.B and 2.G. Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., J M Smith Corporation, Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Mayor and City Council of Baltimore, Indchemie Health Specialties Private Ltd., UFCW Local 1500 Welfare Fund, Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, Inc., Forest Laboratories Inc., Allergan USA, Inc., Hetero Labs Ltd, Allergan, Inc., Hetero Drugs LTD., Forest Laboratories, LLC, Allergan Sales, LLC, Allergan USA, Inc., Forest Laboratories, LLC. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit K, # 11 Exhibit L, # 12 Exhibit M, # 13 Exhibit N, # 14 Exhibit O, # 15 Exhibit P)Motion or Order to File Under Seal: 106 .(Carney, Peter) (Entered: 12/02/2020) |
| 12/03/2020 | 108 | NOTICE OF APPEARANCE by Richard Carl Schoenstein on behalf of Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc...(Schoenstein, Richard) (Entered: 12/03/2020) |
| 12/03/2020 | 109 | NOTICE of CORRECTED NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF PAPERS. Document filed by Hetero USA Inc...(Schoenstein, Richard) (Entered: 12/03/2020) |
| 12/03/2020 | 110 | LETTER MOTION to Seal *Direct Purchaser Class Plaintiffs' Consolidated and Amended Class Action Complaint* addressed to Judge Lewis J. Liman from Kimberly M. Hennings dated 12/03/2020. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc...(Hennings, Kimberly) (Entered: 12/03/2020) |
| 12/03/2020 | 111 | ***SELECTED PARTIES*** AMENDED COMPLAINT amending 1 Complaint, against Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Amerigen Pharmaceuticals Ltd., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Allergan USA, Inc., Allergan, Inc., Allergan Sales, LLC, Hetero Labs Ltd, Forest Laboratories Ireland, LTD, Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd. with JURY DEMAND.Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, J M Smith Corporation, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Amerigen Pharmaceuticals Ltd., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), |

| | | |
|---|---|---|
| | | Amerigen Pharmaceuticals Inc., KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Allergan USA, Inc., Allergan, Inc., Allergan Sales, LLC, Hetero Labs Ltd, Forest Laboratories Ireland, LTD, Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund. Related document: 1 Complaint,.Motion or Order to File Under Seal: 110 .(Hennings, Kimberly) (Entered: 12/03/2020) |
| 12/03/2020 | 112 | LETTER MOTION to Seal *End-Payor Plaintiffs' Consolidated Class Action Complaint* addressed to Judge Lewis J. Liman from Sharon K. Robertson and Robin A. van der Meulen dated December 3, 2020. Document filed by Mayor and City Council of Baltimore, UFCW Local 1500 Welfare Fund, Teamsters Western Region & Local 177 Health Care Plan, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund.. (Robertson, Sharon) (Entered: 12/03/2020) |
| 12/03/2020 | 113 | ***SELECTED PARTIES*** AMENDED COMPLAINT amending 1 Complaint, against Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Amerigen Pharmaceuticals Ltd., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Allergan USA, Inc., Allergan, Inc., Allergan Sales, LLC, Hetero Labs Ltd, Forest Laboratories Ireland, LTD, Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., ANI Pharmaceuticals, Inc., Actavis Inc., Glenmark Pharmaceuticals Ltd. with JURY DEMAND.Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Law Enforcement Health Benefits, Inc., Glenmark Generics Inc., USA, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Amerigen Pharmaceuticals Ltd., Indchemie Health Specialties Private Ltd., UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Teamsters Western Region & Local 177 Health Care Plan, Allergan USA, Inc., Allergan, Inc., Allergan Sales, LLC, Hetero Labs Ltd, Forest Laboratories Ireland, LTD, Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., ANI Pharmaceuticals, Inc., Actavis Inc., Glenmark Pharmaceuticals Ltd.. Related document: 1 Complaint,.Motion or Order to File Under Seal: 112 .(Robertson, Sharon) (Entered: 12/03/2020) |
| 12/04/2020 | 114 | NOTICE OF APPEARANCE by Janet Beth Linn on behalf of Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc...(Linn, Janet) (Entered: 12/04/2020) |

| | | |
|---|---|---|
| 12/05/2020 | 115 | REQUEST FOR ISSUANCE OF SUMMONS as to ANI Pharmaceuticals, Inc., re: 111 Amended Complaint,,,,,,,,,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 12/05/2020) |
| 12/05/2020 | 116 | REQUEST FOR ISSUANCE OF SUMMONS as to Glenmark Pharmaceuticals Ltd., re: 111 Amended Complaint,,,,,,,,,. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 12/05/2020) |
| 12/07/2020 | 117 | NOTICE OF CHANGE OF ADDRESS by Janet Beth Linn on behalf of Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc.. New Address: Tarter Krinsky & Drogin, LLP, 1350 Broadway, 11th Floor, New York, New York, United States 10018, 212-216-8000.. (Linn, Janet) (Entered: 12/07/2020) |
| 12/07/2020 | 118 | NOTICE OF APPEARANCE by John Mark Gidley on behalf of Actavis, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 12/07/2020) |
| 12/07/2020 | 119 | NOTICE OF APPEARANCE by Peter J. Carney on behalf of Actavis, Inc., Watson Pharmaceuticals Inc...(Carney, Peter) (Entered: 12/07/2020) |
| 12/07/2020 | 120 | NOTICE OF APPEARANCE by Noah Brumfield on behalf of Actavis, Inc., Watson Pharmaceuticals Inc...(Brumfield, Noah) (Entered: 12/07/2020) |
| 12/07/2020 | 121 | ELECTRONIC SUMMONS ISSUED as to Glenmark Pharmaceuticals Ltd...(pc) (Entered: 12/07/2020) |
| 12/07/2020 | 122 | ELECTRONIC SUMMONS ISSUED as to ANI Pharmaceuticals, Inc...(pc) (Entered: 12/07/2020) |
| 12/07/2020 | 123 | REQUEST FOR ISSUANCE OF SUMMONS as to ANI Pharmaceuticals, Inc., re: 113 Amended Complaint,,,,,,,,,,. Document filed by Mayor and City Council of Baltimore.. (Robertson, Sharon) (Entered: 12/07/2020) |
| 12/07/2020 | 124 | REQUEST FOR ISSUANCE OF SUMMONS as to Torrent Pharmaceuticals Ltd., re: 113 Amended Complaint,,,,,,,,,,. Document filed by Mayor and City Council of Baltimore.. (Robertson, Sharon) (Entered: 12/07/2020) |
| 12/07/2020 | 125 | REQUEST FOR ISSUANCE OF SUMMONS as to Glenmark Pharmaceuticals S.A., re: 113 Amended Complaint,,,,,,,,,,,. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/07/2020) |
| 12/07/2020 | 126 | REQUEST FOR ISSUANCE OF SUMMONS as to Glenmark Pharmaceuticals Ltd., re: 113 Amended Complaint,,,,,,,,,,. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/07/2020) |
| 12/07/2020 | 127 | REQUEST FOR ISSUANCE OF SUMMONS as to Amerigen Pharmaceuticals, Ltd., re: 113 Amended Complaint,,,,,,,,,,. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/07/2020) |
| 12/07/2020 | 128 | REQUEST FOR ISSUANCE OF SUMMONS as to Amerigen Pharmaceuticals, Inc., re: 113 Amended Complaint,,,,,,,,,,. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/07/2020) |
| 12/07/2020 | 129 | REQUEST FOR ISSUANCE OF SUMMONS as to Watson Laboratories, Inc. (NY), re: 113 Amended Complaint,,,,,,,,,,. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/07/2020) |
| 12/07/2020 | 130 | REQUEST FOR ISSUANCE OF SUMMONS as to Watson Laboratories, Inc. (NY), re: 113 Amended Complaint,,,,,,,,,,. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/07/2020) |

| 12/08/2020 | [131](#) | ELECTRONIC SUMMONS ISSUED as to ANI Pharmaceuticals, Inc...(dnh) (Entered: 12/08/2020) |
|---|---|---|
| 12/08/2020 | [132](#) | ELECTRONIC SUMMONS ISSUED as to Torrent Pharmaceuticals Ltd...(dnh) (Entered: 12/08/2020) |
| 12/08/2020 | [133](#) | ELECTRONIC SUMMONS ISSUED as to Glenmark Pharmaceuticals S.A...(dnh) (Entered: 12/08/2020) |
| 12/08/2020 | [134](#) | ELECTRONIC SUMMONS ISSUED as to Glenmark Pharmaceuticals Ltd...(dnh) (Entered: 12/08/2020) |
| 12/08/2020 | [135](#) | ELECTRONIC SUMMONS ISSUED as to Amerigen Pharmaceuticals Ltd...(dnh) (Entered: 12/08/2020) |
| 12/08/2020 | [136](#) | ELECTRONIC SUMMONS ISSUED as to Amerigen Pharmaceuticals Inc...(dnh) (Entered: 12/08/2020) |
| 12/08/2020 | [137](#) | ELECTRONIC SUMMONS ISSUED as to Watson Laboratories, Inc. (NY)..(dnh) (Entered: 12/08/2020) |
| 12/08/2020 | [138](#) | ELECTRONIC SUMMONS ISSUED as to Watson Laboratories, Inc. (NY)..(dnh) (Entered: 12/08/2020) |
| 12/10/2020 | [139](#) | LETTER MOTION to Seal *[Public Version]* addressed to Judge Lewis J. Liman from Peter J. Carney dated December 10, 2020. Document filed by AbbVie Inc., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2).(Carney, Peter) (Entered: 12/10/2020) |
| 12/10/2020 | [140](#) | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Peter J. Carney dated December 10, 2020 re: Pursuant to Paragraph 13 of the Joint Case Management Plan and Scheduling Order No. 1 (CMO), ECF No. 82, and this Court's Individual Practices in Civil Cases Sections 1.B and 2.G.. Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Allergan Sales LLC, Hetero USA Inc., J M Smith Corporation, Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Actavis Inc., Allergan, Inc., Mayor and City Council of Baltimore, Indchemie Health Specialties Private Ltd., UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Forest Laboratories, LLC, Torrent Pharma Inc., Forest Laboratories, Inc., Forest Laboratories Inc., Hetero Labs Ltd, Hetero Drugs LTD., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, LTD. (Attachments: # [1](#) Exhibit 1, # [2](#) Exhibit 2)Motion or Order to File Under Seal: [139](#) .(Carney, Peter) (Entered: 12/10/2020) |
| 12/11/2020 | [141](#) | WAIVER OF SERVICE RETURNED EXECUTED. Glenmark Generics Inc., USA waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/11/2020) |
| 12/11/2020 | [142](#) | WAIVER OF SERVICE RETURNED EXECUTED. Glenmark Generics Ltd. waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/11/2020) |
| 12/11/2020 | [143](#) | WAIVER OF SERVICE RETURNED EXECUTED. Glenmark Pharmaceuticals Ltd. waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City |

| | | Council of Baltimore..(Robertson, Sharon) (Entered: 12/11/2020) |
|---|---|---|
| 12/11/2020 | 144 | REPLY MEMORANDUM OF LAW in Support re: 79 MOTION to Change Venue / *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a).* . Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC..(Gidley, John) (Entered: 12/11/2020) |
| 12/11/2020 | 145 | DECLARATION of Peter J. Carney in Support re: 79 MOTION to Change Venue / *Defendants' Notice of Motion to Transfer Venue to the District of of New Jersey Pursuant to 28 U.S.C.§ 1404(a)..* Document filed by Abbvie, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC. (Attachments: # 1 Exhibit A).(Gidley, John) (Entered: 12/11/2020) |
| 12/14/2020 | 146 | WAIVER OF SERVICE RETURNED EXECUTED. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 12/14/2020) |
| 12/15/2020 | 147 | PROPOSED PROTECTIVE ORDER. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Hennings, Kimberly) (Entered: 12/15/2020) |
| 12/16/2020 | 148 | PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material...This Order reflects a proposed order filed by the parties, with the addition of language to the second sentence of paragraph 18. The added language is underlined. (Signed by Judge Lewis J. Liman on 12/16/2020) (mro) (Entered: 12/16/2020) |
| 12/16/2020 | 149 | WAIVER OF SERVICE RETURNED EXECUTED. Watson Pharmaceuticals Inc. waiver sent on 12/10/2020, answer due 2/8/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/16/2020) |
| 12/16/2020 | 150 | WAIVER OF SERVICE RETURNED EXECUTED. Actavis Inc. waiver sent on 12/10/2020, answer due 2/8/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/16/2020) |
| 12/18/2020 | 151 | WAIVER OF SERVICE RETURNED EXECUTED. Teva Pharmaceutical Industries Ltd. waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/18/2020) |
| 12/18/2020 | 152 | WAIVER OF SERVICE RETURNED EXECUTED. Teva Pharmaceuticals USA, Inc. waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/18/2020) |
| 12/18/2020 | 153 | WAIVER OF SERVICE RETURNED EXECUTED. Watson Laboratories, Inc. (CT) waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/18/2020) |
| 12/18/2020 | 154 | WAIVER OF SERVICE RETURNED EXECUTED. Watson Laboratories, Inc. (DE) waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/18/2020) |
| 12/18/2020 | 155 | WAIVER OF SERVICE RETURNED EXECUTED. Watson Laboratories, Inc. (NV) waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City |

| | | |
|---|---|---|
| | | Council of Baltimore..(Robertson, Sharon) (Entered: 12/18/2020) |
| 12/18/2020 | 156 | WAIVER OF SERVICE RETURNED EXECUTED. Watson Pharma, Inc. waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 12/18/2020) |
| 12/19/2020 | 157 | SUMMONS RETURNED EXECUTED Summons and Amended Complaint,,,,,,,,,, served. Service was accepted by Sabrina Schaffter. Document filed by J M Smith Corporation..(Litvin, Dan) (Entered: 12/19/2020) |
| 12/23/2020 | 158 | CONSENT LETTER MOTION to Seal *by Walgreen Plaintiffs* addressed to Judge Lewis J. Liman from Scott E. Perwin dated 12/23/2020. Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co...(Perwin, Scott) (Entered: 12/23/2020) |
| 12/23/2020 | 159 | CONSENT LETTER MOTION to Seal *Amended Complaint* addressed to Judge Lewis J. Liman from Alexander J. Egervary dated December 23, 2020. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,..(Egervary, Alexander) (Entered: 12/23/2020) |
| 12/26/2020 | 160 | ORDER granting (158) Letter Motion to Seal in case 1:20-cv-05735-LJL (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (Liman, Lewis) (Entered: 12/26/2020) |
| 12/26/2020 | 161 | ORDER granting (159) Letter Motion to Seal in case 1:20-cv-05735-LJL (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (Liman, Lewis) (Entered: 12/26/2020) |
| 12/28/2020 | 162 | NOTICE of Withdraw of Appearance of Christopher T Stow-Serge. Document filed by J M Smith Corporation. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL.(Kelly, Andrew) (Entered: 12/28/2020) |
| 01/04/2021 | 163 | WAIVER OF SERVICE RETURNED EXECUTED. Indchemie Health Specialties Private Ltd. waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 01/04/2021) |
| 01/04/2021 | 164 | WAIVER OF SERVICE RETURNED EXECUTED. Ascend Laboratories, LLC waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 01/04/2021) |
| 01/04/2021 | 165 | WAIVER OF SERVICE RETURNED EXECUTED. Alkem Laboratories Ltd. waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 01/04/2021) |
| 01/04/2021 | 166 | WAIVER OF SERVICE RETURNED EXECUTED. ANI Pharmaceuticals, Inc. waiver sent on 12/4/2020, answer due 2/2/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 01/04/2021) |
| 01/04/2021 | 167 | NOTICE of of Filing re: 158 CONSENT LETTER MOTION to Seal *by Walgreen Plaintiffs* addressed to Judge Lewis J. Liman from Scott E. Perwin dated 12/23/2020.. Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co.. (Attachments: # 1 Exhibit REDACTED Amended Complaint, # 2 Exhibit Sealed Exhibit 2 Sheet).(Perwin, Scott) (Entered: 01/04/2021) |
| 01/04/2021 | 168 | ***SELECTED PARTIES***NOTICE of of Filing Sealed Amended Complaint re: 160 Order on Motion to Seal. Document filed by All Defendants. (Attachments: # 1 Exhibit REDACTED Amended Complaint, # 2 Exhibit HIGHLIGHTED Sealed Amended |

| | | |
|---|---|---|
| | | Complaint)Motion or Order to File Under Seal: <u>158</u> .(Perwin, Scott) (Entered: 01/04/2021) |
| 01/04/2021 | <u>169</u> | NOTICE of Filing re: <u>159</u> CONSENT LETTER MOTION to Seal *Amended Complaint* addressed to Judge Lewis J. Liman from Alexander J. Egervary dated December 23, 2020.. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,. (Attachments: # <u>1</u> Exhibit REDACTED Amended Complaint, # <u>2</u> Exhibit Sealed Exhibit 2 sheet).(Egervary, Alexander) (Entered: 01/04/2021) |
| 01/04/2021 | <u>170</u> | ***SELECTED PARTIES***NOTICE of Filing re: 161 Order on Motion to Seal. Document filed by Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, CVS Pharmacy, Inc., ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # <u>1</u> Exhibit REDACTED Amended Complaint, # <u>2</u> Exhibit HIGHLIGHTED Sealed Amended Complaint)Motion or Order to File Under Seal: 161 . (Egervary, Alexander) (Entered: 01/04/2021) |
| 01/06/2021 | <u>171</u> | AFFIDAVIT OF SERVICE. Amerigen Pharmaceuticals Inc. served on 12/18/2020, answer due 1/8/2021. Service was accepted by Lynanne Gares. Document filed by Walgreen Co.; H-E-B L.P.; The Kroger Co.; ALBERTSONS COMPANIES, INC... (Perwin, Scott) (Entered: 01/06/2021) |
| 01/06/2021 | <u>172</u> | AFFIDAVIT OF SERVICE. Service was accepted by Lynanne Gares. Document filed by Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, CVS Pharmacy, Inc...(Perwin, Scott) (Entered: 01/06/2021) |
| 01/07/2021 | <u>173</u> | MOTION for Caitlin V McHugh to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23405845. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,. (Attachments: # <u>1</u> Declaration of Caitlin V. McHugh in Support of Motion for Admission Pro Hac Vice, # <u>2</u> Certificate of Good Standing - Supreme Court of Pennsylvania, # <u>3</u> Certificate of Good Standing - Supreme Court of New Jersey, # <u>4</u> Text of Proposed Order).(McHugh, Caitlin) (Entered: 01/07/2021) |
| 01/07/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 173 MOTION for Caitlin V McHugh to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23405845. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 01/07/2021) |

| 01/08/2021 | [174](#) | MOTION for Barry L. Refsin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23416284. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,. (Attachments: # [1](#) Declaration of Barry L. Refsin in Support of Motion for Admission Pro Hac Vice, # [2](#) Certificate of Good Standing - Supreme Court of Pennsylvania, # [3](#) Certificate of Good Standing - Supreme Court of New Jersey, # [4](#) Text of Proposed Order).(Refsin, Barry) (Entered: 01/08/2021) |
| 01/08/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. [174](#) MOTION for Barry L. Refsin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23416284. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 01/08/2021) |
| 01/08/2021 | [175](#) | MOTION for Travis Roher to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23417316. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc... (Schoenstein, Richard) (Entered: 01/08/2021) |
| 01/08/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. [175](#) MOTION for Travis Roher to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23417316. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 01/08/2021) |
| 01/08/2021 | [176](#) | MOTION for Chelsea M. Nichols to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23418567. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,. (Attachments: # [1](#) Declaration of Chelsea M. Nichols in Support of Motion for Admission Pro Hac Vice, # [2](#) Certificate of Good Standing - Supreme Court of Pennsylvania, # [3](#) Text of Proposed Order).(Nichols, Chelsea) (Entered: 01/08/2021) |
| 01/08/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. [176](#) MOTION for Chelsea M. Nichols to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23418567. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 01/08/2021) |
| 01/12/2021 | | **\*\*\*DELETED DOCUMENT. Deleted document number [177, 178 and 179] Summonses Issued. The document was incorrectly filed in this case. (gp)** Modified on 1/12/2021 (gp). (Entered: 01/12/2021) |
| 01/12/2021 | [177](#) | AFFIDAVIT OF SERVICE. ANI Pharmaceuticals, Inc. served on 1/11/2021, answer due 2/2/2021. Service was accepted by Patrick Duffy. Document filed by J M Smith Corporation; KPH Healthcare Services, Inc...(Hennings, Kimberly) (Entered: 01/12/2021) |
| 01/15/2021 | [178](#) | ORDER denying (79) Motion to Change Venue in case 1:20-cv-05735-LJL. Defendants' motion to transfer venue is DENIED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 79. SO ORDERED. (Signed by Judge Lewis J. Liman on 1/15/2021) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (va) (Entered: 01/15/2021) |
| 01/22/2021 | [179](#) | WAIVER OF SERVICE RETURNED EXECUTED. ANI Pharmaceuticals, Inc. waiver sent on 1/6/2021, answer due 3/8/2021. Document filed by Rite Aid Corporation; Rite Aid Hdqtrs. Corp.,; CVS Pharmacy, Inc...(Egervary, Alexander) (Entered: 01/22/2021) |

| | | |
|---|---|---|
| 01/22/2021 | 180 | MOTION for Eric L. Bloom to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23649179. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,. (Attachments: # 1 Declaration of Eric L. Bloom in Support of Motion for Admission Pro Hac Vice, # 2 Certificate of Good Standing - Supreme Court of Pennsylvania, # 3 Text of Proposed Order).(Bloom, Eric) (Entered: 01/22/2021) |
| 01/22/2021 | 181 | MOTION for Monica L. Kiley to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23649529. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,. (Attachments: # 1 Declaration of Monica L. Kiley in Support of Motion for Admission Pro Hac Vice, # 2 Certificate of Good Standing - Supreme Court of Pennsylvania, # 3 Text of Proposed Order).(Kiley, Monica) (Entered: 01/22/2021) |
| 01/25/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 180 MOTION for Eric L. Bloom to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23649179. Motion and supporting papers to be reviewed by Clerk's Office staff., 181 MOTION for Monica L. Kiley to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23649529. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 01/25/2021) |
| 01/27/2021 | 182 | ORDER granting 56 Motion for Amanda Hass to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 183 | ORDER granting 72 Motion for Erin R. Leger to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) () (Entered: 01/27/2021) |
| 01/27/2021 | 184 | WAIVER OF SERVICE RETURNED EXECUTED. Glenmark Pharmaceuticals S.A. waiver sent on 1/27/2021, answer due 3/29/2021. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 01/27/2021) |
| 01/27/2021 | 185 | ORDER granting 73 Motion for Susan C. Segura to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 186 | ORDER granting 74 Motion for Noah A. Brumfield to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 187 | ORDER granting 87 Motion for Jessica Weiner to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 188 | ORDER granting 88 Motion for Donna M. Evans to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 189 | ORDER granting 173 Motion for Caitlin V McHugh to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 190 | ORDER granting 174 Motion for Barry L. Refsin to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 191 | ORDER granting 175 Motion for Travis Roher to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 192 | ORDER granting 176 Motion for Chelsea M. Nichols to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
| 01/27/2021 | 193 | ORDER granting 180 Motion for Eric L. Bloom to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |

| 01/27/2021 | 194 | ORDER granting 181 Motion for Monica L. Kiley to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 01/27/2021) |
|---|---|---|
| 01/28/2021 | 195 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - MOTION for Anna T. Neill to Appear Pro Hac Vice *(REFILING IN MAIN DOCKET)*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co...(Perwin, Scott) Modified on 1/28/2021 (aea). (Entered: 01/28/2021) |
| 01/28/2021 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 195 MOTION for Anna T. Neill to Appear Pro Hac Vice *(REFILING IN MAIN DOCKET)*. Motion and supporting papers to be reviewed by Clerk's Office staff. The filing is deficient for the following reason(s): expired Certificate of Good Standing from Supreme Court of Florida; The case number is incorrect. Re-file the corrected motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order. (aea)** (Entered: 01/28/2021) |
| 01/28/2021 | 196 | MOTION for Scott E. Perwin to Appear Pro Hac Vice *(REFILING IN MAIN DOCKET)*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co... (Perwin, Scott) (Entered: 01/28/2021) |
| 01/28/2021 | 197 | MOTION for Lauren C. Ravkind to Appear Pro Hac Vice *(REFILING IN MAIN DOCKET)*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co...(Perwin, Scott) (Entered: 01/28/2021) |
| 01/28/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 197 MOTION for Lauren C. Ravkind to Appear Pro Hac Vice *(REFILING IN MAIN DOCKET)*. Motion and supporting papers to be reviewed by Clerk's Office staff., 196 MOTION for Scott E. Perwin to Appear Pro Hac Vice *(REFILING IN MAIN DOCKET)*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 01/28/2021) |
| 01/29/2021 | 198 | LETTER addressed to Judge Lewis J. Liman from Caitlin V. McHugh dated January 29, 2021 re: Association of CVS & Walgreen cases as related to In re Bystolic Antitrust Litigation in the CM/ECF system. Document filed by ALBERTSONS COMPANIES, INC., CVS Pharmacy, Inc., H-E-B L.P., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, The Kroger Co., Walgreen Co.. (Attachments: # 1 Text of Proposed Order).(McHugh, Caitlin) (Entered: 01/29/2021) |
| 02/01/2021 | 199 | AFFIDAVIT OF SERVICE. Amerigen Pharmaceuticals Inc. served on 1/14/2021, answer due 2/4/2021. Service was accepted by via drop-box, at Corporation Service Company. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 02/01/2021) |
| 02/01/2021 | 200 | AFFIDAVIT OF SERVICE. Amerigen Pharmaceuticals Ltd. served on 1/14/2021, answer due 2/4/2021. Service was accepted by via drop-box, at Corporation Service Company. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 02/01/2021) |
| 02/01/2021 | 201 | AFFIDAVIT OF SERVICE. Watson Laboratories, Inc. (NY) served on 1/15/2021, answer due 2/5/2021. Service was accepted by Carol Doe and Aiasha Doe. Document filed by Mayor and City Council of Baltimore..(Robertson, Sharon) (Entered: 02/01/2021) |

| 02/01/2021 | 202 | ORDER granting 197 Motion for Lauren C. Ravkind to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 02/01/2021) |
|---|---|---|
| 02/01/2021 | 203 | ORDER granting 196 Motion for Scott E. Perwin to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (wt) (Entered: 02/01/2021) |
| 02/01/2021 | 204 | ORDER: IT IS HEREBY ORDERED that the Clerk's Office shall associate the CVS & Rite Aid case (Case No. 1:20-cv-10087-LJL) and the Walgreen case (Case No. 1:20-cv-09793-LJL) as related cases to In re Bystolic Antitrust Litigation, Case No. 1:20-cv-05735-LJL, in the CM/ECF system. (Signed by Judge Lewis J. Liman on 2/1/2021) (ks) (Entered: 02/01/2021) |
| 02/01/2021 | | CASE ACCEPTED AS RELATED. Create association to 1:20-cv-10087-LJL. Notice of Assignment to follow. (ks) (Entered: 02/01/2021) |
| 02/01/2021 | | CASE ACCEPTED AS RELATED. Create association to 1:20-cv-09793-LJL. Notice of Assignment to follow. (ks) (Entered: 02/01/2021) |
| 02/02/2021 | 205 | NOTICE of Interim Co-Lead Counsel's Motion for Clarification and Permission to Delegate Work to Selected Counsel. Document filed by J M Smith Corporation. (Attachments: # 1 Text of Proposed Order).(Gerstein, Bruce) (Entered: 02/02/2021) |
| 02/02/2021 | 206 | NOTICE of Memorandum of Law in Support of Interim Co-Lead Counsel's Motion for Clarification and Permission to Delegate Work to Selected Counsel re: 205 Notice (Other). Document filed by J M Smith Corporation..(Gerstein, Bruce) (Entered: 02/02/2021) |
| 02/03/2021 | 207 | MOTION for Anna T. Neill to Appear Pro Hac Vice *"Corrected"*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co... (Perwin, Scott) (Entered: 02/03/2021) |
| 02/03/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 207 MOTION for Anna T. Neill to Appear Pro Hac Vice *"Corrected"*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 02/03/2021) |
| 02/05/2021 | 208 | NOTICE OF APPEARANCE by Brian D Brooks on behalf of Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund..(Brooks, Brian) (Entered: 02/05/2021) |
| 02/05/2021 | 209 | MOTION for Eric Grannon to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23842623. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by AbbVie Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # 1 Affidavit, # 2 DC - Certificate of Good Standing, # 3 MD - Certificate of Good Standing, # 4 Text of Proposed Order).(Grannon, Eric) (Entered: 02/05/2021) |
| 02/07/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 209 MOTION for Eric Grannon to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23842623. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 02/07/2021) |
| 02/08/2021 | 210 | MOTION for James Tierney to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23858224. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by ANI Pharmaceuticals, Inc.. (Attachments: # 1 Affidavit of James |

| | | |
|---|---|---|
| | | Tierney in Support, # <u>2</u> Certificate of Good Standing - DC, # <u>3</u> Certificate of Good Standing - MD, # <u>4</u> Text of Proposed Order).(Tierney, James) (Entered: 02/08/2021) |
| 02/08/2021 | <u>211</u> | MOTION for John ("Jay") Jurata, Jr. to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23858536. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by ANI Pharmaceuticals, Inc.. (Attachments: # <u>1</u> Affidavit of John Jurata, Jr. in Support, # <u>2</u> Certificate of Good Standing - DC, # <u>3</u> Certificate of Good Standing - VA, # <u>4</u> Text of Proposed Order).(Jurata, John) (Entered: 02/08/2021) |
| 02/08/2021 | <u>212</u> | NOTICE OF APPEARANCE by Elyse D. Echtman on behalf of ANI Pharmaceuticals, Inc...(Echtman, Elyse) (Entered: 02/08/2021) |
| 02/08/2021 | <u>213</u> | **FILING ERROR - CORPORATE PARENT/OTHER AFFILIATE NOT ADDED -** RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by ANI Pharmaceuticals, Inc...(Echtman, Elyse) Modified on 2/9/2021 (ldi). (Entered: 02/08/2021) |
| 02/08/2021 | <u>214</u> | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Glenmark Pharmaceuticals Ltd. for Glenmark Generics Inc., USA, Glenmark Pharmaceuticals S.A.. Document filed by Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A...(Bonder, Teresa) (Entered: 02/08/2021) |
| 02/08/2021 | <u>215</u> | MOTION to Dismiss for Lack of Jurisdiction . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc.. (Attachments: # <u>1</u> Text of Proposed Order).(Bonder, Teresa) (Entered: 02/08/2021) |
| 02/08/2021 | <u>216</u> | MEMORANDUM OF LAW in Support re: <u>215</u> MOTION to Dismiss for Lack of Jurisdiction . . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc... (Bonder, Teresa) (Entered: 02/08/2021) |
| 02/08/2021 | <u>217</u> | NOTICE OF APPEARANCE by Brian Timothy Burgess on behalf of Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc...(Burgess, Brian) (Entered: 02/08/2021) |
| 02/08/2021 | <u>218</u> | MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*. Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 02/08/2021) |

| | | |
|---|---|---|
| 02/08/2021 | 219 | MEMORANDUM OF LAW in Support re: 218 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*. . Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 02/08/2021) |
| 02/08/2021 | 220 | DECLARATION of Brian E. Shanahan in Support re: 218 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*.. Document filed by Teva Pharmaceutical Industries Ltd.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C).(Holding, Christopher) (Entered: 02/08/2021) |
| 02/08/2021 | 221 | LETTER MOTION to Seal *Exhibit C to the Shanahan Declaration* addressed to Judge Lewis J. Liman from Christopher T. Holding dated February 8, 2021. Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 02/08/2021) |
| 02/08/2021 | 222 | ***SELECTED PARTIES***DECLARATION of Brian E. Shanahan in Support re: 218 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*.. Document filed by Teva Pharmaceutical Industries Ltd., ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)Motion or Order to File Under Seal: 221 .(Holding, Christopher) (Entered: 02/08/2021) |
| 02/08/2021 | 223 | MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints*. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Text of Proposed Order).(Gidley, John) (Entered: 02/08/2021) |
| 02/08/2021 | 224 | CONSENT LETTER MOTION to Seal addressed to Judge Lewis J. Liman from J.Mark Gidley dated February 8, 2021. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest |

| | | Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 02/08/2021) |
|---|---|---|
| 02/08/2021 | [225](#) | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: [223](#) MOTION to Dismiss *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints.* . Document filed by AbbVie Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Watson Laboratories, Inc. (NV), Actavis Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Allergan USA, Inc., Hetero Labs Ltd, Allergan Sales, LLC, Allergan, Inc., Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., ALBERTSONS COMPANIES, INC., Abbvie, Inc., Actavis, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., CVS Pharmacy, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co.. Motion or Order to File Under Seal: [147](#) .(Gidley, John) (Entered: 02/08/2021) |
| 02/08/2021 | [226](#) | MOTION to Dismiss *Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Consolidated Class Action.* Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # [1](#) Text of Proposed Order).(Gidley, John) (Entered: 02/08/2021) |
| 02/08/2021 | [227](#) | ***SELECTED PARTIES***DECLARATION of Peter J. Carney in Support re: [223](#) MOTION to Dismiss *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints.*. Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., Watson Laboratories, Inc. (NV), ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Allergan USA, Inc., Hetero Labs Ltd, Allergan Sales, LLC, Allergan, Inc., Glenmark Pharmaceuticals Ltd., Hetero Drugs |

| | | |
|---|---|---|
| | | LTD., Forest Laboratories, LLC, ALBERTSONS COMPANIES, INC., Abbvie, Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., USA, H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19)Motion or Order to File Under Seal: 147 .(Carney, Peter) (Entered: 02/08/2021) |
| 02/08/2021 | 228 | MEMORANDUM OF LAW in Support re: 226 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Consolidated Class Action.* . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics, Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 02/08/2021) |
| 02/09/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 210 MOTION for James Tierney to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23858224. Motion and supporting papers to be reviewed by Clerk's Office staff., 211 MOTION for John ("Jay") Jurata, Jr. to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-23858536. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 02/09/2021) |
| 02/09/2021 | 229 | AFFIDAVIT OF SERVICE. Amerigen Pharmaceuticals Inc. served on 1/26/2021, answer due 2/16/2021. Service was accepted by Lynanne Gares, Litigation Services Manager. Document filed by Walgreen Co.; H-E-B L.P.; The Kroger Co.; ALBERTSONS COMPANIES, INC...(Perwin, Scott) (Entered: 02/09/2021) |
| 02/09/2021 | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Elyse D. Echtman to RE-FILE Document 213 Rule 7.1 Corporate Disclosure Statement. ERROR(S): Corporate Parents/Other affiliates were not added. Please re-file this document and when prompted: Are there any corporate parents or other affiliates?, select the YES radio button and enter the Corporate Parent(s) or Affiliate(s). (ldi)** (Entered: 02/09/2021) |
| 02/09/2021 | 230 | AFFIDAVIT OF SERVICE. Watson Laboratories, Inc. (NY) served on 2/9/2021, answer due 3/2/2021. Service was accepted by Emily Schroeder, SOP Specialist. Service was made by Electronic Mail. Document filed by Walgreen Co.; H-E-B L.P.; The Kroger Co.; ALBERTSONS COMPANIES, INC...(Perwin, Scott) (Entered: 02/09/2021) |

| | | |
|---|---|---|
| 02/09/2021 | 231 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Other Affiliate BlackRock Inc. for ANI Pharmaceuticals, Inc.. Document filed by ANI Pharmaceuticals, Inc...(Echtman, Elyse) (Entered: 02/09/2021) |
| 02/16/2021 | 232 | PROPOSED STIPULATION AND ORDER. Document filed by J M Smith Corporation.. (Coslett, Caitlin) (Entered: 02/16/2021) |
| 02/16/2021 | 233 | LETTER addressed to Judge Lewis J. Liman from Caitlin G. Coslett on behalf of Plaintiffs dated February 16, 2021 re: Plaintiffs ESI Protocol proposals, set forth in ECF No. 232. Document filed by J M Smith Corporation. (Attachments: # 1 Exhibit 1). (Coslett, Caitlin) (Entered: 02/16/2021) |
| 02/16/2021 | 234 | LETTER MOTION for Discovery *re: Defendants' Submission on ESI Protocol* addressed to Judge Lewis J. Liman from White & Case LLP dated February 16, 2021. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 02/16/2021) |
| 02/22/2021 | 235 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #237) -** LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Peter J. Carney dated February 22, 2021. Document filed by AbbVie Inc., Actavis, Inc., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc...(Carney, Peter) Modified on 2/24/2021 (ldi). (Entered: 02/22/2021) |
| 02/22/2021 | 236 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MEMORANDUM OF LAW in Support re: 235 LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Peter J. Carney dated February 22, 2021. . Document filed by AbbVie Inc., Actavis, Inc., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc...(Carney, Peter) Modified on 2/24/2021 (ldi). (Entered: 02/22/2021) |
| 02/22/2021 | 237 | LETTER MOTION to Seal *[Public Version]* addressed to Judge Lewis J. Liman from Peter J. Carney dated February 22, 2021. Document filed by AbbVie Inc., Actavis, Inc., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # 1 Memorandum of Law in Support of Defendants' Motion to Dismiss the Direct Purchaser Plaintiffs', WalGreen and CVS Complaints, # 2 Declaration of Peter J. Carney in Support of Defendants' Motion to Dismiss the Direct Purchaser Plaintiffs', WalGreen and CVS Complaints, # 3 Exhibit 1 - Filed Under Seal, # 4 Exhibit 2 - Filed Under Seal, # 5 Exhibit 3 - Filed Under Seal, # 6 Exhibit 4 - Filed Under Seal, # 7 Exhibit 5 - Filed Under Seal, # 8 Exhibit 6 - Filed Under Seal, # 9 Exhibit 7 - Filed Under Seal, # 10 Exhibit 8 - Filed Under Seal, # 11 Exhibit 9 - Filed Under Seal, # 12 Exhibit 10 - Filed Under Seal, # 13 Exhibit 11 - Filed Under Seal, # 14 Exhibit 12 - Filed Under Seal, # 15 Exhibit 13 - Filed Under Seal, # 16 Exhibit 14 - Filed Under Seal, # 17 Exhibit 15 - Filed Under Seal, # 18 Exhibit 16 - Filed Under Seal, # 19 Exhibit 17 - Filed Under Seal, # 20 Exhibit 18 - Filed Under Seal, # 21 Exhibit 19 - Filed Under Seal).(Carney, Peter) (Entered: 02/22/2021) |

| 02/22/2021 | [238] | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Peter J. Carney dated February 22, 2021 Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Actavis Inc., Allergan, Inc., Watson Pharmaceuticals Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Allergan USA, Inc., Allergan Sales, LLC, ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc.. (Attachments: # [1] Memorandum of Law in Support of Defendants' Motion to Dismiss the Direct Purchaser Plaintiffs', WalGreen and CVS Complaints, # [2] Declaration of Peter J. Carney in Support of Defendants' Motion to Dismiss the Direct Purchaser Plaintiffs', WalGreen and CVS Complaints, # [3] Exhibit 1, # [4] Exhibit 2, # [5] Exhibit 3, # [6] Exhibit 4, # [7] Exhibit 5, # [8] Exhibit 6, # [9] Exhibit 7, # [10] Exhibit 8, # [11] Exhibit 9, # [12] Exhibit 10, # [13] Exhibit 11, # [14] Exhibit 12, # [15] Exhibit 13, # [16] Exhibit 14, # [17] Exhibit 15, # [18] Exhibit 16, # [19] Exhibit 17, # [20] Exhibit 18, # [21] Exhibit 19)Motion or Order to File Under Seal: [147] .(Carney, Peter) (Entered: 02/22/2021) |
| 02/25/2021 | [239] | MOTION for Sarah K. Frederick to Withdraw as Attorney . Document filed by Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc.. (Attachments: # [1] Text of Proposed Order).(Frederick, Sarah) (Entered: 02/25/2021) |
| 03/05/2021 | [240] | JOINT LETTER addressed to Judge Lewis J. Liman from Kimberly M. Hennings dated 03/05/2021 re: Motion to Dismiss Briefing Schedule. Document filed by J M Smith Corporation..(Hennings, Kimberly) (Entered: 03/05/2021) |
| 03/05/2021 | [241] | MEMO ENDORSEMENT on re: [240] Letter filed by J M Smith Corporation. ENDORSEMENT: MEMORANDUM ENDORSED. The briefing schedule proposed herein is adopted. The motions to dismiss at Dkt. Nos. 215, 218, 223, 226 are DISMISSED without prejudice as moot. The Clerk of Court is respectfully directed to terminate those motions. SO ORDERED. Motions terminated: [218] MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*. filed by Teva Pharmaceutical Industries Ltd., [226] MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Consolidated Class Action*. filed by Watson Pharma, Inc., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Forest Laboratories, Inc., Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Allergan Sales, LLC, Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Glenmark Pharmaceuticals S.A., Actavis, Inc., Glenmark Generics Ltd., Forest Laboratories, LLC, Teva Pharmaceuticals USA, Inc., AbbVie Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Alkem |

| | | |
|---|---|---|
| | | Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd, Watson Pharmaceuticals Inc., [215](#) MOTION to Dismiss for Lack of Jurisdiction . filed by Watson Pharma, Inc., Hetero Drugs LTD., Forest Laboratories Holdings LLC, Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Watson Laboratories, Inc. (DE), Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Actavis Inc., Teva Pharmaceutical Industries Ltd., Amerigen Pharmaceuticals Ltd., Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Glenmark Pharmaceuticals S.A., Glenmark Generics Ltd., AbbVie Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Alkem Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd, [223](#) MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints*. filed by Watson Pharma, Inc., Hetero Drugs LTD., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Watson Laboratories, Inc. (DE), Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (NY), Allergan Sales, LLC, Teva Pharmaceutical Industries Ltd., Amerigen Pharmaceuticals Ltd., Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Glenmark Pharmaceuticals S.A., Actavis, Inc., Glenmark Generics Ltd., Forest Laboratories, LLC, AbbVie Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Alkem Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd, Forest Laboratories Holdings, Ltd., Watson Pharmaceuticals Inc. (Signed by Judge Lewis J. Liman on 3/5/2021) (va) (Entered: 03/05/2021) |
| 03/09/2021 | [242](#) | MEMORANDUM & ORDER terminating (234) Motion for Discovery in case 1:20-cv-05735-LJL. Accordingly, each individual email withheld as privileged within an email thread must be logged. The parties are ORDERED to meet and confer and propose a revised stipulation and proposed order regarding the production of ESI and hard copy documents within one week of the date of this order. The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 234. SO ORDERED. (Signed by Judge Lewis J. Liman on 3/9/2021) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (va) (Entered: 03/09/2021) |
| 03/15/2021 | [243](#) | LETTER MOTION to Seal *Second Amended Complaint* addressed to Judge Lewis J. Liman from Scott E. Perwin dated March 15, 2021. Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co...(Perwin, Scott) (Entered: 03/15/2021) |
| 03/15/2021 | [244](#) | LETTER MOTION to Seal *Second Consolidated and Amended Class Action Complaint* addressed to Judge Lewis J. Liman from Kimberly M. Hennings dated 03/15/2021. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc...(Hennings, Kimberly) (Entered: 03/15/2021) |
| 03/15/2021 | [245](#) | LETTER MOTION to Seal *End-Payor Plaintiffs' Consolidated Amended Class Action Complaint* addressed to Judge Lewis J. Liman from Sharon K. Robertson and Robin A. van der Meulen dated March 15, 2021. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Robertson, Sharon) (Entered: 03/15/2021) |
| 03/15/2021 | 246 | ORDER granting (243) Letter Motion to Seal in case 1:20-cv-05735-LJL. Plaintiffs to file redacted complaint publicly within one week of filing of the complaint under seal. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) Filed In Associated |

| | | |
|---|---|---|
| | | Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (Liman, Lewis) (Entered: 03/15/2021) |
| 03/15/2021 | 247 | ORDER granting (244) Letter Motion to Seal in case 1:20-cv-05735-LJL. Plaintiffs to publicly filed redacted complaint within one week of the filing of the complaint under seal. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (Liman, Lewis) (Entered: 03/15/2021) |
| 03/15/2021 | 248 | ORDER granting (245) Letter Motion to Seal in case 1:20-cv-05735-LJL. Plaintiffs to publicly file redacted complaint within one week of filing complaint under seal. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (Liman, Lewis) (Entered: 03/15/2021) |
| 03/15/2021 | 249 | LETTER MOTION to Seal *Second Amended Complaint* addressed to Judge Lewis J. Liman from Barry L. Refsin dated 03/15/2021. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,..(Refsin, Barry) (Entered: 03/15/2021) |
| 03/15/2021 | 250 | ***SELECTED PARTIES***SECOND AMENDED COMPLAINT amending 1 Complaint, 111 Amended Complaint,,,,,,,,,, against Forest Laboratories Ireland, Ltd., AbbVie Inc., Allergan Sales LLC, Hetero USA Inc., Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Actavis Inc., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Torrent Pharmaceuticals Ltd., Amerigen Pharmaceuticals Inc., Watson Laboratories, Inc. (CT), Glenmark Pharmaceuticals S.A., Forest Laboratories, LLC, Torrent Pharma Inc., Forest Laboratories Inc., Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Forest Laboratories Holdings Ltd. with JURY DEMAND.Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Allergan Sales LLC, Hetero USA Inc., Glenmark Generics Inc., USA, J M Smith Corporation, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Actavis Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Forest Laboratories, LLC, Torrent Pharma Inc., Forest Laboratories Inc., Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., ALBERTSONS COMPANIES, INC., Abbvie, Inc., Actavis, Inc., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., CVS Pharmacy, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, H-E-B L.P., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., UFCW Local 1500 Welfare Fund, Walgreen Co.. Related document: 1 Complaint, 111 Amended Complaint,,,,,,,,,.Motion or Order to File Under Seal: 247 .(Gerstein, Bruce) (Entered: 03/15/2021) |
| 03/15/2021 | 251 | ***SELECTED PARTIES***FIRST AMENDED COMPLAINT amending 113 Amended Complaint,,,,,,,,,, against Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest |

| | | |
|---|---|---|
| | | Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Actavis Inc., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Allergan USA, Inc., Hetero Labs Ltd, Allergan Sales, LLC, Allergan, Inc., Glenmark Pharmaceuticals Ltd., Forest Laboratories Ireland, LTD, Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd. with JURY DEMAND.Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Law Enforcement Health Benefits, Inc., Glenmark Generics Inc., USA, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Actavis Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Teamsters Western Region & Local 177 Health Care Plan, Allergan USA, Inc., Hetero Labs Ltd, Allergan Sales, LLC, Allergan, Inc., Glenmark Pharmaceuticals Ltd., Forest Laboratories Ireland, LTD, Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd.. Related document: 113 Amended Complaint,,,,,,,,,,,.Motion or Order to File Under Seal: 248 .(Robertson, Sharon) (Entered: 03/15/2021) |
| 03/16/2021 | 252 | PROPOSED STIPULATION AND ORDER. Document filed by J M Smith Corporation. (Attachments: # 1 Exhibit A: Specifications for the Production of Documents).(Coslett, Caitlin) (Entered: 03/16/2021) |
| 03/18/2021 | 253 | NOTICE of Filing re: 243 LETTER MOTION to Seal *Second Amended Complaint* addressed to Judge Lewis J. Liman from Scott E. Perwin dated March 15, 2021.. Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co.. (Attachments: # 1 Exhibit Walgreen Plaintiffs' Redacted Second Amended Complaint, # 2 Exhibit Walgreen Plaintiffs' Highlighted Second Complaint).(Perwin, Scott) (Entered: 03/18/2021) |
| 03/18/2021 | 254 | ***SELECTED PARTIES***NOTICE of Filing re: 243 LETTER MOTION to Seal *Second Amended Complaint* addressed to Judge Lewis J. Liman from Scott E. Perwin dated March 15, 2021.. Document filed by Walgreen Co., H-E-B L.P., The Kroger Co., ALBERTSONS COMPANIES, INC.. (Attachments: # 1 Exhibit Walgreen Plaintiffs' Redacted Second Amended Complaint, # 2 Exhibit Sealed Walgreen Plaintiffs' Highlighted Second Amended Complaint)Motion or Order to File Under Seal: 243 . (Perwin, Scott) (Entered: 03/18/2021) |
| 03/22/2021 | 255 | AMENDED COMPLAINT amending 250 Amended Complaint,,,,,,,,,,, against AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend |

| | | |
|---|---|---|
| | | Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc. with JURY DEMAND.Document filed by J M Smith Corporation, KPH Healthcare Services, Inc.. Related document: [250] Amended Complaint,,,,,,,,,,..(Gerstein, Bruce) (Entered: 03/22/2021) |
| 03/22/2021 | [256] | FIRST AMENDED COMPLAINT amending [251] Amended Complaint,,,,,,,,,,, against ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc. with JURY DEMAND.Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, UFCW Local 1500 Welfare Fund, Teamsters Western Region & Local 177 Health Care Plan. Related document: [251] Amended Complaint,,,,,,,,,,..(Robertson, Sharon) (Entered: 03/22/2021) |
| 03/23/2021 | [257] | NOTICE of Filing re: [249] LETTER MOTION to Seal *Second Amended Complaint* addressed to Judge Lewis J. Liman from Barry L. Refsin dated 03/15/2021.. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,. (Attachments: # [1] Exhibit CVS/Rite Aid Plaintiffs' Redacted Second Amended Complaint, # [2] Exhibit CVS/Rite Aid Plaintiffs' Highlighted Second Amended Complaint).(Refsin, Barry) (Entered: 03/23/2021) |
| 03/23/2021 | [258] | ***SELECTED PARTIES***NOTICE of Filing re: [249] LETTER MOTION to Seal *Second Amended Complaint* addressed to Judge Lewis J. Liman from Barry L. Refsin dated 03/15/2021.. Document filed by Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, CVS Pharmacy, Inc., ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., |

| | | |
|---|---|---|
| | | Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit CVS/Rite Aid Plaintiffs' Redacted Second Amended Complaint, # 2 Exhibit CVS/Rite Aid Plaintiffs' Highlighted Second Amended Complaint)Motion or Order to File Under Seal: 249 .(Refsin, Barry) (Entered: 03/23/2021) |
| 04/14/2021 | 259 | JOINT LETTER addressed to Judge Lewis J. Liman from Peter J. Carney dated April 14, 2021 re: Motion to Dismiss Briefing Schedule. Document filed by Abbvie, Inc., Actavis, Inc., Allergan USA, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc...(Carney, Peter) (Entered: 04/14/2021) |
| 04/23/2021 | 260 | MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*. Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 04/23/2021) |
| 04/23/2021 | 261 | MEMORANDUM OF LAW in Support re: 260 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*. . Document filed by Teva Pharmaceutical Industries Ltd.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2).(Holding, Christopher) (Entered: 04/23/2021) |
| 04/23/2021 | 262 | DECLARATION of Brian E. Shanahan in Support re: 260 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*.. Document filed by Teva Pharmaceutical Industries Ltd.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C).(Holding, Christopher) (Entered: 04/23/2021) |
| 04/23/2021 | 263 | LETTER MOTION to Seal *Exhibit C to the Shanahan Declaration* addressed to Judge Lewis J. Liman from Christopher T. Holding dated April 23, 2021. Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 04/23/2021) |
| 04/23/2021 | 264 | ***SELECTED PARTIES***DECLARATION of Brian E. Shanahan in Support re: 260 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*.. Document filed by Teva Pharmaceutical Industries Ltd., ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), |

| | | |
|---|---|---|
| | | Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # [1] Exhibit A, # [2] Exhibit B, # [3] Exhibit C)Motion or Order to File Under Seal: [263] .(Holding, Christopher) (Entered: 04/23/2021) |
| 04/23/2021 | [265] | MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Inc., Forest Laboratories Ireland, LTD, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc...(Bonder, Teresa) (Entered: 04/23/2021) |
| 04/23/2021 | [266] | MEMORANDUM OF LAW in Support re: [265] MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*. . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Inc., Forest Laboratories Ireland, LTD, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc...(Bonder, Teresa) (Entered: 04/23/2021) |
| 04/23/2021 | [267] | MOTION to Dismiss *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints*. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # [1] Text of Proposed Order).(Gidley, John) (Entered: 04/23/2021) |
| 04/23/2021 | [268] | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from J. Mark Gidley dated April 23, 2021. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 04/23/2021) |
| 04/23/2021 | [269] | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: [267] MOTION to Dismiss *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer* |

| | | |
|---|---|---|
| | | *Plaintiffs' Second Amended Complaints*. . Document filed by Forest Laboratories Ireland, Ltd., Forest Laboratories Holdings, Ltd., Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Watson Laboratories, Inc. (NV), Allergan, Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, Inc., Allergan USA, Inc., Hetero Labs Ltd, Allergan Sales, LLC, Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Forest Laboratories, LLC, ALBERTSONS COMPANIES, INC., AbbVie Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co.. (Attachments: # 1 Appendix)Motion or Order to File Under Seal: 147 .(Gidley, John) (Entered: 04/23/2021) |
| 04/23/2021 | 270 | ***SELECTED PARTIES***DECLARATION of Peter J. Carney in Support re: 267 MOTION to Dismiss *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints*.. Document filed by Forest Laboratories Ireland, Ltd., Forest Laboratories Holdings, Ltd., Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Watson Laboratories, Inc. (NV), ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, Inc., Allergan USA, Inc., Hetero Labs Ltd, Allergan Sales, LLC, Allergan, Inc., Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Forest Laboratories, LLC, ALBERTSONS COMPANIES, INC., AbbVie Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19)Motion or Order to File Under Seal: 147 .(Carney, Peter) (Entered: 04/23/2021) |
| 04/23/2021 | 271 | MOTION to Dismiss *Notice of Defendants' Motion to Dismiss the End-Payor or Plaintiffs' Amended Consolidated Class Action Complaint*. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan |

| | | |
|---|---|---|
| | | Sales, LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Text of Proposed Order).(Gidley, John) (Entered: 04/23/2021) |
| 04/23/2021 | 272 | MEMORANDUM OF LAW in Support re: 271 MOTION to Dismiss *Notice of Defendants' Motion to Dismiss the End-Payor or Plaintiffs' Amended Consolidated Class Action Complaint*. . Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 04/23/2021) |
| 05/07/2021 | 273 | LETTER MOTION to Seal *[Public Version]* addressed to Judge Lewis J. Liman from Peter J. Carney dated May 7, 2021. Document filed by AbbVie Inc., Actavis, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # 1 Memorandum of Law in Support of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints, # 2 Declaration of Peter J. Carney in Support of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints Pursuant to Federal Rule of Civil Procedure 12(b)(6), # 3 Exhibit 1 - Filed Under Seal, # 4 Exhibit 2 - Filed Under Seal, # 5 Exhibit 3 - Filed Under Seal, # 6 Exhibit 4 - Filed Under Seal, # 7 Exhibit 5 - Filed Under Seal, # 8 Exhibit 6 - Filed Under Seal, # 9 Exhibit 7 - Filed Under Seal, # 10 Exhibit 8 - Filed Under Seal, # 11 Exhibit 9 - Filed Under Seal, # 12 Exhibit 10 - Filed Under Seal, # 13 Exhibit 11 - Filed Under Seal, # 14 Exhibit 12 - Filed Under Seal, # 15 Exhibit 13 - Filed Under Seal, # 16 Exhibit 14 - Filed Under Seal, # 17 Exhibit 15 - Filed Under Seal, # 18 Exhibit 16 - Filed Under Seal, # 19 Exhibit 17 - Filed Under Seal, # 20 Exhibit 18 - Filed Under Seal, # 21 Exhibit 19 - Filed Under Seal).(Carney, Peter) (Entered: 05/07/2021) |
| 05/07/2021 | 274 | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Peter J. Carney dated May 7, 2021 Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Rite Aid Corporation, Allergan Sales LLC, Actavis, Inc., Law Enforcement Health Benefits, Inc., Hetero USA Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, J M Smith Corporation, Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Mayor and City Council of Baltimore, Walgreen Co., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., H-E-B L.P., Indchemie Health Specialties Private Ltd., Rite Aid Hdqtrs. Corp.,, UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories |

| | | |
|---|---|---|
| | | Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories Inc., Teamsters Western Region & Local 177 Health Care Plan, Allergan, Inc., Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., The Kroger Co., ALBERTSONS COMPANIES, INC., Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., CVS Pharmacy, Inc.. (Attachments: # 1 Memorandum of Law in Support of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints, # 2 Declaration of Peter J. Carney in Support of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints Pursuant to Federal Rule of Civil Procedure 12(b)(6), # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16, # 19 Exhibit 17, # 20 Exhibit 18, # 21 Exhibit 19)Motion or Order to File Under Seal: 273 .(Carney, Peter) (Entered: 05/07/2021) |
| 05/13/2021 | 275 | JOINDER to join re: 267 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints*. . Document filed by Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd...(Snyder, Tobias) (Entered: 05/13/2021) |
| 05/13/2021 | 276 | JOINDER to join re: 265 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2).*., 266 Memorandum of Law in Support of Motion,,, . Document filed by Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd...(Snyder, Tobias) (Entered: 05/13/2021) |
| 05/13/2021 | 277 | JOINDER to join re: 271 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the End-Payor or Plaintiffs' Amended Consolidated Class Action Complaint*., 272 Memorandum of Law in Support of Motion,,,, . Document filed by Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd...(Snyder, Tobias) (Entered: 05/13/2021) |
| 05/17/2021 | 278 | NOTICE OF APPEARANCE by Tobias George Snyder on behalf of Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd...(Snyder, Tobias) (Entered: 05/17/2021) |
| 05/27/2021 | 279 | LETTER MOTION to Seal *Memorandum of Law in Opposition to Defendants Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs Second Amended Complaints* addressed to Judge Lewis J. Liman from Kimberly M. Hennings dated May 27, 2021. Document filed by ALBERTSONS COMPANIES, INC., CVS Pharmacy, Inc., H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, The Kroger Co., Walgreen Co...(Hennings, Kimberly) (Entered: 05/27/2021) |
| 05/27/2021 | 280 | LETTER MOTION to Seal *End-Payor Plaintiffs' Opposition to Certain Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, Declaration of Donna M. Evans, and Exhibits A through G* addressed to Judge Lewis J. Liman from Sharon K. Robertson and Robin A. van der Meulen dated May 27, 2021. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Robertson, Sharon) (Entered: 05/27/2021) |
| 05/27/2021 | 281 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 265 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2).* . Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement |

| | | Health Benefits, Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, UFCW Local 1500 Welfare Fund, Teamsters Western Region & Local 177 Health Care Plan, ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Declaration of Donna M. Evans, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M)Motion or Order to File Under Seal: 280 .(Robertson, Sharon) (Entered: 05/27/2021) |
| 05/27/2021 | 282 | MEMORANDUM OF LAW in Opposition re: 265 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2). (Filed Under Seal)*. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund. (Attachments: # 1 Declaration of Donna M. Evans - Filed Under Seal, # 2 Exhibit A - Filed Under Seal, # 3 Exhibit B - Filed Under Seal, # 4 Exhibit C - Filed Under Seal, # 5 Exhibit D - Filed Under Seal, # 6 Exhibit E - Filed Under Seal, # 7 Exhibit F - Filed Under Seal, # 8 Exhibit G - Filed Under Seal, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M).(Robertson, Sharon) (Entered: 05/27/2021) |
| 05/27/2021 | 283 | MEMORANDUM OF LAW in Opposition re: 260 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2).* . Document filed by ALBERTSONS COMPANIES, INC., CVS Pharmacy, Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., UFCW Local 1500 Welfare Fund, Walgreen Co...(Hennings, Kimberly) (Entered: 05/27/2021) |
| 05/27/2021 | 284 | DECLARATION of Kimberly M. Hennings in Opposition re: 260 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)..* Document filed by ALBERTSONS COMPANIES, INC., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., UFCW Local 1500 |

| | | Welfare Fund, Walgreen Co.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 1A, # 3 Exhibit 1B, # 4 Exhibit 1C, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Exhibit 8).(Hennings, Kimberly) (Entered: 05/27/2021) |
|---|---|---|
| 05/27/2021 | 285 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 267 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints.* . Document filed by Rite Aid Corporation, J M Smith Corporation, Walgreen Co., H-E-B L.P., Rite Aid Hdqtrs. Corp.,, KPH Healthcare Services, Inc., The Kroger Co., ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. Motion or Order to File Under Seal: 279 .(Hennings, Kimberly) (Entered: 05/27/2021) |
| 05/27/2021 | 286 | MEMORANDUM OF LAW in Opposition re: 271 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the End-Payor or Plaintiffs' Amended Consolidated Class Action Complaint.* . Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Van Der Meulen, Robin) (Entered: 05/27/2021) |
| 06/30/2021 | 287 | REPLY MEMORANDUM OF LAW in Support re: 265 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2).* . Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, LTD, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc...(Bonder, Teresa) (Entered: 06/30/2021) |
| 06/30/2021 | 288 | REPLY MEMORANDUM OF LAW in Support re: 260 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2).* . Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 06/30/2021) |
| 06/30/2021 | 289 | REPLY MEMORANDUM OF LAW in Support re: 271 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the End-Payor or Plaintiffs' Amended Consolidated Class* |

| | | |
|---|---|---|
| | | *Action Complaint*. . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 06/30/2021) |
| 06/30/2021 | 290 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from J. Mark Gidley dated June 30, 2021. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 06/30/2021) |
| 06/30/2021 | 291 | DECLARATION of Peter J. Carney in Support re: 267 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints.*. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit 20 - Excerpt of Agreement and Plan of Merger 2-17-2014, # 2 Exhibit 21 - Email chain between Eric Agovino and others dated 3-1-2014 to 3-4-2014, # 3 Exhibit 22 - FTC FAQ's re: filing agreements created 2/9/2005).(Carney, Peter) (Entered: 06/30/2021) |
| 06/30/2021 | 292 | ***SELECTED PARTIES*** REPLY MEMORANDUM OF LAW in Support re: 267 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints.* . Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Hetero USA Inc., Glenmark Generics Inc., USA, Watson Laboratories, Inc. (NV), Actavis Inc., Allergan, Inc., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Watson Laboratories, Inc. (CT), Glenmark Generics Ltd., Amerigen Pharmaceuticals Inc., Watson Laboratories, Inc. (CT), Glenmark Pharmaceuticals S.A., Forest Laboratories, LLC, Torrent Pharma Inc., Forest Laboratories Inc., Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., |

| | | |
|---|---|---|
| | | ALBERTSONS COMPANIES, INC., CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co.. Motion or Order to File Under Seal: 290 .(Gidley, John) (Entered: 06/30/2021) |
| 07/07/2021 | 293 | MOTION for Nicholas Urban to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-24762618. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by J M Smith Corporation. (Attachments: # 1 Affidavit Urban Declaration in Support of Pro Hac Vice Motion, # 2 Exhibit Urban Certificates of Good Standing, # 3 Text of Proposed Order Proposed Order).(Urban, Nicholas) (Entered: 07/07/2021) |
| 07/07/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 293 MOTION for Nicholas Urban to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-24762618. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 07/07/2021) |
| 07/14/2021 | 294 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Peter J. Carney dated July 14, 2021. Document filed by AbbVie Inc., Actavis, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # 1 Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints).(Carney, Peter) (Entered: 07/14/2021) |
| 07/14/2021 | 295 | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Peter J. Carney dated July 14, 2021 Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Rite Aid Corporation, Allergan Sales LLC, Actavis, Inc., Law Enforcement Health Benefits, Inc., Hetero USA Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, J M Smith Corporation, Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Mayor and City Council of Baltimore, Walgreen Co., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., H-E-B L.P., Indchemie Health Specialties Private Ltd., Rite Aid Hdqtrs. Corp.,, UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Teamsters Western Region & Local 177 Health Care Plan, Allergan, Inc., Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., The Kroger Co., ALBERTSONS COMPANIES, INC., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., CVS Pharmacy, Inc., Forest Laboratories, LLC. (Attachments: # 1 Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints)Motion or Order to File Under Seal: 294 .(Carney, Peter) (Entered: 07/14/2021) |

| 09/03/2021 | 296 | MOTION to Serve *DIRECT PURCHASER CLASS PLAINTIFFS MOTION FOR ALTERNATIVE SERVICE ON TORRENT PHARMACEUTICALS, LTD.*. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc...(Litvin, Dan) (Entered: 09/03/2021) |
|---|---|---|
| 09/03/2021 | 297 | DECLARATION of Dan Litvin in Support re: 296 MOTION to Serve *DIRECT PURCHASER CLASS PLAINTIFFS MOTION FOR ALTERNATIVE SERVICE ON TORRENT PHARMACEUTICALS, LTD...* Document filed by J M Smith Corporation, KPH Healthcare Services, Inc.. (Attachments: # 1 Ex. 1, # 2 Ex. 2, # 3 Ex. 3, # 4 Ex. 4). (Litvin, Dan) (Entered: 09/03/2021) |
| 09/03/2021 | 298 | MEMORANDUM OF LAW in Support re: 296 MOTION to Serve *DIRECT PURCHASER CLASS PLAINTIFFS MOTION FOR ALTERNATIVE SERVICE ON TORRENT PHARMACEUTICALS, LTD..* . Document filed by J M Smith Corporation, KPH Healthcare Services, Inc...(Litvin, Dan) (Entered: 09/03/2021) |
| 09/13/2021 | 299 | JOINDER to join re: 296 MOTION to Serve *DIRECT PURCHASER CLASS PLAINTIFFS MOTION FOR ALTERNATIVE SERVICE ON TORRENT PHARMACEUTICALS, LTD..* . Document filed by UFCW Local 1500 Welfare Fund.. (Van Der Meulen, Robin) (Entered: 09/13/2021) |
| 09/13/2021 | 300 | DECLARATION of Robin van der Meulen in Support re: 299 Joinder. Document filed by UFCW Local 1500 Welfare Fund. (Attachments: # 1 Exhibit 1 - Delivery Confirmation from UPS).(Van Der Meulen, Robin) (Entered: 09/13/2021) |
| 09/14/2021 | 301 | ORDER granting 207 Motion for Anna T. Neill to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) Transmission to Attorney Services/Help Desk. (Entered: 09/14/2021) |
| 09/14/2021 | 302 | ORDER granting 209 Motion for Eric Grannon to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) Transmission to Attorney Services/Help Desk. (Entered: 09/14/2021) |
| 09/14/2021 | 303 | ORDER granting 210 Motion for James Tierney to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) Transmission to Attorney Services/Help Desk. (Entered: 09/14/2021) |
| 09/14/2021 | 304 | ORDER granting 211 Motion for John ("Jay") Jurata, Jr. to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) Transmission to Attorney Services/Help Desk. (Entered: 09/14/2021) |
| 09/14/2021 | 305 | ORDER granting 239 Motion to Withdraw as Attorney. Attorney Sarah K. Frederick terminated (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) (Entered: 09/14/2021) |
| 09/14/2021 | 306 | ORDER granting 293 Motion for Nicholas Urban to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) Transmission to Attorney Services/Help Desk. (Entered: 09/14/2021) |
| 09/17/2021 | 307 | ORDER denying 102 Letter Motion to Seal; granting 106 Letter Motion to Seal; denying 110 Letter Motion to Seal; denying 112 Letter Motion to Seal; granting 139 Letter Motion to Seal; granting 221 Letter Motion to Seal; denying 224 Letter Motion to Seal; granting 237 Letter Motion to Seal; granting 249 Letter Motion to Seal. This order addresses several pending motions to seal in this case. The Courts decisions on these motions are without prejudice to the Court's unsealing either on motion or sua sponte. The motion at Dkt. No. 102 is denied. The motion at Dkt. No. 106 is granted, and the exhibits at Dkt. Nos. 104-2 through 104-16 shall remain under seal. The Clerk is respectfully directed to unseal Dkt. Nos. 103, 104, 104-1, 104-17, 104-18. The motions at Dkt. Nos. 110 and 112 |

| | | |
|---|---|---|
| | | are denied. The motion at Dkt. No. 139 is granted. Plaintiffs shall file the partially redacted complaints consistent with the redactions at Dkt. Nos. 139-1 and 139-2. The motion at Dkt. No. 221 is granted, and the exhibit at Dkt. No. 222-3 may be maintained under seal. The motion at Dkt. No. 224 is denied. The motion at Dkt. No. 237 is granted, and the memorandum and declaration shall be filed in partially redacted form as set forth in Dkt. Nos. 237-1 and 237-2, respectively. The exhibits filed at Dkt. Nos. 227-1 through 227-19 shall remain under seal. The motion at Dkt. No. 249 is granted to the extent that it seeks to file publicly a second consolidated and amended class action complaint with redactions consistent with those approved at Dkt. No. 161. All filings to be made in the form directed by this order on the public docket by September 20, 2021. The Clerk is respectfully directed to close the motions at Dkt. Nos. 102, 106, 110, 112, 139, 221, 224, 237, and 249. SO ORDERED.. (Signed by Judge Lewis J. Liman on 9/17/2021) (kv) (Entered: 09/17/2021) |
| 09/20/2021 | 308 | LETTER addressed to Judge Lewis J. Liman from Barry L. Refsin dated September 20, 2021 re: Redacted Second Amended Complaint filed by CVS & Rite Aid. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,..(Refsin, Barry) (Entered: 09/20/2021) |
| 09/20/2021 | 309 | LETTER addressed to Judge Lewis J. Liman from Kimberly M. Hennings dated 9/20/2021 re: Redacted Second Consolidated and Amended Complaint. Document filed by J M Smith Corporation..(Hennings, Kimberly) (Entered: 09/20/2021) |
| 09/20/2021 | 310 | JOINDER to join re: 296 MOTION to Serve *DIRECT PURCHASER CLASS PLAINTIFFS MOTION FOR ALTERNATIVE SERVICE ON TORRENT PHARMACEUTICALS, LTD.. by Retailer Plaintiffs*. Document filed by ALBERTSONS COMPANIES, INC., CVS Pharmacy, Inc., H-E-B L.P., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, The Kroger Co., Walgreen Co.. (Attachments: # 1 Declaration of Barry L. Refsin in Support of Retailer Plaintiffs' Joinder in Motion for Alternate Service, # 2 Exhibit 1 to Declaration, # 3 Exhibit 2 to Declaration).(Refsin, Barry) (Entered: 09/20/2021) |
| 09/20/2021 | 311 | MEMORANDUM OF LAW in Support re: 223 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints. (Public Redacted Memorandum)*. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals S.A., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 09/20/2021) |
| 09/20/2021 | 312 | OPINION & ORDER re: 296 MOTION to Serve *DIRECT PURCHASER CLASS PLAINTIFFS MOTION FOR ALTERNATIVE SERVICE ON TORRENT PHARMACEUTICALS, LTD.* filed by J M Smith Corporation, KPH Healthcare Services, Inc. The motion for alternative service on Torrent is GRANTED. The Court hereby orders that Plaintiffs may serve Torrent via email to its Vice President (Legal) & Company Secretary, Mahesh Agrawal at maheshagrawal@torrentpharma.com. The Clerk of Court is respectfully directed to close Dkt. No. 296. SO ORDERED. (Signed by Judge Lewis J. Liman on 9/20/2021) (va) (Entered: 09/20/2021) |
| 09/20/2021 | 313 | DECLARATION of Peter J. Carney in Support re: 223 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints..* |

| | | |
|---|---|---|
| | | Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit 1 - Filed Under Seal, # 2 Exhibit 2 - Filed Under Seal, # 3 Exhibit 3 - Filed Under Seal, # 4 Exhibit 4 - Filed Under Seal, # 5 Exhibit 5 - Filed Under Seal, # 6 Exhibit 6 - Filed Under Seal, # 7 Exhibit 7 - Filed Under Seal, # 8 Exhibit 8 - Filed Under Seal, # 9 Exhibit 9 - Filed Under Seal, # 10 Exhibit 10 - Filed Under Seal, # 11 Exhibit 11 - Filed Under Seal, # 12 Exhibit 12 - Filed Under Seal, # 13 Exhibit 13 - Filed Under Seal, # 14 Exhibit 14 - Filed Under Seal, # 15 Exhibit 15 - Filed Under Seal, # 16 Exhibit 16 - Filed Under Seal, # 17 Exhibit 17 - Filed Under Seal, # 18 Exhibit 18 - Filed Under Seal, # 19 Exhibit 19 - Filed Under Seal). (Carney, Peter) (Entered: 09/20/2021) |
| 09/20/2021 | 314 | LETTER addressed to Judge Lewis J. Liman from Sharon K. Robertson and Robin A. van der Meulen dated September 20, 2021 re: Order ECF No. 307. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Robertson, Sharon) (Entered: 09/20/2021) |
| 09/21/2021 | 315 | ORDER: For the reasons given in the Court's Opinion and Order dated September 20, 2021, see Dkt. No. 312, the Court hereby orders that Retailer Plaintiffs may serve Torrent via email to its Vice President (Legal) & Company Secretary Mahesh Agrawal at maheshagrawal@torrentpharma.com. And as set forth herein. SO ORDERED. (Signed by Judge Lewis J. Liman on 9/21/2021) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (ama) (Entered: 09/21/2021) |
| 09/21/2021 | 316 | ORDER: End-Payor Plaintiffs ("EPPs") seek clarification of the Courts Order regarding sealing motions. See Dkt. No. 314. The Court directs EPPs to file a redacted version of the initial consolidated complaint on the public docket in accordance with its Order at Dkt. No. 307. SO ORDERED. (Signed by Judge Lewis J. Liman on 9/21/2021) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (ama) (Entered: 09/21/2021) |
| 09/21/2021 | 317 | AMENDED COMPLAINT amending 113 Amended Complaint,,,,,,,,,, against ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc. with |

| | | |
|---|---|---|
| | | JURY DEMAND.Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, UFCW Local 1500 Welfare Fund, Teamsters Western Region & Local 177 Health Care Plan. Related document: 113 Amended Complaint,,,,,,,,,,.(Robertson, Sharon) (Entered: 09/21/2021) |
| 09/24/2021 | 318 | PROPOSED STIPULATION AND ORDER. Document filed by Torrent Pharmaceuticals Ltd...(Allon, Devora) (Entered: 09/24/2021) |
| 09/24/2021 | 319 | STIPULATION AND ORDER REGARDING SERVICE FOR DEFENDANT TORRENT PHARMACEUTICALS, LTD.: NOW THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE, subject to Court approval, by and among the undersigned counsel, on behalf of their respective clients, as follows: 1. Torrent Pharmaceuticals Ltd. has actual notice of this litigation. 2. Torrent Pharmaceuticals Ltd. hereby accepts, and agrees not to challenge the adequacy of, service of the Complaints of the DPPs (ECF No. 255), EPPs (ECF No. 256), and Retailer Plaintiffs (ECF Nos. 254-2, 258-2). 3. Torrent Pharmaceuticals Ltd. hereby joins in Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints (ECF No. 269); Motion to Dismiss the End-Payor Plaintiffs' Amended Consolidated Class Action Complaint (ECF No. 272); and Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 266), and agrees that it will be bound by the Court's resolution of those fully-briefed motions. IT IS SO ORDERED. (Signed by Judge Lewis J. Liman on 9/24/2021) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (va) (Entered: 09/27/2021) |
| 09/27/2021 | 320 | NOTICE OF APPEARANCE by Devora Whitman Allon on behalf of Torrent Pharmaceuticals Ltd.. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(Allon, Devora) (Entered: 09/27/2021) |
| 09/27/2021 | 321 | NOTICE OF APPEARANCE by Jay Philip Lefkowitz on behalf of Torrent Pharmaceuticals Ltd.. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(Lefkowitz, Jay) (Entered: 09/27/2021) |
| 09/27/2021 | 322 | NOTICE OF APPEARANCE by Gilad Bendheim on behalf of Torrent Pharmaceuticals Ltd.. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(Bendheim, Gilad) (Entered: 09/27/2021) |
| 09/28/2021 | 323 | NOTICE OF APPEARANCE by Travis Roher on behalf of Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc...(Roher, Travis) (Entered: 09/28/2021) |
| 10/26/2021 | 324 | NOTICE OF APPEARANCE by Jonathan Daniel Janow on behalf of Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc...(Janow, Jonathan) (Entered: 10/26/2021) |
| 10/26/2021 | 325 | NOTICE OF APPEARANCE by Abigail Flynn Coster on behalf of Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc...(Coster, Abigail) (Entered: 10/26/2021) |
| 11/04/2021 | 326 | ORDER, It is hereby ORDERED that the parties appear for oral argument on the four motions to dismiss currently pending before the Court in this case. See Dkt. Nos. 260, 265, 267, 271. The argument shall take place on December 14, 2021 at 2:00 p.m. in Courtroom 15C of the 500 Pearl Street Courthouse and will last one hour. The parties are directed to meet and confer and, by December 7, 2021, file on the docket a letter informing the Court of a proposed agenda and order of argument. Members of the public may listen to the argument by dialing into 888-251-2909, using access code 2123101, and following the necessary prompts. SO ORDERED. ( Oral Argument set for 12/14/2021 at 02:00 PM in Courtroom 15C, 500 Pearl Street, New York, NY 10007 before Judge Lewis J. Liman.) (Signed by Judge Lewis J. Liman on 11/4/21) (yv) (Entered: 11/04/2021) |

| | | |
|---|---|---|
| 11/23/2021 | [327](#) | LETTER addressed to Judge Lewis J. Liman from Tobias Snyder dated November 23, 2021 re: requesting that Amerigen's counsel be permitted to appear telephonically at the December 14, 2021 hearing. Document filed by Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd...(Snyder, Tobias) (Entered: 11/23/2021) |
| 11/24/2021 | [328](#) | MEMO ENDORSEMENT on re: [327](#) Letter, filed by Amerigen Pharmaceuticals Ltd., Amerigen Pharmaceuticals Inc. ENDORSEMENT: The request is GRANTED. SO ORDERED. (Signed by Judge Lewis J. Liman on 11/24/2021) (va) (Entered: 11/24/2021) |
| 11/30/2021 | [329](#) | MOTION for Nicholas Urban to Withdraw as Attorney . Document filed by J M Smith Corporation. (Attachments: # [1](#) Text of Proposed Order).(Coslett, Caitlin) (Entered: 11/30/2021) |
| 11/30/2021 | [330](#) | MOTION for Celia McLaughlin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25401800. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by AbbVie Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # [1](#) Notarized Affidavit, # [2](#) Proposed Order, # [3](#) DC Certificate of Good Standing, # [4](#) NY Certificate of Good Standing).(McLaughlin, Celia) (Entered: 11/30/2021) |
| 11/30/2021 | [331](#) | MOTION for Holly Letourneau to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25402282. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by AbbVie Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # [1](#) Notarized Affidavit, # [2](#) Proposed Order, # [3](#) DC Certificate of Good Standing, # [4](#) VA Certificate of Good Standing).(Letourneau, Holly) (Entered: 11/30/2021) |
| 11/30/2021 | [332](#) | MOTION for Adam M. Acosta to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25402331. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by AbbVie Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # [1](#) Notarized Affidavit, # [2](#) Proposed Order, # [3](#) DC Certificate of Good Standing, # [4](#) Indiana Certificate of Good Standing).(Acosta, Adam) (Entered: 11/30/2021) |
| 12/01/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. [330](#) MOTION for Celia McLaughlin to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25401800. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/01/2021) |
| 12/01/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. [331](#) MOTION for Holly Letourneau to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25402282. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/01/2021) |
| 12/01/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. [332](#) MOTION for Adam M. Acosta to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25402331. Motion and supporting papers to be reviewed** |

| | | |
|---|---|---|
| | | by Clerk's Office staff.. **The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/01/2021) |
| 12/01/2021 | 333 | NOTICE OF APPEARANCE by Christine Kelly Newman on behalf of AbbVie Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc...(Newman, Christine) (Entered: 12/01/2021) |
| 12/03/2021 | 334 | JOINT LETTER addressed to Judge Lewis J. Liman re: December 14, 2021 Oral Argument on Motions to Dismiss. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc...(Gidley, John) (Entered: 12/03/2021) |
| 12/03/2021 | 335 | MEMO ENDORSEMENT: on re: 334 Letter filed by Watson Pharma, Inc., Hetero Drugs LTD., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Forest Laboratories, Inc., Watson Laboratories, Inc. (DE), Amerigen Pharmaceuticals Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Allergan Sales, LLC, Amerigen Pharmaceuticals Ltd., Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Abbvie, Inc., Actavis, Inc., Glenmark Generics Ltd., Teva Pharmaceuticals USA, Inc., Forest Laboratories, LLC, Watson Laboratories, Inc. (NV), Hetero USA Inc., Alkem Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd, Forest Laboratories Holdings, Ltd. ENDORSEMENT: The Court approves the proposed agenda. The Court will inform the parties in advance if it has any particular questions it wishes the parties to address. SO ORDERED. (Signed by Judge Lewis J. Liman on 12/03/2021) (ama) (Entered: 12/03/2021) |
| 12/08/2021 | 336 | MOTION for Allen R. Davis to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25442352. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by ANI Pharmaceuticals, Inc.. (Attachments: # 1 Affidavit of Allen Davis in Support, # 2 Certificate of Good Standing - NY, # 3 Certificate of Good Standing - DC, # 4 Text of Proposed Order).(Davis, Allen) (Entered: 12/08/2021) |
| 12/08/2021 | 337 | JOINT LETTER addressed to Judge Lewis J. Liman dated December 8, 2021 re: Electronics Order for December 14, 2021 Oral Argument. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit A - Proposed Electronic Order).(Gidley, John) (Entered: 12/08/2021) |

| 12/09/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 336 MOTION for Allen R. Davis to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25442352. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/09/2021) |
|---|---|---|
| 12/13/2021 | 338 | ORDER granting 336 Motion for Allen R. Davis to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (LCkc) Transmission to Attorney Services/Help Desk. (Entered: 12/13/2021) |
| 12/13/2021 | 339 | ORDER granting 330 Motion for Celia McLaughlin to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (LCkc) Transmission to Attorney Services/Help Desk. (Entered: 12/13/2021) |
| 12/13/2021 | 340 | ORDER granting 331 Motion for Holly Letourneau to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (LCkc) Transmission to Attorney Services/Help Desk. (Entered: 12/13/2021) |
| 12/13/2021 | 341 | ORDER granting 332 Motion for Adam M. Acosta to Appear Pro Hac Vice (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (LCkc) Transmission to Attorney Services/Help Desk. (Entered: 12/13/2021) |
| 12/13/2021 | 342 | ORDER granting 329 Motion to Withdraw as Attorney. Attorney Nicholas Urban terminated (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (LCkc) (Entered: 12/13/2021) |
| 12/13/2021 | | ORDER: The Oral Argument on the motions to dismiss scheduled for December 14, 2021 is MOVED to 1:30PM in Courtroom 15C at the 500 Pearl Street Courthouse. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (mf) (Entered: 12/13/2021) |
| 12/13/2021 | | Set/Reset Hearings: Oral Argument set for 12/14/2021 at 01:30 PM in Courtroom 15C, 500 Pearl Street, New York, NY 10007 before Judge Lewis J. Liman. (mf) (Entered: 12/13/2021) |
| 12/14/2021 | | Minute Entry for proceedings held before Judge Lewis J. Liman: Oral Argument held on 12/14/2021 in re: (Dkt. Nos. 267, 272, and 265) pending motions to dismiss. Kimberly Hennings and Donna Evans present on behalf of Plaintiffs. Eric Grannon and Teresa Bonder present on behalf of Defendants. Court reporter present. The Court heard argument from parties regarding Dkt. No. 267 Defendants Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs Second Amended Complaint, Dkt. No. 272 Defendants Motion to Dismiss the End-Payor Plaintiffs Amended Consolidated Class Action Complaint, and Dkt. No. 265 Non-Resident Defendants Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction. Argument taken under advisement, decision reserved by the Court. Parties directed to order a copy of the transcript of the hearing on an expedited basis. (mf) (Entered: 12/17/2021) |
| 12/20/2021 | 343 | TRANSCRIPT of Proceedings re: CONFERENCE held on 12/14/2021 before Judge Lewis J. Liman. Court Reporter/Transcriber: Sadie Herbert, (212) 805-0310. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/10/2022. Redacted Transcript Deadline set for 1/20/2022. Release of Transcript Restriction set for 3/21/2022.Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(Moya, Goretti) (Entered: 12/20/2021) |
| 12/20/2021 | 344 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 12/14/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) |

| | | |
|---|---|---|
| | | calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL. (Moya, Goretti) (Entered: 12/20/2021) |
| 01/07/2022 | 345 | LETTER addressed to Judge Lewis J. Liman from Christopher T. Holding dated January 7, 2022 re: Notice of Supplemental Authority. Document filed by Teva Pharmaceutical Industries Ltd.. (Attachments: # 1 Exhibit A).(Holding, Christopher) (Entered: 01/07/2022) |
| 01/11/2022 | 346 | MOTION for Noah Brumfield to Withdraw as Attorney . Document filed by AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # 1 Text of Proposed Order re: Withdrawal of Noah Brumfield In Re Bystolic Antitrust).(Brumfield, Noah) (Entered: 01/11/2022) |
| 01/12/2022 | 347 | ORDER granting 346 Motion to Withdraw as Attorney. Attorney Noah Brumfield terminated (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (LCkc) (Entered: 01/12/2022) |
| 01/18/2022 | 348 | JOINT LETTER addressed to Judge Lewis J. Liman from Kimberly Hennings dated 1/18/2022 re: Notice of Supplemental Authority. Document filed by J M Smith Corporation..(Hennings, Kimberly) (Entered: 01/18/2022) |
| 01/24/2022 | 349 | ***SELECTED PARTIES*** OPINION AND ORDER re: 260 MOTION to Dismiss for Lack of Jurisdiction Under Rule 12(b)(2) filed by Teva Pharmaceutical Industries Ltd., 267 MOTION to Dismiss / Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints filed by Watson Pharma, Inc., Hetero Drugs LTD., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Forest Laboratories, Inc., Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Allergan Sales, LLC, Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Glenmark Pharmaceuticals S.A., Abbvie, Inc., Actavis, Inc., Glenmark Generics Ltd., Forest Laboratories, LLC, Watson Laboratories, Inc. (NV), Hetero USA Inc., Alkem Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd, Forest Laboratories Holdings, Ltd., Watson Pharmaceuticals Inc., 271 MOTION to Dismiss / Notice of Defendants' Motion to Dismiss the End-Payor or Plaintiffs' Amended Consolidated Class Action Complaint filed by Watson Pharma, Inc., Hetero Drugs LTD., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Forest Laboratories, Inc., Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Allergan Sales, LLC, Teva Pharmaceutical Industries Ltd., Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Glenmark Pharmaceuticals S.A., Abbvie, Inc., Actavis, Inc., Glenmark Generics Ltd., Forest Laboratories, LLC, Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Alkem Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd, Forest Laboratories Holdings, Ltd., Watson Pharmaceuticals Inc., 265 MOTION to Dismiss for Lack of Jurisdiction Under Rule 12(b)(2) filed by Watson Pharma, Inc., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., Allergan, Inc., Allergan USA, Inc., Forest Laboratories Ireland, LTD, Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics |

| | | Inc., USA, Watson Laboratories, Inc. (DE), Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Actavis Inc., Teva Pharmaceutical Industries Ltd., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Glenmark Pharmaceuticals S.A., Abbvie, Inc., Glenmark Generics Ltd., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Alkem Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd. Defendants' motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim is GRANTED, and the Direct Purchaser and Retailer Plaintiffs' Complaints are DISMISSSED without prejudice to Direct Purchaser Plaintiffs and Retailer Plaintiffs filing amended complaints by February 22, 2022. Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint for failure to state a claim is GRANTED, and the End-Payor Plaintiffs' Complaint is DISMISSED without prejudice to End-Payor Plaintiffs filing an amended complaint by February 22, 2022. Nonresident Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint's ninety-nine non-New York, state-law claims for lack of personal jurisdiction and Teva Israel's motion to dismiss for lack of personal jurisdiction are DENIED as moot. The Clerk of Court is respectfully directed to close Dkt. Nos. 260, 265, 267, 271. For the reasons explained in an accompanying Order, this Opinion and Order will be filed temporarily under seal until the Court can review any redactions the parties propose. The Clerk of Court is respectfully directed to file this Opinion and Order under seal, viewable only to the Court and the parties to this action. SO ORDERED. (Signed by Judge Lewis J. Liman on 1/24/2022) (va) (Entered: 01/24/2022) |
|---|---|---|
| 01/24/2022 | [350](#) | ORDER: For the reasons stated in the Opinion and Order filed by the Court today: Defendants' motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim is GRANTED, and the Direct Purchaser and Retailer Plaintiffs' Complaints are DISMISSED without prejudice to Direct Purchaser Plaintiffs and Retailer Plaintiffs filing amended complaints by February 22, 2022. Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint for failure to state a claim is GRANTED, and the End-Payo r Plaintiffs' Complaint is DISMISSED without prejudice to End-Payor Plaintiffs filing an amended complaint by February 22, 2022. Nonresident Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint's ninety-nine non-New York, state-law claims for lack of personal jurisdiction and Teva Israel's motion to dismiss for lack of personal jurisdiction are DENIED without prejudice as moot. In order to preserve the ability of the parties to move the Court for redactions from the Opinion and Order, the Opinion and Order is temporarily filed under seal. The parties shall meet and confer with respect to potential redactions and, by January 31, 2022, the parties shall file any proposed redactions pursuant to the Court's Individual Practices. In addition, the parties are invited to inform the Court of any errors in citation, typography, or similar errors they discover in their review. The Court will rule on any outstanding motions to seal at the same time it rules on any proposed redactions to the Opinion and Order. SO ORDERED. ( Amended Pleadings due by 2/22/2022.) (Signed by Judge Lewis J. Liman on 1/24/2022) (va) (Entered: 01/24/2022) |
| 01/31/2022 | [351](#) | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Celia A. McLaughlin dated January 31, 2022. Document filed by AbbVie Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # [1](#) Opinion and Order (Public Redacted Version)).(McLaughlin, Celia) (Entered: 01/31/2022) |
| 01/31/2022 | [352](#) | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Celia A. McLaughlin dated January 31, 2022 re: Approval to Seal. Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Rite Aid Corporation, Allergan Sales LLC, Law Enforcement |

| | | Health Benefits, Inc., Hetero USA Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, J M Smith Corporation, Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Actavis Inc., Allergan, Inc., Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Mayor and City Council of Baltimore, Walgreen Co., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., H-E-B L.P., Indchemie Health Specialties Private Ltd., Rite Aid Hdqtrs. Corp.,, UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Teamsters Western Region & Local 177 Health Care Plan, Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., The Kroger Co., ALBERTSONS COMPANIES, INC., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., CVS Pharmacy, Inc., Allergan Sales, LLC, Allergan USA, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC. (Attachments: # 1 Opinion and Order (Under-Seal Version))Motion or Order to File Under Seal: 351 .(McLaughlin, Celia) (Entered: 01/31/2022) |
| 02/02/2022 | 353 | ORDER: granting in part and denying in part 351 Letter Motion to Seal. The letter motion at Dkt. No. 351 to seal certain portions of the Court's Opinion and Order, filed under seal at Dkt. N. 349, is granted in part and denied in part. A partially redacted Opinion and Order will be filed. The Clerk of Court is respectfully directed to close the motion to seal at Dkt. No. 351. SO ORDERED. (Signed by Judge Lewis J. Liman on 2/02/2022) (ama) (Entered: 02/02/2022) |
| 02/02/2022 | 354 | OPINION AND ORDER: Defendants' motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim is GRANTED, and the Direct Purchaser and Retailer Plaintiffs' Complaints are DISMISSSED without prejudice to Direct Purchaser Plaintiffs and Retailer Plaintiffs filing amended complaints by February 22, 2022. Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint for failure to state a claim is GRANTED, and the End-Payor Plaintiffs' Complaint is DISMISSED without prejudice to End-Payor Plaintiffs filing an amended complaint by February 22, 2022. Nonresident Defendants' motion to dismiss the End- Payor Plaintiffs' Complaint's ninety-nine non-New York, state-law claims for lack of personal jurisdiction and Teva Israel's motion to dismiss for lack of personal jurisdiction are DENIED without prejudice as moot. The Clerk of Court is respectfully directed to close Dkt. Nos. 260, 265, 267, 271. SO ORDERED.., ( Amended Pleadings due by 2/22/2022.) (Signed by Judge Lewis J. Liman on 2/02/2022) (ama) (Entered: 02/02/2022) |
| 02/02/2022 | 355 | ORDER: granting 263 Letter Motion to Seal; denying 268 Letter Motion to Seal; granting 273 Letter Motion to Seal; denying 279 Letter Motion to Seal; denying 280 Letter Motion to Seal; denying 290 Letter Motion to Seal; granting 294 Letter Motion to Seal. This order addresses several pending motions to seal in this case. The motion at Dkt. No. 263 is granted, and the exhibit at Dkt. No. 262-3 may be maintained under seal. The motion at Dkt. No. 268 is denied. The motion at Dkt. No. 273 is granted, and Defendants are ordered to file their Memorandum of Law in Support of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints in partially redacted form as set forth in Dkt. No. 273-1. Defendants are also ordered to file the Declaration of Peter J. Carney; Exhibits 1 through 19 to the Carney Declaration may remain under seal. The motion at Dkt. No. 279 is denied. Direct Purchaser Plaintiffs and Retailer Plaintiffs are ordered to meet and confer with Defendants and propose for filing on the public docket a partially redacted Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second |

| | | |
|---|---|---|
| | | Amended Complaints. The motion at Dkt. No. 280 is denied. End-Payor Plaintiffs are ordered to meet and confer with Defendants and propose for filing on the public docket a partially redacted Opposition to Certain Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, including the Declaration of Donna M. Evans and Exhibits A through G. All proposed redactions should be limited to that material which is confidential and which satisfies the standards under Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006). Thus, where only a portion of an exhibit or a filing would satisfy the standards under Lugosch, only that portion should be redacted. The motion at Dkt. No. 290 is denied. The motion at Dkt. No. 294 is granted, and Defendants are ordered to file their Reply Memorandum of Law in Support of Their Motion toDismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints in partially redacted form as set forth in Dkt. No. 294-1. All filings are to be made in the form directed by this Order by February 9, 2022. Parties proposing redactions should follow the Court's Individual Practices, available at https://www.nysd.uscourts.gov/hon-lewis-j-liman. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 263, 268, 273, 279, 280, 290, and 294. SO ORDERED. (Signed by Judge Lewis J. Liman on 2/02/2022) (ama) (Entered: 02/02/2022) |
| 02/07/2022 | 356 | MOTION for Elyse D. Echtman to Withdraw as Attorney . Document filed by ANI Pharmaceuticals, Inc.. (Attachments: # 1 Certificate of Service).(Tierney, James) (Entered: 02/07/2022) |
| 02/07/2022 | 357 | DECLARATION of James J. Tierney in Support re: 356 MOTION for Elyse D. Echtman to Withdraw as Attorney .. Document filed by ANI Pharmaceuticals, Inc...(Tierney, James) (Entered: 02/07/2022) |
| 02/07/2022 | 358 | NOTICE OF APPEARANCE by Eileen Marie Cole on behalf of ANI Pharmaceuticals, Inc...(Cole, Eileen) (Entered: 02/07/2022) |
| 02/09/2022 | 359 | LETTER MOTION to Seal *Redact* addressed to Judge Lewis J. Liman from Kimberly Hennings dated 02/09/2022. Document filed by J M Smith Corporation..(Hennings, Kimberly) (Entered: 02/09/2022) |
| 02/09/2022 | 360 | MEMORANDUM OF LAW in Opposition re: 359 LETTER MOTION to Seal *Redact* addressed to Judge Lewis J. Liman from Kimberly Hennings dated 02/09/2022. . Document filed by J M Smith Corporation..(Hennings, Kimberly) (Entered: 02/09/2022) |
| 02/09/2022 | 361 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 359 LETTER MOTION to Seal *Redact* addressed to Judge Lewis J. Liman from Kimberly Hennings dated 02/09/2022. . Document filed by J M Smith Corporation, ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva |

| | | Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. Motion or Order to File Under Seal: 359 .(Hennings, Kimberly) (Entered: 02/09/2022) |
|---|---|---|
| 02/09/2022 | 362 | LETTER MOTION to Seal */Unseal* addressed to Judge Lewis J. Liman from Sharon K. Robertson & Robin A. van der Meulen dated 2/09/2022. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Robertson, Sharon) (Entered: 02/09/2022) |
| 02/09/2022 | 363 | MEMORANDUM OF LAW in Support re: 267 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints. [Public Version]*. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 02/09/2022) |
| 02/09/2022 | 364 | DECLARATION of Peter J. Carney [Public Version] in Support re: 267 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints.*. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Ltd., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19).(Carney, Peter) (Entered: 02/09/2022) |
| 02/09/2022 | 365 | REPLY MEMORANDUM OF LAW in Support re: 267 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Second Amended Complaints. [Public Version]*. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical |

| | | |
|---|---|---|
| | | Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 02/09/2022) |
| 02/10/2022 | 366 | ORDER granting 356 Motion to Withdraw as Attorney. Attorney Elyse D. Echtman terminated (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) (Entered: 02/10/2022) |
| 02/10/2022 | 367 | ORDER granting 359 Letter Motion to Seal; granting 362 Letter Motion to Seal. This Order addresses two sealing motions on the docket that were filed in response to the Court's Order at Dkt. No. 355. The motion at Dkt. No. 359 is granted. The motion at Dkt. No. 362 is granted. By February 17, 2022, End-Payor Plaintiffs are ordered to file on the public docket their Opposition to Certain Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (as filed under seal at Dkt. No. 281), the Declaration of Donna M. Evans (as filed under seal at Dkt. No. 281-1), and Exhibits A-M, with Exhibits A-G remaining under seal. The Clerk of Court is respectfully directed to close Dkt. Nos. 359 and 362. SO ORDERED. (Signed by Judge Lewis J. Liman on 2/10/2022) (vfr) (Entered: 02/10/2022) |
| 02/16/2022 | 368 | MEMORANDUM OF LAW in Opposition re: 265 MOTION to Dismiss for Lack of Jurisdiction *Under Rule 12(b)(2)*. . Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund. (Attachments: # 1 Declaration of Donna M. Evans, # 2 Exhibit A - Filed Under Seal, # 3 Exhibit B - Filed Under Seal, # 4 Exhibit C - Filed Under Seal, # 5 Exhibit D - Filed Under Seal, # 6 Exhibit E - Filed Under Seal, # 7 Exhibit F - Filed Under Seal, # 8 Exhibit G - Filed Under Seal, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M).(Robertson, Sharon) (Entered: 02/16/2022) |
| 02/16/2022 | 369 | NOTICE OF APPEARANCE by Deborah A. Elman on behalf of J M Smith Corporation.. (Elman, Deborah) (Entered: 02/16/2022) |
| 02/18/2022 | 370 | MOTION for Jessica Weiner to Withdraw as Attorney . Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Robertson, Sharon) (Entered: 02/18/2022) |
| 02/22/2022 | 371 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Scott E. Perwin dated 02/22/2022. Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co...(Perwin, Scott) (Entered: 02/22/2022) |
| 02/22/2022 | 372 | LETTER MOTION to Seal *Direct Purchaser Class Plaintiffs' Third Consolidated and Amended Class Action Complaint* addressed to Judge Lewis J. Liman from Kimberly M. Hennings dated 2/22/2022. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc...(Hennings, Kimberly) (Entered: 02/22/2022) |
| 02/22/2022 | 373 | ***SELECTED PARTIES***THIRD AMENDED COMPLAINT amending 250 Amended Complaint,,,,,,,,,,, against All Defendants with JURY DEMAND.Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, J M Smith Corporation, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Actavis Inc., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., |

| | | |
|---|---|---|
| | | Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Allergan USA, Inc., Allergan, Inc., Allergan Sales, LLC, Hetero Labs Ltd, Forest Laboratories Ireland, LTD, Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., ALBERTSONS COMPANIES, INC., CVS Pharmacy, Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, H-E-B L.P., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., UFCW Local 1500 Welfare Fund, Walgreen Co.. Related document: [250] Amended Complaint,,,,,,,,,,Motion or Order to File Under Seal: [372] .(Hennings, Kimberly) (Entered: 02/22/2022) |
| 02/22/2022 | [374] | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Barry L. Refsin dated 02/22/2022. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,..(Refsin, Barry) (Entered: 02/22/2022) |
| 02/22/2022 | [375] | LETTER MOTION to Seal *EPP's Second Consolidated Amended Class Action Complaint* addressed to Judge Lewis J. Liman from Robin A. van der Meulen and Sharon K. Robertson dated February 22, 2022. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Van Der Meulen, Robin) (Entered: 02/22/2022) |
| 02/22/2022 | [376] | ***SELECTED PARTIES***SECOND AMENDED COMPLAINT amending [251] Amended Complaint,,,,,,,,,, against Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Actavis Inc., Amerigen Pharmaceuticals Ltd., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Allergan USA, Inc., Hetero Labs Ltd, Allergan Sales, LLC, Allergan, Inc., Glenmark Pharmaceuticals Ltd., Forest Laboratories Ireland, LTD, Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd. with JURY DEMAND.Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Forest Laboratories Holdings, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Law Enforcement Health Benefits, Inc., Glenmark Generics Inc., USA, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Allergan, Inc., Actavis, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Amerigen Pharmaceuticals Ltd., Indchemie Health Specialties Private Ltd., UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. |

| | | |
|---|---|---|
| | | (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories, Inc., Teamsters Western Region & Local 177 Health Care Plan, Allergan USA, Inc., Hetero Labs Ltd, Allergan Sales, LLC, Allergan, Inc., Glenmark Pharmaceuticals Ltd., Forest Laboratories Ireland, LTD, Hetero Drugs LTD., Forest Laboratories, LLC, Forest Laboratories Holdings Ltd., ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., CVS Pharmacy, Inc., H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, The Kroger Co., Walgreen Co.. Related document: <u>251</u> Amended Complaint,,,,,,,,,,,,.Motion or Order to File Under Seal: <u>375</u> .(Van Der Meulen, Robin) (Entered: 02/22/2022) |
| 02/24/2022 | 377 | ORDER granting <u>370</u> Motion to Withdraw as Attorney. Attorney Jessica B. Weiner terminated (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (kc) (Entered: 02/24/2022) |
| 02/24/2022 | 378 | ORDER. A telephonic case management conference is scheduled for March 31, 2022 at 4:00 p.m. Parties are directed to dial into the Court's teleconference line at 888-251-2909 and use access code 2123101. At the conference, the Court will address how the case is to proceed after Defendants have either answered or otherwise responded to the complaints. The Court will also review its Individual Practices regarding filing documents under seal or with redactions. To be approved, redactions must be narrowly tailored to serve whatever purpose justifies them and otherwise consistent with the presumption in favor of public access to judicial documents. See, e.g., Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (kc) (Entered: 02/24/2022) |
| 02/24/2022 | | Set/Reset Hearings: Case Management Conference set for 3/31/2022 at 04:00 PM before Judge Lewis J. Liman. (mf) (Entered: 02/24/2022) |
| 03/02/2022 | <u>379</u> | NOTICE OF CHANGE OF ADDRESS by Ahmed M.T. Riaz on behalf of Alkem Laboratories Ltd., Ascend Laboratories, LLC, Indchemie Health Specialties Private Ltd.. New Address: ArentFox Schiff LLP, 1185 Avenue of the Americas, Suite No. 3000, New York, New York, United States 10036, 212 753-5000. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08756-LJL.(Riaz, Ahmed) (Entered: 03/02/2022) |
| 03/04/2022 | <u>380</u> | JOINT LETTER addressed to Judge Lewis J. Liman from J. Mark Gidley dated March 4, 2022 re: Motion to Dismiss Briefing Schedule. Document filed by Abbvie, Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # <u>1</u> Exhibit A - Joint [Proposed] Stipulated Scheduling Order No. 4).(Gidley, John) (Entered: 03/04/2022) |
| 03/07/2022 | <u>381</u> | JOINT STIPULATED SCHEDULING ORDER NO. 4: NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE TO THE FOLLOWING SCHEDULE: Defendants file Motion(s) to Dismiss the Amended Complaints due April 19, 2022; Plaintiffs file Opposition(s) to Motion(s) to Dismiss due May 23, 2022; Defendants file Repl(ies) in further support of Motion(s) to Dismiss due June 24, 2022. For the renewed motions, the parties have agreed to a minor revision of the page limits that applied to the motions previously considered by the Court, but the aggregate page count will be the same. IT IS SO ORDERED. ( Motions due by 4/19/2022., Responses due by 5/23/2022, |

| | | |
|---|---|---|
| | | Replies due by 6/24/2022.) (Signed by Judge Lewis J. Liman on 3/7/2022) (vfr) (Entered: 03/07/2022) |
| 03/07/2022 | 382 | MOTION to Amend/Correct *Opinion and Order*. Document filed by UFCW Local 1500 Welfare Fund. (Attachments: # 1 Text of Proposed Order)Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(Van Der Meulen, Robin) (Entered: 03/07/2022) |
| 03/08/2022 | 383 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Celia A. McLaughlin dated March 8, 2022. Document filed by AbbVie Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # 1 CVS and Rite Aid Plaintiffs' Third Amended Complaint and Demand for Jury Trial, # 2 Direct Purchaser Plaintiffs' Third Consolidated and Amended Class Action Complaint, # 3 End-Payor Plaintiffs' Second Consolidated Amended Class Action Complaint and Jury Demand, # 4 Walgreen Plaintiffs' Third Amended Complaint and Demand for Jury Trial).(McLaughlin, Celia) (Entered: 03/08/2022) |
| 03/08/2022 | 384 | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Celia A. McLaughlin dated March 8, 2022 re: Letter Motion for Approval to File Under Seal. Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Allergan Sales LLC, Actavis Inc., Allergan, Inc., Allergan USA, Inc., Watson Pharmaceuticals Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Forest Laboratories Holdings Ltd., ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc.. (Attachments: # 1 Under-Seal Highlighted Version of CVS and Rite Aid Plaintiffs' Third Amended Complaint and Demand for Jury Trial, # 2 Under-Seal Highlighted Version of Direct Purchaser Plaintiffs Third Consolidated and Amended Class Action Complaint, # 3 Under-Seal Highlighted Version of End-Payor Plaintiffs Second Consolidated Amended Class Action Complaint and Jury Demand, # 4 Under-Seal Highlighted Version of Walgreen Plaintiffs' Third Amended Complaint and Demand for Jury Trial)Motion or Order to File Under Seal: 383 .(McLaughlin, Celia) (Entered: 03/08/2022) |
| 03/10/2022 | 385 | ORDER GRANTING END-PAYOR PLAINTIFFS' INTERIM CO-LEAD COUNSEL'S MOTION TO AMEND OPINION AND ORDER granting (382) Motion to Amend/Correct (382 in 1:20-cv-05735-LJL) MOTION to Amend/Correct *Opinion and Order* in case 1:20-cv-05735-LJL. Having considered End-Payor Plaintiffs' Interim Co-Lead Counsel's ("Counsel") Motion for an Order amending the Court's Opinion and Order appointing leadership of the End-Payor Class ("Leadership Order") to substitute DiCello Levitt Gutzler for Labaton Sucharow LLP as the firm affiliated with Robin van |

| | | |
|---|---|---|
| | | der Meulen, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Counsel's Motion for an Order amending the Court's Leadership Order is granted, and DiCello Levitt Gutzler shall be substituted for Labaton Sucharow LLP as the firm affiliation of Robin van der Meulen in this Action. The Clerk of Court is respectfully directed to close Dkt. No. 382. IT IS SO ORDERED. (Signed by Judge Lewis J. Liman on 3/10/2022) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (va) (Entered: 03/11/2022) |
| 03/30/2022 | | ORDER: The Telephonic Case Management Conference scheduled for March 31, 2022 at 4:00PM is CANCELLED. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (mf) (Entered: 03/30/2022) |
| 04/19/2022 | 386 | MOTION to Dismiss *for Lack of Personal Jurisdiction Under Rule 12(b)(2)*. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc...(Bonder, Teresa) (Entered: 04/19/2022) |
| 04/19/2022 | 387 | MEMORANDUM OF LAW in Support re: 386 MOTION to Dismiss *for Lack of Personal Jurisdiction Under Rule 12(b)(2)*. . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, LTD, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Bonder, Teresa) (Entered: 04/19/2022) |
| 04/19/2022 | 388 | MOTION to Dismiss *the February 2022 Complaints Under Rule 12(b)(2)*. Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 04/19/2022) |
| 04/19/2022 | 389 | MEMORANDUM OF LAW in Support re: 388 MOTION to Dismiss *the February 2022 Complaints Under Rule 12(b)(2)*. . Document filed by Teva Pharmaceutical Industries Ltd.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2).(Holding, Christopher) (Entered: 04/19/2022) |
| 04/19/2022 | 390 | DECLARATION of Brian Shanahan in Support re: 388 MOTION to Dismiss *the February 2022 Complaints Under Rule 12(b)(2)*.. Document filed by Teva Pharmaceutical Industries Ltd.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C).(Holding, Christopher) (Entered: 04/19/2022) |
| 04/19/2022 | 391 | LETTER MOTION to Seal *Exhibit C to the Shanahan Declaration* addressed to Judge Lewis J. Liman from Christopher T. Holding dated April 19, 2022. Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 04/19/2022) |
| 04/19/2022 | 392 | ***SELECTED PARTIES***NOTICE of Exhibit C of Shanahan Declaration. Document filed by Teva Pharmaceutical Industries Ltd., ALBERTSONS COMPANIES, INC., ANI |

| | | |
|---|---|---|
| | | Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. Motion or Order to File Under Seal: 391 .(Holding, Christopher) (Entered: 04/19/2022) |
| 04/19/2022 | 393 | MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint*. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Text of Proposed Order).(Gidley, John) (Entered: 04/19/2022) |
| 04/19/2022 | 394 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from J. Mark Gidley dated April 19, 2022. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc... (Gidley, John) (Entered: 04/19/2022) |
| 04/19/2022 | 395 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 393 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint*. . Document filed by Forest Laboratories Ireland, Ltd., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Ascend |

| | | |
|---|---|---|
| | | Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Abbvie, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Torrent Pharmaceuticals Ltd., Amerigen Pharmaceuticals Inc., Watson Laboratories, Inc. (CT), Glenmark Pharmaceuticals S.A., Forest Laboratories, LLC, Torrent Pharma Inc., Forest Laboratories Inc., Allergan USA, Inc., Allergan Sales, LLC, Allergan, Inc., Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., ALBERTSONS COMPANIES, INC., AbbVie Inc., Actavis Inc., Allergan USA, Inc., Allergan, Inc., CVS Pharmacy, Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, LTD, Forest Laboratories, Inc., Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., UFCW Local 1500 Welfare Fund, Walgreen Co.. (Attachments: # 1 Appendix)Motion or Order to File Under Seal: 394 .(Gidley, John) (Entered: 04/19/2022) |
| 04/19/2022 | 396 | DECLARATION of Peter J. Carney in Support re: 393 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint.*. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Inc., Glenmark Generics Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit 23).(Carney, Peter) (Entered: 04/19/2022) |
| 04/19/2022 | 397 | MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Second Consolidated Amended Complaint*. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Inc., Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Text of Proposed Order).(Gidley, John) (Entered: 04/19/2022) |
| 04/19/2022 | 398 | MEMORANDUM OF LAW in Support re: 397 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Second Consolidated Amended Complaint*. . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories |

| | | |
|---|---|---|
| | | Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Appendix A, # 2 Appendix B).(Gidley, John) (Entered: 04/19/2022) |
| 04/26/2022 | 399 | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR -** Amicus Curiae APPEARANCE entered by Margaret A Little on behalf of New Civil Liberties Alliance, International Center for Law & Economics. (Attachments: # 1 Affirmation of Little ISO Amicus, # 2 Amicus Brief).(Little, Margaret) Modified on 5/5/2022 (kj). Modified on 5/5/2022 (kj). (Entered: 04/26/2022) |
| 05/03/2022 | 400 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE #403)** MOTION for Leave to File Amicus Curiae Brief . Document filed by International Center for Law & Economics, New Civil Liberties Alliance. (Attachments: # 1 Exhibit Affirmation of Little ISO Amicus, # 2 Exhibit Amicus Brief).(Little, Margaret) Modified on 5/5/2022 (kj). Modified on 5/6/2022 (kj). (Entered: 05/03/2022) |
| 05/03/2022 | 401 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Celia A. McLaughlin dated May 3, 2022. Document filed by AbbVie Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit Proposed Public Redacted Version of Memorandum of Law in Support of Defendants' Motion to Dismiss Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint, # 2 Exhibit Proposed Public Redacted Version Appendix).(McLaughlin, Celia) (Entered: 05/03/2022) |
| 05/03/2022 | 402 | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Celia A. McLaughlin dated May 3, 2022 re: Letter Motion for Approval to File Under Seal. Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Forest Laboratories Holdings, Ltd., Actavis, Inc., Watson Pharmaceuticals Inc., Forest Laboratories, Inc., Allergan USA, Inc., Allergan Sales, LLC, Allergan, Inc., Forest Laboratories, LLC, ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc.. (Attachments: # 1 Exhibit Under-Seal Highlighted Version of Memorandum of in Support of Defendants' Motion to Dismiss Direct Purchaser and Retailer Plaintiffs' Third |

| | | Amended Complaints, # 2 Exhibit Under-Seal Highlighted Appendix)Motion or Order to File Under Seal: 401 .(McLaughlin, Celia) (Entered: 05/03/2022) |
|---|---|---|
| 05/03/2022 | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Margaret Little to RE-FILE Document 400 MOTION for Leave to File Amicus Curiae Brief .. ERROR(S): Supporting Documents are filed separately, each receiving their own document #. (Supporting Documents are found under the Event Type Affirmation in Support of Motion found under the Event List - Replies, Opposition and Supporting Documents. (kj)** (Entered: 05/05/2022) |
| 05/05/2022 | 403 | MOTION to File Amicus Brief . Document filed by International Center for Law & Economics, New Civil Liberties Alliance..(Little, Margaret) (Entered: 05/05/2022) |
| 05/05/2022 | 404 | AFFIRMATION of Margaret A. Little in Support re: 403 MOTION to File Amicus Brief .. Document filed by International Center for Law & Economics, New Civil Liberties Alliance..(Little, Margaret) (Entered: 05/05/2022) |
| 05/05/2022 | 405 | BRIEF re: 403 MOTION to File Amicus Brief . *Proposed Amicus Brief.* Document filed by International Center for Law & Economics, New Civil Liberties Alliance..(Little, Margaret) (Entered: 05/05/2022) |
| 05/06/2022 | 406 | NOTICE OF CHANGE OF ADDRESS by Todd Seaver on behalf of Teamsters Western Region & Local 177 Health Care Plan. New Address: Berman Tabacco, 425 California Street, Suite 2300, San Francisco, CA, USA 94104, (415) 433-3200..(Seaver, Todd) (Entered: 05/06/2022) |
| 05/23/2022 | 407 | LETTER MOTION to Seal *End-Payor Plaintiffs Opposition to Nonresident Defendants Rule 12(b)(2) Motion to Dismiss End-Payor Plaintiffs Non-New York Claims for Lack of Personal Jurisdiction, Declaration of Donna M. Evans and Exhibits A through G* addressed to Judge Lewis J. Liman from Sharon K. Robertson and Robin A. van der Meulen dated May 23, 2022. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Robertson, Sharon) Modified on 3/24/2023 (yv). (Entered: 05/23/2022) |
| 05/23/2022 | 408 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT#410)** LETTER MOTION to Seal *Opposition to Defendants' Motion to Dismiss Direct Purchaser and Retailer Plaintiffs' Third Amended Complaints* addressed to Judge Lewis J. Liman from Kimberly Hennings dated 05/23/2022. Document filed by CVS Pharmacy, Inc., J M Smith Corporation, KPH Healthcare Services, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, The Kroger Co., Walgreen Co...(Hennings, Kimberly) Modified on 5/24/2022 (lb). (Entered: 05/23/2022) |
| 05/23/2022 | 409 | \*\*\*SELECTED PARTIES\*\*\* MEMORANDUM OF LAW in Opposition re: 393 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint.* . Document filed by Rite Aid Corporation, J M Smith Corporation, Walgreen Co., Rite Aid Hdqtrs. Corp.,, KPH Healthcare Services, Inc., The Kroger Co., CVS Pharmacy, Inc., ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., |

| | | |
|---|---|---|
| | | Forest Laboratories, LLC, Forest Laboratories, LLC, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. Motion or Order to File Under Seal: 408 .(Hennings, Kimberly) (Entered: 05/23/2022) |
| 05/23/2022 | 410 | LETTER MOTION to Seal *Opposition to Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaints* addressed to Judge Lewis J. Liman from Kimberly Hennings dated 05/23/2022. Document filed by CVS Pharmacy, Inc., J M Smith Corporation, KPH Healthcare Services, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, The Kroger Co., Walgreen Co...(Hennings, Kimberly) (Entered: 05/23/2022) |
| 05/23/2022 | 411 | MEMORANDUM OF LAW in Opposition re: 397 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Second Consolidated Amended Complaint*. . Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Van Der Meulen, Robin) (Entered: 05/23/2022) |
| 05/23/2022 | 412 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 386 MOTION to Dismiss *for Lack of Personal Jurisdiction Under Rule 12(b)(2)*. . Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, UFCW Local 1500 Welfare Fund, Teamsters Western Region & Local 177 Health Care Plan, ALBERTSONS COMPANIES, INC., ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, CVS Pharmacy, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., H-E-B L.P., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., International Center for Law & Economics, J M Smith Corporation, KPH Healthcare Services, Inc., New Civil Liberties Alliance, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., The Kroger Co., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Walgreen Co., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit Declaration of Donna M. Evans, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit |

| | | J, # [12](#) Exhibit K, # [13](#) Exhibit L, # [14](#) Exhibit M)Motion or Order to File Under Seal: [407](#) .(Robertson, Sharon) (Entered: 05/23/2022) |
|---|---|---|
| 05/23/2022 | [413](#) | MEMORANDUM OF LAW in Opposition re: [388](#) MOTION to Dismiss *the February 2022 Complaints Under Rule 12(b)(2)*. . Document filed by ALBERTSONS COMPANIES, INC., CVS Pharmacy, Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., UFCW Local 1500 Welfare Fund, Walgreen Co...(Hennings, Kimberly) (Entered: 05/23/2022) |
| 05/23/2022 | [414](#) | MEMORANDUM OF LAW in Opposition re: [386](#) MOTION to Dismiss *for Lack of Personal Jurisdiction Under Rule 12(b)(2). (Filed Under Seal)*. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund. (Attachments: # [1](#) Exhibit Declaration of Donna M. Evans - Filed Under Seal, # [2](#) Exhibit A - Filed Under Seal, # [3](#) Exhibit B - Filed Under Seal, # [4](#) Exhibit C - Filed Under Seal, # [5](#) Exhibit D - Filed Under Seal, # [6](#) Exhibit E - Filed Under Seal, # [7](#) Exhibit F - Filed Under Seal, # [8](#) Exhibit G - Filed Under Seal, # [9](#) Exhibit H, # [10](#) Exhibit I, # [11](#) Exhibit J, # [12](#) Exhibit K, # [13](#) Exhibit L, # [14](#) Exhibit M).(Robertson, Sharon) (Entered: 05/23/2022) |
| 06/06/2022 | [415](#) | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Celia McLaughlin dated June 6, 2022. Document filed by AbbVie Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # [1](#) Exhibit Proposed Public Redacted Version of Memorandum of Law in Opposition to Defendants' Motion to Dismiss Direct Purchaser and Retailer Plaintiffs' Third Amended Complaints).(McLaughlin, Celia) (Entered: 06/06/2022) |
| 06/06/2022 | [416](#) | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Celia McLaughlin dated June 6, 2022 re: Letter Motion for Approval to Seal. Document filed by AbbVie Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Rite Aid Corporation, Allergan Sales LLC, Law Enforcement Health Benefits, Inc., Hetero USA Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, J M Smith Corporation, Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Actavis Inc., Allergan, Inc., Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Mayor and City Council of Baltimore, Walgreen Co., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., H-E-B L.P., Indchemie Health Specialties Private Ltd., Rite Aid Hdqtrs. Corp.,, UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Laboratories, Inc. (DE), Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories Inc., Teamsters Western Region & Local 177 Health Care Plan, Hetero Labs Ltd, Forest Laboratories Ireland, LTD, Glenmark Pharmaceuticals Ltd., The Kroger Co., ALBERTSONS COMPANIES, INC., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., CVS Pharmacy, Inc., Abbvie, Inc., Actavis, Inc., Allergan Sales, LLC, Allergan |

| | | |
|---|---|---|
| | | USA, Inc., Allergan, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC. (Attachments: # 1 Exhibit Highlighted Under-Seal Version of Memorandum of Law in Opposition to Defendants' Motion to Dismiss Direct Purchaser and Retailer Plaintiffs' Third Amended Complaints)Motion or Order to File Under Seal: 415 .(McLaughlin, Celia) (Entered: 06/06/2022) |
| 06/07/2022 | 417 | LETTER MOTION to Seal *Exhibits A through G to the Evans Declaration* addressed to Judge Lewis J. Liman from Teresa Bonder dated June 7, 2022. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc... (Bonder, Teresa) (Entered: 06/07/2022) |
| 06/24/2022 | 418 | REPLY MEMORANDUM OF LAW in Support re: 386 MOTION to Dismiss *for Lack of Personal Jurisdiction Under Rule 12(b)(2)*. . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis Inc., Alkem Laboratories Ltd., Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, LTD, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Bonder, Teresa) (Entered: 06/24/2022) |
| 06/24/2022 | 419 | REPLY MEMORANDUM OF LAW in Support re: 388 MOTION to Dismiss *the February 2022 Complaints Under Rule 12(b)(2)*. . Document filed by Teva Pharmaceutical Industries Ltd...(Holding, Christopher) (Entered: 06/24/2022) |
| 06/24/2022 | 420 | REPLY MEMORANDUM OF LAW in Support re: 397 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Second Consolidated Amended Complaint*. . Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 06/24/2022) |

| | | |
|---|---|---|
| 06/24/2022 | 421 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from J. Mark Gidley dated June 24, 2022. Document filed by ANI Pharmaceuticals, Inc., AbbVie Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc...(Gidley, John) (Entered: 06/24/2022) |
| 06/24/2022 | 422 | ***SELECTED PARTIES*** REPLY MEMORANDUM OF LAW in Support re: 393 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint.* . Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Allergan Sales LLC, Actavis, Inc., Hetero USA Inc., Glenmark Generics Inc., USA, Watson Laboratories, Inc. (NV), Allergan, Inc., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Allergan USA, Inc., Ascend Laboratories, LLC, Watson Pharmaceuticals Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (DE), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Glenmark Generics Ltd., Amerigen Pharmaceuticals Inc., Watson Laboratories, Inc. (CT), Glenmark Pharmaceuticals S.A., Forest Laboratories, LLC, Torrent Pharma Inc., Forest Laboratories Inc., Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., ALBERTSONS COMPANIES, INC., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Glenmark Generics Inc., H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, The Kroger Co., Torrent Pharmaceuticals Ltd., UFCW Local 1500 Welfare Fund, Walgreen Co.. Motion or Order to File Under Seal: 421 .(Gidley, John) (Entered: 06/24/2022) |
| 07/08/2022 | 423 | LETTER MOTION to Seal addressed to Judge Lewis J. Liman from Celia A. McLaughlin dated July 8, 2022. Document filed by AbbVie Inc., Actavis Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc.. (Attachments: # 1 Exhibit - Public Redacted Version of Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Direct Purchaser and Retailer Plaintiffs' Third Amended Complaints).(McLaughlin, Celia) (Entered: 07/08/2022) |
| 07/08/2022 | 424 | ***SELECTED PARTIES*** LETTER addressed to Judge Lewis J. Liman from Celia A. McLaughlin dated July 8, 2022 Document filed by Forest Laboratories Ireland, Ltd., AbbVie Inc., Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Rite Aid Corporation, Allergan Sales LLC, Law Enforcement Health Benefits, Inc., Hetero USA Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, J M Smith Corporation, Glenmark Generics Inc., USA, Glenmark Generics Inc., Watson Laboratories, Inc. (NV), Actavis Inc., Allergan, Inc., Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Mayor and City Council of Baltimore, Walgreen Co., Amerigen Pharmaceuticals Ltd., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Rite Aid Hdqtrs. Corp.,, UFCW Local 1500 Welfare Fund, Allergan USA, Inc., Ascend Laboratories, LLC, Watson Pharmaceuticals Inc., Teva |

| | | |
|---|---|---|
| | | Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (DE), Teva Pharmaceutical Industries Ltd., Watson Pharma, Inc., Alkem Laboratories Ltd., Torrent Pharmaceuticals Ltd., Glenmark Generics Ltd., Watson Laboratories, Inc. (CT), Amerigen Pharmaceuticals Inc., KPH Healthcare Services, Inc., Glenmark Pharmaceuticals S.A., Torrent Pharma Inc., Forest Laboratories, LLC, Forest Laboratories, Inc., Teamsters Western Region & Local 177 Health Care Plan, Hetero Labs Ltd, Glenmark Pharmaceuticals Ltd., The Kroger Co., ALBERTSONS COMPANIES, INC., Hetero Drugs LTD., Forest Laboratories Holdings Ltd., CVS Pharmacy, Inc., Abbvie, Inc., Actavis, Inc., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories, LLC. (Attachments: # 1 Exhibit - Under-Seal Highlighted Version of Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Direct Purchaser and Retailer Plaintiffs' Third Amended Complaints)Motion or Order to File Under Seal: 423 .(McLaughlin, Celia) (Entered: 07/08/2022) |
| 08/15/2022 | 425 | ORDER denying (371) Letter Motion to Seal; denying (372) Letter Motion to Seal; denying (374) Letter Motion to Seal; denying (375) Letter Motion to Seal; granting (383) Letter Motion to Seal in case 1:20-cv-05735-LJL. This Order addresses several pending motions to seal in this case. The Court's decisions on these motions are without prejudice to the Courts unsealing either on motion or sua sponte. The motions at Dkt. Nos. 371, 372, 374, and 375 are DENIED. The motion at Dkt. No. 383 is GRANTED. Direct Purchaser Plaintiffs shall file a partially redacted Third Consolidated Amended Class Action Complaint consistent with the redactions at Dkt. Nos. 383-2, 384-2. End-Payor Plaintiffs shall file a partially redacted Second Consolidated Amended Class Action Complaint consistent with the redactions at Dkt. Nos. 383-3, 384-3. Plaintiffs in the Walgreen Action shall file on the docket of the Walgreen Action a partially redacted Third Amended Complaint consistent with the redactions at Dkt. Nos. 383-4, 384-4. Plaintiffs in the CVS Action shall file on the docket of the CVS Action a partially redacted Third Amended Complaint consistent with the redactions at Dkt. Nos. 383-1, 384-1. All filings shall be made in the form directed by this Order on the respective dockets by August 22, 2022. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 371, 372, 374, 375, and 383. The Clerk of Court is also respectfully directed to close Dkt. Nos. 42 and 44 in the Walgreen Action (20-cv-9793) and Dkt. No. 40 in the CVS Action (20-cv-10087).. (Signed by Judge Lewis J. Liman on 8/15/2022) Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL (ate) (Entered: 08/15/2022) |
| 08/15/2022 | | Set/Reset Deadlines: Amended Pleadings due by 8/22/2022. Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL(ate) (Entered: 08/15/2022) |
| 08/22/2022 | 426 | SECOND AMENDED COMPLAINT amending 376 Amended Complaint,,,,,,,,,,, against ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc. with |

| | | JURY DEMAND.Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, UFCW Local 1500 Welfare Fund, Teamsters Western Region & Local 177 Health Care Plan. Related document: 376 Amended Complaint,,,,,,,,,,,,.(Van Der Meulen, Robin) (Entered: 08/22/2022) |
|---|---|---|
| 08/22/2022 | 427 | THIRD AMENDED COMPLAINT amending 373 Amended Complaint,,,,,, against ANI Pharmaceuticals, Inc., AbbVie Inc., Abbvie, Inc., Actavis Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales LLC, Allergan Sales, LLC, Allergan USA, Inc., Allergan USA, Inc., Allergan, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings Ltd., Forest Laboratories Holdings, Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, LTD, Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Forest Laboratories, LLC, Glenmark Generics Inc., Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Glenmark Pharmaceuticals S.A., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc., Watson Pharmaceuticals Inc. with JURY DEMAND.Document filed by J M Smith Corporation, KPH Healthcare Services, Inc.. Related document: 373 Amended Complaint,,,,,,,..(Hennings, Kimberly) (Entered: 08/22/2022) |
| 08/29/2022 | 428 | NOTICE of Withdrawal of Appearance of Monica L. Kiley. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,..(Bloom, Eric) (Entered: 08/29/2022) |
| 09/21/2022 | | ORDER: The Court will hear oral argument from parties regarding the pending motions to dismiss on November 3, 2022 at 11:00AM. The hearing will be held in-person in Courtroom 15C at the 500 Pearl Street Courthouse. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (mf) (Entered: 09/21/2022) |
| 09/21/2022 | | Set/Reset Hearings: Oral Argument set for 11/3/2022 at 11:00 AM in Courtroom 15C, 500 Pearl Street, New York, NY 10007 before Judge Lewis J. Liman. (mf) (Entered: 09/21/2022) |
| 09/30/2022 | 429 | JOINT LETTER addressed to Judge Lewis J. Liman from Robin A. van der Meulen dated September 30, 2022 re: November 3, 2022 Oral Argument on Motions to Dismiss. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund..(Van Der Meulen, Robin) (Entered: 09/30/2022) |
| 10/12/2022 | 430 | LETTER addressed to Judge Lewis J. Liman from Tobias Snyder dated October 12, 2022 re: requesting that Amerigen's counsel be permitted to appear telephonically at the November 3, 2022, hearing. Document filed by Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd...(Snyder, Tobias) (Entered: 10/12/2022) |
| 10/13/2022 | | ORDER granting re: 430 Letter requesting that Amerigen's counsel be permitted to appear telephonically at the November 3, 2022 hearing filed by Amerigen Pharmaceuticals Ltd., Amerigen Pharmaceuticals Inc. Counsel for Defendants Amerigen Pharmaceuticals Ltd. and Amerigen Pharmaceuticals Inc. are permitted to appear at the |

| | | |
|---|---|---|
| | | November 3, 2022 hearing by telephone. Counsel may access the hearing by dialing into the Court's teleconference line at 888-251-2909 and using access code 2123101. (HEREBY ORDERED by Judge Lewis J. Liman) (Text Only Order) (mf) (Entered: 10/13/2022) |
| 10/13/2022 | 431 | ORDER: On September 30, 2022, the parties submitted a joint letter offering to propose an agenda for the argument on November 3, 2022 regarding the pending motions to dismiss. Dkt. No. 429. The argument, previously scheduled to begin at 11:00 a.m. on November 3, 2022, is rescheduled to take place from 9:30 a.m. to 1:00 p.m. on November 3, 2022, with a short comfort break. The Court believes that the majority of the time (more than 50%) should be devoted to arguments related to Defendants' motions to dismiss the Direct Purchaser and Retailer Plaintiffs Third Amended Complaints. The remaining time should be for argument related to Defendants' motions to dismiss End-Payor Plaintiffs' Second Amended Class Action Complaint. The Court directs the parties to meet and confer and, by October 25, 2022, jointly submit a proposed agenda consistent with this Order and similar in format to that agenda submitted to the Court on December 3, 2021, Dkt. No. 334. SO ORDERED. (Oral Argument set for 11/3/2022 at 09:30 AM before Judge Lewis J. Liman.) (Signed by Judge Lewis J. Liman on 10/13/2022) (mml) (Entered: 10/13/2022) |
| 10/24/2022 | 432 | LETTER addressed to Judge Lewis J. Liman re: November 3, 2022 Oral Argument on Motions to Dismiss. Document filed by ANI Pharmaceuticals, Inc., Abbvie, Inc., Actavis, Inc., Alkem Laboratories Ltd., Allergan Sales, LLC, Allergan USA, Inc., Allergan, Inc., Amerigen Pharmaceuticals Inc., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Holdings, Ltd., Forest Laboratories Ireland, Ltd., Forest Laboratories, Inc., Forest Laboratories, LLC, Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc., Indchemie Health Specialties Private Ltd., Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Torrent Pharma Inc., Watson Laboratories, Inc. (CT), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (NY), Watson Pharma, Inc...(Gidley, John) (Entered: 10/24/2022) |
| 10/25/2022 | 433 | MEMO ENDORSEMENT on re: 432 Letter,,, filed by Watson Pharma, Inc., Hetero Drugs LTD., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Forest Laboratories, Inc., Watson Laboratories, Inc. (DE), Amerigen Pharmaceuticals Inc., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Allergan Sales, LLC, Amerigen Pharmaceuticals Ltd., Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Abbvie, Inc., Actavis, Inc., Glenmark Generics Ltd., Teva Pharmaceuticals USA, Inc., Forest Laboratories, LLC, Watson Laboratories, Inc. (NV), Hetero USA Inc., Alkem Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd, Forest Laboratories Holdings, Ltd. ENDORSEMENT: The proposed agenda submitted by the parties for oral argument on November 3, 2022 at 9:30 a.m. is approved. 10 minutes of the 25 minutes allotted per side for argument on End-Payor Plaintiffs' Second Consolidated Amended Complaint will be dedicated to Nonresident Defendants' Rule 12(b)(2) Motion to Dismiss End-Payor Plaintiffs' Non-New York Claims for Lack of Personal Jurisdiction, Dkt. No. 386. (Signed by Judge Lewis J. Liman on 10/25/2022) (tg) (Entered: 10/25/2022) |
| 10/28/2022 | 434 | NOTICE OF APPEARANCE by Bradley J. Demuth on behalf of J M Smith Corporation..(Demuth, Bradley) (Entered: 10/28/2022) |
| 11/03/2022 | | Minute Entry for proceedings held before Judge Lewis J. Liman: Oral Argument held on 11/3/2022 re: 386 MOTION to Dismiss *for Lack of Personal Jurisdiction Under Rule 12(b)(2)* filed by Watson Pharma, Inc., Hetero Drugs LTD., Forest Laboratories Holdings |

| | | Ltd., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., ANI Pharmaceuticals, Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Watson Laboratories, Inc. (DE), Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Actavis Inc., Teva Pharmaceutical Industries Ltd., Forest Laboratories Ireland, Ltd., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Glenmark Pharmaceuticals S.A., Glenmark Generics Ltd., Teva Pharmaceuticals USA, Inc., AbbVie Inc., Hetero USA Inc., Watson Laboratories, Inc. (NV), Alkem Laboratories Ltd., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Labs Ltd, and [388](#) MOTION to Dismiss *the February 2022 Complaints Under Rule 12(b)(2)* filed by Teva Pharmaceutical Industries Ltd., and [397](#) MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Second Consolidated Amended Complaint* filed by Watson Pharma, Inc., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., Glenmark Generics Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Glenmark Pharmaceuticals S.A., Actavis, Inc., Glenmark Generics Ltd., Forest Laboratories, LLC, AbbVie Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Drugs LTD., ANI Pharmaceuticals, Inc., Watson Laboratories, Inc. (DE), Allergan Sales LLC, Forest Laboratories Ireland, Ltd., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Inc., Alkem Laboratories Ltd., Hetero Labs Ltd, Forest Laboratories Holdings, Ltd., Watson Pharmaceuticals Inc., and [393](#) MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint* filed by Watson Pharma, Inc., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., Glenmark Generics Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Glenmark Pharmaceuticals S.A., Actavis, Inc., Glenmark Generics Ltd., Forest Laboratories, LLC, Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Drugs LTD., ANI Pharmaceuticals, Inc., Watson Laboratories, Inc. (DE), Allergan Sales, LLC, Amerigen Pharmaceuticals Ltd., Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Abbvie, Inc., Forest Laboratories Inc., Alkem Laboratories Ltd., Hetero Labs Ltd, Forest Laboratories Holdings, Ltd., Watson Pharmaceuticals Inc. Kimberly Hennings present on behalf of the Direct Purchaser Class Plaintiffs. Barry Refsin present on behalf of CVS and Rite Aid Plaintiffs. Robin van der Meulen and Sharon Robertson present on behalf of End-Payor Class Plaintiffs. Eric Grannon, Mark Gidley, Adam Acosta, and Celia McLaughlin present on behalf of Defendants AbbVie, Inc., Allergan Inc., Allergan Sales LLC, Allergan USA, Inc. Forest Laboratories Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Ireland, LTD., and Watson Pharmaceuticals Inc. Andrew Hatchett present on behalf of Glenmark Defendants. Court reporter present. The Court heard argument from all parties regarding the pending motions to dismiss. Arguments taken under advisement, decisions reserved by the Court. (mf) (Entered: 11/09/2022) |
| 12/09/2022 | [435](#) | TRANSCRIPT of Proceedings re: CONFERENCE held on 11/3/2022 before Judge Lewis J. Liman. Court Reporter/Transcriber: Carol Ganley, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/30/2022. Redacted Transcript Deadline set for 1/9/2023. Release of Transcript Restriction set for 3/9/2023.Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(McGuirk, Kelly) (Entered: 12/09/2022) |
| 12/09/2022 | [436](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 11/3/2022 has been filed by |

| | | the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL. (McGuirk, Kelly) (Entered: 12/09/2022) |
|---|---|---|
| 12/31/2022 | 437 | NOTICE of Withdrawal of Appearance re: 325 Notice of Appearance. Document filed by Hetero Drugs LTD., Hetero Labs Ltd, Hetero USA Inc...(Coster, Abigail) (Entered: 12/31/2022) |
| 02/21/2023 | 438 | ***SELECTED PARTIES*** OPINION AND ORDER re: 388 MOTION to Dismiss *the February 2022 Complaints Under Rule 12(b)(2)* filed by Teva Pharmaceutical Industries Ltd., 403 MOTION to File Amicus Brief filed by International Center for Law & Economics, New Civil Liberties Alliance, 397 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the End-Payor Plaintiffs' Second Consolidated Amended Complaint* filed by Watson Pharma, Inc., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., Glenmark Generics Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Glenmark Pharmaceuticals S.A., Actavis, Inc., Glenmark Generics Ltd., Teva Pharmaceuticals USA, Inc., AbbVie Inc., Forest Laboratories, LLC, Watson Laboratories, Inc. (NV), Hetero USA Inc., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Drugs LTD., ANI Pharmaceuticals, Inc., Watson Laboratories, Inc. (DE), Allergan Sales LLC, Forest Laboratories Ireland, Ltd., Amerigen Pharmaceuticals Ltd., Ascend Laboratories, LLC, Forest Laboratories Inc., Alkem Laboratories Ltd., Forest Laboratories Holdings, Ltd., Watson Pharmaceuticals Inc., 393 MOTION to Dismiss */ Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint.* filed by Watson Pharma, Inc., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., Glenmark Generics Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Watson Laboratories, Inc. (NY), Teva Pharmaceutical Industries Ltd., Glenmark Pharmaceuticals S.A., Actavis, Inc., Glenmark Generics Ltd., Forest Laboratories, LLC, Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Drugs LTD., ANI Pharmaceuticals, Inc., Watson Laboratories, Inc. (DE), Allergan Sales, LLC, Amerigen Pharmaceuticals Ltd., Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Abbvie, Inc., Forest Laboratories Inc., Alkem Laboratories Ltd., Hetero Labs Ltd, Forest Laboratories Holdings, Ltd., Watson Pharmaceuticals Inc., 386 MOTION to Dismiss *for Lack of Personal Jurisdiction Under Rule 12(b)(2)* filed by Watson Pharma, Inc., Forest Laboratories Holdings Ltd., Allergan, Inc., Allergan USA, Inc., Torrent Pharma Inc., Indchemie Health Specialties Private Ltd., Glenmark Generics Inc., USA, Amerigen Pharmaceuticals Inc., Torrent Pharmaceuticals Ltd., Teva Pharmaceutical Industries Ltd., Glenmark Pharmaceuticals S.A., Glenmark Generics Ltd., AbbVie Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc. (NV), Hetero USA Inc., Glenmark Pharmaceuticals Ltd., Watson Laboratories, Inc. (CT), Hetero Drugs LTD., ANI Pharmaceuticals, Inc., Watson Laboratories, Inc. (DE), Actavis Inc., Amerigen Pharmaceuticals Ltd., Forest Laboratories Ireland, Ltd., Ascend Laboratories, LLC, Alkem Laboratories Ltd., Hetero Labs Ltd. For these reasons, the Court holds that Plaintiffs have failed to state a claim with respect to all of the Agreements. Defendants' motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim is GRANTED with prejudice. Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint for failure to state a claim is GRANTED with prejudice. Nonresident Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint's non-New York, state law claims for lack of personal jurisdiction and Teva Israel's motion to |

| | | |
|---|---|---|
| | | dismiss for lack of personal jurisdiction are DENIED as moot. The motion of the New Civil Liberties Alliance and the International Center for Law and Economics for leave to file an amicus brief is GRANTED. The Clerk of Court is respectfully directed to close Dkt. Nos. 386, 388, 393, 397, 403. For the reasons explained in an accompanying Order, this Opinion and Order will be filed temporarily under seal until the Court can review any redactions the parties propose. The Clerk of Court is respectfully directed to file this Opinion and Order under seal, viewable only to the Court and the parties to this action. SO ORDERED. (Signed by Judge Lewis J. Liman on 2/21/2023) (va) (Entered: 02/21/2023) |
| 02/21/2023 | 439 | ORDER: For the reasons stated in the Opinion and Order filed by the Court today: Defendants' motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim is GRANTED, and the Direct Purchaser and Retailer Plaintiffs' Complaints are DISMISSED with prejudice. Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint for failure to state a claim is GRANTED, and the End-Payor Plaintiffs' Complaint is DISMISSED with prejudice. Nonresident Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint's non-New York, state-law claims for lack of personal jurisdiction and Teva Israel's motion to dismiss for lack of personal jurisdiction are DENIED as moot. In order to preserve the ability of the parties to move the Court for redactions from the Opinion and Order, the Opinion and Order is temporarily filed under seal. The parties shall meet and confer with respect to potential redactions and, by February 28, 2023, the parties shall file any proposed redactions pursuant to the Court's Individual Practices. In addition, the parties are invited to inform the Court of any errors in citation, typography, or similar errors they discover in their review. The Court will rule on any outstanding motions to seal at the same time it rules on any proposed redactions to the Opinion and Order. SO ORDERED. (Signed by Judge Lewis J. Liman on 2/21/2023) (va) (Entered: 02/21/2023) |
| 02/28/2023 | 440 | LETTER addressed to Judge Lewis J. Liman from J. Mark Gidley dated February, 28 2023 re: Redactions from Opinion and Order on Defendants' Motions to Dismiss. Document filed by AbbVie Inc., Actavis, Inc., Allergan Sales LLC, Allergan USA, Inc., Allergan, Inc., Forest Laboratories Holdings Ltd., Forest Laboratories Inc., Forest Laboratories Ireland, Ltd., Forest Laboratories, LLC, Watson Pharmaceuticals Inc... (Gidley, John) (Entered: 02/28/2023) |
| 03/03/2023 | 441 | MOTION for John Jurata, Jr. to Withdraw as Attorney . Document filed by ANI Pharmaceuticals, Inc.. (Attachments: # 1 Exhibit Certificate of Service)Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(Cole, Eileen) (Entered: 03/03/2023) |
| 03/03/2023 | 442 | DECLARATION of Eileen Cole in Support re: (50 in 1:20-cv-08756-LJL) MOTION for John Jurata, Jr. to Withdraw as Attorney .. Document filed by ANI Pharmaceuticals, Inc.. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL.(Cole, Eileen) (Entered: 03/03/2023) |
| 03/10/2023 | 443 | ORDER granting 441 Motion to Withdraw as Attorney. Attorney John A. Jurata terminated. (HEREBY ORDERED by Judge Lewis J. Liman)(Text Only Order) (bhk) (Entered: 03/10/2023) |
| 03/20/2023 | 444 | **FILING ERROR - NO ORDER SELECTED FOR APPEAL -** NOTICE OF APPEAL. Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., Walgreen Co.. Filing fee $ 505.00, receipt number NYSDC-27489894. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL. (Perwin, Scott) Modified on 3/20/2023 (tp). (Entered: 03/20/2023) |

| | | |
|---|---|---|
| 03/20/2023 | 445 | NOTICE OF APPEAL from 439 Order,,,,, 438 Memorandum & Opinion,,,,,,,,,. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,. Filing fee $ 505.00, receipt number ANYSDC-27490121. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Refsin, Barry) (Entered: 03/20/2023) |
| 03/20/2023 | 446 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - NOTICE of Notice of Appeal filed in 1:20-cv-5735-LJL. Document filed by CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,..(Refsin, Barry) Modified on 3/20/2023 (nd). (Entered: 03/20/2023) |
| 03/20/2023 | 447 | **FILING ERROR - NO ORDER/JUDGMENT SELECTED FOR APPEAL -** NOTICE OF APPEAL. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc., J M Smith Corporation d/b/a Smith Drug Company, KPH Healthcare Services, Inc.. Filing fee $ 505.00, receipt number NYSDC-27490777. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL. (Hennings, Kimberly) Modified on 3/20/2023 (nd). (Entered: 03/20/2023) |
| 03/20/2023 | 448 | NOTICE OF APPEAL from 350 Order, Set Deadlines/Hearings,,,,,,, 439 Order,,,,, 349 Memorandum & Opinion,,,,,,,,, 438 Memorandum & Opinion,,,,,,,,,,. Document filed by J M Smith Corporation, KPH Healthcare Services, Inc.. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Hennings, Kimberly) (Entered: 03/20/2023) |
| 03/20/2023 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Kimberly Hennings to RE-FILE Document No. (53 in 1:20-cv-08756-LJL, 447 in 1:20-cv-05735-LJL, 52 in 1:20-cv-08754-LJL, 138 in 1:20-cv-07110-LJL) Notice of Appeal,,... The filing is deficient for the following reason(s): the order/judgment being appealed was not selected;. Re-file the appeal using the event type Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL(nd) (Entered: 03/20/2023) |
| 03/20/2023 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Scott Perwin to RE-FILE Document No. (444 in 1:20-cv-05735-LJL, 52 in 1:20-cv-08756-LJL, 137 in 1:20-cv-07110-LJL, 51 in 1:20-cv-08754-LJL) Notice of Appeal. The filing is deficient for the following reason(s): (1) the order/judgment being appealed was not selected; (2) the PDF does not list the member cases being appealed. Re-file the appeal using the event type Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed - Do Not Pay the Appeal Fee Again. Filed In Associated Cases: 1:20-cv-05735-LJL, 1:20-cv-07110-LJL, 1:20-cv-08754-LJL, 1:20-cv-08756-LJL. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 445 Notice of Appeal. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 445 Notice of Appeal, filed by Rite Aid Hdqtrs. Corp., CVS Pharmacy, Inc., Rite Aid Corporation were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | 449 | NOTICE OF APPEAL from 439 Order,,,,, 438 Memorandum & Opinion,,,,,,,,,. Document filed by ALBERTSONS COMPANIES, INC., H-E-B L.P., The Kroger Co., |

| | | |
|---|---|---|
| | | Walgreen Co.. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Perwin, Scott) (Entered: 03/20/2023) |
| 03/20/2023 | | Appeal Fee Paid electronically via Pay.gov: for 448 Notice of Appeal. Filing fee $ 505.00. Pay.gov receipt number NYSDC-27490777, paid on 3/20/2023. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 448 Notice of Appeal. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 448 Notice of Appeal, filed by J M Smith Corporation, KPH Healthcare Services, Inc. were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | | Appeal Fee Paid electronically via Pay.gov: for 449 Notice of Appeal,. Filing fee $ 505.00. Pay.gov receipt number NYSDC-27489894, paid on 3/20/2023. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 449 Notice of Appeal. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 449 Notice of Appeal, filed by The Kroger Co., Walgreen Co., H-E-B L.P., ALBERTSONS COMPANIES, INC. were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | 450 | NOTICE OF APPEAL from 439 Order,,,,, 438 Memorandum & Opinion,,,,,,,,,. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund. Filing fee $ 505.00, receipt number BNYSDC-27491656. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Van Der Meulen, Robin) (Entered: 03/20/2023) |
| 03/20/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 450 Notice of Appeal. (tp) (Entered: 03/20/2023) |
| 03/20/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 450 Notice of Appeal, filed by Teamsters Local No. 1150 Prescription Drug Benefit Plan, Mayor and City Council of Baltimore, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., UFCW Local 1500 Welfare Fund, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Western Region & Local 177 Health Care Plan were transmitted to the U.S. Court of Appeals..(tp) (Entered: 03/20/2023) |
| 03/24/2023 | 451 | ORDER granting 391 Letter Motion to Seal; granting in part and denying in part 394 Letter Motion to Seal; granting in part and denying in part 401 Letter Motion to Seal; granting in part and denying in part 410 Letter Motion to Seal; granting in part and denying in part 415 Letter Motion to Seal; granting 417 Letter Motion to Seal; granting in part and denying in part 421 Letter Motion to Seal; granting in part and denying in part 423 Letter Motion to Seal. granting in part and denying in part 407 Motion to Seal. This order addresses several pending motions to seal in this case. The motion at Dkt. No. 391 is GRANTED. The motions at Dkt. Nos. 394 and 401 are GRANTED IN PART and DENIED IN PART. The proposed redactions at Dkt. No. 402-1 are granted for the highlighted selections on page 8, line 67 (excluding the term "nebivolol"); page 15, lines 23 (excluding "nebivolol API"), line 5; page 21; page 22, line 14; page 35; and page 36 |

| | | (excluding the phrase "select new products of equal value if Amerigen discontinued any product"). The remainder of the proposed redactions are denied. The proposed redactions for Dkt. No. 402-2 are granted for the highlighted selections on page 53, lines 25-26 (excluding the term "API"); page 54, line 1 (excluding ($37.5), lines 15-16 (following "nebivolol API"); page 57, lines 11-17; page 58, lines 2, 9, footnote 96; page 60, lines 21-23; page 61, lines 68; page 62, line 6 (excluding "for 'Development Work'"), lines 16-18; page 63, lines 22-23, 25-27; page 64, line 23; page 67, lines 25-27; page 68, lines 1, 27; page 69, line 1, footnote 95 line 3 (excluding "Forest's"); page 71; page 72; page 74, lines 19-21; page 75; and page 76 (excluding "$4"). The remainder of the proposed redactions are denied. The motion at Dkt. No. 407 is GRANTED IN PART and DENIED IN PART. The motion at Dkt. No. 417 is GRANTED. End-Payor Plaintiffs are directed to publicly file their Opposition to Nonresident Defendants Rule 12(b)(2) Motion to Dismiss End-Payor Plaintiffs Non-New York Claims for Lack of Personal Jurisdiction and the accompanying Evans Declaration. Dkt. Nos. 412-2 through 412-8, or Exhibits A through G of the Evans Declaration, shall remain under seal. The motions at Dkt. Nos. 410 and 415 are GRANTED IN PART and DENIED IN PART. The proposed redactions at Dkt. No. 416-1 are granted for the highlighted sections on page 13, line 14 (excluding "requirements contract"); page 16 (excluding "API" and "nebivolol"); and page 23, lines 19-20 (excluding "in milestones for 'Development Work'"). The remainder of the proposed redactions are denied. The motions at Dkt. Nos. 421 and 423 are GRANTED IN PART and DENIED IN PART. The proposed redactions at Dkt. No. 424-1 are granted for the highlighted sections on page 8, lines 67, 16; and page 19. The remainder of the proposed redactions are denied. The parties are directed to file public versions of the filings at issue, in the form directed by this order, on the public docket by March 31, 2023. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 391, 394, 401, 407, 410, 415, 417, 421, 423. The Clerk of Court is also respectfully directed to unseal Dkt. No. 438. SO ORDERED. (Signed by Judge Lewis J. Liman on 3/24/23) (yv) Modified on 3/24/2023 (yv). (Entered: 03/24/2023) |
| 03/29/2023 | 452 | MEMORANDUM OF LAW in Opposition re: 393 MOTION to Dismiss / *Notice of Defendants' Motion to Dismiss the Direct Purchaser and Retailer Plaintiffs' Third Amended Complaint*. . Document filed by ALBERTSONS COMPANIES, INC., CVS Pharmacy, Inc., H-E-B L.P., J M Smith Corporation, KPH Healthcare Services, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,, The Kroger Co., Walgreen Co...(Hennings, Kimberly) (Entered: 03/29/2023) |
| 03/29/2023 | 453 | MEMORANDUM OF LAW in Opposition re: 386 MOTION to Dismiss *for Lack of Personal Jurisdiction Under Rule 12(b)(2)*. *[Public Version]*. Document filed by Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement Health Benefits, Inc., Mayor and City Council of Baltimore, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees Benefit Fund, Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters Western Region & Local 177 Health Care Plan, UFCW Local 1500 Welfare Fund. (Attachments: # 1 Affidavit of Donna M. Evans, # 2 Exhibit A - Filed Under Seal, # 3 Exhibit B - Filed Under Seal, # 4 Exhibit C - Filed Under Seal, # 5 Exhibit D - Filed Under Seal, # 6 Exhibit E - Filed Under Seal, # 7 Exhibit F - Filed Under Seal, # 8 Exhibit G - Filed Under Seal, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M).(Robertson, Sharon) (Entered: 03/29/2023) |

| PACER Login: | HASPS0080 | Client Code: | 26900-052 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:20-cv-05735-LJL |
| Billable Pages: | 30 | Cost: | 3.00 |

**4. Opinions and Orders Forming Basis for Appeal**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                    :

IN RE BYSTOLIC ANTITRUST LITIGATION      :

                                    :
----------------------------------------------------------------------- :
This Document Relates To:                    :         20-cv-5735 (LJL)

                                    :

All Direct Purchaser Actions                :      OPINION AND ORDER
*CVS Action* (No. 20-cv-10087)           :
*Walgreen Action* (No. 20-cv-9793)       :
All End-Payor Actions                    :

                                    :
----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _02/02/2022__

LEWIS J. LIMAN, United States District Judge:

      This civil antitrust action alleges an illegal scheme to delay competition from generic versions of Bystolic (nebivolol hydrochloride), a prescription medication approved by the U.S. Food and Drug Administration to treat high blood pressure.

      Plaintiffs are: a putative class of direct purchasers of Bystolic and generic versions of Bystolic ("Direct Purchaser Plaintiffs");[1] a putative class of indirect purchasers, including consumers, health insurers, and welfare plans, of Bystolic and generic versions of Bystolic ("End-Payor Plaintiffs");[2] and several retail chains that bring individual lawsuits as assignees of direct purchasers ("Retailer Plaintiffs")[3] (collectively, "Plaintiffs").  Defendants are the

---

[1] Direct Purchaser Plaintiffs are J M Smith Corporation d/b/a Smith Drug Company and KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., on behalf of themselves and all others similarly situated.

[2] End Payor Plaintiffs are the Mayor and City Council of Baltimore ("City of Baltimore"), UFCW Local 1500 Welfare Fund ("Local 1500"), Teamsters Western Region & Local 177 Health Care Plan ("Local 177"), Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund ("FOP"), Law Enforcement Health Benefits, Inc. ("LEHB"), Teamsters Local No. 1150 Prescription Drug Benefit Plan ("Local 1150"), and Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees' Benefit Fund ("Local 237"), on behalf of themselves and all others similarly situated.

[3] Retailer Plaintiffs are CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co., The Kroger Co., Albertsons Companies, Inc., and H-E-B, L.P.  The first three

manufacturers and marketers of Bystolic (collectively referred to as "Forest")[4] and their generic-drug competitors ("Generic Defendants")[5] (collectively, "Defendants").  Generic Defendants include Hetero, Torrent, Alkem, Indchemie, Glenmark, Amerigen, and Watson.

Plaintiffs allege that Forest agreed to pay Generic Defendants to drop their challenges to a Bystolic patent and to delay launching less expensive, competing generic versions of Bystolic for years.  Direct Purchaser Plaintiffs bring a class action complaint ("Direct Purchaser Plaintiffs' Complaint" or "DPP Complaint") and Retailer Plaintiffs bring complaints ("Retailer Plaintiffs' Complaints") against Defendants, seeking damages under federal antitrust law. Second Consolidated and Amended Class Action Complaint, Dkt. No. 250 ("DPP Compl."); Second Amended Complaint, *CVS Action*, 20-cv-10087 (S.D.N.Y.), ECF No. 35; Second Amended Complaint, *Walgreen Action*, 20-cv-9793 (S.D.N.Y.), ECF No. 34.  End-Payor Plaintiffs bring a class action complaint ("End-Payor Plaintiffs' Complaint" or "EPP Complaint") against Defendants under state antitrust and consumer-protection laws and for

---

plaintiffs are the plaintiffs in *CVS Pharmacy, Inc. et al v. AbbVie Inc. et al* ("*CVS Action*"), 20-cv-10087 (S.D.N.Y.), and the latter group of plaintiffs are the plaintiffs in *Walgreen Co. et al v. AbbVie Inc. et al* ("*Walgreen Action*"), 20-cv-9793 (S.D.N.Y.).
[4] "Forest" refers collectively to: Forest Laboratories, Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories, LLC, and Forest Laboratories Ireland Ltd.; AbbVie, Inc. ("AbbVie"); and Allergan, Inc., Allergan Sales, LLC, and Allergan USA, Inc. (collectively, "Allergan").
[5] Generic Defendants are: Hetero USA Inc., Hetero Labs Ltd., and Hetero Drugs Ltd. (collectively, "Hetero"); Torrent Pharmaceuticals Ltd. and Torrent Pharma Inc. (collectively, "Torrent"); Ascend Laboratories, LLC and Alkem Laboratories Ltd. (collectively, "Alkem"); Indchemie Health Specialties Private Ltd. ("Indchemie"); Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., and Glenmark Pharmaceuticals S.A. (collectively, "Glenmark"); ANI Pharmaceuticals, Inc., Amerigen Pharmaceuticals, Inc., and Amerigen Pharmaceuticals, Ltd. (collectively, "Amerigen"); Teva Pharmaceuticals Industries Ltd. ("Teva Israel"); Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (CT), Watson Pharma, Inc., Watson Pharmaceuticals Inc., Actavis, Inc., and Teva Pharmaceuticals USA, Inc. (collectively with Teva Israel, "Watson").

injunctive relief under federal antitrust law.  End-Payor Plaintiffs' Consolidated Amended Class Action Complaint, Dkt. No. 251 ("EPP Compl.").

Pending before the Court are four related motions to dismiss.  All Defendants move to dismiss Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim, Dkt. No. 267, and move to dismiss End-Payor Plaintiffs' Complaint for failure to state a claim, Dkt. No. 271, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant Teva Israel also moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction.  Dkt. No. 260.  And a group of twenty-eight Defendants not at home in New York ("Nonresident Defendants")[6] move pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction the End-Payor Complaint's ninety-nine non-New York, state-law claims.  Dkt. No. 265.

## BACKGROUND

On each of the four motions to dismiss, the Court accepts as true the allegations of the relevant complaints, and the documents incorporated by reference.[7]

## I.    Overview of the Alleged Scheme

From October 2012 through November 2013, Forest allegedly entered into a series of reverse-payment deals (also known as "pay for delay" deals) with Generic Defendants under which each Generic Defendant (1) agreed not to compete with Forest or enter the market with its generic version of Bystolic prior to September 17, 2021 (three months before patent expiration),

---

[6] Nonresident Defendants include all Defendants except for Watson Laboratories, Inc. (NY), Forest Laboratories, Inc., and the latter's successors—Forest Laboratories, LLC and Allergan Sales, LLC.

[7] This opinion cites the DPP Complaint as the other plaintiffs' complaints are substantially identical.

unless another Generic Defendant entered that market earlier; and in exchange (2) received "side-deals" and cash payments from Forest.  DPP Compl. ¶ 3.

Earlier, Forest had sued each Generic Defendant for patent infringement.  *Id.* ¶ 4. Although Generic Defendants would have allegedly succeeded in the patent litigation, as Forest's claim was weak, and they would have been ready to launch their generic versions of Bystolic well before September 17, 2021, Generic Defendants agreed to side deals with Forest to end the patent fight.  *Id.* ¶¶ 5–7.  Each Generic Defendant agreed to stay off the market until September 17, 2021 in exchange for a share of Forest's monopoly profits in the form of reverse payments.  *Id.* ¶¶ 6–7.  In other words, but for these payments, Generic Defendants would have launched their generic products earlier and Plaintiffs would have paid substantially less for nebivolol hydrochloride, i.e., Bystolic.  *Id.* ¶ 26.  As a result, the entry of less expensive, generic versions of Bystolic was delayed, the price of nebivolol hydrochloride was fixed at the price of Bystolic, and 100% of the United States market for nebivolol hydrochloride was allocated to Forest until September 17, 2021.  *Id.* ¶ 28.

These allegations are discussed in greater detail next.

## II.     Relevant Regulatory Framework for Generic Drugs

Under the Federal Food, Drug, and Cosmetic Act ("FDCA"), manufacturers of a new drug must obtain approval from the U.S. Food and Drug Administration ("FDA") by filing a New Drug Application ("NDA").  21 U.S.C. §§ 301–392; DPP Compl. ¶ 93.  Among the information contained in an NDA is information on applicable patents.  *Id.* § 355(a), (b); DPP Compl. ¶ 93.  When the FDA approves a drug manufacturer's NDA, the manufacturer may list certain patents in the "Approved Drug Products with Therapeutic Equivalence Evaluations" (known as the "Orange Book").  DPP Compl. ¶ 94.  The listed patents are those that could

reasonably be asserted against a generic manufacturer of the branded drug before the patents expire.  *Id.*

Manufacturers of generic versions of a branded drug may receive FDA approval through a different pathway.  The Hatch-Waxman Amendments, enacted in 1984, simplified the regulatory hurdles for prospective generic manufacturers by eliminating the need to file lengthy and costly NDAs.  *See* Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984); DPP Compl. ¶ 96.  Instead, a generic manufacturer may file an Abbreviated New Drug Application ("ANDA").  DPP Compl. ¶ 96.  While an ANDA must show that the generic drug is therapeutically equivalent to the brand drug, it can rely on the scientific findings of safety and effectiveness included in the brand manufacturer's original NDA.  *Id.*  Generic drugs that are therapeutically equivalent to and are of the same dosage strength and form as their approved branded counterpart are assigned an "AB" rating by the FDA.  *Id.*

For the FDA to approve an ANDA, a generic manufacturer must certify that the generic drug will not infringe any patents listed in the Orange Book.  *Id.* ¶ 100.  One of the four possible certifications is "that the patent for the brand drug is invalid or will not be infringed by the generic manufacturer's proposed product" (a "Paragraph IV certification").  *Id.*; 21 U.S.C. § 355(j)(2)(A)(vii).  If a generic manufacturer files a Paragraph IV certification, it must notify the brand manufacturer, and the brand manufacturer can delay FDA approval of the ANDA by suing the generic manufacturer for patent infringement.  DPP Compl. ¶ 101.  If the brand manufacturer sues for patent infringement within forty-five days of receiving notice of the Paragraph IV certification, the FDA will not grant final approval of the ANDA until the earlier of (a) thirty months after the receipt of the Paragraph IV notice; or (b) a court decision that the patent is invalid or not infringed by the generic manufacturer's ANDA.  21 U.S.C.

§ 355(j)(5)(B)(iii); DPP Compl. ¶ 101.  Thus, simply by filing suit, the brand manufacturer can forestall entry of the competitor drug for a period of time not to exceed thirty months.

To incentivize the manufacturing of generics, the Hatch-Waxman Amendments grants a 180-day exclusivity period to the first generic manufacturer that files a substantially complete ANDA with a Paragraph IV certification.  DPP Compl. ¶ 103; 21 U.S.C. § 355(j)(5)(B)(iv), (D). During this exclusivity period, the FDA may not grant final approval to any other generic manufacturer's ANDA for the same brand drug.  *Id.*  Where multiple generic companies are the first to file substantially complete ANDAs with Paragraph IV certifications, they may be eligible to share the 180-day exclusivity period.  *Id.* ¶ 106; 21 U.S.C. § 355(j)(5)(B)(iv).

### III.    Implications of Competition from Generics and a Brand Manufacturer's Incentives to Delay Generic Entry

On average, generic versions of brand drugs are 50% to 80% less expensive than brand drugs when there are multiple generic competitors on the market for a given brand drug.  DPP Compl. ¶ 107.  Every state has adopted laws that either require or permit pharmacies to automatically substitute less-expensive AB-rated generic equivalents for brand prescriptions (unless the prescribing physician has affirmatively requested the brand).  *Id.* ¶ 108.  Once a generic equivalent enters the market, the generic quickly captures sales of the brand drug, often capturing 80% or more of the brand's sales within the first six months.  *Id.*  Once multiple generic competitors enter, the competitive process accelerates, and multiple generic sellers typically compete vigorously with one another for sales by driving prices down.  *Id.* ¶ 109.

Generic competition enables purchasers of the drug to purchase substantially cheaper generics instead of the more expensive brand drug and to benefit from when the brand company lowers prices to compete with generics.  *Id.* ¶ 110.  Accordingly, when generic entry is delayed, purchasers are harmed by having to pay more than they otherwise would have to pay.  *Id.* ¶ 111.

Competition from generic drugs is viewed by brand-drug companies as a grave financial threat. *Id.* ¶ 109.  When exclusivity is lost and generic entry occurs, the brand manufacturer can expect a significant drop in profits.  *Id.* ¶ 112.  Brand manufacturers thus have financial incentives to delay generic entry.  *Id.* ¶ 113.  One way to delay generic entry is through the regulatory waiting period initiated in response to patent litigation, as discussed above.  *Id.*  Brand manufacturers thus frequently take aggressive positions in listing patents in the Orange Book and then bring patent lawsuits against any generic competitor that files an ANDA with a Paragraph IV certification.  *Id.*  These patent lawsuits are often litigated to delay generic entry rather than to enforce valid patents against infringing products.  *Id.*  If the brand manufacturer can keep the litigation going long enough, it can obtain for itself a thirty-month delay in the entry of the generic competitor.

Brand manufacturers also can forestall competition from a generic manufacturer of a generic product by entering into settlements to resolve the lawsuits in which the generic competitor drops its patent challenge and agrees to delay entry in exchange for a payment from the brand manufacturer.  *Id.* ¶ 114.  These settlements are sometimes called "pay-for-delay" or "reverse-payment agreements."  *Id.*  As regulatory and other scrutiny of such agreements has increased, brand manufacturers and generic competitors have allegedly entered into increasingly elaborate agreements in an attempt to mask the fundamentally anticompetitive character of their agreements.  *Id.* ¶ 115.

## IV.    Forest's NDA for Bystolic and Generic Defendants' ANDAs for Generic Versions of Bystolic

As part of the NDA for Bystolic, Forest listed two patents for inclusion in the FDA's Orange Book: U.S. Patent No. 6,545,040 ("the '040 Patent") and U.S. Patent No. 5,759,580 ("the '580 Patent").  *Id.* ¶¶ 4, 124.  The '040 Patent issued on April 8, 2003 and expired on December

17, 2021. *Id.* ¶ 125. The '580 Patent issued on June 2, 1998 and expired on June 2, 2015. *Id.* ¶ 124.

Bystolic qualified for a five-year marketing exclusivity period during which no ANDAs may be filed. *Id.* ¶ 101. This period is reduced to four years if, at the end of four years, an ANDA is filed with a Paragraph IV certification. 21 U.S.C. § 355(j)(5)(F)(ii); DPP Compl. ¶ 101. If the manufacturer of a branded drug sues within forty-five days of receiving the Paragraph IV certification, the approval waiting period is extended to the earlier of (a) 7.5 years after the original NDA's approval; or (b) a court decision that the patent is invalid or not infringed by the generic manufacturer's ANDA. DPP Compl. ¶ 101. In the interim, the FDA may only grant tentative approval and not final approval of the ANDA. *Id.*

In December 2011, the seven Generic Defendants filed ANDAs with the FDA containing Paragraph IV certifications regarding the Bystolic patents. *Id.* ¶¶ 4, 140. They were the first generic manufacturers to file substantially complete ANDAs with Paragraph IV certifications. *Id.* As such, Generic Defendants were eligible to potentially share the 180-day exclusivity period during which the FDA would not grant final approval to any other generic manufacturer's ANDA for generic Bystolic. *Id.* ¶ 141. In February 2012, Generic Defendants notified Forest of their Paragraph IV certifications. *Id.* ¶ 142. Forest then had forty-five days to sue for patent infringement.

## V.   Bystolic Patent Litigation and the Settlement Agreements and Side Agreements between Forest and Generic Defendants

On March 13, 2012, in response to the Paragraph IV certification notices, Forest filed a patent infringement lawsuit in the U.S. District Court for the District of Delaware against Generic Defendants Torrent, Watson, Amerigen, Glenmark, and Hetero. *Id.* ¶ 144; *see also Forest Laboratories, Inc. v. Torrent Pharms. Ltd. et al*, 12-cv-305 (D. Del. Mar. 13, 2012).

Though some of the notices related to both the '040 and the '580 Patents, Forest only asserted the '040 Patent and declined to sue on the '580 Patent.  DPP Compl. ¶¶ 124, 144.

The next day, on March 14, 2012, Forest filed a patent infringement lawsuit in the U.S. District Court for the Northern District of Illinois against Generic Defendants Indchemie and Alkem.  *Id.* ¶ 145; *see also Forest Laboratories, Inc. v. Indchemie Health Specialties PVT. LTD. et al*, 12-cv-1855 (N.D. Ill. Mar. 14, 2012).  Again, Forest only asserted the '040 Patent and declined to sue on the '580 Patent.  DPP Compl. ¶ 145.

Pursuant to 28 U.S.C. § 1407, the District of Delaware action was transferred to the Northern District of Illinois, and the two patent cases were consolidated into one action (the "Nebivolol Patent Litigation").  *See In re Nebivolol Patent ('040) Litig.*, 12-cv-5026 (N.D. Ill. June 12, 2012).  These lawsuits automatically triggered stays so that the FDA could not grant final approval of Generic Defendants' ANDAs before June 18, 2015, absent an earlier favorable decision in the suits for Generic Defendants.  DPP Compl. ¶ 4.

From October 2012 through November 2013, Forest entered into settlements and side deals with the seven Generic Defendants to resolve the Nebivolol Patent Litigation.  *Id.* ¶¶ 3, 151.  In their settlement agreements with Forest, each Generic Defendant agreed not to sell generic Bystolic until September 17, 2021, three months before the expiration of the '040 Patent, unless another Generic Defendant entered the market earlier.  *Id.* ¶ 3.  Each settlement agreement allegedly also had a side deal.  *Id.* ¶ 8.

The DPP Complaint alleges that, in connection with a merger between Forest and Actavis in 2014, Forest's outside counsel sought to review "all of the Bystolic settlement and licensing agreements as well as the side agreements with those generic companies."  *Id.*  Forest's in-house counsel responded to outside counsel that Forest had entered into settlement agreements with

Generic Defendants and that "[a]ll had side deals (one side was struck with Alkem, which is a related company with Indchemie)." *Id.* ¶¶ 8, 151. The merger agreement disclosed Forest's "material contracts," which were defined to include:

> any Contract involving the settlement of any action or threatened action (or series of related actions) (A) which will (x) involve payments after the date hereof of consideration in excess of $15,000,000 or (y) impose monitoring or reporting obligations to any other Person outside the ordinary course of business or (B) with respect to which material conditions precedent to the settlement have not been satisfied.

*Id.* ¶ 9. Forest listed the following agreements as material contracts in connection with the settlement of the Bystolic patent dispute:

- Hetero: "SETTLEMENT AGREEMENT between Forest Laboratories, Inc. and Forest Laboratories Holdings, Ltd., and Hetero USA Inc. and Hetero Labs Ltd. dated October 24, 2012 . . . together with the FINAL TERM SHEET between Hetero Drugs Ltd. and Forest Laboratories Ireland Ltd. dated October 5, 2012, in connection with the settlement of BYSTOLIC patent dispute." *Id.* ¶ 12.

- Torrent: "SETTLEMENT AGREEMENT between Forest Laboratories, Inc. and Forest Laboratories Holdings, Ltd., and Torrent Pharmaceuticals Ltd. and Torrent Pharma Inc. dated November 21, 2012 . . . together with the PATENT ASSIGNMENT AGREEMENT between Torrent Pharmaceuticals Ltd. and Forest Laboratories Holdings Ltd. dated November 21, 2012, in connection with the settlement of BYSTOLIC patent dispute." *Id.* ¶ 13.

- Alkem/Indchemie: "SETTLEMENT AGREEMENT between Forest Laboratories, Inc. and Forest Laboratories Holdings, Ltd., and Alkem Laboratories Ltd. dated November 27, 2012 . . . together with the TERM SHEET between Alkem Laboratories Ltd., Indchemie Health Specialties Private Ltd., and Forest Laboratories Ireland Ltd. dated November 28, 2012 in connection with the settlement of BYSTOLIC patent dispute. AMENDMENT NO. 1 TO SETTLEMENT AGREEMENT was executed on January 9, 2013 . . . . SETTLEMENT AGREEMENT between Forest Laboratories, Inc. and Forest Laboratories Holdings, Ltd., and Indchemie Health Specialties Private Ltd. dated November 27, 2012 . . . together with the TERM SHEET between Alkem Laboratories Ltd., Indchemie Health Specialties Private Ltd., and Forest Laboratories Ireland Ltd. dated November 28, 2012, in connection with the settlement of BYSTOLIC patent dispute." *Id.* ¶ 14.

- Glenmark: "SETTLEMENT AGREEMENT between Forest Laboratories, Inc. and Forest Laboratories Holdings, Ltd., and Glenmark Generics Inc., USA and Glenmark Generics Ltd. dated December 21, 2012 . . . together with the COLLABORATION AND OPTION AGREEMENT between Glenmark Pharmaceuticals S.A. and Forest Laboratories Holdings Ltd. dated December 21, 2012, in connection with the settlement of BYSTOLIC patent dispute." *Id.* ¶ 15.

- Amerigen: "SETTLEMENT AGREEMENT between Forest Laboratories, Inc. and Forest Laboratories Holdings, Ltd., and Amerigen Pharmaceuticals, Inc. and Amerigen Pharmaceuticals, Ltd. dated July 18, 2013 . . . together with the BINDING TERM SHEET COLLABORATION AGREEMENT between Forest Laboratories, Inc. and Amerigen Pharmaceuticals, Ltd. dated July 18, 2013, in connection with the settlement of BYSTOLIC patent dispute." *Id.* ¶ 16.

- Watson: "SETTLEMENT AGREEMENT between Forest Laboratories, Inc. and Forest Laboratories Holdings, Ltd., and Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (CT), Watson Pharma, Inc., and Actavis, Inc. dated November 6, 2013 . . . together with (a) the LETTER from Forest Laboratories, Inc. to Moksha8, Inc. dated November 1, 2013 and (b) TERMINATION AND RELEASE AGREEMENT between Actavis, Inc. and Moksha8, Inc. dated November 4, 2013, in connection with the settlement of BYSTOLIC patent dispute." *Id.* ¶ 17.

All of the settlement agreements with Generic Defendants provided licenses permitting them to launch their respective generic versions of Bystolic as of the date that is the later of (a) three calendar months prior to expiration of the '040 Patent, (b) the date of final FDA approval of the Generic Defendant's ANDA, or (c) earlier in certain circumstances. *Id.* ¶ 21.  The earlier circumstances refer to the agreements' respective "contingent launch provisions" or "acceleration clauses," which permit a Generic Defendant to enter the market at the same time as any of its competitors if a competitor can enter the market earlier for some reason.  *Id.*  Unless an exception applied, the agreements allowed Forest to maintain monopoly profits and not face generic competitors until at least September 17, 2021, three months before patent expiration.  *Id.* ¶ 23.  Each of these settlement agreements and side agreements is discussed in greater detail below.

In light of the settlements, Forest avoided certain litigation costs.  *Id.* ¶ 170.  The DPP Complaint alleges that, according to the American Intellectual Property Law Association's 2013 Report of the Economic Survey, the median cost of patent litigation at that time for cases with more than $25 million at stake was $5–6 million.  *Id.*  It also alleges that, since the two separately filed patent cases were consolidated for proceedings in the Nebivolol Patent Litigation, Forest likely would have expended substantially less, in total, than it would have expended had the two patent cases involved a series of different and distinct patents and issues, or if they had proceeded independently of one another.  *Id.*  As a result, the DPP Complaint alleges that Forest's saved litigation costs with respect to each Generic Defendant were far less than $5–6 million.  *Id.*

It is alleged that but for the agreements settling the patent litigation, Generic Defendants would have launched their generic products earlier at one of three possible times: (a) "at risk," meaning when a generic has received final approval from the FDA to market its product but while the patent litigation is continuing; (b) upon prevailing against Forest in the underlying patent litigation; or (c) via lawful settlement agreements providing for earlier negotiated entry dates unaffected by any induced delay.  *Id.* ¶ 26.  Under these scenarios, Plaintiffs would have paid substantially less for nebivolol hydrochloride, and Defendants' conduct delayed the entry of less expensive nebivolol hydrochloride, fixed the price of nebivolol hydrochloride, and allocated the whole United States market for nebivolol hydrochloride to Forest until three months before patent expiration.  *Id.* ¶¶ 27–28.

## PROCEDURAL HISTORY

This case involves two sets of lawsuits based on substantially identical facts.  The first actions in this case were filed in July 2020.  The first set of lawsuits are brought by Direct Purchaser Plaintiffs and Retailer Plaintiffs who bring claims for damages under federal antitrust

law.  The second set of lawsuits are brought by End-Payor Plaintiffs under state antitrust and

consumer-protection laws and for injunctive relief under federal antitrust law.  The Direct

Purchaser Plaintiffs' actions were consolidated, the End-Payor Plaintiffs' actions were

consolidated, and the two consolidated actions and the two Retailer Plaintiffs' actions were

coordinated with one another under one docket to promote efficiency in managing and litigating

the cases.  Dkt. Nos. 50, 82, 86, 204; *CVS Action*, 20-cv-10087 (S.D.N.Y.), ECF No. 19;

*Walgreen Action*, 20-cv-9793 (S.D.N.Y.), ECF No. 20.  Though Defendants moved to transfer

the cases to the District of New Jersey, Dkt. No. 79, the Court denied the motion to transfer

venue, Dkt. No. 178.  On December 3, 2020, Direct Purchaser Plaintiffs filed their Consolidated

and Amended Class Action Complaint, Dkt. No. 111, and End-Payor Plaintiffs filed their

Consolidated Class Action Complaint, Dkt. No. 113.  On December 23, 2020, Retailer Plaintiffs

filed their respective amended complaints.  *CVS Action*, 20-cv-10087 (S.D.N.Y.), ECF No. 20;

*Walgreen Action*, 20-cv-9793 (S.D.N.Y.), ECF No. 21.  Thereafter, Nonresident Defendants

moved to dismiss the End-Payor Plaintiffs' complaint for lack of personal jurisdiction, Dkt. No.

215; Teva Israel moved to dismiss all claims against it for lack of personal jurisdiction, Dkt. No.

218; Defendants moved to dismiss Direct Purchaser and Retailer Plaintiffs' complaints for

failure to state a claim, Dkt. No. 223; and Defendants moved to dismiss End-Payor Plaintiffs'

complaint for failure to state a claim, Dkt. No. 226.  In response to Defendants' various motions

to dismiss, all Plaintiffs elected to amend their complaints, Dkt. No. 240, and the Court denied

the motions to dismiss without prejudice as moot, Dkt. No. 241.

On March 15, 2021, the operative amended complaints in this case were filed: the DPP

Complaint, Dkt. No. 250; the Retailer Plaintiffs' Complaints, *CVS Action*, 20-cv-10087

(S.D.N.Y.), ECF No. 35; *Walgreen Action*, 20-cv-9793 (S.D.N.Y.), ECF No. 34; and the EPP

Complaint, Dkt. No. 251.  The Direct Purchaser and Retailer Plaintiffs' Complaints bring claims

for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, alleging agreements not to

compete with brand and generic Bystolic between Forest and Generic Defendants, and claims for

violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, alleging conspiracy to monopolize as

to brand and generic Bystolic through agreements between Forest and Generic Defendants and

alleging monopolization and monopolistic scheme against Forest.  DPP Compl. ¶¶ 203–345;

*CVS Action*, 20-cv-10087 (S.D.N.Y.), ECF No. 35 ¶¶ 182–307; *Walgreen Action*, 20-cv-9793

(S.D.N.Y.), ECF No. 34 ¶¶ 184–309.  The EPP Complaint brings claims for monopolization and

monopolistic scheme under various state antitrust laws against Forest; for conspiracy to

monopolize under various state antitrust laws against all Defendants; for combination and

conspiracy in restraint of trade under various state antitrust laws against all Defendants; for

unfair or deceptive trade practices under various state consumer-protection laws against all

Defendants; and for declaratory and injunctive relief against all Defendants under Section 16 of

the Clayton Act, 15 U.S.C. § 26, for all Defendants' violations of Sections 1 and 2 of the

Sherman Act.  EPP Compl. ¶¶ 290–457.

On April 23, 2021, Defendants moved to dismiss the Direct Purchaser and Retailer

Plaintiffs' Complaints, Dkt. No. 267, and moved to dismiss End-Payor Plaintiffs' Complaint,

Dkt. No. 271.  That same day, Defendant Teva Israel moved pursuant to Federal Rule of Civil

Procedure 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction, Dkt. No. 260,

and the Nonresident Defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to

dismiss for lack of personal jurisdiction the EPP Complaint's ninety-nine non-New York, state-

law claims, Dkt. No. 265.  After the four motions to dismiss were fully briefed, the Court held

oral argument on the motions on December 14, 2021.

## DISCUSSION

### I.   Motion to Dismiss Direct Purchaser and Retailer Plaintiffs' Complaints

The Court turns first to Defendants' motion to dismiss the Direct Purchaser and Retailer
Plaintiffs' Complaints for failure to state a claim.  For brevity, in this section of the discussion,
the Court's references to "Direct Purchaser Plaintiffs" and the "DPP Complaint" encompass
Retailer Plaintiffs and Retailer Plaintiffs' Complaints, respectively.

Defendants argue that the settlement agreements and side agreements between Forest and
each of the Generic Defendants are lawful, that the Direct Purchaser Plaintiffs' Complaint
depends on improper generalized group pleading, that Direct Purchaser Plaintiffs' theories of
causation fail as a matter of law and should be struck from the pleading, and that Direct
Purchaser Plaintiffs' construction of the Sherman Act violates due process.  Dkt. No. 269.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for
failure to state a claim upon which relief can be granted, a complaint must include "sufficient
factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570
(2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of
the elements of a cause of action," or "naked assertion[s]" devoid of "further factual
enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate
question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a
plausible claim for relief will . . . be a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility
requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).[8]

## A.  Large and Unjustified Reverse Payments Under *FTC v. Actavis*

The theory of Direct Purchaser Plaintiffs' case relies heavily on *FTC v. Actavis*, 570 U.S. 136 (2013).  In *FTC v. Actavis*, the Supreme Court held that antitrust cases premised on reverse-payment settlements of patent litigation—"reverse" because the settlement requires the patentee to pay the alleged infringer rather than the other way around—can sometimes violate the antitrust laws and must be evaluated under the rule of reason.  *Id.* at 140, 159.  That case arose in a similar context as that alleged by Direct Purchaser Plaintiffs here.

In *FTC v. Actavis*, two generic drug manufacturers—Actavis, Inc. and Paddock Laboratories ("Paddock")—filed ANDAs for a generic drug modeled after the brand-name drug AndroGel, and the brand manufacturer Solvay Pharmaceuticals ("Solvay") initiated paragraph IV patent litigation against the two generic manufacturers pursuant to the Hatch-Waxman regulatory framework.  *Id.* at 144–45.  A fourth manufacturer, Par Pharmaceutical ("Par"), did not file its own application but joined forces with Paddock.  *Id.*  Solvay settled the patent litigation with the generic manufacturers in 2006.  *Id.* at 145.  Under the terms of the settlement, Actavis agreed not to bring its generic product to market until a date in 2015, nine years after the date of the settlement but sixty-five months before the brand manufacturer's patent expired.  *Id.*  Actavis also agreed to promote AndroGel to urologists.  *Id.*  The other generic manufacturers

---

[8] Defendants argue that Direct Purchaser Plaintiffs' allegations that the side agreements were pretextual sound in fraud and therefore must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b).  Dkt. No. 269 at 16–17.  The Court will not apply a heightened pleading standard.  In *FTC v. Actavis*, when faced with similar allegations—that the "true point of the payments" from the brand manufacturer to the generics "was to compensate the generics for agreeing not to compete against [the brand-name drug] until 2015," 570 U.S. 136, 145 (2013)—the Supreme Court did not impose the heightened pleading standard of Rule 9(b).

made generally similar promises.  *Id.*  In exchange, the brand manufacturer agreed to pay millions of dollars to each generic manufacturer—$12 million in total to Paddock; $60 million in total to Par; and about $19 to $30 million annually for nine years to Actavis.  *Id.*

The Federal Trade Commission ("FTC") sued the brand manufacturer and the three generic manufacturers for violating Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.  The FTC's theory was that the parties had engaged in a thinly camouflaged agreement to restrain trade:  The generic manufacturers had agreed to refrain from launching their own generic products to compete with AndroGel for nine years in exchange for a share of the brand manufacturer's monopoly profits.  *Actavis*, 570 U.S. at 145.  The implicit premise was that, but for the agreement, the generic manufacturers would have been able to launch their competing products earlier.  Although the pharmaceutical companies argued that the payments compensated the generics for services promised to be performed, the FTC claimed that the payments compensated the generics for agreeing not to compete against AndroGel until 2015.  *Id.*  The district court dismissed the FTC's complaint for failing to set forth an antitrust law violation, and the Court of Appeals for the Eleventh Circuit affirmed.  *Id*. at 145–46.

The Supreme Court reversed and held that the FTC's dismissed complaint alleged reverse-payment settlements that may violate the antitrust laws and that the FTC's lawsuit should have been allowed to proceed.  *Id.* at 141.  The *Actavis* Court noted that "[t]he FTC alleges that in substance, the plaintiff agreed to pay the defendants many millions of dollars to stay out of its market, even though the defendants did not have any claim that the plaintiff was liable to them for damages."  *Id.* at 147.  And the Supreme Court continued that "[t]hat form of settlement is unusual" and that "there is reason for concern that settlements taking this form tend to have significant adverse effects on competition."  *Id.* at 147–48.

17

The *Actavis* Court based its conclusion on five sets of considerations. *Id.* at 153. First, reverse-payment settlements of patent litigation have "the potential for genuine adverse effects on competition." *Id.* (internal quotation marks omitted). A "payment in return for staying out of the market . . . simply keeps prices at patentee-set levels, potentially producing the full patent-related $500 million monopoly return while dividing that return between the challenged patentee and the patent challenger"—"[t]he patentee and the challenger gain; the consumer loses." *Id.* at 154. Where there are indications that the brand manufacturer pays a generic manufacturer a sum even larger than what the generic would gain in profits if it won the paragraph IV litigation and entered the market, "a payment of this size cannot in every case be supported by traditional settlement considerations." *Id.* "The payment may instead provide strong evidence that the patentee seeks to induce the generic challenger to abandon its claim with a share of its monopoly profits that would otherwise be lost in a competitive market." *Id.*

Second, the Supreme Court recognized that "these anticompetitive consequences will at least sometimes prove unjustified." *Id.* at 156. "[O]ffsetting or redeeming virtues are sometimes present." *Id.* The *Actavis* Court explained:

> The reverse payment, for example, may amount to no more than a rough approximation of the litigation expenses saved through the settlement. That payment may reflect compensation for other services that the generic has promised to perform—such as distributing the patented item or helping to develop a market for that item. There may be other justifications. Where a reverse payment reflects traditional settlement considerations, such as avoided litigation costs or fair value for services, there is not the same concern that a patentee is using its monopoly profits to avoid the risk of patent invalidation or a finding of noninfringement. In such cases, the parties may have provided for a reverse payment without having sought or brought about the anticompetitive consequences we mentioned above.

*Id.* Yet, the Supreme Court continued, the possibility that a reverse payment may in some circumstances be supported by legitimate reasons "does not justify dismissing the FTC's complaint." *Id.* Rather "[a]n antitrust defendant may show in the antitrust proceeding that

legitimate justifications are present, thereby explaining the presence of the challenged term and showing the lawfulness of that term under the rule of reason." *Id.*

Third, the Supreme Court reasoned that "where a reverse payment threatens to work unjustified anticompetitive harm, the patentee likely possesses the power to bring that harm about in practice." *Id.* at 157. And "[a]t least, the size of the payment from a branded drug manufacturer to a prospective generic is itself a strong indicator of power—namely, the power to charge prices higher than the competitive level." *Id.*

Fourth, the *Actavis* Court set forth the reasons for why such an antitrust action would not be administratively infeasible. *Id.* "[I]t is normally not necessary to litigate patent validity to answer the antitrust question (unless, perhaps, to determine whether the patent litigation is a sham)." *Id.* (citation omitted). Rather:

> An unexplained large reverse payment itself would normally suggest that the patentee has serious doubts about the patent's survival. And that fact, in turn, suggests that the payment's objective is to maintain supracompetitive prices to be shared among the patentee and the challenger rather than face what might have been a competitive market—the very anticompetitive consequence that underlies the claim of antitrust unlawfulness.

*Id.* In short, "the size of the unexplained reverse payment can provide a workable surrogate for a patent's weakness, all without forcing a court to conduct a detailed exploration of the validity of the patent itself." *Id.* at 158.

The fifth and final consideration was that "the fact that a large, unjustified reverse payment risks antitrust liability does not prevent litigating parties from settling their lawsuit" in other ways. *Id.* For example, the brand manufacturer may "allow[] the generic manufacturer to enter the patentee's market prior to the patent's expiration, without the patentee paying the challenger to stay out prior to that point." *Id.* When a settlement includes a reverse payment, the relevant antitrust question is why. "If the basic reason is a desire to maintain and to share patent-

generated monopoly profits, then, in the absence of some other justification, the antitrust laws are likely to forbid the arrangement." *Id.*

> The *Actavis* Court thus summarized its discussion:
>
> [A] reverse payment, where large and unjustified, can bring with it the risk of significant anticompetitive effects; one who makes such a payment may be unable to explain and to justify it; such a firm or individual may well possess market power derived from the patent; a court, by examining the size of the payment, may well be able to assess its likely anticompetitive effects along with its potential justifications without litigating the validity of the patent; and parties may well find ways to settle patent disputes without the use of reverse payments.

*Id.* These considerations led the *Actavis* Court to conclude that such settlements should not be categorically shielded from antitrust scrutiny. *Id.*

At the same time, however, the Supreme Court also rejected the FTC's argument that reverse-payment settlements should be deemed "presumptively unlawful" and be reviewed "via a 'quick look' approach." *Id.* at 158–59. Under that approach, any agreement pursuant to which a generic manufacturer agreed to honor a patent and to refrain from entering the market prior to the patent's expiration would be presumptively unlawful if the generic received payment in exchange for that promise, and the burden would then shift to the parties to that agreement to provide a legitimate pro-competitive justification for it. A complaint based solely on those allegations would survive a motion to dismiss, and the defendants would have to prove that "any money that changed hands was for something other than a delay, such as the generic manufacturer's provision of property or services unrelated to the brand-name manufacturer's monopoly." Brief for the Petitioner at 37, *FTC v. Actavis*, 570 U.S. 136 (2013) (No. 12-416) (internal quotation marks and citation omitted). The Supreme Court rejected the FTC's argument. *Actavis*, 570 U.S. at 158–59. It held that a quick-look approach "is appropriate only where an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Id.*

at 159 (internal quotation marks omitted).  The reverse-payment agreement did not fit into that

category; it was not presumptively wrongful.  *Id.*  The Supreme Court reasoned that the

anticompetitive nature of the agreement would depend on more particularized facts because "the

likelihood of a reverse payment bringing about anticompetitive effects depends upon its size, its

scale in relation to the payor's anticipated future litigation costs, its independence from other

services for which it might represent payment, and the lack of any other convincing

justification."  *Id.*  "These complexities," including also the variance among industries in the

"existence and degree of any anticompetitive consequence," justified application of the rule of

reason.  *Id.*

Since *Actavis*, the lower federal courts have struggled with the standards set forth by the

Supreme Court.[9]  *See, e.g.*, *In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL

2403727, at *11 (S.D.N.Y. June 11, 2021) (describing the Supreme Court's *Actavis* decision as

"an opinion that has long bedeviled district courts"); *In re Aggrenox Antitrust Litig.*, 94 F. Supp.

3d 224, 242 (D. Conn. 2015) ("District courts applying *Actavis* have . . . had relatively little

guidance on the question of what constitutes a 'large' and 'unjustified' reverse payment . . . .");

*In re Lipitor Antitrust Litig.*, 868 F.3d 231, 254 (3d Cir. 2017) ("For its part, the Supreme Court

in *Actavis* was deliberately opaque about the parameters of reverse payment antitrust claims.").

---

[9] The challenge is compounded by some ambiguity within *Actavis* itself.  In summarizing its
holding, the Supreme Court stated, "a reverse payment, where large and unjustified, can bring
with it the risk of significant anticompetitive effects," and also stated, "one who makes *such* a
payment may be unable to explain and justify it."  *Id.* at 158.  The *Actavis* Court elsewhere stated
that where the plaintiff has alleged a large and unjustified payment, "[a]n antitrust defendant may
show in the antitrust proceeding that legitimate justifications are present, thereby explaining the
presence of the challenged term and showing the lawfulness of that term under the rule of
reason."  *Id.* at 156.  It is not clear from the four corners of the opinion the circumstances where
a reverse payment may be both large and unjustified and still able to be explained and justified
by the defendant.

The Second Circuit has not yet addressed what is sufficient to plead a large and unjustified

reverse payment to overcome a motion to dismiss.  The courts that have considered reverse-

payment agreements have stated that, "[t]o trigger antitrust concern under *Actavis*, a settlement

term must be '(1) a "payment" that is (2) made in "reverse"—that is, from the patent holder to

the alleged infringer—and is [(3)] "large," and (4) "unexplained."'"  *Sergeants Benevolent Ass'n*

*Health & Welfare Fund v. Acta Vis, PLC*, 2016 WL 4992690, at *13 (S.D.N.Y. Sept. 13, 2016)

(quoting *In re Actos End Payor Antitrust Litig.*, 2015 WL 5610752, at *11 (S.D.N.Y. Sept. 22,

2015)).  "Because the existence and degree of any anticompetitive effects may vary depending

on the particular settlement and the relevant industry, plaintiffs must show that the settlements

are anticompetitive under the rule of reason analysis applied to other types of antitrust claims."

*Id.* (internal quotation marks omitted).  Moreover,

> [i]n this Circuit, [the rule of reason analysis] involves three steps:  First, the plaintiff
> bears the initial burden of showing that the defendant's conduct had an actual
> adverse effect on competition as a whole in the relevant market.  If plaintiff satisfies
> this burden, the burden then shifts to the defendant to offer evidence that its conduct
> had pro-competitive effects.  If the defendant is able to offer such proof, the burden
> shifts back to plaintiff, who must prove that any legitimate competitive effects
> could have been achieved through less restrictive alternatives.

*Id.* (alterations adopted) (citing *Arkansas Carpenters Health & Welfare Fund v. Bayer AG*, 604

F.3d 98, 104 (2d Cir. 2010)).

However, those general statements beg the question what makes a payment "large" or

"unjustified" and what facts must be alleged to plead a claim and open the doors to discovery.

"In *Actavis*, the Court did not say what constitutes a 'large' or 'unjustified' reverse payment, but

it instead instructed courts (1) to compare a payment to the payor's future litigation costs as a

measure of scale to determine if it was 'large,' and (2) to consider whether a payment 'reflects

traditional settlement considerations, such as avoided litigation costs or fair value for services' to

determine if it was justified."  *Id.* at *14.

Courts in this Circuit have taken somewhat different approaches to those questions.  For example, in *In re Actos End Payor Antitrust Litigation*, Judge Abrams concluded that "to meet their pleading burden as to whether the payments were 'large' and 'unjustified,' Plaintiffs must plausibly allege a factual basis for the Court to reasonably estimate the value of the settlement terms."  2015 WL 5610752, at *19.  Judge Abrams continued, "Although Plaintiffs need not provide precise calculations at the pleading stage, here, they do not even attempt to provide a factual basis for the 'tens' and 'hundreds of millions' of dollars allegedly paid by [the brand manufacturer]."  *Id.*  Accordingly, those "bare allegations" were "insufficient for the Court to make a reasonable estimate of the settlements' value and determine whether they constituted large and unjustified payments."  *Id.; see also In re Opana ER Antitrust Litig.*, 2016 WL 738596, at *8–9 (N.D. Ill. Feb. 25, 2016) ("[I]n order to raise a right to relief above the speculative level, [plaintiffs] must provide some reliable foundation to show an estimated value of the reverse payment and how that estimate was calculated.  Further, [plaintiffs'] allegation that the reverse payment was 'an amount far above any litigation costs saved by Endo (or Impax) by settling,' fails to calculate what those saved costs actually were.  Without this information, it is impossible to determine whether the payment was 'large' or 'unjustified' in comparison to the avoided litigation costs and any other services provided from Impact to Endo." (citation omitted)).

In *In re Aggrenox Antitrust Litigation*, Judge Underhill acknowledged that, "among the stronger of the defendants' arguments" is the argument that "the plaintiffs have not attempted to assign dollar values with significant precision or very obvious methodological justification to the various provisions of the settlement."  94 F. Supp. 3d at 244.  But he ultimately concluded that such allegations were not necessary because "very precise and particularized estimates of fair value and anticipated litigation costs may require evidence in the exclusive possession of the

defendants, as well as expert analysis, and . . . these issues are sufficiently factual to require discovery." *Id.* Judge Underhill could not "conclude simply from the absence of precise figure that the pleadings represent formulaic recitations of elements and allegations that fail to rise above the speculative." *Id.* at 244–45. Rather, the complaints made "specific allegations about the terms of the settlement and their relative value that are plausible on their face." *Id.* at 245. The plaintiffs had "alleged that the total payment [was] far greater than the fair value of the services falling under [a] Co-Promotion Agreement, and therefore constitute[d] a large and unjustifiable reverse payment, which they allege[d was] especially clear since payment [was] guaranteed even without the generation of additional sales." *Id.* at 243. They also "allege[d] that [the brand manufacturer] agreed not to launch its own 'authorized generic' during [the generic manufacturer's] 180-day exclusivity period under the Hatch-Waxman Act, which further enlarged the reverse payment by constituting an additional unexplained transfer of value to [the generic]." *Id.* at 244. "Whether the plaintiffs can substantiate those allegations may be an issue for summary judgment or trial, but for purposes of the motions to dismiss, [the court] must accept the allegations as true and draw all reasonable inferences in the plaintiffs' favor." *Id.* at 245.

Similarly, in *Sergeants Benevolent Association Health and Welfare Fund v. Acta Vis, PLC*, Judge McMahon determined that the questions of whether a reverse payment is large and unjustified represent "intrinsically fact-based determinations [that] cannot be made on a pre-answer motion to dismiss." 2016 WL 4992690, at *14. There, the plaintiffs had alleged that, contemporaneously with the execution of each of the settlement agreements, the brand manufacturer made payments to cover the generic manufacturers' litigation costs and to provide other compensation for promoting the brand drug and also granted early-entry licenses, which

allowed the generics to manufacture a generic version of the drug three months before patent expiration. *Id.* at *13–14. Judge McMahon concluded that "[d]iscovery [was] needed to reveal whether the payments Forest made to the Generic Defendants were actually commensurate with the legal fees they expected to pay over the course of the ANDA A patent litigation, or constituted reasonable compensation for promoting brand-name Namenda IR to doctors and patients." *Id.* at *14. The "[p]laintiffs [had] alleged that these payments exceeded reasonable costs and compensation." *Id.* And "without evidence related to what the Generic Defendants had already paid in legal fees and what they reasonably could be expected to continue paying if they had continued to litigate the patent infringement actions, the Court cannot say, as a matter of law, that the payments were not large and unjustified." *Id.* It appears that under Judge McMahon's approach, as well as under Judge Underhill's approach, a plaintiff need only plead the approximate amount of a payment and that it is large and unjustified in order to state a claim for relief under the general pleading standards of Rule 8 of the Federal Rules of Civil Procedure.

The Third Circuit has taken a similar approach. It has held that "[a] plaintiff can meet this pleading standard without describing in perfect detail the world without the reverse payment, calculating reliably the payment's exact size, or preempting every possible explanation for it." *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 356 (3d Cir. 2020); *see also In re Lipitor Antitrust Litig.*, 868 F.3d at 254. "If a plaintiff plausibly alleges that an agreement's anticompetitive effects outweigh its procompetitive virtues, the district court must accept that allegation and allow the plaintiff to take discovery. If genuine issues of material fact remain, the rule-of-reason analysis is for the factfinder, not the court." *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d at 356.

In describing the level of detail required to be pleaded for a reverse payment to be considered "large," the Third Circuit recounted the allegations in *Actavis* on the size of the reverse payment:

> There, the FTC alleged simply that a patentee "agreed to pay [a generic manufacturer] $10 million per year for six years," "agreed to pay [another generic manufacturer] $2 million per year for six years," and "projected that it would pay [a third generic manufacturer] about $19 million during the first year of its agreement, rising to over $30 million annually by the end of the deal."

*In re Lipitor Antitrust Litig.*, 868 F.3d at 254–55 (alterations in original) (citations omitted). Further, "the FTC's complaint did not preemptively negate justifications for the reverse payments" and instead "simply alleged that the payments were meant to, and did, induce delay of likely successful patent challenges through the sharing of monopoly profits." *Id.* at 255. In other words, "[t]o plausibly allege an unjustified reverse payment, an antitrust plaintiff need only allege the absence of a convincing justification for the payment." *Id.* at 256 (internal quotation marks omitted). Allegations that the value of the released patent litigation claims far exceeds any litigation costs the brand manufacturer avoided by settling are sufficient. *Id.* "[A]ll that need be alleged, at this juncture [i.e., the motion-to-dismiss stage], is that those [saved litigation] costs fail to explain the hundreds of millions of dollars of liability released by [the brand manufacturer]." *Id.* "[F]inely calibrated litigation cost estimates . . . are unnecessary at this stage of the litigation." *Id.*

In determining what must be pleaded to survive a motion to dismiss, the Court in the instant case takes additional guidance both from the Supreme Court's decision in *Twombly* and from the *Actavis* Court's rejection of the FTC's quick-look approach to reverse-payment settlements. The approach taken by those courts that have permitted complaints to go forward only on general allegations that a reverse payment is large and unjustified seems to be animated by a concern that applying the pleading standards too rigidly would permit many anticompetitive

26

agreements to go unprosecuted and could render *Actavis* and the Sherman Act's protection

against pay-for-delay agreements an empty promise:  Clever competitors would shield their

agreement from any review by characterizing those payments that are for delay as for

consideration for some other service.  Although some such characterizations might be accurate, a

consumer who lacks information about the value of the service or the motivation for entering the

agreement would have no means to challenge the competitors' characterization, obtain

discovery, and ask a court to decide whether it was pretextual.

The Supreme Court addressed in *Twombly* the generalized concern that a requirement

that a plaintiff plead facts to support a claim might result in some, and perhaps much,

anticompetitive conduct going unredressed.  The question there was whether allegations of

parallel conduct along with the claim that the defendants entered into an agreement to restrain

competition and to prevent competitive entry into each other's respective markets was sufficient

to state a claim for relief and to require an answer and at least some minimal discovery.  Justice

Stevens' dissent reasoned that the alleged conduct was "entirely consistent with the *presence* of

the illegal agreement alleged in the complaint," that plaintiffs were entitled to an answer at least

"denying a charge that [defendants] in fact engaged in collective decisionmaking," and that any

concerns that "[p]rivate antitrust litigation can be enormously expensive" can be addressed by

"careful case management, including strict control of discovery."  *Twombly*, 550 U.S. at 573–74

(Stevens, J., dissenting).  The Supreme Court majority answered that conduct that is consistent

with and equally explicable by a pro-competitive justification—by each defendant acting in its

own independent interest—and that raises only the possibility of anticompetitive conduct is not

sufficient to state a claim and to subject the defendants to what it characterized as the

"potentially enormous expense of discovery."  *Id.* at 559; *see also id.* at 556.  The *Twombly*

Court was not oblivious to the fact that "in antitrust cases, . . . the proof is largely in the hands of the alleged conspirators," *id.* at 586 (Stevens, J., dissenting) (internal quotation marks omitted) (quoting *Hospital Building Corp. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976)), and that its decision would allow certain anticompetitive conduct to go unpunished.  It was just skeptical that careful case management could weed out unmeritorious claims; and the majority concluded that the cost to defendants and to the judicial system of "allowing a potentially massive factual controversy to proceed" outweighed the risk that some meritorious claims might be dismissed.  *Id.* at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

The same concern—that wily defendants not be permitted to escape review and should be required to at least answer—also appears to have motivated the FTC's "quick-look" argument in *Actavis*.  In its argument before the Supreme Court, the FTC recognized that a reverse-payment agreement was not necessarily anticompetitive and could be consistent with pro-competitive conduct.  The FTC stated that an agreement might not be anticompetitive if "the payment was commensurate with the litigation costs that the brand-name manufacturer avoided by settling." Brief for the Petitioner at 38, *FTC v. Actavis*, 570 U.S. 136 (2013) (No. 12-416).  According to the FTC, it also might not be anticompetitive if "the parties could show that any money that changed hands was for something other than a delay, such as the generic manufacturer's provision of property or services unrelated to the brand-name manufacturer's monopoly."  *Id.* at 37 (internal quotation marks and citation omitted).  "Although there is no fixed formula for making that showing, and a court would need to consider the totality of the circumstances surrounding the agreement," *id.*, the FTC provided a list of relevant considerations for a court to consider, including:

whether the payment reflected bona fide fair consideration for the property or services; whether other terms of the side transaction comported with industry standards; the existence of previous dealings between the parties on the subject matter of the side transaction; a history of demonstrated interest in or need for the property or services on the part of the brand-name manufacturer; and the course and content of the manufacturers' negotiations over the agreements.

*Id.* at 37–38. The FTC simply argued that it should be up to the defendants to prove those facts and that, if the plaintiff proved the existence of an agreement pursuant to which the generic manufacturer agreed not to enter the market before a patent expired and the brand manufacturer agreed to pay the generic money or consideration, the agreement should be presumed to be anticompetitive, thus shifting the burden to the defendants in a rule-of-reason analysis to offer a procompetitive justification. *Id.* at 33, 37.

The Supreme Court, however, rejected the FTC's proposed quick-look approach to such agreements, *see* 570 U.S. at 159, and held instead that it is insufficient for a plaintiff to merely establish the existence of a reverse-payment agreement to shift the burden to the defendants to offer procompetitive reasons to justify it. The Supreme Court thus held that it was not up to the defendants to show evidence in the first instance that the agreement was consistent with pro-competitive conduct. Rather, it appears that the *Actavis* Court concluded that the plaintiffs must show the absence of one or more of the factors that would be consistent with a pro-competitive justification. If, for example, a payment from a brand manufacturer to a generic manufacturer would be pro-competitive (even if the generic manufacturer also agreed to honor a patent) because it was consistent with "previous dealings between the parties on the subject matter of the side transaction" or "a history of demonstrated interest in or need for the property or services on the part of the brand-name manufacturer," it would fall to the plaintiff in the first instance to allege facts suggesting the absence of any such pro-competitive justification. In the words of the *Twombly* Court, conduct that is equally consistent with a pro-competitive as with an

anticompetitive justification is not sufficient to "nudge[] [plaintiffs'] claims across the line from conceivable to plausible." 550 U.S. at 570.

"[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, [the court] usually ask[s] what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). It thus appears, and the Court holds, that to state a claim under *Actavis*, a plaintiff must allege more than a general statement simply asserting that a reverse payment is large and unjustified (or was made pursuant to a simultaneously executed side agreement) and that the generic manufacturer agreed not to enter the market before the patent expired. Such a standard would replicate at the pleading stage the "quick-look" approach the Supreme Court rejected at least for the trial stage. Rather, the plaintiff must plead *facts* that would support the claim that the reverse payment was "large" and "unjustified," i.e., that it was not simply possible that the defendants engaged in the anticompetitive conduct of paying the generic manufacturer to forego entering the market but that it was plausible.

A showing that a reverse payment is "large" can be established by factual allegations plausibly suggesting that the payment is larger than the payor's anticipated future litigation costs. *See Actavis*, 570 U.S. at 159 (describing likelihood of reverse payment bringing about anticompetitive effects as dependent on payment's "scale in relation to the payor's anticipated future litigation costs"); *Sergeants Benevolent Ass'n*, 2016 WL 4992690, at *14; *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d at 718; *cf. In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at 243 ("[P]ayments smaller than avoided litigation costs are presumptively not large and unexplained under *Actavis*, and represent a *de facto* safe harbor . . . ."). *Actavis* specifically directs courts to consider the reverse payment's scale in comparison to the payor's anticipated future litigation

costs—not relative to other figures such as the possible profits a generic manufacturer could make by entering the market for the brand-name drug or the brand manufacturer's profits on that drug. *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *9 (D. Mass. Sept. 16, 2015) ("*Actavis* specifically provided that an appropriate benchmark for the size of a reverse payment is 'its scale in relation to the payor's anticipated future litigation costs.'" (alteration adopted)). It is also not necessary that the plaintiff allege "very precise and particularized" estimates of actual anticipated litigation costs; such facts likely are in the exclusive possession of defendants and may require expert analysis. *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at 244–45.

In addition, a plaintiff must allege facts to plausibly suggest that the reverse payment is "unjustified." An unjustified reverse payment is one that does not reflect traditional settlement considerations such as avoided litigation costs or fair value for services. *See Sergeants Benevolent Ass'n*, 2016 WL 4992690, at *14; *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d at 718. The FTC in *Actavis* mentioned both of these considerations in explaining what might justify a reverse payment. *See* Brief for the Petitioner at 37–38, *FTC v. Actavis*, 570 U.S. 136 (2013) (No. 12-416) (discussing payments that "reflect[] bona fide fair consideration for the property or services" or are "commensurate with the litigation costs that the brand-name manufacturer avoided by settling"). Thus, for example, if the payment on its face is for some services (and not for avoided litigation costs), the plaintiff might satisfy its pleading burden with facts showing the negative of what the FTC claimed would be evidence of a pro-competitive agreement—e.g., that the terms of the side transaction were not for fair value; that the terms did not comport with industry standards; that there were no previous dealings between the parties on the subject matter of the side transaction; that there was no history of demonstrated interest in or

need for the property or services on the part of the brand-name manufacturer; or that the course

and content of the manufacturers' negotiations over the agreements suggested that the purported

justification for the agreement was pretextual and that the real reason for the payment was to

preserve the brand manufacturer's monopoly.  *See id.*; *In re Lipitor Antitrust Litig.*, 868 F.3d at

256 ("To plausibly allege an unjustified reverse payment, an antitrust plaintiff need only allege

the absence of a 'convincing justification' for the payment.").  Allegations regarding these types

of considerations are relevant to whether a reverse-payment agreement is "unjustified."  A

plaintiff need not "preempt[] every possible explanation" for the reverse payment to survive a

motion to dismiss, *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d at 356, but a plaintiff must plead

at least some facts of this nature to sufficiently allege an unjustified agreement.

 With these principles in mind, the Court turns to the allegations of the DPP Complaint.

### B.   The Alleged Settlement Agreements and Side Agreements

 In their motion to dismiss for failure to state a claim, Defendants argue that the settlement

agreements and side agreements between Forest and each of the Generic Defendants are not

unlawful reverse-payment agreements under *Actavis*.  Dkt. No. 269 at 7–40.  More specifically,

Defendants argue that the settlement agreements, considered separately from the side

agreements, include payments for avoided litigation costs and are not large and unexplained.  *Id.*

at 7–10.  Further, they argue that it is not pleaded that the payments associated with the side

agreements are related to the decision to settle or that they exceed the fair value of services

rendered, are unexplained, or are large.  *Id.* at 11–19.

 Direct Purchaser Plaintiffs respond that the payments from the settlement agreements and

the side agreements together represent large reverse payments and that they allege the payments

exceed the fair market value of any goods or services agreed to be provided (though, they

maintain, this latter allegation is not required at the pleading stage).  Dkt. No. 285 at 15–22.

They also argue that the payments are unexplained and that Defendants have the burden of justifying the reverse payments. *Id.* at 22–24.

The parties first debate whether the complaint plausibly alleges that the settlement agreements and side agreements are related to one another. The Court concludes that the complaint does so. "A settlement agreement may be very simple or tremendously complex, and it may involve all manner of consideration; and if, when viewed holistically, it effects a large and unexplained net transfer of value from the patent-holder to the alleged patent-infringer, it may fairly be called a reverse-payment settlement." *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at 243. Where a plaintiff has plausibly pleaded that several agreements are connected, the Court must accept those allegations as true on a motion to dismiss. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d at 358 ("Here, the FTC plausibly alleged that AbbVie's settlement with Teva and the TriCor deal were linked. The Court had to accept that allegation as true."); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 752 (E.D. Pa. 2014) ("[D]efendants may not improperly 'dismember' plaintiffs' Consolidated Amended Complaints by examining each of the three settlement agreements in isolation. Rather, the Licensing Agreement must be read in conjunction with the Co-Promotion and Manufacturing Agreements executed that same day." (citations omitted)); *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d at 718 (disagreeing with defendants' assessment of the components of a settlement "in piecemeal fashion" and instead stating that "[t]he Court must determine whether, when taken as a whole, the total payment" received under the agreements was large and unjustified).

Here, Direct Purchaser Plaintiffs have sufficiently and plausibly alleged that Forest admitted that each settlement agreement and each side agreement was connected to the settlement of the Bystolic patent dispute. The DPP Complaint does not simply assert the

conclusion but instead alleges facts to support that conclusion.  In particular, it alleges that

outside counsel for Forest, in connection with work on the Forest-Actavis merger, asked for "all

of the Bystolic settlement and licensing agreements as well as the side agreements with those

generic companies" before counsel engaged in discussions with the FTC.  DPP Compl. ¶ 8.

Forest responded that it had "side deals" with all of the companies with whom it had settlement

agreements.  *Id.* ¶¶ 8, 151.  In the Forest-Actavis merger agreement, Forest also allegedly listed

all of the settlement agreements and the side agreements as material contracts in connection with

the settlement of the Bystolic patent dispute.  *Id.* ¶¶ 9–17.  That allegation, and Forest's

characterization of the agreements as "side deals," is sufficient at this stage to support the

inference that they are related, particularly given that each of the side agreements was executed

in close temporal proximity—sometimes on the same day—with the related settlement

agreements.

 The Court now turns to the agreements with each of the Generic Defendants to determine

whether Direct Purchaser Plaintiffs sufficiently allege that such agreements (the settlement

agreement and side deal read together) support the plausible inference of a large and unexplained

reverse payment under *Actavis.*  The Court analyzes Forest's agreements with each of the

Generic Defendants separately by Generic Defendant.  Where there are multiple generic

manufacturers, it does not follow that simply because a reverse-payment agreement with one

Generic Defendant is anticompetitive, the brand manufacturer's agreements with every other

Generic Defendant is anticompetitive.[10]  Likewise, the fact that one or more reverse-payment

---

[10] Relatedly, Direct Purchaser Plaintiffs argue that the contingent launch provision in each of the
settlement agreements supports joint and several liability for all Defendants if one or more of
them have been found liable for agreeing to an unlawful reverse payment.  Dkt. No. 285 at 43–
45, 44 n.19.  To support this argument, Direct Purchaser Plaintiffs rely on tort principles and cite
to *In re Modafinil Antitrust Litigation*, 837 F.3d 238 (3d Cir. 2016).  This argument is not sound.

agreements a brand manufacturer has with a Generic Defendant is not large or is justified would not establish that no other reverse agreement is anticompetitive. A patent owner who legitimately secures an agreement with one or more potential generic competitors that would prevent the generic from entering the market may still enter an anticompetitive agreement with the remaining potential competitors. As the Supreme Court observed in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task." *Iqbal*, 556 U.S. at 679.

---

"Under the doctrine of joint and several liability, '[i]f the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irrespective of whether their conduct is concurring or consecutive.'" *Id.* at 262 n.29 (alteration in original) (quoting Restatement (Second) of Torts § 879 (1979)). The doctrine requires that each liable person engage in tortious conduct. By analogy, each defendant to be held jointly and severally liable must have engaged in anticompetitive conduct. But Direct Purchaser Plaintiffs seek to hold liable even those that have *not* agreed to an anticompetitive reverse-payment agreement by virtue of a contingent launch provision, which by itself has the effect of increasing competition if activated. Similarly, *In re Modafinil Antitrust Litigation* does not support Direct Purchaser Plaintiffs' conclusion. In that case, which involved similar allegations of reverse-settlement agreements, the defendants appealed the district court's class certification decision. One of the defendants' arguments was that predominance under Rule 23(b)(3) cannot be demonstrated because the plaintiffs' theory of liability must isolate the harm that each individual reverse-payment settlement agreement caused each individual class member under the doctrine of antitrust standing. *Id.* at 261. The defendants argued that the plaintiffs were attempting to circumvent the doctrine of antitrust standing by asserting the theory of joint and several liability. *Id.* at 262. The Third Circuit rejected the defendants' argument and determined that "because all four [generic manufacturers allegedly] entered into these reverse-payment settlement agreements and prevented a competitive market from forming, each contributed to the market-wide harm, and each can be held jointly and severally liable for such harm." *Id.* at 266. Putting aside that this discussion was in the context of a class certification decision, the Third Circuit's conclusion also explicitly relied on all four generic manufacturers allegedly entering into anticompetitive arrangements with the brand manufacturer. In other words, each entity to be held jointly and severally liable had entered into an anticompetitive agreement. By contrast, Direct Purchaser Plaintiffs here, solely based on the competition-increasing contingent launch provisions, attempt to hold liable even those Defendants who are not determined to be parties to anticompetitive reverse-settlement agreements.

### 1. Hetero

Forest executed the settlement agreement with Hetero to resolve the patent litigation on October 24, 2012.  DPP Compl. ¶ 153.  In addition to releasing the claims, the agreement included a maximum payment of $200,000 for Forest's avoided litigation fees and Hetero's litigation fees.  *Id.*; Dkt. No. 270-1.  Hetero also received a license to sell generic Bystolic three months before the patent expired, i.e., September 2021, and agreed to not otherwise manufacture or market any generic equivalent of Bystolic prior to the expiration of the patent.  Dkt. No. 270-1.

A few weeks earlier, on October 5, 2012, Forest and Hetero also executed a final term sheet for a supply agreement for ███████████████████████████.  DPP Compl. ¶ 153.  The final term sheet included a term requiring Forest to ████████████ ████████████████████████████████████████████████████████ ███████████████████████ of the supply agreement to be entered into by the parties.  Dkt. No. 270-2.  Based on Forest's stated estimate of requirements for ███, Forest would allegedly pay Hetero $███ million (before any price adjustments).  DPP Compl. ¶ 153; Dkt. No. 270-2.  The parties "agree[d] that their respective obligations contained in the 'Obligations' section of this term sheet are effective as of the Term Sheet Date."  Dkt. No. 270-2. The Obligations section provides:

> Following execution of this Term Sheet by both Parties:
> - the Parties shall negotiate and enter into the Agreement, which shall contain the terms set forth in this Term Sheet and other terms and conditions that are typical for manufacturing and supply agreements of ███████ ██████████████████████████████████████████████;
> - the Parties shall cooperate in good faith to obtain the FDA's approval ██████████████████████████████████████ ██████████████████████; and

- Forest shall use good faith efforts to amend its current supply agreements with ████████████████████████████████████████. Forest expects full cooperation from ██████████ and that such amendment will be completed together with the completion of the Agreement.

*Id.*

Direct Purchaser Plaintiffs allege that, prior to the Hetero agreement, Forest had been able to obtain sufficient amount of █████ without a supply agreement with Hetero, and that, on information and belief, Forest did not need such an agreement in October 2012. DPP Compl. ¶ 154. They also allege, on information and belief, that the payments under the supply agreement exceeded the fair value of any products or services rendered by Hetero and that the agreement itself was a pretextual conduit of cash from Forest to induce Hetero to agree not to compete in the nebivolol market until September 2021. *Id.*

The alleged $███ million payment that Forest would make to Hetero under the terms of the final term sheet for the supply agreement is large under *Actavis* as it is well beyond any estimated or anticipated avoided litigation costs. The DPP Complaint alleges that Forest's saved litigation costs with respect to each Generic Defendant were far less than $5–6 million; but, even assuming the comparator to be an upper-bound figure of $5–6 million, the alleged reverse payment is large.

Though Direct Purchaser Plaintiffs plead a large reverse payment, they have failed to plead that it is unjustified and have thus not "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The allegations with respect to Hetero squarely raise the questions—also directly presented by the allegations regarding Forest's agreements with the other Generic Defendants—what kinds of allegations should be considered to be "labels and conclusions" or "naked assertion[s]" devoid of further factual enhancement under *Twombly*, *id.* at 555, 557, and to what extent a party can rely on "information and belief"

37

allegations to satisfy its Rule 8 pleading obligations to state an antitrust claim.  The Second

Circuit has held that a plaintiff may plead facts "upon information and belief where the facts are

peculiarly within the possession and control of the defendant, or where the belief is based on

factual information that makes the inference of culpability plausible." *Arista Recs., LLC v. Doe

3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citations omitted).  The

allegations that the payments pursuant to the ███ supply agreement exceeded the fair value of

any products delivered or services rendered by Hetero and that the agreement was a pretextual

conduit of cash in exchange for an agreement not to compete, in isolation, are labels and

conclusions.  They could be asserted in every case in which there is a side agreement with a

generic manufacturer who agrees to honor a patent.  If those naked allegations were enough to

require an answer and to shift the burden to the defendant to prove fair value and the absence of

pretext, there would be nothing left of the Supreme Court's rejection of the per se rule in *Actavis*.

The only remaining allegation is that, on information and belief, Forest did not need a

supply agreement with Hetero in October 2012 because Forest had been able to obtain sufficient

amounts of ███ from its existing supplier, ████████████████.  It is true that

alleging facts regarding the lack of a history of demonstrated interest in or need for the property

or service on the part of Forest could raise an inference that the reverse payment is unjustified.

But Direct Purchaser Plaintiffs here do not allege such facts.  Direct Purchaser Plaintiffs have not

pleaded, for instance, that Forest had expressed no interest in entering into a new supply

agreement, that Forest was content was its current arrangement with ███ that Forest entered

this new agreement suddenly and without standard negotiations, or any other facts suggesting

something unusual in Forest's new supply agreement with Hetero.  Instead, they merely plead,

on information and belief, that Forest had no need for the supply agreement based on the

allegation that Forest had been able to obtain sufficient ███ in the absence of a new agreement with Hetero.  However, the allegation of sufficient existing supply, alone, does not "make[] the inference of culpability plausible." *Arista Recs.*, 604 F.3d at 120.  Simply alleging that Forest had been acquiring ███ from another source (i.e., ███) is insufficient to raise a plausible inference that Forest had no need for another source of supply or that the ██ supply agreement with Hetero is unjustified.  Indeed, the fact that Forest had sufficient ██████ could be entirely consistent with the opposite conclusion from the one offered by Direct Purchaser Plaintiffs—i.e., that Forest was in great need of another supplier.  *Cf. Twombly*, 550 U.S. at 554 (finding allegations "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy" insufficient to state an antitrust claim).  Though Forest was obtaining sufficient ██████, there is nothing pleaded to indicate that Forest was not simultaneously expressing dissatisfaction with its arrangement with ██ or actively seeking alternative or supplemental suppliers.  Even after drawing all inferences in favor of the non-movant, as the Court must on a motion to dismiss, there is nothing about Forest's sufficient existing supply of ██ alone that plausibly pleads an unjustified reverse payment.

Aside from these allegations, the DPP Complaint offers nothing to support why the reverse-payment agreement is unjustified.  Direct Purchaser Plaintiffs do not offer any facts alleging, for example: that while Forest agreed to pay $██ million to Hetero for ██, Forest could have obtained that same ██ from another supplier at a significantly lower price; that the terms of Forest's ██ agreement with Hetero were unusual when compared with industry standards; that Forest and Hetero had never had any previous dealings on supply agreements and that Forest had previously expressed no interest in entering into a supply agreement with Hetero; or that the course and content of Forest's negotiations with Hetero revealed a reason why the

agreement would be unjustified.  Factual allegations like these might plausibly support that the reverse payment is unjustified.  But without further factual enhancement, Direct Purchaser Plaintiffs' allegations remain in "neutral territory" and fall short of stating a claim.  *Twombly*, 550 U.S. at 557.

Direct Purchaser Plaintiffs offer several arguments against dismissing their claim with respect to Hetero, but none of these arguments cures their defective pleading.  Direct Purchaser Plaintiffs first rebut Defendants' argument that it was a reasonable business decision for Forest to negotiate a possible ██ supply agreement with Hetero, ███████████████████████ ████████████████, in order to reduce its dependence on █████████████.  *See* Dkt. No. 285 at 27; *see also* Dkt. No. 269 at 21, 23.  Direct Purchaser Plaintiffs are correct that these allegations are not in the DPP Complaint, and thus, the Court cannot credit them on a motion to dismiss.  The Court does not rely on Defendants' contrary allegations in holding that Direct Purchaser Plaintiffs' have failed to state a claim.  As discussed, the DPP Complaint itself does not provide the factual grounding sufficient to allege an unjustified reverse payment.

Direct Purchaser Plaintiffs are also correct in arguing that Defendants cannot obtain dismissal by asserting that the Hetero supply agreement represented a potential savings for ██ . Dkt. No. 285 at 27.  Defendants submit a copy of the █████ agreement in connection with their motion to dismiss and argue that the terms of this agreement reveal that Forest would have received more favorable price terms under the supply agreement with Hetero than its existing agreement with ██████.[11]  Dkt. No. 269 at 14, 23.  In other words, Defendants argue that Forest

---

[11] As Direct Purchaser Plaintiffs refer to the █████ agreement in the DPP Complaint and rely on its effect, the Court may consider it on a motion to dismiss.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has 'rel[ied] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [the court] may consider its contents even if it is not formally incorporated by reference."

had an "economically rational incentive" to enter in the supply agreement envisioned by the term sheet. *Id.* at 14.  Defendants contend that the final term sheet with Hetero represents a potential savings in the purchase of ▮▮ because the term sheet shows that Forest would initially be paying ▮▮▮▮▮▮▮▮▮▮ while the ▮▮▮ agreement required Forest to pay up to a maximum of ▮▮▮▮▮▮.  *Id.* at 23.  But the ▮▮▮ agreement contains a cap on what Forest would be required to pay; neither the ▮▮▮ agreement nor the DPP Complaint reveals what Forest actually paid or was expecting to pay ▮▮▮▮.  Without this information, Defendants' argument that the ▮▮ agreement on its face discredits any allegation of overpayment is without merit.

Direct Purchaser Plaintiffs are also correct that the unfinalized nature of the final term sheet does not stand as a barrier to stating a claim.  Dkt. No. 285 at 28–29.  Defendants highlight that the side deal was reflected only in a final term sheet but not in a finalized supply agreement.  Dkt. No. 269 at 21–22.  According to Defendants, the final term sheet merely described the terms of a potential supply agreement, which was contingent on the response of an unrelated third party (▮▮), FDA approval for use of Hetero's supply, and finalizing the agreement.  *Id.*  However, Defendants do not dispute that the term sheet created obligations on Forest (as well as on Hetero) and that those obligations had value.  The term sheet obligated the parties to: (1) negotiate and enter into a finalized supply agreement containing the terms of the term sheet—including the ▮▮ pricing and quantity terms allegedly amounting to $▮▮ million in payments from Forest to Hetero; (2) "cooperate in good faith to obtain the FDA's approval or deemed approval" for use of Hetero's ▮▮ in Bystolic; and (3) "use good faith efforts to amend its current supply

---

(alteration in original) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).

agreements with [████] to permit Forest to meet the Purchase Minimum." Dkt. No. 270-2. Thus, at a minimum, the final term sheet appears to constitute a preliminary agreement of the Type II variety, which "creates an 'obligation to negotiate the open issues in good faith in an attempt to reach the [ultimate contractual objective] within the agreed framework.'" *Brown v. Cara*, 420 F.3d 148, 157 (2d Cir. 2005) (alteration in original) (quoting *Tchrs. Ins. & Annuity Ass'n of Am. v. Trib. Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)). The final term sheet thus created an obligation to negotiate a finalized agreement, "which shall contain the terms set forth in this Term Sheet." Dkt. No. 270-2. "An allegation of an actionable reverse-payment settlement, however, does not require an enforceable contract." *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *9 (citing *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946), for the proposition that "[n]o formal agreement is necessary to constitute an unlawful conspiracy"). Even if the term sheet here did not itself bind Forest to the ultimate contractual goal, it did obligate Forest to "negotiate and enter into a finalized supply agreement" that would include the [██] pricing and quantity terms amounting to $[██] million in payments from Forest to Hetero. The fact that final papers were not yet documented and signed does not itself prevent the agreement the parties did reach from being considered anticompetitive under *Actavis*. *See id.* (rejecting argument that lack of legal commitment and requirement that parties negotiate in good faith to reach a definitive licensing and partnership agreement is insufficient to state a claim under *Actavis*).

In any event, Direct Purchaser Plaintiffs cannot overcome their failure to plead that the large reverse payment is unjustified. For that reason, the Court holds that Direct Purchaser Plaintiffs have failed to state a claim with respect to the Hetero agreements.

2. **Torrent**

Forest's settlement agreement with Torrent was executed on November 21, 2012, and, in addition to releasing the claims, the agreement granted Torrent a license to sell generic Bystolic three months before patent expiration, i.e., September 2021; obligated Torrent to not otherwise manufacture or market any generic equivalent of Bystolic before the patent expired; and included a payment of up to $1 million from Forest to Torrent for Torrent's expended litigation fees and in partial consideration of Forest's saved legal fees.  DPP Compl. ¶ 156; Dkt. No. 270-12.  On the same day, Forest and Torrent executed a patent assignment agreement under which Forest agreed to purchase ten patents related to manufacturing nebivolol for a non-refundable, upfront payment of $█ million plus an additional $█ million in milestone payments, for a total of $█ million.  DPP Compl. ¶ 156; Dkt. No. 270-13.  Direct Purchaser Plaintiffs allege that the conditions of the milestone payments were not difficult to satisfy.  DPP. Compl. ¶ 157.  They also allege that, because Forest had manufactured and marketed nebivolol in the United States and other jurisdictions without licenses from Torrent, Forest already had all of the intellectual property that it needed to successfully manufacture and sell Bystolic, and thus the Torrent patents had little or no value to Forest.  *Id.* ¶ 158.  They allege, on information and belief, that Forest knew about Torrent's patents prior to the patent assignment agreement, and only executed the patent assignment agreement in exchange for Torrent's agreement to refrain from marketing generic Bystolic until September 2021.  *Id.*  They further allege, on information and belief, that the payments related to the patent assignment agreement exceeded the fair value of any products delivered or services rendered by Torrent and that the agreement itself was a pretextual conduit of cash from Forest to induce Torrent not to compete in the nebivolol market until September 2021.  *Id.*

The alleged payment from Forest to Torrent under the patent assignment agreement represents a large reverse payment.  In exchange for ten patents, the agreement allegedly provided for a $███ million payment and an additional $███ million in milestone payments, which were allegedly easy to achieve, for a total of $███ million—significantly larger than Forest's saved litigation costs, which are pleaded to be less than $5–6 million.  This is so even assuming the saved litigation costs are in the range of $5–6 million.  Defendants' arguments to the contrary are not persuasive.  Defendants argue that the DPP Complaint does not allege that payments were actually made under the patent assignment agreement.  Dkt. No. 269 at 32.  But the thrust of the DPP Complaint's allegation is that Forest and Torrent entered into an agreement that binds Forest to make such payments to Torrent.  Defendants also argue that the maximum possible payment of $███ million corresponds to $███ million per patent, which is not large.  *Id.*  But Defendants cite no authority supporting their methodology of dividing the total alleged payment into certain smaller units before determining whether a payment is large.  Courts, in fact, favor reviewing the total payment received by a generic manufacturer under an agreement "as a whole" rather than reviewing the components of the agreement "in piecemeal fashion."  *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d at 718; *see In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at 243 ("A settlement agreement may be very simple or tremendously complex, and it may involve all manner of consideration; and if, *when viewed holistically*, it effects a large and unexplained net transfer of value from the patent-holder to the alleged patent-infringer, it may fairly be called a reverse-payment settlement." (emphasis added)).  Direct Purchaser Plaintiffs have therefore alleged enough to plead a large reverse payment under *Actavis*.

As with the DPP Complaint's allegations regarding the Hetero agreements, however, the allegations about the Torrent agreements fall short of the requirement that the allegedly large

reverse payment be unexplained or unjustified.  As with the Hetero agreements, the Court does

not credit or rely upon the conclusory allegation here that the payments related to the patent

assignment agreement exceeded the fair value of any products delivered or services rendered by

Torrent and that the agreement was a pretextual conduit of cash from Forest to induce Torrent

not to compete.  Additionally, the allegation, pleaded on information and belief, that Forest only

executed the patent assignment agreement in exchange for Torrent's agreement to refrain from

marketing generic Bystolic until September 2021 is similarly conclusory.  All that remains are

the allegations that the Torrent patents had little or no value to Forest because Forest had been

able to successfully manufacture and sell Bystolic without that intellectual property and that, on

information and belief, Forest knew about Torrent's patents before executing the patent

assignment agreement.  But, for reasons analogous to the ones given above with respect to the

Hetero allegations, these allegations cannot plausibly support that the large reverse payment is

unjustified.  It does not plausibly follow that, because Forest had been able to manufacture and

sell Bystolic, the Torrent patents had little or no value to Forest; there is a missing link between

the first statement and the conclusion of no value.  If the DPP Complaint contained factual

allegations to support that the Torrent patents had little or no value to Forest, the DPP Complaint

would then speak to the absence of bona fide fair consideration for the patents and the lack of

Forest's need for these patents, both of which suggest the existence of an unjustified reverse

payment.  But what is pleaded is deficient.

Again, Direct Purchaser Plaintiffs could have, for example, pleaded facts: independently

estimating the value of the patents; explaining why this patent assignment agreement did not

comport with industry standards; showing that there had not been any previous dealings or

discussions between Forest and Torrent on these patents; demonstrating that Forest had

previously expressed no interest in these patents; or describing negotiations that were out of the ordinary for such patent assignment agreements. Such facts might plausibly plead that the large reverse payment is unjustified here. In fact, in their memorandum of law opposing Defendants' motion, Direct Purchaser Plaintiffs argue that "having sold billions of dollars' worth of Bystolic without the use of Torrent's patents, it is not plausible that Forest would reformulate the product at the end of its lifecycle." Dkt. No. 285 at 30. This assertion—reflecting why the patent assignment agreement may depart from standard industry practice—gets closer to the type of factual allegations that might be sufficient to show that the agreement is unjustified. But the DPP Complaint does not contain this allegation, and "[i]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Cambridge Cap. LLC v. Ruby Has LLC*, 2021 WL 4481183, at *19 n.11 (S.D.N.Y. Sept. 30, 2021) (alteration in original) (internal quotation marks omitted) (quoting *United States ex rel. Foreman v. AECOM*, 454 F. Supp. 3d 254, 268 (S.D.N.Y. 2020)); *see also Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) ("Ordinarily, parties may not amend the pleadings through motion papers."). Thus, as pleaded, the DPP Complaint is lacking.

Direct Purchaser Plaintiffs argue that the Court may not rely on Defendants' narrative that such patent assignment agreements are "*de rigueur*" and that the patents covered a process that could be valuable to Forest and its customers. Dkt. No. 285 at 29–30. Direct Purchaser Plaintiffs are correct that such allegations by the movant are not included in the DPP Complaint and are thus not properly before the Court on a motion to dismiss. The Court does not credit Defendants' allegations in finding the DPP Complaint wanting. Rather, it falls short for not pleading facts regarding why the large reverse payment is unjustified.

The Court therefore holds that Direct Purchaser Plaintiffs have failed to state a claim with respect to the Torrent agreements.

### 3.    Alkem/Indchemie

Forest executed settlement agreements with Alkem and Indchemie on November 27, 2012, which granted them licenses to sell generic Bystolic three months before patent expiration, i.e., September 2021, and obligated them to not otherwise manufacture or market any generic Bystolic before expiration of the patent.  Dkt. Nos. 270-7, 270-8.  The settlement agreement with Alkem also included a $1 million payment for a portion of Forest's avoided legal fees and Alkem's litigation fees.  DPP Compl. ¶ 159; Dkt. No. 270-7.  The next day, Forest and Alkem/Indchemie executed a term sheet pursuant to which Alkem/Indchemie agreed to supply Forest with two finished drug products—███████████████████████████████ ███████████████████████████.  DPP Compl. ¶ 159.  Under the term sheet, Forest agreed to pay Alkem/Indchemie a total of at least $██ million, including:

- An upfront payment of $█ million ██████████████████████████████ ███████████████;

- Milestone payments up to $██ million, contingent upon the completion of certain steps in the development of each product, but with Forest required to pay any of the milestone payments if the completion of the corresponding milestone(s) was delayed by ████████ ████████████████████████████;

- ██████████████████████;

- A commitment to purchase a minimum of ████████████████████████████; and

- A $█ million █████████████████████████████████ ██████████████████████████.

*Id.*

At the time the term sheet was executed, Direct Purchaser Plaintiffs allege that Forest had not yet submitted its NDA for ███████ and that the NDA was not submitted until February 2014. *Id.* ¶ 160.  They allege, on information and belief, that submission of the NDA in February 2014 would have triggered the delay provision and therefore required Forest to make the milestone payments to Alkem/Indchemie associated with Byvalson.  *Id.*  Direct Purchaser Plaintiffs also claim, on information and belief, that, prior to the term sheet, Forest had no need for a supply agreement for Bystolic and that Forest had expressed no interest in working with Alkem/Indchemie on ██████.  *Id.* ¶ 161.  And they allege, again on information and belief, that the payments pursuant to the term sheet exceeded the fair value of any products delivered or services rendered by Alkem/Indchemie and that the agreement itself was a pretextual conduit of cash from Forest to induce Alkem/Indchemie not to compete in the nebivolol market until September 2021. *Id.*

With respect to the agreements between Forest and Alkem/Indchemie, the DPP Complaint does not state a claim under *Actavis*.  While the pleading plausibly alleges a large reverse-payment agreement (the alleged $█ million reverse payment as compared to the pleaded less than $5–6 million in avoided litigation costs), it provides no factual support for the contention that the large reverse payment is unexplained or unjustified.  The allegation—recited verbatim with respect to Forest's agreements with each of the Generic Defendants—that the payments under the term sheet exceeded the fair value of any products delivered or services rendered by Alkem/Indchemie is conclusory and a "label" insufficient alone to state a claim.  Direct Purchaser Plaintiffs do allege that, prior to entering into the term sheet, Forest had no need for a supply agreement for ██████ and had not expressed an interest in working with Alkem/Indchemie on ██████.  DPP Compl. ¶¶ 160–161.  But these allegations—which might

be sufficient if supported by fact—are alleged only on information and belief.  Direct Purchaser

Plaintiffs assert no facts to support the claim that Forest had no need for additional products or

services from Alkem and/or Indchemie to support anticipated market demand for ███████

█████  products.  *See Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y.

2020) ("When allegations are made upon information and belief, the plaintiff must support them

by offering facts upon which that belief is founded.").  Nor are the facts to support this claim in

the exclusive possession of Defendants.  They further do not allege facts to support that, prior to

signing the settlement agreements and term sheet with Alkem/Indchemie, Forest had expressed

no interest in an agreement with those companies.  This cannot be enough to satisfy *Actavis.*  It is

not enough that two parties entered into a new agreement at the same time as they settled the

patent litigation for a reverse payment; the plaintiff must allege that there is something about that

agreement other than its timing and the fact that it results in the generic manufacturer honoring a

patent that supports the inference that it is anticompetitive.

For these reasons, Defendants' motion to dismiss is granted with respect to the

Alkem/Indchemie agreements for failure to state a claim.

### 4.    Glenmark

Forest executed its settlement agreement with Glenmark on December 21, 2012, and the

agreement included a payment of up to $1.2 million to Glenmark for a portion of Forest's

avoided legal fees and Glenmark's litigation costs.  DPP Compl. ¶ 163; Dkt. No. 270-14.  The

agreement also granted Glenmark a license to sell generic Bystolic three months before patent

expiration, i.e., September 2021, and bound Glenmark to not otherwise manufacture or market

any generic Bystolic before patent expiration.  Dkt. No. 270-14.  The same day that the

settlement agreement was executed, Forest and Glenmark executed a collaboration and option

agreement under which the two companies would jointly develop ████████████████



████████████████ products for at least ██████████████ absent earlier termination and Forest would pay Glenmark $█ million in upfront and milestone payments. *Id.* The $█ million in payments included an upfront payment of $█ million, which consisted of:

- A $█ million ████████████████████████████████████████████████ ███████████████ and

- A $█ million ██████████████████████████████████████████

*Id.* The additional $█ million in payments included: $█ million ██████████████ ██████████████████████████████████████████████ ; and $█ million ████████████████████████████████████████ ██████████████████████████████████████. *Id.* All intellectual property developed by Glenmark in connection with ████████ remained exclusively with Glenmark except for Forest's option for a right of first negotiation of an exclusive license to use the technology. *Id.*

Direct Purchaser Plaintiffs further allege, on information and belief, that prior to executing the agreements, Forest had expressed no interest to Glenmark concerning Glenmark's development of ████████. *Id.* ¶ 164. They also allege, on information and belief, the payments under the collaboration and option agreement exceeded the fair market value of any products delivered or services rendered by Glenmark. *Id.*

Direct Purchaser Plaintiffs' allegations regarding the Glenmark agreements suffer from the same deficiencies as their allegations regarding the Alkem/Indchemie agreements. Though they have plausibly alleged a large reverse payment—$██ million in payments as compared to the alleged less than $5–6 million in avoided legal fees—they have failed to offer any factual allegations for why the allegedly large reverse payment is unexplained or unjustified. First, as

with the other agreements, the allegation that the payments under the collaboration and option

agreement exceeded the fair value of Glenmark's products or services is simply a conclusory

allegation that cannot support whether Direct Purchaser Plaintiffs have plausibly stated a claim

under *Actavis*.  Second, it is true that Direct Purchaser Plaintiffs allege, on information and

belief, that Forest had previously expressed no interest in Glenmark's development of ███████.

And factual allegations of this type relate to whether a reverse-payment agreement is unjustified

because they shed light on whether there exists a history of demonstrated interest in or need for

the property or services.  *See supra* Section I.A.  But, as discussed in relation to

Alkem/Indchemie, *supra* Section I.B.3, all facts about Forest's interest in Glenmark's

development of ████████ are not within the exclusive possession of Defendants, and Direct

Purchaser Plaintiffs have provided no factual basis for their belief that Forest had expressed no

such interest prior to the agreement.  Thus, this allegation pleaded on information and belief

without any additional factual basis cannot plausibly support the claim that the reverse-payment

agreement is unjustified.

For these reasons, Defendants' motion to dismiss is granted with respect to the Glenmark

agreements for failure to state a claim.

### 5. Amerigen

The Forest-Amerigen settlement agreement was executed on July 18, 2013.  DPP Compl.

¶ 165.  Pursuant to the agreement, Amerigen was granted a license to sell generic Bystolic three

months before patent expiration, i.e., September 2021, and agreed to not otherwise manufacture

or market generic Bystolic before patent expiration.  Dkt. No. 270-17.  The agreement also

included a payment of $2 million to Amerigen for a portion of Forest's saved litigation fees and

Amerigen's litigation fees.  DPP Compl. ¶ 165; Dkt No. 270-17.  On the same day this

settlement agreement was executed, Forest and Amerigen executed a binding term sheet

collaboration agreement under which Forest agreed to invest in the development of eight Amerigen products.  DPP Compl. ¶ 165.  This agreement included a non-refundable, upfront payment of $█ million plus $█ million in milestone payments contingent upon certain product development and launch events.  *Id.*  The agreement also included an option for Forest to commercialize up to eight Amerigen products in Latin America and South America, which Amerigen had the right to supply to Forest for its manufacturing costs plus █, and on other customary and reasonable terms.  *Id.*

Direct Purchaser Plaintiffs allege, on information and belief, that prior to executing the settlement and collaboration agreements, Forest had expressed no interest in Amerigen's products and that the payments under the collaboration agreement exceeded the fair value of any products delivered or services rendered by Amerigen.  *Id.*

With respect to the Amerigen agreements, Direct Purchaser Plaintiffs fail to state a claim under *Actavis* for the same reasons they did not state a claim regarding the Alkem/Indchemie and Glenmark agreements.  They again plausibly allege a large reverse payment—$█ million in payments as compared to the pleaded figure of less than $5–6 million in avoided legal fees—but they do not allege facts to support the claim that the large reverse-payment agreement is unjustified.  Akin to their pleadings with respect to the Alkem/Indchemie and Glenmark agreements, Direct Purchaser Plaintiffs offer only conclusory allegations on information and belief that relate to whether there was bona fide fair consideration for the property or services and whether there was a history of demonstrated interest in or need for the property or services on the part of the brand manufacturer.  Without factual allegations on these points, there are not enough factual allegations to plausibly state a claim of a large and unjustified reverse-payment agreement under *Actavis*.

For these reasons, Defendants' motion to dismiss is granted with respect to the Amerigen agreements for failure to state a claim.

### 6. Watson

Forest executed a settlement agreement with Watson on November 6, 2013; the agreement granted Watson a license to sell generic Bystolic three months before patent expiration, i.e., September 2021; obligated Watson to not otherwise manufacture or market generic Bystolic prior to patent expiration; and included a payment of up to $2 million to Watson in partial consideration of Forest's saved litigation fees and Watson's litigation fees. DPP Compl. ¶ 166; Dkt. No. 270-4. Shortly before this settlement agreement was executed, Forest and Watson entered into a series of agreements related to Moksha8, Inc. ("Moksha8"), a Brazilian startup drug manufacturer with which both Forest and Watson were involved in equity investment or financing transactions. DPP Compl. ¶ 166 & n.95. Under those agreements, Forest agreed to extend financing to Moksha8 despite Moksha8's failure to meet existing loan conditions; Watson's agreements with Moksha8 were terminated; Watson agreed to pay $█ million to Moksha8; and Watson received releases of potential claims by Moksha8. Id. ¶¶ 166–168.

More specifically, in a November 1, 2013 letter agreement, Forest agreed to make $█ million in loan amounts available to Moksha8. Id. ¶¶ 166–167. Forest was not obligated to make any loans or any other extensions of credit to Moksha8 because Moksha8 failed to meet certain loan conditions. Id. ¶ 167. But in exchange for a release, Forest agreed to make a portion of certain loans available to Moksha8. Id. Additionally, three days later, on November 4, 2013, Watson and Moksha8 executed a termination and release agreement. Id. ¶ 166. This agreement terminated certain contractual relationships between Watson and Moksha8 including, for example, █████████████████████████████████████████████████████, and

██████████████████████████. *Id.* ¶¶ 166, 168.  In exchange for Watson paying $█ million to Moksha8, the agreement also included mutual releases of claims arising out of these terminated agreements, as well as of claims in any way related to the transactions contemplated by an ████████████████████████████████████████████████████████████████. *Id.*

Direct Purchaser Plaintiffs plead, on information and belief, that the value of these broad releases exceeded any consideration that Watson paid for the releases.  *Id.* ¶ 166.  They also allege, on information and belief, that the transactions in early November 2013 involving Forest, Watson, and Moksha8—including specifically Moksha8's release of all claims against Watson arising out of the ██████████████████████████████—disguised significant payments from Forest to Watson through the Moksha8 venture that exceeded Watson's $█ million payment and the fair value of any other products delivered or services rendered by Watson in connection with those agreements.  *Id.* ¶ 169.

As a threshold matter, the Court considers the settlement agreement, the Forest-Moksha8 letter agreement, and the Watson-Moksha8 termination and release agreement together. Defendants argue that there are no facts connecting Forest's loan to Moksha8 with the separate agreement entered between Moksha8 and Watson aside from rough temporal proximity.  Dkt. No. 269 at 26.  But there is more alleged than rough temporal proximity.  As discussed, *see supra* Section I.B, the DPP Complaint alleges that Forest admitted that all of the settlement agreements related to the Bystolic litigation had side agreements and that, as part of an unrelated merger transaction, Forest listed these three agreements as material contracts in connection with settling the Bystolic patent dispute.  DPP Compl. ¶¶ 17, 151.

Even considering these three agreements together, however, the Court determines that Direct Purchaser Plaintiffs have not sufficiently pleaded the existence of a reverse payment—that is, a payment from Forest to Watson.  Forest allegedly extended to Moksha8 a "payment," i.e., something of value, in making loan funds available to Moksha8 even though Moksha8 did not meet certain loan criteria.  *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at 243 ("I must conclude that large and unjustified reverse payments that 'can bring with [them] the risk of significant anticompetitive effects' can bring those effects regardless of the particular form the transfer of value takes and thus are not limited to cash payments." (alteration in original) (citation omitted)); *In re Actos End Payor Antitrust Litig.*, 2015 WL 5610752, at *13 ("The majority view [is] that *Actavis'*s holding is not limited to payments made in cash.  This view is consistent with traditional understandings of the term 'payment,' which is defined in Black's Law Dictionary as the '[p]erformance of an obligation by the delivery of money *or some other valuable thing* accepted in partial or full discharge of the obligation.'" (alteration in original) (citations omitted)).  But the complaint notably lacks factual allegations regarding how that transfer of value, or "payment," to Moksha8 was then conveyed to Watson, thereby constituting a reverse payment from Forest to Watson through intermediary Moksha8.  The best Direct Purchaser Plaintiffs can do is plead, on information and belief, that Moksha8's release of all claims against Watson was more valuable than any consideration Watson paid for the releases. In other words, Direct Purchaser Plaintiffs appear to be alleging that the "payment" from Forest to Moksha8 was then passed on from Moksha8 to Watson through an imbalanced exchange of value in the termination and release agreement.  They allege as much on information and belief; namely, they allege, on information and belief, that the transactions in early November 2013 involving Forest, Watson, and Moksha8 disguised significant payments from Forest to Watson

through the Moksha8 venture that exceeded Watson's $▮ million payment and the fair value of

any other products delivered or services rendered by Watson in connection with those

agreements.  But these allegations are entirely conclusory and cannot serve to plausibly support

Direct Purchaser Plaintiffs' claim.  Indeed, the caveat in the conclusory allegation that the value

of the releases exceeded Watson's $▮ million payment highlights how Watson actually paid

Moksha8 a sum of money as part of the agreement, which goes in the opposite direction from the

alleged reverse payment from Forest through intermediary Moksha8 toward Watson.  Aside from

these conclusory allegations, there are no facts in the DPP Complaint to raise a plausible

inference that the releases were relatively more valuable than the $▮ million and other

consideration rendered by Watson to Moksha8.  For example, the DPP Complaint could have

included facts describing the releases, explaining why the releases were valuable to Watson, and

providing context to estimate their relative value even if precise estimates are not alleged.

Absent facts of that nature or other facts, Direct Purchaser Plaintiffs are missing a link in their

theory and have failed to plead the existence of a reverse payment from Forest to Watson.

     Direct Purchaser Plaintiffs argue that Forest itself characterized the Moksha8 transaction

as a side deal with Watson that involved the exchange of at least $15 million in connection with

the Bystolic patent settlement.  Dkt. No. 285 at 34.  But Direct Purchaser Plaintiffs overread the

scope of Forest's admission.  It is true that, as part of an unrelated merger agreement, Forest

disclosed its material contracts and listed the agreements involving Watson and Moksha8 as

material contracts in connection with the settlement of the Bystolic patent dispute.  "Material

contracts" were defined to include:

> any Contract involving the settlement of any action or threatened action (or series
> of related actions) (A) which will (x) involve payments after the date hereof of
> consideration in excess of $15,000,000 or (y) impose monitoring or reporting
> obligations to any other Person outside the ordinary course of business or (B) with

respect to which material conditions precedent to the settlement have not been satisfied.

DPP Compl. ¶ 9.  Direct Purchaser Plaintiffs argue that inclusion in this list of material contracts indicates that the agreements involved payments in excess of $15 million.  But with this interpretation, they mischaracterize the inclusion criteria and focus on only one of the three disjunctive criteria for disclosure as a material contract.  The DPP Complaint does not plead any facts to plausibly tip the scales away from the other inclusion criteria in favor of the one indicating that the agreement involved payments over $15 million.  As discussed, Forest's admission indicates that the various agreements are related to the settlement of the Bystolic litigation and that they should be considered together, as the Court has done.  Forest's admission, however, does not automatically show that there was a payment in excess of $15 million from Forest to Watson.

For the reasons given, Defendants' motion to dismiss with respect to the Watson agreements is granted.

### C.      Defendants' Remaining Arguments

Since the Court dismisses Direct Purchaser Plaintiffs' claims as to all Defendants, the Court need not reach Defendants' remaining arguments for dismissal: that Direct Purchaser Plaintiffs improperly group the thirty-two Defendants into ten corporate families and fail to offer individual facts to support claims against a couple particular Defendants; that Direct Purchaser Plaintiffs' theories of causation fail as a matter of law; and that Direct Purchaser Plaintiffs' construction of the Sherman Act's reach under *Actavis* violates Defendants' due process rights.

On causation, the Court notes only that Defendants do not provide an independent ground for dismissal.  Direct Purchaser Plaintiffs allege three theories of causation—namely that but for the alleged reverse-payment agreements, Generic Defendants would have launched their less

expensive generic versions of Bystolic earlier than September 17, 2021: (1) at risk during

pendency of the Nebivolol Patent Litigation; (2) upon prevailing against Forest in the Nebivolol

Patent Litigation; or (3) via lawful, procompetitive settlement agreements providing for earlier

negotiated entry dates untainted by the delay caused by the unlawful reverse payments.  DPP

Compl. ¶ 174.  Defendants argue that the first two theories are too speculative as a matter of law

and that the at-risk launch theory fails to account for the regulatory bar on generic launch before

June 2015.  Dkt. No. 269 at 45–50.  Defendants further argue that the third causation theory is

precluded by the Hetero settlement because that settlement provides what the earliest entry date

would be.  *Id.* at 50–52.  Putting aside Defendants' arguments with respect to the first two

causation theories, the Court observes that Defendants' argument about Direct Purchaser

Plaintiffs' third causation theory assumes that the agreements settling the litigation with Hetero

involved a small and justified reverse payment.  In other words, this argument relies on the

allegations about Hetero failing to meet the *Actavis* standard and does not provide an

independent ground of dismissal.

     The Court also need not address defendant Teva Israel's motion to dismiss the DPP

Complaint for lack of personal jurisdiction.  The Second Circuit has stated that "[a]lthough we

traditionally treat personal jurisdiction as a threshold question to be addressed prior to

consideration of the merits of a claim, that practice is prudential and does not reflect a restriction

on the power of the courts to address legal issues."  *ONY, Inc. v. Cornerstone Therapeutics, Inc.*,

720 F.3d 490, 498 n.6 (2d Cir. 2013) (citation omitted).  In cases involving "multiple

defendants—over some of whom the court indisputably has personal jurisdiction—in which all

defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, we may

address first the facial challenge to the underlying cause of action and, if we dismiss the claim in

its entirety, decline to address the personal jurisdictional claims made by some defendants."
*Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 n.17 (2d Cir. 2012).  Accordingly, having

dismissed the claims in their entirety, the Court declines to address Teva Israel's arguments on

personal jurisdiction.  *See, e.g.*, *Chen v. China Green Agric. Inc.*, 2021 WL 4481045, at *4

(S.D.N.Y. Sept. 30, 2021) ("Because the Court finds that the Amended Complaint does not make

out a claim for which relief can be granted, and dismisses the case in its entirety, it does not

address the personal jurisdiction arguments."); *Fratelli BVBA v. APM Music Servs., LLC*, 2021

WL 4429417, at *6 (S.D.N.Y. Sept. 27, 2021) ("Because dismissal of the unjust enrichment

claims terminates All Parts from this action, the Court does not address its argument for

dismissal for lack of personal jurisdiction."); *Oklahoma L. Enf't Ret. Sys. v. Telefonaktiebolaget

LM Ericsson*, 2020 WL 127546, at *9 (S.D.N.Y. Jan. 10, 2020) ("The Court need not and does

not reach Defendants' other arguments for dismissal, including their contention that the Court

lacks personal jurisdiction over individual Defendant Mellander." (citing *ONY*, 720 F.3d at 498

n.6)); *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 574 n.8 (S.D.N.Y.

2017), *aff'd,* 922 F.3d 136 (2d Cir. 2019) ("The Court plainly has personal jurisdiction over, for

example, the New York Law Schools.  Thus, even if the Court were to hold that it

lacks personal jurisdiction over the Non-New York Law Schools, it would have to consider

their merits arguments about the First Amended Complaint, which arguments are identical to

those of the New York Law Schools.  Instead of adopting that piecemeal approach, the Court

will dismiss the First Amended Complaint as to all Defendants under Rule 12(b)(6).").

* * *

The Court therefore dismisses Direct Purchaser Plaintiffs' Complaint and Retailer

Plaintiffs' Complaints without prejudice.  The Court is not aware of any request by Direct

Purchaser or Retailer Plaintiffs to replead if their complaints are dismissed, but "[i]t is within the Court's discretion to *sua sponte* grant leave to amend." *Safe Step Walk in Tub Co. v. CKH Indus., Inc.*, 242 F. Supp. 3d 245, 271 (S.D.N.Y. 2017).  The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).  Federal Rule of Civil Procedure 15(a)(2) provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "[t]he decision to grant leave to amend is within the sound discretion of the trial court," *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 502 (S.D.N.Y. 2007).  Because Direct Purchaser and Retailer Plaintiffs did not previously have the benefit of the Court's views, because the Court cannot say that any amendment would be futile, and because this Circuit favors an opportunity to replead after dismissal under Rule 12(b)(6), the Court grants Direct Purchaser Plaintiffs and Retailer Plaintiffs leave to amend their complaints.

## II.      Motions Regarding End-Payor Plaintiffs' Complaint

The Court now turns to the motions to dismiss End-Payor Plaintiffs' Complaint.  "Under the United States Supreme Court's decision in *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 745–46 (1977), indirect purchasers of products sold at supra-competitive prices lack standing to sue under federal antitrust statutes.  However, under its later decision in *California v. ARC Am. Corp.*, 490 U.S. 93, 105–06 (1989), indirect purchasers may still bring suit under state antitrust laws, if a state permits such claims." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, at *1 (S.D.N.Y. Dec. 26, 2018).  "Therefore, it is common in private antitrust litigation for two groups of purchasers, direct and indirect, to file separate cases

arising out of the same nucleus of operative fact, but to allege different causes of action—direct

purchasers under federal law and indirect purchasers under state laws." *Id.* As a district court in

this Circuit has observed, "[t]he problem for the indirect purchasers is that the indirect-purchaser

rule of *Illinois Brick* blocks them from recovery under federal antitrust law," and, therefore, "[i]n

an effort to get in on the *Actavis* game, they attempt to build a Frankensteinian equivalent

of *Actavis* to reach the very same conduct but without that formidable obstacle, by stitching

together a hodge-podge of state-law claims." *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at

255. End-Payor Plaintiffs have done just that here.

Based on the same factual allegations of the DPP Complaint, End-Payor Plaintiffs bring

101 state-law claims. In particular, End-Payor Plaintiffs allege: claims for monopolization and

monopolistic scheme against Forest under the antitrust laws of twenty-three states; claims for

conspiracy to monopolize against all Defendants under the antitrust laws of twenty-seven states;

claims for combination and conspiracy in restraint of trade against all Defendants under the

antitrust laws of twenty-seven states; and claims for unfair or deceptive trade practices against all

Defendants under the consumer-protection laws of twenty-four states.[12] EPP Compl. ¶¶ 290–

452.

Because the Court dismisses the federal antitrust claims, however, End-Payor Plaintiffs'

claims under the antitrust laws of various states—based on the same factual allegations—fail too.

*See, e.g.*, *In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y.

2003), *aff'd*, 466 F.3d 187 (2d Cir. 2006) ("[S]ince Plaintiffs fail to state a claim under the

---

[12] End-Payor Plaintiffs withdrew their claim under the Virginia Consumer Protection Act. Dkt. No. 286 at 12 n.30. End-Payor Plaintiffs also bring a claim for injunctive relief under the federal antitrust laws. EPP Compl. ¶¶ 453–457. The Court dismisses the End-Payor Plaintiffs' claim under the federal antitrust laws for the same reasons it dismisses the DPP Complaint's federal antitrust claims.

Sherman Act, and since the state antitrust law claims are based on the same allegations, those claims are also dismissed."); *In re Androgel Antitrust Litig. (No. II)*, 687 F. Supp. 2d 1371, 1382 (N.D. Ga. 2010) ("Because the Plaintiffs' allegations do not state a plausible antitrust claim under federal law, the Indirect Purchasers also do not state a plausible antitrust claim under state law.").  In a footnote in their opposition to Defendants' motion to dismiss, End-Payor Plaintiffs argue that it is "overstated" to say that *Actavis* controls the interpretation of all state antitrust laws.  Dkt. No. 286 at 3 n.4.  But End-Payor Plaintiffs have not explained the ways in which the various state antitrust laws differ from federal antitrust law and how those differences would apply to the facts alleged here.  End-Payor Plaintiffs point to statements by the California Supreme Court indicating that the state's antitrust law may be broader than the Sherman Act and that federal antitrust law is instructive rather than conclusive when construing the state's antitrust law.  *Id.*  But End-Payor Plaintiffs offer no argument that this broader state antitrust law reaches the conduct alleged here or that the other state antitrust laws under which they bring their claims are also broader than federal law and apply here.  Indeed, for example, in bringing their claims for combination and conspiracy in restraint of trade against all Defendants, End-Payor Plaintiffs recount the same allegations as the DPP Complaint does and then merely list citations to the antitrust laws of twenty-seven states and the District of Columbia.  EPP Compl. ¶ 334.  They plead their other claims under the antitrust laws of various states in the same manner.  But while they may "have *listed* claims under very many state laws, . . . they have not truly *pleaded* claims under those laws sufficient to show their entitlement to recovery under them, as required by Rule 8."  *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at 255.

The same can be said about End-Payor Plaintiffs' remaining twenty-four claims for unfair or deceptive trade practices under state consumer-protection laws.  The fundamental deficiency

with these claims is that they rely on the existence of anticompetitive conduct, which the Court has found insufficiently pleaded in the context of Direct Purchaser and Retailer Plaintiffs' federal antitrust claims.  In their complaint, End-Payor Plaintiffs essentially attempt to rely on the factual foundation for federal antitrust claims—which in this case were found insufficient—and then "merely allege that those claims are also actionable under general consumer-protection laws."  *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at 255.  "But the plaintiffs cannot simply enumerate a long list of state-law claims for states where they might otherwise have no available antitrust recovery and rely on the defendants and the court to sort out whether or how those laws can act as surrogates for antitrust law."  *Id.* at 255–56.  End-Payor Plaintiffs have not provided a basis on which these claims survive when federal antitrust claims based on the same factual foundation fail.  *See In re Actos End Payor Antitrust Litig.*, 2015 WL 5610752, at *28 ("Plaintiffs merely restate their antitrust allegations as separate consumer protection claims, providing no distinct factual basis for a violation of consumer protection law.  This is insufficient to meet the Rule 8 pleading standard under *Twombly* and *Iqbal*.").

For these reasons, Defendants' motion to dismiss End-Payor Plaintiffs' Complaint for failure to state a claim is granted without prejudice to repleading the state-law claims in light of the dismissal of the federal antitrust claims.  Accordingly, the Court need not consider the arguments from Nonresident Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint's ninety-nine non-New York, state-law claims for lack of personal jurisdiction and Teva Israel's motion to dismiss the claims against it for lack of personal jurisdiction.  *See ONY, Inc.*, 720 F.3d at 498 n.6; *Chevron Corp.*, 667 F.3d at 247 n.17.

## CONCLUSION

Defendants' motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim is GRANTED, and the Direct Purchaser and Retailer Plaintiffs'

Complaints are DISMISSSED without prejudice to Direct Purchaser Plaintiffs and Retailer Plaintiffs filing amended complaints by February 22, 2022.  Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint for failure to state a claim is GRANTED, and the End-Payor Plaintiffs' Complaint is DISMISSED without prejudice to End-Payor Plaintiffs filing an amended complaint by February 22, 2022.  Nonresident Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint's ninety-nine non-New York, state-law claims for lack of personal jurisdiction and Teva Israel's motion to dismiss for lack of personal jurisdiction are DENIED without prejudice as moot.

The Clerk of Court is respectfully directed to close Dkt. Nos. 260, 265, 267, 271.

SO ORDERED.

Dated: February 2, 2022
       New York, New York

_____
          LEWIS J. LIMAN
       United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/24/2022

:
:
:
:
:
IN RE BYSTOLIC ANTITRUST LITIGATION          :                  20-cv-5735 (LJL)
:
:                      ORDER
:
:
:
:
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        For the reasons stated in the Opinion and Order filed by the Court today:  Defendants'
motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a
claim is GRANTED, and the Direct Purchaser and Retailer Plaintiffs' Complaints are
DISMISSSED without prejudice to Direct Purchaser Plaintiffs and Retailer Plaintiffs filing
amended complaints by **February 22, 2022**.  Defendants' motion to dismiss the End-Payor
Plaintiffs' Complaint for failure to state a claim is GRANTED, and the End-Payor Plaintiffs'
Complaint is DISMISSED without prejudice to End-Payor Plaintiffs filing an amended
complaint by **February 22, 2022**.  Nonresident Defendants' motion to dismiss the End-Payor
Plaintiffs' Complaint's ninety-nine non-New York, state-law claims for lack of personal
jurisdiction and Teva Israel's motion to dismiss for lack of personal jurisdiction are DENIED
without prejudice as moot.

        In order to preserve the ability of the parties to move the Court for redactions from the
Opinion and Order, the Opinion and Order is temporarily filed under seal.  The parties shall meet
and confer with respect to potential redactions and, by **January 31, 2022**, the parties shall file
any proposed redactions pursuant to the Court's Individual Practices.  In addition, the parties are
invited to inform the Court of any errors in citation, typography, or similar errors they discover
in their review.  The Court will rule on any outstanding motions to seal at the same time it rules
on any proposed redactions to the Opinion and Order.

        SO ORDERED.

Dated: January 24, 2022
       New York, New York                          _____
                                                         LEWIS J. LIMAN
                                                    United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                               :

                                               :                        20-cv-5735 (LJL)

IN RE BYSTOLIC ANTITRUST LITIGATION     :

                                               :          OPINION AND ORDER

                                                   :

                                               :

--------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

On January 24, 2022, this Court dismissed without prejudice Direct Purchaser and

Retailer Plaintiffs' Second Amended Complaints and End-Payor Plaintiffs' First Amended

Complaint (collectively, "Prior Complaints"),[1] together alleging that Defendants engaged in an

illegal scheme to delay competition from generic versions of Bystolic (nebivolol hydrochloride),

a drug used to treat high blood pressure, in violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*,

and state antitrust and consumer protection laws.[2] Dkt. No. 350; Dkt. No. 354 ("January 2022

---

[1] The "Direct Purchaser Plaintiffs" ("DPP") are J M Smith Corporation d/b/a Smith Drug
Company and KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., on behalf of themselves
and all others similarly situated. The "Retailer Plaintiffs" are CVS Pharmacy, Inc., Rite Aid
Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co., The Kroger Co., Albertsons Companies,
Inc., and H-E-B, L.P. The "End-Payor Plaintiffs" ("EPP") are the Mayor and City Council of
Baltimore, UFCW Local 1500 Welfare Fund, Teamsters Western Region & Local 177 Health
Care Plan, Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund, Law Enforcement
Health Benefits, Inc., Teamsters Local No. 1150 Prescription Drug Benefit Plan, Teamsters
Local 237 Welfare Fund, and Teamsters Local 237 Retirees' Benefit Fund, on behalf of
themselves and all others similarly situated. Together, they are referred to as "Plaintiffs."
[2] Defendants include the manufacturers and marketers of Bystolic ("Forest") and their generic-
drug competitors ("Generic Defendants"). "Forest" refers collectively to: Forest Laboratories,
Inc., Forest Laboratories Holdings, Ltd., Forest Laboratories, LLC; and Forest Laboratories
Ireland Ltd.; AbbVie, Inc.; and Allergan, Inc., Allergan Sales, LLC, and Allergan USA, Inc.
"Generic Defendants" refers collectively to: Hetero USA Inc., Hetero Labs Ltd., and Hetero
Drugs Ltd. (collectively, "Hetero"); Torrent Pharmaceuticals Ltd. and Torrent Pharma Inc.

Opinion").  Direct Purchaser Plaintiffs subsequently filed a Third Amended Complaint ("DPP Complaint"), Retailer Plaintiffs filed Third Amended Complaints ("Retailer Plaintiffs' Complaints"), and End-Payor Plaintiffs filed a Second Amended Complaint ("End-Payor Plaintiffs' Complaint") (collectively, "Complaints"), in an attempt to redress the gaps that the Court previously identified in the Prior Complaints.  Dkt. Nos. 426, 427.[3]

Defendants have filed four motions to dismiss the Complaints.  All Defendants move to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 393.  All Defendants also move to dismiss End-Payor Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 397.  Defendant Teva Israel moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction. Dkt. No. 388.  Finally, a group of Defendants allegedly not at home in New York ("Nonresident Defendants")[4] move pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction the EPP Complaint's non-New York, state-law claims.  Dkt. No. 386.

_____

(collectively, "Torrent"); Ascend Laboratories, LLC and Alkem Laboratories Ltd. (collectively, "Alkem"); Indchemie Health Specialties Private Ltd. ("Indchemie"); Glenmark Generics Inc., USA, Glenmark Generics Ltd., Glenmark Pharmaceuticals Ltd., and Glenmark Pharmaceuticals S.A. (collectively, "Glenmark"); ANI Pharmaceuticals, Inc., Amerigen Pharmaceuticals, Inc., and Amerigen Pharmaceuticals, Ltd. (collectively, "Amerigen"); Teva Pharmaceuticals Industries Ltd. ("Teva Israel"); Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (CT), Watson Pharma, Inc., Watson Pharmaceuticals Inc., Actavis, Inc., and Teva Pharmaceuticals USA, Inc. (collectively with Teva Israel, "Watson").  Forest and Generic Defendants are collectively referred to as "Defendants."
[3] Retailer Plaintiffs filed their third amended complaints in the related cases of *CVS Pharmacy, Inc. et al v. AbbVie Inc. et al*, 20-cv-10087 (S.D.N.Y.), ECF No. 43, and in *Walgreen Co. et al v. AbbVie Inc. et al*, 20-cv-9793 (S.D.N.Y.), ECF No. 47.
[4] Nonresident Defendants include all Defendants except for Watson Laboratories, Inc. (NY), Forest Laboratories, Inc., and the latter's successors—Forest Laboratories, LLC and Allergan Sales, LLC.

For the following reasons, Defendants' motions to dismiss the Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) are granted and the Complaints are dismissed with prejudice.  The motions to dismiss based on a lack of personal jurisdiction are denied as moot.

## BACKGROUND

Familiarity with the facts and the Hatch-Waxman regulatory framework for the approval of generic equivalents of branded drugs is presumed.  On each of the four motions to dismiss, the Court accepts as true the factual allegations of the Complaints and the documents incorporated therein by reference.[5]  The Court first briefly summarizes the alleged scheme and then describes the general terms of the Agreements.  In the Discussion section, the Court reiterates the principal holdings from the January 2022 Opinion and discusses whether any new allegations in the Complaints address the shortcomings that the Court identified in the Prior Complaints.

## I.      Overview of the Alleged Scheme

Forest manufactures Bystolic, a "beta blocker" approved by the U.S. Food and Drug Administration ("FDA") to treat high blood pressure that generates nearly $1 billion in annual sales in the United States.  Dkt. No. 427 ¶ 1.[6]  Bystolic is the brand name of a drug otherwise known as nebivolol hydrochloride or nebivolol HCl.  *Id.* at ECF p. 1; *id.* ¶ 122.  Nebivolol itself is a mixture of two "stereoisomers," which are different configurations of the structure of a

---

[5] Because the Complaints refer extensively to the agreements between the Defendants ("Agreements") and their effects, the Court may consider them on a motion to dismiss.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has 'rel[ied] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [the court] may consider its contents even if it is not formally incorporated by reference." (alteration in original) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).

[6] This opinion cites to the DPP Complaint as the other Plaintiffs' complaints are substantially identical.

chemical compound.  *Id*. ¶¶ 120–21.  As the source of the desired pharmacological effects, nebivolol constitutes the active pharmaceutical ingredient ("API") of Bystolic.  *Id*. ¶ 122.

In December 2011, Generic Defendants, seeking FDA approval for manufacture of generic versions of Bystolic, filed Abbreviated New Drug Applications ("ANDAs") with Paragraph IV certifications.  Those certifications provide that the underlying Bystolic patents are "invalid or will not be infringed by the generic manufacturer's proposed product."  *Id*. ¶ 99.  Forest subsequently filed patent infringement lawsuits against Generic Defendants ("Nebivolol Patent Litigation").  Under the Hatch-Waxman regulatory framework, the filing of those lawsuits delayed FDA approval of the ANDAs by a period of time not to exceed thirty months.

From October 2012 through November 2013, Forest entered into a series of reverse-payment deals (described by Plaintiffs as "pay for delay" deals) with Generic Defendants described in more detail below.  Among other things, in connection with the settlement of the Nebivolol Patent Litigation, each Generic Defendant (1) agreed not to compete with Forest or enter the market with its generic version of Bystolic prior to September 17, 2021 (three months before patent expiration), unless another Generic Defendant entered that market earlier; and in exchange, (2) received cash payments from Forest; and (3) entered into "side deals" with Forest.  *Id*. ¶ 3.  Plaintiffs allege that those "side deals" had the intent and effect of allowing Forest to maintain its monopoly profits from the sale of Bystolic and delayed the entry of less expensive generic forms of Bystolic.  *Id*. ¶¶ 2, 3.

Plaintiffs' factual allegations in the Complaints generally mirror their allegations in the Prior Complaints.  The introduction and sections on the regulatory background—including the descriptions of the regulatory approval process of generic drugs, the competitive effects of generic competition, and the financial incentives for brand and generic companies to agree to

anticompetitive terms—remain unchanged in the Complaints.  *See id.* ¶¶ 1–114.  Plaintiffs also reiterate the point which was clear from the Prior Complaints—that "each side deal was entered into contemporaneously with the settlement of the Nebivolol Patent Litigation and the Generic Defendants' agreement to delay generic entry."  *Id.* ¶ 158.  Plaintiffs, citing *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013), further reiterate that each side deal provided payments to each generic manufacturer with first-filer exclusivity "even though none of them had any claim to damages as a result of the Nebivolol Patent Litigation."  Dkt. No. 427 ¶¶ 159–60.[7]

Plaintiffs, citing a law review article, also add several paragraphs to their Complaints describing what they allege to be the "history of reverse payments."  *See id.* ¶¶ 154–57 (citing C. Scott Hemphill, *An Aggregate Approach to Antitrust: Using New Data and Rulemaking to Preserve Drug Competition*, 109 Colum. L. Rev. 629 (2009)).  Those paragraphs allege that "the earliest reverse payments were naked cash payments to compensate generic companies for delaying generic entry," *id.* ¶ 154, that "as antitrust scrutiny of reverse payments increased, the use of 'side deals' to disguise reverse payments has become common," *id.*, that the "most common type of 'side deal' involves the brand company overpaying the generic company for a product or service provided by the generic company, via a patent license, supply of raw materials, manufacturing, product development or co-promotion agreement," *id.* ¶ 155, and that "outside of settlement, brand-name firms seldom contract with generic firms for help with the activities that form the basis of side deals," *id.* ¶ 157 (citation omitted).  The paragraphs and article otherwise do not discuss the Agreements or Defendants' conduct.

---

[7] Plaintiffs also allege that "Forest has a history of using side deals," citing Forest's outside and in-house counsel's usage of the term "side deal" with respect to a separate patent dispute involving Namenda, "another of Forest's blockbuster products."  *Id.* ¶ 161.  Plaintiffs further rely on the "Agovino email" to allege that outside and in-house counsel referred to the Agreements as "side deals," but that allegation was included in the Prior Complaints.  *See* Dkt. No. 250 ¶ 151.

## II.    The Agreements

The Agreements alleged by Plaintiffs took different forms and were entered into in different time periods.  Each set of agreements included a Settlement Agreement and a License Agreement.  The terms of the Settlement Agreements and License Agreements were generally uniform but differed in some respects.  For example, some of the License Agreements provided for Forest to reimburse the generic manufacturer for Forest's saved litigation costs and the manufacturer's expended litigation costs up to a specified maximum, while others provided for a fixed payment.

The first agreements alleged by Plaintiffs are Forest's agreements with Hetero, which took the form of a Settlement Agreement and License Agreement dated October 24, 2012 and a Final Term Sheet dated October 5, 2012.  *Id.* ¶ 163.  The Settlement Agreement and License Agreement provided that Forest would grant Hetero a non-exclusive license to sell generic Bystolic three months before the patent expired (subject to an earlier launch if a third party commenced a launch at risk), that Forest and Hetero would agree to dismiss all claims and counterclaims asserted against one another in the Nebivolol Patent Litigation and grant each other releases, and that Forest would pay Hetero up to $200,000 for Hetero's expended litigation fees and costs and Forest's saved legal fees in connection with the Nebivolol Patent Litigation. Dkt. No. 270-1.  The Final Term Sheet obligated Hetero to sell and Forest to purchase at a fixed price a supply of nebivolol API equal to at least 50% of Forest's requirements for use in manufacturing Bystolic.  Dkt. No. 427 ¶ 163; Dkt. No. 270-2.  Plaintiffs allege that the Final Term Sheet never resulted in a final supply agreement.  Dkt. No. 427 ¶ 170.

Approximately one month later, Forest entered into a Settlement Agreement and License Agreement with Torrent dated November 21, 2012 and a Patent Assignment Agreement of the same date.  *Id.* ¶ 176.  The Torrent Settlement Agreement and License Agreement contained

similar terms to the Hetero Settlement Agreement and License Agreement, including the terms of the license and the settlement of the Nebivolol Patent Litigation, but also included the requirement that Forest pay Torrent up to $1 million for Torrent's expended litigation fees and costs and Forest's saved legal fees.  Dkt. No. 270-12.  The Patent Assignment Agreement provided that in exchange for a payment from Forest of up to $17 million, Torrent would sell to Forest ten patents covering compositions and/or manufacturing processes used in the manufacture of nebivolol drug product.  Dkt. No. 427 ¶ 176; Dkt. No. 270-13.

Shortly thereafter, Forest entered into agreements dated November 27, 2012 and November 28, 2012 with a third generic manufacturer, Alkem/Indchemie, to settle the Nebivolol Patent Litigation and for Alkem/Indchemie to both license Bystolic and supply Forest with the finished product of two drugs for a period of at least five years.  Dkt. No. 427 ¶ 181.  Under the Settlement Agreement and License Agreement dated November 27, 2012, in addition to the grant of the license and the dismissal of claims and mutual releases, Forest agreed to pay Alkem/Indchemie a fixed sum of $1 million for Alkem/Indchemie's expended litigation fees and costs and Forest's saved legal fees.  Dkt. Nos. 270-7, 270-8.  Under a Term Sheet dated November 28, 2012, Alkem/Indchemie agreed to sell to Forest and Forest agreed to purchase, for a payment of "at least $20 million," 45% of its required supply of Bystolic and Byvalson (nebivolol and valsartan) tablets in the United States and Canada for five years with automatic renewal periods of one year each.  Dkt. No. 427 ¶ 181; Dkt. No. 270-9.

The following month, Forest entered into agreements with a fourth generic manufacturer, Glenmark.  Dkt. No. 427 ¶ 188.  The Settlement Agreement and License Agreement between Forest and Glenmark dated December 21, 2012 provided—in addition to the settlement and mutual releases—for Forest to pay Glenmark up to $1.2 million for Glenmark's expended

litigation fees and costs and Forest's saved legal fees and provided Glenmark a license to sell generic Bystolic.  Dkt. No. 270-14.  A Collaboration and Option Agreement of the same date gave Forest the right to jointly develop microsomal prostaglandin e synthase-1 ("mPEGS-1") products with Glenmark for a period of at least 27 months absent earlier termination and an option right of first negotiation for exclusive commercialization rights of those products.  In exchange, Forest made an aggregate payment of $15 million to Glenmark.  Dkt. No. 427 ¶ 188; Dkt. No. 270-15.

Over six months later, Forest entered into agreements with a sixth generic manufacturer, Amerigen.  The agreements with Amerigen were both dated July 18, 2013.  Dkt. No. 427 ¶ 195. The Settlement Agreement and License Agreement provided, in addition to the settlement of the litigation and the releases and the grant of a non-exclusive license to sell generic Bystolic, for Forest to pay $2 million to Amerigen for Amerigen's expended litigation fees and costs and Forest's saved legal fees.  Dkt. No. 270-17.  A Binding Term Sheet Collaboration Agreement ("Collaboration Agreement") provided for Forest's investment in the development of eight Amerigen products as reflected by a fixed up-front payment of $5 million and $20 million in milestone payments contingent upon certain product development and launch events, and an option for Forest to commercialize up to eight Amerigen products in Latin and South America for which Amerigen would be the supplier.  Dkt. No. 427 ¶ 195; Dkt. No. 270-19.

Forest's last set of agreements occurred in November 2013 with Watson.  Dkt. No. 427 ¶ 200.  In addition to the same terms with respect to settlement, releases, and a non-exclusive license as reflected in the agreements with the other generic manufacturers, the Settlement Agreement and License Agreement dated November 6, 2013 between Forest and Watson

entities[8] required Forest to pay up to $2 million for Watson's expended litigation fees and costs and Forest's saved legal fees.  Dkt. No. 270-4.  A Letter Agreement dated November 1, 2013 between Forest and Moksha8 committed Forest to extend approximately $7 million in additional "Term C" loans in exchange for releases to Forest from Moksha8 and other parties.  Dkt. No. 270-5.  Finally, a Termination and Release Agreement dated November 1, 2013 between Actavis and Moksha8 terminated a series of agreements between Watson and Moksha8 entered into from 2010 to 2012, and released each other from any obligations arising from those agreements, as well as obligations in any way related to transactions contemplated by an Agreement and Plan of Merger, dated October 22, 2012, by and among Forest, M8 Holdings LLC, and Moksha8 Parent (the "Merger Agreement"), or any agreement contemplated by the Merger Agreement.  Dkt. No. 427 ¶ 200; Dkt. No. 270-6.

In all, Forest agreed to pay a total of up to $7.4 million to the six generic manufacturers for the expended litigation costs of each of those manufacturers and the saved legal fees of Forest in connection with the patent litigation over a drug alleged to generate nearly $1 billion in annual sales in the United States.  As befitting the settlement of litigation, those generic manufacturers with whom Forest settled later, and thus who presumably incurred more expenses, were paid more than the generic manufacturers who settled earlier.  At the same time, Forest entered into side deals with each of the manufacturers pursuant to which it made payments that totaled close to $100 million in exchange for a variety of different rights from each manufacturer.  Dkt. No. 427 ¶ 142.  Forest also provided each generic manufacturer a license to sell generic Bystolic three months before patent expiration.  Finally, each agreement contained a "contingent launch"

---

[8] Those Watson Entities included Watson Laboratories, Inc. (NV), Watson Laboratories, Inc. (DE), Watson Laboratories, Inc. (NY), Watson Laboratories, Inc. (CT), and Watson Pharma, Inc.

provision that accelerated the launch date to the date that any other generic manufacturer launched, if any of the other generic manufacturers launched earlier than the three months before patent expiration.

The upshot of the settlements is that Forest was able to continue to exploit the monopoly its patent gave over Bystolic past any FDA approval of Generic Defendants' ANDAs on June 18, 2015 (or an earlier favorable decision in the patent suit for Generic Defendants) until September 17, 2021, which is three months before the patent would have expired. The further upshot is that each of the generic manufacturers were able to market generic Bystolic three months earlier than they otherwise would have had the rights to do so, had those manufacturers lost the Nebivolol Patent Litigation. The principal question in this case is whether those Agreements constitute impermissible pay-for-delay agreements in violation of the federal antitrust laws.

## PROCEDURAL HISTORY

The first actions in this case were filed in July 2020. Direct Purchaser Plaintiffs and Retailer Plaintiffs first brought claims for damages under federal antitrust law. End-Payor Plaintiffs then brought claims under state antitrust and consumer-protection laws and for injunctive relief under federal antitrust law. The Direct Purchaser Plaintiffs' actions were consolidated, the End-Payor Plaintiffs' actions were consolidated, and the two consolidated actions and the two Retailer Plaintiffs' actions were coordinated with one another under one docket to promote efficiency in managing and litigating the cases. Dkt. Nos. 50, 82, 86, 204; *CVS Action*, 20-cv-10087 (S.D.N.Y.), ECF No. 19; *Walgreen Action*, 20-cv-9793 (S.D.N.Y.), ECF No. 20. Defendants moved to transfer the cases to the District of New Jersey, Dkt. No. 79, but the Court denied the motion to transfer venue, Dkt. No. 178.

On December 3, 2020, Direct Purchaser Plaintiffs filed their Consolidated and Amended Class Action Complaint, Dkt. No. 111, and End-Payor Plaintiffs filed their Consolidated Class

Action Complaint, Dkt. No. 113.  On December 23, 2020, Retailer Plaintiffs filed their respective amended complaints.  *CVS Action*, 20-cv-10087 (S.D.N.Y.), ECF No. 20; *Walgreen Action*, 20-cv-9793 (S.D.N.Y.), ECF No. 21.

Thereafter, Nonresident Defendants moved to dismiss the End-Payor Plaintiffs' complaint for lack of personal jurisdiction, Dkt. No. 215; Teva Israel moved to dismiss all claims against it for lack of personal jurisdiction, Dkt. No. 218; Defendants moved to dismiss Direct Purchaser and Retailer Plaintiffs' complaints for failure to state a claim, Dkt. No. 223; and Defendants moved to dismiss End-Payor Plaintiffs' complaint for failure to state a claim, Dkt. No. 226.  In response to Defendants' various motions to dismiss, all Plaintiffs elected to amend their complaints, Dkt. No. 240, and the Court denied the motions to dismiss without prejudice as moot, Dkt. No. 241.

On March 15, 2021, the Prior Complaints in this case were filed: the DPP Prior Complaint, Dkt. No. 250; the Retailer Plaintiffs' Prior Complaints, *CVS Action*, 20-cv-10087 (S.D.N.Y.), ECF No. 35; *Walgreen Action*, 20-cv-9793 (S.D.N.Y.), ECF No. 34; and the EPP Prior Complaint, Dkt. No. 251.  On April 23, 2021, Defendants moved to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints, Dkt. No. 267, and moved to dismiss End-Payor Plaintiffs' Complaint, Dkt. No. 271.  That same day, Defendant Teva Israel moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction, Dkt. No. 260, and the Nonresident Defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction the EPP Complaint's ninety-nine non-New York, state-law claims, Dkt. No. 265.  After the four motions to dismiss the Prior Complaints were fully briefed, the Court held oral argument on the motions on December 14, 2021.  Dkt. No. 343.  On January 24, 2022, the Court granted the motions to dismiss the Direct

Purchaser, Retailer, and End-Payor Plaintiffs' Prior Complaints for failure to state a claim without prejudice and denied the motions to dismiss for lack of personal jurisdiction without prejudice as moot.  Dkt. Nos. 350, 354.

On February 22, 2022, the Complaints were filed: the DPP Complaint, Dkt. No. 427; the Retailer Plaintiffs' Complaints, *CVS Action*, 20-cv-10087 (S.D.N.Y.), ECF No. 43; *Walgreen Action*, 20-cv-9793 (S.D.N.Y.), ECF No. 47; and the EPP Complaint, Dkt. No. 426.  On April 19, 2022, Nonresident Defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction the End-Payor Complaint's non-New York, state-law claims, Dkt. No. 386, Defendant Teva Israel moved pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction, Dkt. No. 388, all Defendants moved to dismiss Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 393, and all Defendants moved to dismiss End-Payor Plaintiffs' Complaint for a lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 397.  On May 5, 2022, the New Civil Liberties Alliance and the International Center for Law and Economics filed an amicus brief.  Dkt. Nos. 403–405.  After the four motions to dismiss were fully briefed, the Court held another oral argument on the renewed motions on November 3, 2022.  Dkt. No. 435.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570

(2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendants argue that the Complaints failed to cure the deficiencies the Court identified in the Prior Complaints in its January 2022 Opinion.  They argue, *inter alia*, that the Complaints failed to add sufficient factual allegations to state a plausible claim that each of the payments were "unjustified" under *Actavis*.

The Court first summarizes its January 2022 Opinion and then addresses the putatively new facts asserted to remedy the flaws in the Prior Complaints.

## I.     The Court's Prior Opinion and Order

The Court's prior opinion closely analyzed the Supreme Court's decision in *FTC v. Actavis*, 570 U.S. 136 (2013), and surveyed the case law that followed that seminal decision both in this Circuit and elsewhere.  *See* Dkt. No. 354 at 16–27.

As noted in the January 2022 Opinion, the Supreme Court in *Actavis* held that antitrust cases premised on reverse-payment settlements of patent litigation—"reverse," because the

settlement required the patentee plaintiff to pay the alleged infringer rather than the other way around—can sometimes violate the antitrust laws and must be evaluated under the rule of reason. *Id*. at 16 (citing *Actavis*, 570 U.S. at 140, 159).

The *Actavis* Court rejected the argument that any agreement pursuant to which a generic manufacturer agreed to honor a patent and to refrain from entering the market prior to the patent's expiration would be presumptively unlawful if the generic manufacturer received payment in exchange for that promise.  The Court stated that "a valid patent excludes all except its owner from the use of the protected process or product," *Actavis*, 570 U.S. at 147 (quoting *United States v. Line Material Co.*, 333 U.S. 287, 308 (1948) (alterations and emphasis omitted)), and that the "exclusion may permit the patent owner to charge a higher-than-competitive price for the patented product," *id.*  The *Actavis* Court also recognized "the value of settlements," supported by "traditional settlement considerations, such as avoided litigation costs" in which the payment reflects "a rough approximation of the litigation expenses saved through the settlement," *id.* at 153–54, 156, and that "settlement on terms permitting the patent challenger to enter the market before the patent expires would also bring about competition," *id.* at 154.  The Court also recognized that "payment may reflect compensation for other services that the generic has promised to perform."  *Id.* at 156.  A rule that such agreements were presumptively unlawful would deter many agreements that enhanced consumer welfare and would, in effect, inappropriately place the burden on a defendant to prove that any money that changed hands was for something other than delay, such as the generic manufacturer's provision of property or services unrelated to the brand manufacturer's monopoly.  *Id.* at 158–59.

At the same time, the Supreme Court also rejected the argument that agreements to settle patent litigation for a reverse payment could never be subject to antitrust scrutiny.  An agreement

to settle litigation over the validity of a patent "has the 'potential for genuine adverse effects on competition.'" *Id.* at 153 (quoting *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 460–61 (1986)).  If the payment is made by the brand manufacturer to keep the generic manufacturer out of the market and to keep prices at patentee-set levels, "potentially producing the full patent-related . . . monopoly return while dividing that return between the challenged patentee and the patent challenger[,] [t]he patentee and the challenger gain; the consumer loses."  *Id.* at 154.

The Supreme Court settled on the rule that "[a] reverse payment, where large and unjustified, can bring with it the risk of significant anticompetitive effects," noting that "one who makes such a payment may be unable to explain and to justify it."  *Id.* at 158.  The Supreme Court left it to the "lower courts" to "structur[e] . . . the present rule-of-reason antitrust litigation."  *Id.* at 160.[9]

In its January 2022 Opinion, the Court noted the ambiguity within *Actavis* itself, *see* Dkt. No. 354 at 21 n.9, and acknowledged that "the lower federal courts have struggled with the standards set forth by the Supreme Court," *id.* at 21.  Some courts would require the plaintiff to reasonably estimate the value of the settlement terms at the pleading stage (calculating the value of the consideration provided and whether it could be explained by reasons other than the desire to stifle competition) and thereby would make it difficult for any complaint (even presumably

---

[9] The Court agrees with the argument in the amicus brief from the New Civil Liberties Alliance and the International Center for Law and Economics that the appropriate question is the "net" benefit conferred by the reverse payment and not its gross size *vel non*.  Dkt. No. 405 at 11–12. In other words, the court examines the amount of the gross payment less the value of goods and services that the patentee contracted to receive including saved litigation costs.  *Id.* at 6.  Such a conclusion follows from the Supreme Court's holding that a settlement for saved litigation costs or for other goods and services is not inherently suspect.  It also is consistent with the Supreme Court's notion that "[a]n unexplained large reverse payment itself would normally suggest that a patentee has serious doubts about the patent's survival."  *Actavis*, 570 U.S. at 157.  If the payment reflects fair value for goods or services, it would say nothing about the patentee's belief in the validity of the patent.  The motion for leave to file an amicus brief is granted.

one filed by the FTC) to survive a motion to dismiss.  *Id*. at 23 (citing *In re Actos End Payor Antitrust Litigation*, 2015 WL 5610752, at *19 (S.D.N.Y. Sept. 22, 2015)).  Others would hold that whether a payment is large and unjustified would present "intrinsically fact-based determinations" that could not be addressed on a motion to dismiss, thereby permitting complaints to go forward to discovery without any indicia—other than the fact of a large side agreement—to justify the litigation costs.  *Id*. at 24–25 (quoting *Sergeants Benevolent Association Health and Welfare Fund v. Acta Vis, PLC*, 2016 WL 4992690, *14 (S.D.N.Y. Sept. 13, 2016)).

The Court attempted to chart a middle course—one that would neither require so much detail at the pleading stage as to "permit many anticompetitive agreements to go unprosecuted and . . . render *Actavis* and the Sherman Act's protection against pay-for-delay agreements an empty promise," *id.* at 27, but one that at the same time required the pleader to allege more than simply "the approximate amount of a payment and that it is large and unjustified in order to state a claim for relief under the general pleading standards of Rule 8 of the Federal Rules of Civil Procedure," *id.* at 25.  The Court drew from the Supreme Court's decision in *Twombly* and from the arguments made by the FTC that the Supreme Court rejected in *Actavis*.  The Supreme Court in *Twombly* recognized that its decision would allow certain anticompetitive conduct to go unpunished; it "was not oblivious to the fact that 'in antitrust cases, . . . the proof is largely in the hands of the alleged conspirators.'"  *Id.* at 28 (quoting *Twombly*, 550 U.S. at 586 (Stevens, J., dissenting)).  The Supreme Court concluded, however, that the fact that a complaint's allegations raise the possibility of anticompetitive conduct, without alleging its plausibility, was not sufficient to proceed to discovery.  *Twombly*, 550 U.S. at 559; *see also id.* at 556.  *Twombly* thus held that "conduct that is consistent with and equally explicable by a pro-competitive

justification—by each defendant acting in its own independent interest—and that raises only the possibility of anticompetitive conduct is not sufficient to state a claim and to subject the defendants to what it characterized as the 'potentially enormous expense of discovery.'" Dkt. No. 354 at 27 (quoting *Twombly*, 550 U.S. at 559).

The Court concluded that, just as in *Twombly*, under *Actavis*, "plaintiffs must show the absence of one or more of the factors that would be consistent with a pro-competitive justification." *Id*. at 29.  It would not be sufficient to allege simply the approximate amount of a payment and that it is large and unjustified relative to the consideration exchanged for a complaint to survive a motion to dismiss.  The plaintiff "must plead *facts* that would support the claim that the reverse payment was 'large' and 'unjustified,' i.e., that it was not simply possible that the defendants engaged in the anticompetitive conduct of paying the generic manufacturer to forego entering the market but that it was plausible." *Id*. at 30 (emphasis in original).

At the same time, however, the Court rejected the proposition that the only way a complaint could survive a motion to dismiss was to plead the payment that the brand manufacturer made, to calculate the precise value of the consideration it received, and to show that the difference between the two could not be justified by any objective other than to stifle competition.  The FTC had argued in *Actavis* that factors other than a discrepancy in value could be relied upon as circumstantial evidence to show that what on its face appeared to be a payment for goods or services was instead large and unjustified and, in fact, a disguised payment to restrain trade.  The FTC thus listed factors in addition to whether the amount of the payment "reflected bona fide fair consideration for the property or services":

> whether other terms of the side transaction comported with industry standards; the existence of previous dealings between the parties on the subject matter of the side transaction; a history of demonstrated interest in or need for the property or services

17

on the part of the brand-name manufacturer; and the course and content of the manufacturers' negotiations over the agreements.

*Id*. at 29 (citing Brief for the Petitioner at 37–38, *FTC v. Actavis*, 570 U.S. 136 (2013) (No. 12-416)).  The Supreme Court rejected the FTC's proposed quick-look approach, which would have placed the burden on defendants as to each of these factors and thus would have relieved the plaintiff of any pleading burden, but it did not reject that such factors—if pleaded by plaintiff—could support a claim under the Sherman Act.  *Id*. at 20.

Distilling these considerations, the January 2022 Opinion thus held that to allege facts that a reverse payment is unjustified, a plaintiff:

> might satisfy its pleading burden with facts showing the negative of what the FTC claimed would be evidence of a pro-competitive agreement—e.g., that the terms of the side transaction were not for fair value; that the terms did not comport with industry standards; that there were no previous dealings between the parties on the subject matter of the side transaction; that there was no history of demonstrated interest in or need for the property or services on the part of the brand-name manufacturer; or that the course and content of the manufacturers' negotiations over the agreements suggested that the purported justification for the agreement was pretextual and that the real reason for the payment was to preserve the brand manufacturer's monopoly.

*Id*. at 31–32.  The plaintiff need not preempt every possible explanation for the reverse payment, but it must plead at least some facts of this nature to sufficiently allege an unjustified agreement.

*Id*. at 32 (citing *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 356 (3d Cir. 2020)).

The Court concluded that Plaintiffs had failed to meet this pleading burden.  The Court held that Plaintiffs had sufficiently and plausibly alleged that each of the settlement agreements and side agreements were connected to the settlement of the Nebivolol Patent Litigation and were related to one another.  *Id.* at 33–34.  But it rejected Plaintiffs' argument that it was sufficient that the Prior Complaints alleged large payments and, in a conclusory manner, that the payments exceeded the fair market value of any goods or services to be provided.  Such allegations reflected "labels and conclusions" that "could be asserted in every case in which there

18

is a side agreement with a generic manufacturer who agrees to honor a patent"; if accepted, "there would be nothing left of the Supreme Court's rejection of the per se rule in *Actavis*." *Id.* at 38.  Having done so, the Court concluded that Plaintiffs' allegations failed.  As to each of the generic manufacturers, Plaintiffs alleged facts that while "consistent with conspiracy," were "just as much in line with a wide swath of rational and competitive business strategy." *Twombly*, 550 U.S. at 554; *see* Dkt. No. 354 at 39.

## II.     The Alleged Settlement Agreements and Side Agreements

With these considerations in mind, the Court turns to the Complaints.  Plaintiffs do not allege that the size of the payments for saved litigation costs and expended litigation fees are themselves large and unjustified and disproportionate.  The size of the payments ranged from $200,000 to $2 million and totaled $7.4 million.  There is no allegation that they are out of range for the cost of litigation of a major patent lawsuit over a billion dollar product.  Rather, Plaintiffs' allegations turn upon the alleged side deals.

Plaintiffs' factual allegations regarding the side deals, however, do not show that they are large and unjustified.  In the first instance, neither the allegations that "Forest has a history of using side deals," Dkt. No. 427 ¶ 161, nor the allegation that the "most common type of 'side deal' involves the brand company overpaying the generic company for a product or service provided by the generic company, via a patent license, supply of raw materials, manufacturing, product development or co-promotion agreement," *id.* ¶ 155, is sufficient to "nudge[ ] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570.  The former allegation cites *In re Namenda Direct Purchaser Antitrust Litig.*, 332 F. Supp. 3d 152, 199 (S.D.N.Y. 2018), a case which later settled.  The fact that an allegation was levelled against Forest, however, is not itself a fact from which one can infer that the allegations are true.  *Cf. Low v. Robb*, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012) ("It is well settled under Second

Circuit law that allegations in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." (internal quotation marks and citation omitted)).  More importantly, the claim would have the Court impermissibly infer that just because a prior complaint survived against Forest, that every subsequent complaint must also do so, no matter the deficiencies in its pleading.  The latter argument would label every side deal for goods and services anticompetitive and thus would do precisely what *Actavis* forbids—place the burden on the defendant to justify any side deal for goods and services entered into at the same time as an agreement to settle litigation.  Finally, Plaintiffs' allegation that brand manufacturers and generic manufacturers do not typically do business with one another is the type of allegation that might, if it were supported by fact in the circumstances of Forest, be relevant to a *Twombly* analysis.  But it is not supported here.  The assertion thus assumes the conclusion—that because brand manufacturers do not usually reach agreements with generic manufacturers, the agreements that they reach to cease litigating with one another must be unusual and anticompetitive.

Moreover, when the Court thus turns, as *Twombly* requires, to a "context-specific" review of the Agreements themselves, drawing "on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, the allegations do not suffice to state a claim.  Plaintiffs have not asserted facts as to any of the factors that would suggest conduct inconsistent with a pro-competitive justification.  They have not cured the deficiencies identified in the Prior Complaints.

### 1. Hetero

The allegations in the Complaints with respect to Hetero add little to what was alleged in the Prior Complaints.  Forest executed a Settlement Agreement and License Agreement with Hetero on October 24, 2012 that released all of Forest's patent claims, included a payment up to

$200,000 for Hetero's expended litigation fees and Forest's avoided litigation costs, provided a license to Hetero to sell generic Bystolic three months before the patent expired, and required that Hetero not otherwise market or sell generic Bystolic before that date.  Dkt. No. 427 ¶ 163; Dkt. No. 270-1.  Forest and Hetero also executed a Final Term Sheet for nebivolol API which required Hetero to sell and Forest to purchase a quantity of API equal to at least 50% of Forest's requirements for the United States and Canada at set fixed prices during the minimum five-year term of the supply agreement.  Dkt. No. 427 ¶ 163; Dkt. No. 270-2.  Plaintiffs approximate payments from Forest to total $37.5 million over that period.  Dkt. No. 427 ¶ 163.

In the Prior Complaint, Plaintiffs generally pleaded, on information and belief, that Forest was not in need of API because of its preexisting supply agreement with Janssen and further that in light of that agreement and based on the Term Sheet, the price Forest was paying was excessive.  Dkt. No. 250 ¶ 154.[10]  Plaintiffs thus asked the Court to infer that because Forest had no current or anticipated need for API, there would be no value to it in obtaining a second source for API.  The January 2022 Opinion rejected that argument.  In the first instance, "the fact that Forest had sufficient API from Janssen could be entirely consistent with the opposite conclusion from the one offered by Direct Purchaser Plaintiffs—i.e., that Forest was in great need of another supplier."  Dkt. No. 354 at 39.  It was entirely plausible that Forest, as part of its "rational and competitive business strategy," *Twombly*, 550 U.S. at 554, would not want to be dependent upon a single supplier for what Plaintiffs themselves allege to be "at least [a] $37.5 million" contract, Dkt. No. 427 ¶ 163, and would want to develop a second source of supply to ensure competition.

---

[10] Plaintiffs refer to the Janssen agreement in the Complaints and rely on its effect.  The Court may consider it on a motion to dismiss.  *See* Dkt. No. 354 at 40 n.11.

Plaintiffs' new arguments do not address the deficiencies the Court identified in the Prior Complaints.  Plaintiffs again allege that "Forest was able to obtain sufficient amounts of nebivolol API without a supply agreement with Hetero, and did not need this supply agreement," *id.* ¶ 164, and that "[t]here is no evidence Forest needed a back-up supply for nebivolol API," *id.* ¶ 168.  They allege that they have found no publicly available information on Bystolic API supply issues and that the Form 10-K for the fiscal year ending in March 2012 stated that Forest "had not experienced any significant shortages in supplies of active pharmaceutical ingredients or other raw materials."  *Id.* (citation omitted).[11]  But Plaintiffs previously alleged on information and belief that Forest was not currently in need of API, *see* Dkt. No. 250 ¶ 154; the Court did not reject that allegation as conclusory.  It assumed its truth but held it to be insufficient.  The fact that Forest's needs were being satisfied by another source was "insufficient to raise a plausible inference that . . . the [] supply agreement with Hetero is unjustified."  Dkt. No. 354 at 39.  Plaintiffs' allegation that the 2012 Form 10-K does not say anything about Forest's needs just substantiates their information and belief.  There is an obvious benefit for a manufacturer to not be reliant on a single source of supply even if that single source in the past has been able to satisfy its supply demands.  Unless Forest was able to develop an alternative source, it would always be at the mercy of its sole source of supply.

Moreover, the statement from the 2012 Form 10-K that Plaintiffs cite only indicates that Forest had not experienced shortages *to date*.  It provides no basis for inferring that Forest would

---

[11] The Court may consider the 2012 10-K form because Plaintiffs reference the form in their Complaints, relying on its statements and alleged omissions.  *See, e.g.*, Dkt. No. 427 ¶¶ 167, 168, 179, 183.  It was thus incorporated by reference.  *See Chapman v. Mueller Water Prod., Inc.*, 466 F. Supp. 3d 382, 388 n.1 (S.D.N.Y. 2020); *cf. Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (laying out factors regarding when courts may consider documents incorporated by reference or take judicial notice and declining to consider 10-K form when it was not relied upon in plaintiff's complaint).

find no legitimate value, on a *forward-looking basis*, in a second source for additional Bystolic

API.  Forest's 2012 10-K Form, in fact, specifically identified the possibility of API shortages in

its discussion of "Risk Factors."  Forest identified the following risk in the same Form 10-K:

> *Many of Our Principal Products and Active Pharmaceutical Ingredients are Only Available From a Single Manufacturing Source.*
>
> Many of the proprietary active ingredients in our principal products are available to us only pursuant to contractual supply arrangements with our collaboration partners. . . . Difficulties or delays in the product supply chain, both within and outside of our control, or the inability to locate and qualify third party alternative sources, if necessary, in a timely manner, could lead to shortages or long-term product unavailability, which could have a material adverse effect on our results of operations, financial condition and cash flows.

2012 Form 10-K, Forest Laboratories, Inc., at 24 (May 25, 2012),

https://sec.report/Document/0000038074-12-000020/.  The Form 10-K thus supports, rather than

detracts from, the pro-competitive rationale of the supply agreement with Hetero.

Plaintiffs now also allege that no publicly available information reveals that Forest

engaged in a bid selection process for the nebivolol API.  Dkt. No. 427 ¶ 172.  They further

assert, in an entirely circular manner in their opposition brief, "[t]hat competitive bidding

processes are typical in the industry is inherent in Plaintiffs' allegation that there is no public

evidence Forest engaged in such a process."  Dkt. No. 409 at 22.  But those allegations are

meaningless.  The allegation that Forest did not state that it engaged in a bid-selection process is

not evidence that it did not engage in such a process absent an additional allegation that such a

disclosure would be required.  The "absence of evidence is not evidence of absence."  *See*, *e.g.*,

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 254 (D.C. Cir.

2013) ("The plaintiffs are right that the defendants' critique does not disprove the damages

model's claim of classwide overcharges as a matter of logical necessity; absence of evidence is

not evidence of absence."); *Saccenti v. Target Corp.*, 2021 WL 2716644, at *2 (E.D.N.Y. July 1,

2021) (noting, in summary judgment context, "the absence of evidence is not evidence of absence").

Further, Plaintiffs' assertion that it can be inferred that competitive bidding is typical because there is no evidence that Forest engaged in such a process is nonsensical.  The more plausible inference is that with a product as specialized as API, there would be no need or opportunity for competitive bidding.  Companies can engage in a business transaction that is mutually beneficial, pro-competitive, and based on "valid business judgment"—such as diversification of supply—without the agreement being the product of competitive bidding. *Brown v. W. Mass. Theatres, Inc.*, 288 F.2d 302, 304 (1st Cir. 1961) (noting that a departure from competitive bidding "does not in itself constitute or prove a violation, and cannot be helpful to the plaintiff unless he can rationally relate it to other conduct by the alleged conspirators"); *see also Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 694–95 (1978) ("The Sherman Act does not require competitive bidding; it prohibits unreasonable restraints on competition."); *Orthopedic Studio, Inc. v. Health Ins. Plan of Greater New York, Inc.*, 1996 WL 84503, at *4 (E.D.N.Y. Feb. 9, 1996) (describing the "Sherman Act [a]s 'neither a lowest-responsible-bidder statute nor a panacea for all business affronts which seem to fit nowhere else'" (quoting *Scranton Construction Co. v. Litton Indus. Leasing Corp.*, 494 F.2d 778, 782 (5th Cir. 1974))).[12]

More important, the plain terms of the Janssen supply agreement and the Final Term Sheet refute any notion that the price Forest would have to pay to Hetero would be excessive, or that the agreement constitutes an impermissible means to funnel money to Hetero not for

---

[12] Plaintiffs also allege that the Final Term Sheet does not identify any cost savings to Forest or the price that Forest paid or expected to pay to Janssen for API.  Dkt. No. 427 ¶ 169.  But Plaintiffs have not alleged that cost savings, or identification of the price in a competitor's supply agreement, would normally be identified in such a Final Term Sheet.

product, but for Hetero to not compete.  The Janssen supply agreement contained a "meet or release" provision providing that Forest may buy API from a third supplier, including Hetero, only if it is meaningfully cheaper than the supply from Janssen.  That provision states that after January 1, 2016—a time period encompassed with the term of Final Term Sheet with Hetero—if Forest provides evidence of an offer for API supply "at a price that is at least fifteen percent (15%) lower" than the Janssen Price, then Janssen would have to elect to meet that price or else Forest would have the ability to terminate the Janssen supply agreement.  Dkt. No. 270-3 § 4.3.  Triggering the provision requires that Forest "notify [Janssen] of such Competitive Offer and provide [Janssen] with the Third Party communication documenting such offer."  *Id*.  The Final Term Sheet requires Forest to "use good faith efforts to amend its current supply agreement with Janssen . . . to permit Forest to meet the Purchase Minimum."  Dkt. No. 270-2 at ECF p. 8.  Moreover, the Final Term Sheet had its own meet-or-release provision with substantially similar language and terms, including a fifteen percent price threshold that would take effect after the first 24 months of the agreement.[13]  *Id*. at ECF pp. 3–4.

The effect of these provisions in the two agreements is that Hetero's price would have to be competitive with Janssen's.  Forest was not obligated to satisfy the Purchase Minimum from Hetero unless it was relieved of its obligation to purchase all of its requirements from Janssen, and Forest would not be relieved of its obligations to Janssen unless Hetero's offer was at least 15% cheaper than Janssen's price.  The Final Term Sheet thus could not have been a financial windfall to Hetero because Hetero's price necessarily had to be at least 15% lower than Janssen's

---

[13] The meet-or-release provision in the Final Term Sheet provided that "If Hetero does not elect to meet the price in such Competitive Offer, then the Purchase Minimum shall be reduced to 20% of Forest's commercial requirements . . . ."  Dkt. No. 270-2 at ECF p. 4.  If Hetero did not keep its price competitive, at least 60% of its minimum supply contract would be up for grabs.

in order for the Final Term Sheet to take effect.  And on the assumption that the price was below

the Janssen price (the only reasonable inference to be drawn on the facts alleged here), the Final

Term Sheet—if converted into an enforceable agreement—would have a further pro-competitive

effect.  If Hetero sought to increase the prices it was charging Forest, then Forest would be able

to leverage supply prices from Janssen to negotiate Hetero down.  And if thereafter Janssen

sought to increase its prices to Forest beyond what Forest was paying Hetero, Forest could use

Hetero to negotiate Janssen down.  The effect of those meet-and-release provisions is to

"ensur[e] competitive pricing in a fluid market by assuring purchasers that a supplier will meet

its competitors' rates."  *Gen. Elec. Corp. v. BASF Corp.*, 2008 WL 4185870, at *2 (S.D.N.Y.

Sept. 4, 2008).  In short, there is no basis from the terms of the agreements to infer that the Final

Term Sheet is anything other than legitimate.

Plaintiffs also infer that this was a "rush job" intended to convey a reverse payment,

rather than a *bona fide* transaction.  Dkt. No. 427 ¶ 170.  Here, Plaintiffs repackage old facts: that

the Final Term Sheet was shorter than the "typically lengthy and detailed" API agreement, was

signed before Forest had obtained consent from Janssen to modify its supply agreement, and

itself stated that it did not contain the "terms and conditions typical for manufacturing and supply

agreements."  *Id*.  The parties also never entered into a final agreement after the Final Term

Sheet.  The Court addressed these allegations in the January 2022 Opinion and Plaintiffs plead

nothing new to change its conclusion.  The Court concluded that the "unfinalized nature of the

final term sheet" "created obligations on Forest (as well as on Hetero) and that those obligations

had value."  Dkt. No. 354 at 41–42.  The length of the Final Term Sheet is equally consistent

with the conclusion that it was a preliminary agreement for subsequent negotiations.  The mere

fact that the Final Term Sheet was a preliminary agreement of the Type II variety, which

obligated the parties to negotiate the issues in good faith in an attempt to reach the ultimate

contractual objective, *see Tchrs. Ins. & Annuity Ass'n of Am. v. Trib. Co.*, 670 F. Supp. 491, 498

(S.D.N.Y. 1987), is insufficient to raise a reasonable inference that the agreement itself was not a

*bona fide* transaction.

Plaintiffs also point out prior non-API related transactions between Janssen and Forest

and the timing of the Final Term Sheet to infer that it was not needed.  They allege that Janssen

had originally developed nebivolol in the 1990s and out-licensed the rights to Mylan in 2001,

which then subsequently sublicensed those rights to Forest in 2006, Dkt. No. 427 ¶ 166; that

Forest and Janssen in 2010 had entered in an agreement by which Janssen obtained the right to

commercialize Bystolic and another product in Canada, *id*. ¶ 167; and that Forest purchased

patents from Janssen, *id*.  But that says nothing about Forest's competitive rationale for seeking

supply from another supplier of nebivolol API, an entirely distinct product.  The timing of the

agreement—that it occurred seven months prior—again, "could be entirely consistent with the

opposite conclusion from the one offered by Direct Purchaser Plaintiffs—i.e., that Forest was in

great need of another supplier."  Dkt. No. 354 at 39.  Finally, Plaintiffs allege that Hetero "had

never manufactured or sold the API product at issue."  Dkt. No. 427 ¶ 171.  But that is the point.

It is precisely because Hetero had not manufactured the API in question before—because Forest

was dependent on a sole supplier—that the Final Term Sheet would have value to Forest.

For these reasons, Plaintiffs have failed to state a claim with respect to the Hetero

agreements.

### 2.    Torrent

Forest executed a Settlement Agreement and License Agreement with Torrent that

obligated Forest to pay up to $1 million to Torrent for Torrent's expended litigation fees and

costs and Forest's saved legal fees and provided Torrent a license to sell generic Bystolic three

months before the patent expired.  Dkt. No. 270-12.  Forest also executed a Patent Assignment

Agreement pursuant to which Torrent agreed to sell Forest ten patents covering compositions

and/or manufacturing processes used in the development and manufacture of a prospective non-

Bystolic nebivolol drug product for $17 million.  Dkt. No. 427 ¶ 176; Dkt. No. 270-13.[14]  The

agreement thus contemplates payments from Forest in exchange for patents that may eventually

be utilized in a new nebivolol drug product.

In the January 2022 Opinion, the Court rejected Plaintiffs' argument that the Patent

Assignment Agreement did not convey value to Forest and was a disguised payment to refrain

from competition.  Plaintiffs had argued that Forest did not need the patents, and thus would not

have valued them, because it was already manufacturing Bystolic and its period of exclusivity

under the patent would come to an end by December 17, 2021.  Dkt. No. 250 ¶ 158.  The Court

reasoned that "it does not plausibly follow that, because Forest had been able to manufacture and

sell Bystolic, the Torrent patents had little or no value to Forest; there is a missing link between

the first statement and the conclusion of no value."  Dkt No. 354 at 45.  The Court identified

what was missing from the Prior Complaint.  There were no facts pleaded:

> independently estimating the value of the patents; explaining why this patent
> assignment agreement did not comport with industry standards; showing that there
> had not been any previous dealings or discussions between Forest and Torrent on

---

[14] The Patent Assignment Agreement, under its definition of "Covered Nebivolol Product," for
which Forest negotiated the assignment of the patents, explicitly delineates that "any nebivolol
product that has been produced and marketed by Forest on or before the Effective Date shall not
be deemed a Covered Nebivolol Product."  Dkt. No. 270-13 § 1.4.  The agreement defines
"Covered Nebivolol Product" as "any 'Finished Nebivolol Drug Product' (that is, any drug
product that contains nebivolol hydrochloride as an active ingredient in a final dosage form ready
to be administered to a patient) sold and marketed in the United States (i) the composition of
which, including any intermediate used or involved in the manufacturing process, is covered by
at least one Valid Claim of the Assigned Patents or (ii) the manufacture of which, including the
manufacture or use of all intermediates, is covered by at least one Valid Claim of the Assigned
Patents." *Id*.  Thus, the agreement, on its face, sought to allow Forest to utilize Torrent's patents
to develop a new non-Bystolic nebivolol drug product.

these patents; demonstrating that Forest had previously expressed no interest in these patents; or describing negotiations that were out of the ordinary for such patent assignment agreements.

*Id*. at 45–46.  The Court stated that "[i]f the DPP Complaint contained factual allegations to support that the Torrent patents had little or no value to Forest, the DPP Complaint would then speak to the absence of bona fide fair consideration for the patents and the lack of Forest's need for these patents."  *Id*. at 45.

In their Complaints, Plaintiffs do not offer any facts as to these issues.  They do not plead facts regarding the value of the patents, that the Patent Assignment Agreement did not comport with industry standards, that there had been no prior dealings or discussions between Forest and Torrent, that Forest had previously expressed no interest in the patents, or that the discussions were out of the ordinary.  Plaintiffs do allege that "patent licenses like those granted by Torrent are common side deals used by brand manufacturers to make reverse payments to their generic competitors," citing an Eastern District of Pennsylvania case.  Dkt. No. 427 ¶ 180 (citing *King Drug Co. of Florence, v. Cephalon, Inc.*, 88 F. Supp. 3d 402, 420–21 (E.D. Pa. 2015)).  But that proposition is plainly overbroad.  If accepted, it would render every patent assignment agreement entered into by a brand manufacturer providing a reverse payment presumptively suspect and anticompetitive, thereby undermining *Actavis*.  In *King Drug Co.*, the plaintiffs had presented "expert opinions that [defendant] went outside industry norms and failed to conduct due diligence prior to licensing the Generic Defendants' IP" and defendant's chief patent counsel outright stated that they knew of "formulations of modafinil and [we]re not aware of any potential infringement problems" just months prior to the patent acquisition.  *King Drug Co. of Florence,* 88 F. Supp. 3d at 420–21 (citation omitted).  Plaintiffs do not allege similar facts here.

The new factual allegations in the Complaints add nothing that would make it plausible that the Patent Assignment Agreement was a disguised payment to Torrent for its agreement to

not launch a competing generic product.  Plaintiffs allege that (1) it is unlikely that any newly issued Torrent patent could block Forest's sale of Bystolic because an earlier patent (the '580 patent) would be considered prior art;[15] (2) Forest had just "agreed to permit Hetero to launch generic Bystolic prior to the expiry of Forest's '040 Patent, rendering it implausible that Forest would seek additional patent protection and/or patents that would allow it to reformulate a product that was reaching the end of its life cycle"; (3) Forest had just "purchased from Janssen for $357 million what Forest characterized as 'all' U.S. patents and intellectual property for Bystolic, and it is 'unlikely' that Forest would have done so if it believed there were other relevant patents that might block its sale of Bystolic"; (4) Forest did not disclose in its SEC filings or any other public document that it was planning to develop a new form of Bystolic using the Torrent patents and did not put any public value on these patents; and (5) the milestone payment of $7 million was triggered by the issuance of any of the ten patents in the United States, so it is implausible that any of the patents in isolation had value.  Dkt. No. 427 ¶ 179.

The alleged conduct "is consistent with and equally explicable by a pro-competitive justification," Dkt. No. 354 at 27 (citing *Twombly*, 550 U.S. at 559), that Forest wanted to purchase (and was able to purchase at a relatively low price) the intellectual property that could ensure that it would be able to successfully develop and sell a new non-Bystolic nebivolol product.  That Forest had just purchased for $357 million the U.S. patents and intellectual

---

[15] This allegation sets up a strawman argument: the plain purpose of the agreement was not to preserve sales of Bystolic, as the Patent Assignment Agreement explicitly excluded Bystolic from its coverage.  The contract allowed assignment for the purpose of Forest developing a new non-Bystolic nebivolol product.  Even if the allegation did not rely on a strawman, the Court would decline to consider it because it is a legal conclusion that is not credited on motion to dismiss.  *See Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90 (2d Cir. 2021) ("We accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations." (citation omitted)).

property for Bystolic from Janssen misses the key point evident from the plain language of the agreement: the Patent Assignment Agreement was not for Bystolic, but for the development of a non-Bystolic nebivolol product.[16]  Plaintiffs' allegation, which invokes Janssen's sale of patents for Bystolic, relies on a strawman that is implausible when assessed in light of the terms of the Torrent agreement.

Plaintiffs' argument that Forest had agreed to permit Hetero to launch generic Bystolic prior to the expiry of Forest's '040 patent, *see* Dkt. No. 427 ¶ 179, again relies on the mistaken assumption that the value of the patent agreement for Forest was in preserving its sales of Bystolic.  Further, even if the patents were for Bystolic, the premise itself is flawed.  Plaintiffs allege that it would be implausible for Forest to purchase additional patents for "a product that was reaching the end of its life cycle."  *Id.*  But according to Plaintiffs' pleadings, Forest and Torrent settled in 2012, approximately nine years before the "end of its life cycle," and Forest did not begin marketing Bystolic until 2008.  *Id.* ¶ 178.  Forest thus had only sold Bystolic—one of its "blockbuster" products, *id.* ¶ 161—for four years at the time of settlement, hardly a significant period in the product's life cycle.  From Plaintiffs' own allegations, Bystolic

---

[16] Even if Forest's patent purchase from Torrent were for Bystolic, the previous patent purchase from Janssen would undermine any inference that Forest's purchase of the Torrent patents, after Forest had "s[old] nebivolol in the United States and other jurisdictions since 2008," lacked a pro-competitive rationale. Dkt. No. 427 ¶ 178. First, if (as Plaintiffs necessarily concede) there is nothing suspicious about Forest having paid $357 million to Janssen—which did not pose a risk of launching a competitive generic—there is no reason to infer that there is anything suspicious about Forest agreeing to pay $17 million to Torrent for patents for Bystolic.  Forest had further disclosed in its 2012 Form 10-K that it "seeks to obtain, where possible patents and trademarks for [its] products in the United States and all countries of major marketing interest to Forest."  2012 Form 10-K, Forest Laboratories, Inc., at 20.  That Forest had purchased all U.S. patents and intellectual property for Bystolic from Janssen for $357 million before purchasing the Torrent patents demonstrates the value Forest placed on Bystolic.  Second, there is no allegation that Forest even knew about Torrent's patents at the time that they purchased Janssen's patents.  Absent that allegation, it is entirely plausible that Forest valued and bought Janssen's patents without the knowledge that there were outstanding patents held by Torrent.

generated more than $1 billion a year in annual revenue. *Id.* ¶ 1. The more plausible reading of these facts is that Forest had a legitimate rationale for purchasing patents for one of its key products that had up to nine years remaining in its product lifespan.

Plaintiffs again allege that the $7 million payment in the Torrent agreement was triggered by the issuance of any of the ten assigned patents in the United States. *Id.* ¶ 178; Dkt. No. 250 ¶ 157. But Plaintiffs do not plead any metric to determine whether that payment was excessive, nor do they plead anything showing that the patents were valueless or not useful. Further, based on the terms of the agreement, Forest valued issuance of the patents *in the United States*. Dkt. No. 270-13 § 5.1. While six of the patents had already been granted in foreign jurisdictions, the application for the U.S. patent was still pending. *Id.* at Exhibit A. Forest placed a premium on a future grant of that patent, or an application derived from the other listed patents, in the United States, as such issuance would be essential to actualizing the value of the patents. Finally, the additional milestone payments under the agreement assigned value to the patents based on potential New Drug Applications, licensing, and infringement actions against third parties. *Id.* § 5.2; Dkt. No. 427 ¶ 177. Plaintiffs fail to construe the $7 million payment in the context of the agreement as a whole, which otherwise shows that patents issued in the United States were of value to Forest.

Plaintiffs also newly allege that Forest had not publicly disclosed that it was seeking to develop a new form of Bystolic, nor did Forest put any specific value on these patents in its 10-K for the fiscal year ending March 31, 2013. Dkt. No. 427 ¶ 179. Plaintiffs ask the Court to infer that because Forest did not disclose a value for the Torrent patents, an agreement to acquire those patents had little to no value. But, once again, Plaintiffs cite no facts for the proposition that Forest—a company that was acquired in 2014 for $25 billion, Dkt. No. 427 ¶ 8 n.5—would need

to disclose in its SEC public filings a $15 million acquisition of patents, none of which were even issued in the United States at the time.  The more plausible inference is that the agreement was simply not material for SEC reporting purposes.  Plaintiffs have not met their pleading burden on the Torrent agreements.

### 3.     Alkem/Indchemie

Forest's agreements with Alkem/Indchemie included a Term Sheet pursuant to which Alkem/Indchemie agreed to supply, at minimum, 45% of Forest's requirements for tablets of two drugs, Bystolic and Byvalson (nebivolol and valsartan), for five years for sale and distribution by Forest in the United States and Canada.  Dkt. No. 270-9.  The agreement allows for two automatic renewal periods of one year each, provided that Alkem has capacity to supply the tablets and can do so at competitive prices defined as not more than 10% higher than generally available prices.  Dkt. No. 427 ¶ 181; Dkt. No. 270-9 at ECF p. 3.  Forest, in turn, agreed to pay Alkem/Indchemie at least $20 million.  Dkt. No. 427 ¶ 181.  In short, the agreement contemplates payments in exchange for the manufacture of final drug products.

The January 2022 Opinion concluded that Plaintiffs' pleading in the Prior Complaints that the payments exceeded the fair value of any products or services received, absent factual support, was "conclusory and a 'label' insufficient alone to state a claim."  Dkt. No. 354 at 48. Plaintiffs also had not "allege[d] facts to support that, prior to signing the settlement agreements and Term Sheet with Alkem/Indchemie, Forest had expressed no interest in an agreement with those companies."  *Id.* at 49.  In short, "the plaintiff must allege that there is something about that agreement other than its timing and the fact that it results in the generic manufacturer honoring a patent that supports the inference that it is anticompetitive."  *Id*.

The Complaint relies on provisions of the Term Sheet that the Court already found insufficient to support a plausible inference of anticompetitive conduct.  Plaintiffs allege that

under the Term Sheet, Forest supplied Alkem/Indchemie with free API for the production of

Bystolic and Byvalson tablets, and that Forest agreed to pay Alkem/Indchemie as much as a 10%

premium over prices generally available from other supply sources for the final tablets.  Dkt. No.

427 ¶ 181.  But Plaintiffs mischaracterize the agreement they rely upon.  The 10% figure

represents the price increase that Alkem/Indchemie was permitted to charge after the expiration

of the initial five-year term of the agreement, payable only if Alkem/Indchemie is "in material

compliance with the Agreement . . . [,] has sufficient capacity to meet product demand and is

willing and able to continue to supply Product to Forest at a price which is competitive (i.e. not

more than 10% higher than prices generally available from such sources) with other comparable

qualified sources of supply."  Dkt. No. 270-9 at ECF p. 3.  The "Commercial Price" of the tablets

during the five-year term of the Term Sheet is defined as "no higher than the price" of

$.02375/tablet for Bystolic tablets and $.0475/tablet for Byvalson tablets.  *Id*. at ECF p. 6.  In

short, the provision provides protection—and thereby value—to Forest: it limits the amount by

which Alkem/Indchemie can increase the price after the five years during which Forest will have

become dependent on the former's products.

Plaintiffs also plead that the Term Sheet includes an additional term that Forest "shall

reimburse [Alkem/Indchemie] for the costs and expenses incurred in connection with the

Development Work."  Dkt. No. 427 ¶ 184.  Plaintiffs allege that this is a double payment for the

same task, which is already compensated by the milestone payments.  *Id*.  The fact that there are

distinct payments for milestones and expenses does not give rise to a reasonable inference that

the agreement was one-sided, much less that it is not bona fide.  The two payments are not

connected in any manner—they constitute separately determined amounts.  The milestone

payments are fixed under the Term Sheet, while the expenses are determined according to a

"mutually agreed work-plan and budget."  Dkt. No. 270-9 at ECF pp. 5–7.  The expenses

constitute reimbursements; the milestones constitute rewards for achievements.

Alkem/Indchemie could receive reimbursements even if it achieved nothing; and

Alkem/Indchemie could also receive rewards for its achievements, even if it accomplished them

at little to no expense.  Such payments are consistent with the notion that the milestones had

independent and ascertainable value for Forest irrespective of the work undertaken to accomplish

them.

Plaintiffs also allege that Forest was obligated under the agreement to make milestone

payments even if developmental delays arose.  Dkt. No. 427 ¶ 184.  But Plaintiffs again omit key

details of this term from their pleading.  Forest's obligation to make payments arises only if there

is a delay of greater than 90 days in the milestones "due to failure of Forest to perform its

obligations or as a result of additional development or regulatory activities required to be

performed by Forest."  Dkt. No. 270-9 at ECF p. 6.  In other words, Forest's obligation to pay

was linked to Forest's failure to perform or Forest's need to undertake additional activities.  No

inference can be drawn from the fact that the agreement ensured payments from Forest when

Forest created additional costs that the agreement was a disguised payment for the failure to

compete.

The remainder of the Complaints' allegations regarding Alkem/Indchemie simply

repackages information already before the Court and that the Court deemed insufficient.

Plaintiffs allege that the Term Sheet was a "rush job" and that it was entered into without due

diligence.  Dkt. No. 427 ¶ 185.  The Court previously rejected the claim that the timing of the

Term Sheet makes it suspicious—that claim could be made with respect to every side agreement

for products or services entered into simultaneously with the settlement of patent litigation.  The

conclusion that the agreement was rushed appears to be based on nothing more than that it was embodied in a term sheet that was entered into prior to the completion of due diligence. But the fact that two companies that were settling litigation also agreed quickly to enter into a separate or related agreement for products and services—even if rushed—would not make that agreement suspicious. The opportune time for parties who were once adversaries to reach an agreement for products and services is when they are settling litigation. One would not necessarily expect them to agree to do business with one another when they were fighting on the litigation turf.

Further, Plaintiffs' assertion that it is "typical industry practice" for a pharmaceutical company to conduct due diligence on manufacturing facilities prior to entering into a binding agreement, *id*., does not render the Term Sheet suspect. The Term Sheet is just that: a term sheet. It reflects that due diligence would occur after its execution, including FDA Establishment Inspection Reports, scheduled visits by Forest personnel including a quality audit, and a customary quality agreement for the products. *Id*. The Term Sheet also contains numerous provisions designed to control product quality and oversee the manufacturing facilities. Under the Term Sheet, Alkem provided Forest with a copy of its last two FDA Establishment Inspection Reports and then would schedule visits by appropriate Forest personnel to conduct a quality audit. Forest and its agents also had a right, following notice to Alkem, to inspect the products, the holding facilities for such products, the equipment used in manufacturing the products, the laboratories used to test the products, and all records relating to the manufacture of the products. Dkt. No. 270-9 at ECF p. 7. Alkem was obligated to promptly notify Forest of any visit or inspection of the facility by regulatory authorities and to permit Forest to participate in any such visit or inspection. *Id*. Similarly, Forest owned and controlled all regulatory approvals and applications with respect to the product, and Alkem was obligated to "cooperate as necessary

in obtaining and maintaining such approvals." *Id.*  Importantly, Alkem also agreed to a product

warranty and indemnified Forest against losses arising out of third-party claims as a result of

Alkem's breach of the agreement—including a lack of conformance with the product warranty—

or gross negligence or willful misconduct. *Id.* at ECF p. 8.

Finally, Plaintiffs reallege—now based on their searches of the FDA website and public

information—that Forest did not have supply shortages for the finished form of Bystolic and that

Forest had not expressed any prior interest in retaining Alkem/Indchemie to manufacture

Bystolic or Byvalson.  Dkt. No. 427 ¶¶ 182–83.  These statements were previously alleged on the

basis of "information and belief" in the Prior Complaints.  Dkt. No. 250 ¶ 161.  The former

allegation is insufficient, even if pleaded in a non-conclusory manner.  The fact that Forest had

not *previously* experienced supply shortages would not demonstrate that it was not at risk of

supply shortages or—more pertinently—that the additional supply was not of value.  As

previously noted, Forest reported the risk of supply shortages, on a forward looking basis, in its

March 2012 10-K Form.  It noted that it had only a single manufacturing source for Bystolic in

particular:

> *Our manufacturing facilities in the Republic of Ireland are the exclusive qualified
> manufacturing facilities for finished dosage forms of our principal products,
> including Namenda, Bystolic and Savella.* Difficulties or delays in the product
> supply chain, both within and outside of our control, or the inability to locate and
> qualify third party alternative sources, if necessary, in a timely manner, could lead
> to shortages or long-term product unavailability, which could have a material
> adverse effect on our results of operations, financial condition and cash flows.

2012 Form 10-K, Forest Laboratories, Inc., at 24 (emphasis added).

The latter allegation—that Forest had not previously expressed an interest in retaining

Alkem/Indchemie—is still conclusory.  Plaintiffs now reveal the information and belief upon

which they previously made the allegation: the absence of any public report that Forest had

previously expressed an interest.  However, as also previously noted, the "absence of evidence is

not evidence of absence." *See supra* Section II.1 (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d at 254; *Saccenti*, 2021 WL 2716644, at *2).  That Forest had not disclosed, prior to reaching an agreement with Alkem/Indchemie, that it was interested in reaching an agreement is not a fact from which one can infer that it had no such interest.  To the contrary, the far more likely inference is that prior to reaching an agreement, it neither believed it had an obligation to disclose in SEC filings the inchoate interest nor had an interest in disclosure.

### 4. Glenmark

Concurrently with its Settlement Agreement and License Agreement, Forest and Glenmark entered into a Collaboration and Option Agreement pursuant to which Forest and Glenmark would jointly develop mPGES-1 products for a period of at least 27 months absent earlier termination.  Dkt. No. 427 ¶ 188; Dkt. No. 270-15.  The Collaboration and Option Agreement thus contemplates a joint research venture between the two entities.  More specifically, the Collaboration and Option Agreement provides Forest an opportunity to take advantage of Glenmark's expertise and know-how in the discovery of small molecule inhibitors of mPGES-1.  It establishes a program by which Forest—and no one other than Forest—may determine research priorities with Glenmark and receive research products from Glenmark.  It also grants Forest a right of first negotiation as to any commercialization rights to products from the program.  In exchange, the agreement requires Forest to pay $15 million to Glenmark.  Dkt. No. 270-15 ¶ 4.1.  Of that $15 million, $9 million is owed up front:  $6 million is in consideration for the option rights granted to Forest and as reimbursement for research and development expenses associated with the mPGES-1 program, *id.* ¶ 4.1(a), and $3 million is an advance payment for the research and development services to be performed by Glenmark during the first nine months under the agreement, *id.*  The remaining $6 million is designated as

subsequent research fee disbursements:  $2 million is due on the nine-month anniversary for the

ensuing six month period for "research and development services" or when Glenmark files an

investigational new drug application with a regulatory authority to commence human trials, and

$4 million is due on the fifteen-month anniversary for the ensuing twelve-month period for the

same, or when Forest receives the Phase I data summary report from the first single ascending

dose Phase 1 Study.  *Id*. ¶ 4.1(b).

The January 2022 Opinion held that Plaintiffs had "failed to offer any factual allegations

for why the allegedly large reverse payment is unexplained or unjustified."  Dkt. No. 354 at 50.

The Complaints allege that "[b]ased on inferences from publicly available information and the

allegations contained herein, the payments under the Collaboration and Option Agreement

exceeded the fair value of anything that Forest received."  Dkt. No. 427 ¶ 188.

The Complaints reallege the following facts: (1) Forest had not previously expressed

interest in the development of mPGES-1 prior to executing the Settlement Agreement and

Collaboration and Option Agreement, *id*. ¶ 189; (2) the milestone payments were due "regardless

of whether the product was successful," *id*. ¶ 191(a); (3) Forest did not receive intellectual

property rights or development and commercialization rights in any market, *id*. ¶ 191(b); and (4)

the only "right" Forest had under the agreement was a "Right of First Negotiation" that was

valued by the Parties at less than $6 million, *id*. ¶ 191(c).  The Complaints also draw on

additional terms from the Collaboration and Option Agreement that if Forest and Glenmark

could not negotiate an agreement for a resulting product in 120 days, Glenmark could enter into

a deal with a third party so long as the deal was not "materially more favorable to such Third

Party than the terms and conditions last offered by Glenmark to Forest."  *Id*.  Furthermore, the

Complaints highlight that there was no mechanism for Forest to verify that such a deal was not

"materially more favorable" to a third party.  *Id*. ¶ 192.  In other words, the Complaints do not add to the allegations that the Court already found to be deficient.

There is nothing other than conclusory statements alleging that the payments under the Collaboration and Option Agreement exceeded the fair value of what Forest received.  On its face, the Collaboration and Option Agreement provided substantial value to Forest.[17]  It gave Forest a seat at the table and an opportunity to learn from and exploit Glenmark's expertise and know-how on inhibitors.  Dkt. No. 270-15 ¶¶ A, B, 2.1, 2.5.  The agreement required Glenmark as well as Forest to "work together cooperatively and in good faith in conducting and pursuing the goals of the mPGES-1 Program."  *Id*. ¶ 2.2.  Forest gained the right to appoint half of the representatives to a Joint Development Committee, *id*. ¶ 3.2, which would meet quarterly to monitor and potentially alter the program, *id*. ¶¶ 2.3, 3.2, 3.3, 3.4, 3.5.  Forest gained the right to view and comment on Glenmark's investigational new drug applications with any regulatory authority and Glenmark was required to consider those comments "in good faith."  *Id*. ¶ 2.4. Glenmark was required to provide quarterly reports to Forest on the status of the program and undertake "reasonable effort[s]" if Forest required additional information to verify any report, *id*. ¶¶ 2.6, 2.7, 2.8(b); Glenmark was also required to consider in good faith the comments of Forest on publications reporting the results of pre-clinical and clinical trials, *id*. ¶ 6.2.

At the end of the program, after Forest fulfilled its payment obligations and Glenmark fulfilled certain studies obligations and provided Forest certain data, Forest was given a 30-to-45-day period during which it could provide notice of its desire to exercise its "Right of First

---

[17] That the mPEGS-1 collaboration was not publicly available speaks little to whether the collaboration was justified or not.  For the reasons previously mentioned under the discussion of the other agreements, the absence of such evidence does not reasonably lead to an inference that there was no justification absent additional facts alleging what such an absence implies.

Negotiation." *Id.* ¶ 6.4(b)(2).[18]  The notice triggered a period of 120 days during which

Glenmark was prohibited from negotiating with anyone else for a commercialization agreement.

Glenmark was obligated to "negotiate with Forest in good faith exclusively" for a

commercialization agreement.  *Id.* ¶ 6.4(b)(3).  Moreover, if no agreement was reached during

that 120-day period, Glenmark was prohibited from entering into a binding agreement with any

other party during the following nine months if the "terms and conditions of a binding agreement

entered into by Glenmark in connection with any transaction entered into" were "materially more

favorable to such [t]hird [p]arty than the terms and conditions last offered by Glenmark to

Forrest."  *Id.* ¶ 6.4(b)(5).

Plaintiffs again argue that "Forest was not granted any intellectual property rights" in the

product.  Dkt. No. 427 ¶ 191(b).  But that reflects a fundamental misunderstanding of the

agreement.  The Forest-Glenmark agreement was for commercialization.  The intellectual

property would not have had value if it could not be commercialized.  And the agreement

provided substantial value to Forest in connection with commercialization.  For the entire period

of the mPGES-1 program, Forest and Forest alone would have the right to work with Glenmark

on the development of potential products and possess access to Glenmark's trade secrets.  For the

term of the agreement, Glenmark was barred from providing any confidential information

---

[18] Defendants argues that this "was more akin to a right of first refusal than a 'right to
negotiate.'"  Dkt. No. 395 at 31.  But the arrangement, as alleged and as described by the
Defendants, is more like a right of first offer, rather than a right of first refusal.  *See In re
Adelphia Commc'ns Corp.*, 368 B.R. 348, 353 (Bankr. S.D.N.Y. 2007) ("A right of first refusal
entitles the holder to match any subsequent offers for the property before the third party offeror
can complete its transaction.").  Forest retains no such entitlement to match any subsequent
offers—the key element of a "right" of first refusal.  But even then, Forest had secured a
provision with commercial value because the agreement incentivized Glenmark to make its best
offer to Forest because otherwise it would risk losing the ability to commercialize the mPEGS-1
product for nine months or have to commercialize the product on worse terms.

regarding the program to any third party, or engage in any evaluation, negotiation, or transaction

with any third-party regarding mPEGS-1 involving sale, assignment, granting license to, creation

of any encumbrance upon, or otherwise disposing of anything from the program.  Dkt. No. 270-

15 ¶ 6.4(a)(1).  Thus, not only would Forest be able to develop the product, but it alone would

have knowledge about both its scientific promise and its regulatory prospects.  And the

agreement obligated Glenmark to "negotiate with Forest *in good faith* exclusively" for 120 days,

*id*. ¶ 6.4(b)(3) (emphasis added), and then gave Forest a right after that to block Glenmark for the

following nine months—if it did not agree with Forest—from engaging in a transaction with

anyone else on more favorable terms, ensuring that Forest could exploit its head start.  In effect,

unless Glenmark reached an agreement with Forest on terms Forest found acceptable, Glenmark

would have to wait 120 days before negotiating with someone else who would not have the

knowledge and information Forest accumulated over the course of the program's development.

Glenmark would only then be able to enter into an agreement with that third party over the

following nine months if the terms were not more favorable to that third party than what

Glenmark had last offered to Forest in good faith.  And Glenmark would have to make the

decision whether to enter an agreement with Forest before knowing that a third party would

emerge.  In short, on its face, the Collaboration and Option Agreement conferred substantial

value to Forest.

      While the technology would remain Glenmark's, Forest thus had a right to participate in

and oversee its development, ensure that no other party was able to access the confidential

information developed through the collaboration, and make a first offer that was accompanied by

significant incentives for Glenmark to say "yes."  The milestone payments were for the

obligations that Glenmark undertook as the entity responsible for the mPEGS-1 program and for

its expertise in the "discovery of small molecule inhibitors of [mPGES-1]."  Dkt. No. 270-15 ¶

A.  The $6 million payment ensured that Forest was first in line for any products from the

program.

The only real new allegation, not already before the Court the last time, is that the

Glenmark agreement is unlike a separate 2004 collaboration agreement between Forest and

Glenmark, in which Forest retained rights to develop, register, and commercialize an already

identified inhibitor, GRC 3886, in the United States, payments were completed upon milestones,

and Glenmark would earn a mid-teens royalty from the product and supply API for sale by

Forest.  Dkt. No. 427 ¶ 190.  But neither the Complaints nor Plaintiffs' briefing identifies why

that agreement is significant.  There is no allegation that the 2004 collaboration agreement

constitutes the only form in which two companies can agree to collaborate.  Nor is there an

allegation that the challenged Forest-Glenmark agreement departs from industry standards.

There also is no allegation that the products are even remotely similar.  In fact, the pleading

states that the 2004 collaboration agreement was for an *already identified* inhibitor for

phosphodiesterase-4, "GRC 3886", *id.*, while the Collaboration and Option Agreement entailed

the development of potential inhibitors for mPEGS-1, *see* Dkt. No. 27-15 § 1.25.  Indeed, the

fact that Forest and Glenmark did business with one another in the past tends to undermine

Plaintiffs' claim rather than support it.

### 5.    Amerigen

Forest's July 2013 agreements with Amerigen included a "Binding Term Sheet

Collaboration Agreement" under which Forest obtained royalties from eight Amerigen products,

including five "Additional" generic products in exchange for a nonrefundable up-front payment

of $5 million plus an additional $20 million in contingent milestone payments.  Forest also had

the option to commercialize up to eight Amerigen products in Latin America and South America,

which Amerigen had the right to supply to Forest for its manufacturing costs plus 30% and on other customary and reasonable terms.  Dkt. No. 427 ¶ 195; Dkt. No. 270-19.

Plaintiffs previously argued that "prior to executing the Settlement Agreement and Collaboration Agreement, Forest had expressed no interest in Amerigen's products."  Dkt. No. 250 ¶ 165.  The Court dismissed Plaintiffs' claims because Plaintiffs offered only "conclusory allegations on information and belief that relate to whether there was bona fide fair consideration for the property or services and whether there was a history of demonstrated interest in or need for the property or services."  Dkt. No. 354 at 52.

Plaintiffs largely reiterate allegations and arguments made in their Prior Complaints without curing any of their deficiencies.  Plaintiffs allege, based on "[s]earches of publicly available information," that Forest did not have a preexisting business relationship with Amerigen and did not express interest in Amerigen's products prior to the Settlement Agreement and Collaboration Agreement.  Dkt. No. 427 ¶ 197.  Those allegations previously were made "[o]n information and belief."  Dkt. No. 250 ¶ 165.  Plaintiffs do not allege that publicly available information shows that Forest did *not* have a preexisting relationship with Amerigen or did *not* have an interest in its products.  They instead allege that the publicly available information does not show that Forest did have a preexisting relationship with Amerigen and also does not show that Forest did have an interest in Amerigen's products.  The absence of that information, however, is not a fact from which one can infer that Forest lacked any such interest.  There is no allegation that Forest would have been required to disclose the identity of every company with which it had a relationship, or the name of every product as to which it had internally expressed an interest or would have wanted to invest in had the opportunity presented.  Indeed, it is unlikely that any company would ever make such a disclosure.  The only inference

that can be drawn from the fact that public disclosures do not reveal that Forest previously had

an agreement with Amerigen for generic products is that Forest did not previously have such an

agreement that was material.  But even if one could infer that Forest had not previously

purchased rights from Amerigen with respect to a generic product, that does not give rise to a

plausible inference that the agreement Forest ultimately entered was anticompetitive.  The more

plausible inference is that the agreement was intended to accomplish exactly what on its face it

did accomplish—the transfer to Forest from Amerigen of future royalties in exchange for an

initial investment in product development.

     Plaintiffs further allege that "Forest did not truly care about whether [Amerigen's]

products fit within its corporate focus."  Dkt. No. 427 ¶ 197.  Plaintiffs allege that Amerigen had

the unilateral ability to discontinue development of any of the eight products, provided that

Amerigen offered Forest at least two alternate products of similar value as the discontinued

products.  *Id*.  But that does not make the agreement pretextual.  Plaintiffs omit key portions of

the provision that show that it had value for Forest.  Amerigen was only able to discontinue the

product "[i]n the event that Amerigen believes [it] . . . is no longer technically or commercially

viable."  Dkt. No. 290-19 at ECF p. 9.  Amerigen thereafter must provide Forest a written

rationale describing in reasonable detail the circumstances that led to that conclusion.  *Id*.  Forest

was then entitled to request a meeting with Amerigen to discuss the discontinuation and

Amerigen was obligated to give reasonable consideration to Forest's comments.  *Id*. at ECF pp.

9–10.  If Amerigen still wished to pursue the discontinuation, it had to propose two alternative

products that are of "similar value," "taking into account probability of technical success, time to

commercial launch and commercial potential."  *Id*. at ECF p. 10.  The provision thus allowed

Forest to *maintain* its corporate focus and the value of the agreement by giving it the option to choose its follow-up products and by ensuring that those products were viable.

The further allegation that Forest brands itself as focusing on "branded" drug products, and that the five "Additional" products in the Collaboration Agreement were generic products does not "nudge[] [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiffs do not allege any reason why a company that sells branded products would not want, as a means of diversifying its portfolio, to also offer generic products. Forest's 2012 Form 10-K states that the process of developing new pharmaceutical products is time-consuming, expensive, and risky:

> *Our Business Model Currently Depends on the Successful In-Licensing or Acquisition of New Product Opportunities.*
>
> In order to remain competitive, we must continue to develop and launch new pharmaceutical products. Our pipeline of new products is currently dependent on the licensing and acquisition of new product opportunities. To successfully accomplish these transactions, we commit substantial effort and expense to seeking out, evaluating and negotiating collaboration arrangements and acquisitions. The competition for attractive product opportunities may require us to devote substantial resources to an opportunity with no assurance that such efforts will result in a commercially successful product.
>
> . . .
>
> *If We Are Unable to Successfully Develop or Commercialize New Products, Our Operating Results May Suffer.*
>
> Our future results of operations will depend to a significant degree upon our ability to successfully develop and commercialize new products. New product development is subject to a great deal of uncertainty, risk and expense. Promising pharmaceutical candidates may fail at various stages of the research and development process, often after a great deal of financial and other resources have been invested in their exploration and development. Even where pharmaceutical development is successfully completed, a product may fail to reach the market or have limited commercial success because the safety and efficacy profile achieved during the course of development is not as favorable as originally anticipated or is viewed by the marketplace as less favorable in comparison to new and competing therapies which may become available during the lengthy period of drug development. In addition, decisions by regulatory authorities regarding labeling

and other matters could adversely affect the availability or commercial potential of our products.

2012 Form 10-K, Forest Laboratories, Inc., at 22–23 (italics in original).  In this context, it would be "rational and competitive business strategy," *Twombly*, 550 U.S. at 545, for a company such as Forest to not close itself off from investment in a generic when the opportunity presents itself. The fact that Forest did so does not make the resulting agreement presumptively anticompetitive.

Finally, Plaintiffs allege that Forest did not finalize the agreements until one year later and several weeks after the FTC issued a Civil Investigative Demand ("CID") to Forest. Plaintiffs infer that this indicates that the "final agreement was driven by a desire to avoid antitrust liability."  Dkt. No. 427 ¶ 198.  The timing of the finalized agreement alone, however, does not raise a reasonable inference that the agreement was unjustified, particularly when the preliminary agreement—the Term Sheet—was entered into before the CID.  The timing of the final agreement after the CID is equally consistent with the inference that Forest and Amerigen were executing their obligations under the Term Sheet.

### 6.    Watson

The final challenged set of agreements concerning Watson includes (1) a "Termination and Release Agreement" ("Termination Agreement") between Actavis and Moksha8 that terminated a series of agreements between Watson and Moksha8 entered into from 2010 to 2012 and released Watson from obligations arising from those agreements, in exchange for Watson paying $4 million to Moksha8, Dkt. No. 270-6; and (2) a "Letter Agreement" between Forest and Moksha8 stating that Moksha8 was in material breach of at least three "Loan and Security Agreement[s]" but nonetheless committing Forest to extend to Moksha8 approximately $7 million in additional "Term C" loans, Dkt. No. 270-5.  The Termination Agreement also released Watson from obligations related to transactions contemplated by a prior October 2012

Agreement and Plan of Merger by and among Forest, M8 Holdings LLC, and Moksha8 Parent (the "Merger Agreement") or agreements contemplated by the Merger Agreement.  Dkt. No. 427 ¶ 200; Dkt. No. 270-6.

Plaintiffs previously argued that "[t]he November 2013 agreements entered between Forest, Moksha8, and Watson disguised large payments from Forest to Watson."  Dkt. No. 251 ¶ 221.  The January 2022 Opinion considered the Settlement and License Agreements, Letter Agreement, and Termination Agreement together.  The Court concluded that Plaintiffs "ha[d] not sufficiently pleaded the existence of a reverse payment" because the Prior Complaints "lack[ed] factual allegations regarding how that transfer of value, or 'payment,' to Moksha8 was then conveyed to Watson."  Dkt. No. 354 at 55.  Plaintiffs also had failed to plead how the "release of all claims against Watson was more valuable than any consideration Watson paid for the releases."  *Id*.  The January 2022 Opinion concluded that "the DPP Complaint could have included facts describing the releases, explaining why the releases were valuable to Watson, and providing context to estimate their relative value even if precise estimates are not alleged."  *Id*. at 56.

Plaintiffs again allege that an anticompetitive payment for delay to Watson occurred "by facilitating Watson's termination of its commitments to Moksha8 and release by Moksha8," Dkt. No. 427 ¶ 201, but nothing in Plaintiffs' new pleadings addresses the defects previously identified by the Court.  In fact, Plaintiffs outright admit that their Complaints fail to remedy the defects.  They state that "Plaintiff cannot tell precisely how Forest used the transaction with Moksha8 to transfer this payment to Watson, but there is a clear inference that it did so."  *Id*. ¶ 215.

According to Plaintiffs, there are two agreements at issue.  Under the Termination Agreement, Moksha8 and Watson relieved each other of any rights, obligations or duties against one another arising from a series of prior agreements.  Dkt. No. 270-6 § 5.  Watson also paid $4 million to Moksha8 as a part of that Termination Agreement.  *Id*. § 3.  Under the Letter Agreement, Forest loaned $7 million to Moksha8 and Moksha8 provided releases to Forest.  Dkt. No. 270-5 §§ 2, 5.  But Plaintiffs do not plead facts from which a factfinder could infer that either sets of agreements is for other than fair value.  Nor do Plaintiffs plead facts to infer that value conferred upon Moksha8 by Forest was transferred to Watson.  The Letter Agreement on its face appears to be for fair value; there is nothing suspect about it.  Forest provided $7 million in debt financing to Moksha8.  There also is nothing suspect about the Termination Agreement. Moksha8 agreed to accept payment from Watson in exchange for releases and the termination of Watson's commitments to Moksha8.  In addition, Watson also released Moksha8 from claims it might have.  Plaintiffs again have not shown how the "release of all claims against Watson was more valuable than any consideration Watson paid for the releases."  Dkt. No. 354 at 55.

Plaintiffs' pleadings on background events in 2012 running up to the Letter and Termination Agreements also do not remedy the defects in their prior pleadings.  Those allegations are irrelevant to the question of how value was transferred from Moksha8 to Watson, and how much value was transferred, if any.  They were also previously before this Court on the prior motions to dismiss.[19]  Events that occurred in October 2012—more than a year before the

---

[19] For example, Plaintiffs reallege that Forest purchased Watson's minority interest in Moksha8 in October 2012 for $47 million, but now add that the price was $17 million more than what Watson had invested two years earlier; reallege that the October 2012 Agreement also provided Moksha8 with up to $125 million in financing; and newly allege that the October 2012 agreement granted Forest a right to acquire Moksha8 at a fixed price of $157 million.  They further allege that Watson recorded a gain of $28.8 million on this transaction.  Dkt. No. 427 ¶¶ 207–10.

execution of the alleged reverse payments at issue in November 2013—offer no insight into *how* the November 2013 Letter and Termination Agreements themselves transferred payments either through releases or termination.  Plaintiffs needed to plead more facts about the November 2013 agreements, and they have failed to do so.

To the extent that Plaintiffs' Complaints allege that the transfer occurred by Forest releasing its claims against Moksha8's "Guarantors,"—suggesting, perhaps, that Watson is one of those Guarantors—Plaintiff has not alleged any factual matter supporting that theory. Plaintiffs plead that Forest had a claim for damages against Moksha8 "and its Guarantors" based on Moksha8's breaches of its covenants in its October 22, 2012, November 29, 2012, and November, 30, 2012 Loan and Security Agreements.  Plaintiffs, however, do not identify who those Guarantors are.  Dkt. No. 427 ¶ 212.  No allegation is made that Watson was a Guarantor. No facts are alleged indicating that releasing claims against the Guarantors somehow benefitted Watson.

Plaintiffs also have not shown that Forest conveyed payments to Watson in excess of $15 million.  Plaintiffs again repeat their allegation that the inclusion of the Letter and Termination Agreements in Forest's February 2014 merger disclosures as "related to" the settlement agreement indicates that they involve payments in excess of $15 million.  *Id.* ¶ 218.  The Court squarely rejected that argument in its January 2022 Opinion, stating that Plaintiffs "focus on only one of the three disjunctive criteria [for inclusion as related to the settlement agreement]," with the other criteria being (1) monitoring or reporting obligations or (2) unsatisfied material conditions precedent to settlement.  Therefore, the Court concluded that Plaintiff had not sufficiently pleaded that the inclusion of the Letter and Termination Agreements could not be due to those other two innocuous criteria.  Dkt. No. 354 at 57.  Plaintiffs, this time, argue that the

Letter and Termination Agreements must have been related to the criteria related to payment in excess of $15 million by stating that there is no mention of the other two criteria in the Letter and Termination Agreements. But a payment in excess of $15 million is also not mentioned in the Letter and Termination Agreements. Dkt. No. 354 at 57. Nor would monitoring or reporting obligations necessarily have been in the agreements themselves. The inference that the agreements met the other criteria is equally as plausible as the inference that there was a payment in excess of $15 million.

Finally, Plaintiffs allege that because Watson settled last, they must have received a large payment and it must have been for other than value. But that allegation, based purely on timing, is clearly insufficient to satisfy *Actavis*. There is always a last one to settle; sometimes it is the only defendant to be sued. Were Plaintiffs' allegation sufficient, then there would always be an antitrust claim with respect to every settlement of patent litigation for a reverse payment. *Actavis* clearly precludes that result. In fact, this Court previously held that "[w]here there are multiple generic manufacturers, it does not follow that simply because a reverse-payment agreement with one Generic Defendant is anticompetitive, the brand manufacturer's agreements with every other Generic Defendant is anticompetitive." *Id*. at 34.[20] Plaintiffs have not, in any event, established that any of the prior agreements were anticompetitive.

## III.    Defendants' Remaining Arguments

For substantially similar reasons as those outlined in the January 2022 Opinion, the Court need not address the Defendants' additional arguments for dismissing the Complaints. *See id*. at 57–59. These include the motions to dismiss for a lack of personal jurisdiction, *see* Dkt. No. 386

---

[20] Forest's abrupt termination of its obligations to provide additional funding does not rebut the pleading deficiency that Plaintiffs have not sufficiently alleged that any value was transferred to Watson.

(TEVA Israel's Motion), Dkt. No. 388 (Non-Resident Defendants' Motion), whether the alleged reverse payment is "large," Dkt. No. 395; Dkt. No. 405 (Amicus Brief in support of Defendants' motion to dismiss), and whether Plaintiffs allege a plausible theory of causation, Dkt. No. 395.

## IV.   Motions Regarding End-Payor Plaintiffs' Complaint

The remaining claims in the EPP Complaint are dismissed.  The parties do not dispute that if the federal antitrust claims are dismissed, then the EPP claims under state antitrust law, based on the same factual allegations, are dismissed as well.  Dkt. No. 354 at 61; Dkt. No. 411 at 2  ("There is no dispute that the state antitrust laws under which EPPs bring their antitrust claims are consistently interpreted in parallel, if not identically, with the federal antitrust statutes.").  Similarly, the consumer protection claims must be dismissed as well because "they rely on the existence of anticompetitive conduct, which the Court has found insufficiently pleaded."  Dkt. No. 354 at 63.  The Court thus not need address Defendants' other arguments for dismissing the EPP claims.  The motion to dismiss the EPP Complaint is granted with prejudice.

## CONCLUSION

For these reasons, the Court holds that Plaintiffs have failed to state a claim with respect to all of the Agreements.

Defendants' motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a claim is GRANTED with prejudice.  Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint for failure to state a claim is GRANTED with prejudice.  Nonresident Defendants' motion to dismiss the End-Payor Plaintiffs' Complaint's non-New York, state law claims for lack of personal jurisdiction and Teva Israel's motion to dismiss for lack of personal jurisdiction are DENIED as moot.  The motion of the New Civil Liberties Alliance and the International Center for Law and Economics for leave to file an amicus brief is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 386, 388, 393, 397, 403. For the reasons explained in an accompanying Order, this Opinion and Order will be filed temporarily under seal until the Court can review any redactions the parties propose.  The Clerk of Court is respectfully directed to file this Opinion and Order under seal, viewable only to the Court and the parties to this action.

SO ORDERED.

Dated: February 21, 2023
     New York, New York

LEWIS J. LIMAN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/21/2023
```

-------------------------------------------------------------------X
                                                            :

                                                   :                    20-cv-5735 (LJL)

IN RE BYSTOLIC ANTITRUST LITIGATION    :

                                                   :                     ORDER

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      For the reasons stated in the Opinion and Order filed by the Court today:  Defendants'
motion to dismiss the Direct Purchaser and Retailer Plaintiffs' Complaints for failure to state a
claim is GRANTED, and the Direct Purchaser and Retailer Plaintiffs' Complaints are
DISMISSSED with prejudice.  Defendants' motion to dismiss the End-Payor Plaintiffs'
Complaint for failure to state a claim is GRANTED, and the End-Payor Plaintiffs' Complaint is
DISMISSED with prejudice.  Nonresident Defendants' motion to dismiss the End-Payor
Plaintiffs' Complaint's non-New York, state-law claims for lack of personal jurisdiction and
Teva Israel's motion to dismiss for lack of personal jurisdiction are DENIED as moot.

      In order to preserve the ability of the parties to move the Court for redactions from the
Opinion and Order, the Opinion and Order is temporarily filed under seal.  The parties shall meet
and confer with respect to potential redactions and, by **February 28, 2023**, the parties shall file
any proposed redactions pursuant to the Court's Individual Practices.  In addition, the parties are
invited to inform the Court of any errors in citation, typography, or similar errors they discover
in their review.  The Court will rule on any outstanding motions to seal at the same time it rules
on any proposed redactions to the Opinion and Order.

      SO ORDERED.

Dated: February 21, 2023
      New York, New York                  _____
                                            LEWIS J. LIMAN
                                  United States District Judge

## ADDENDUM B:  PROPOSED ISSUES FOR APPEAL[1]

1.  Did Plaintiffs' allegations that Forest made large and unjustified reverse payments to each of the first six generic manufacturers seeking to launch generic Bystolic in exchange for their agreement not to introduce generic Bystolic until September 17, 2021 adequately state a claim pursuant to *FTC v. Actavis*, 570 U.S. 136 (2013)?

2.  Did the district court improperly construe the allegations in Plaintiffs' complaints in Defendants' favor by requiring the inferences drawn from their factual allegations to be more plausible than alternative inferences offered by Defendants?

The applicable appellate standard of review for both issues is *de novo*.  *See Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162 (2012) ("Whether a complaint alleges sufficient facts to state a claim on which relief can be granted is a question of law, which we consider *de novo*.") (citations omitted).

---

[1] To the extent allowed by governing law, Plaintiff-Appellants reserve the right to supplement or amend the list of issues they may raise on appeal.